**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
SIERRA CLUB, et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )        Civ. No. 1:07-cv-01756 (RCL)
                                        )
Lt. Gen. Robert L. Van Antwerp, et al., )
                                        )
        Defendants.                     )
_____)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO TRANSFER**

Plaintiffs in this action - the Sierra Club, Clean Water Action and Gulf Restoration

Network, Chris Loy and Richard Sommerville - assert that the United States Fish and Wildlife

Service ("Service") and the United States Army Corps of Engineers ("Corps") violated the

Endangered Species Act ("ESA"), 16 U.S.C. 1531, et seq., the Clean Water Act ("CWA"), 33

U.S.C. § 1251, et seq., the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et

seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in granting a permit for the

destruction of over sixty acres of federally protected wetlands and surface waters and occupied

habitat of several federally protected species, concluding that the permit would not significantly

affect the environment, or adversely affect the species.  More specifically, Plaintiffs assert that

the Service failed to fulfill its mandate under section seven of the ESA to protect several

threatened and endangered species that today have been reduced to remnant populations in

several Southeastern states including Florida, Georgia and Alabama.  In addition, Plaintiffs assert

that the Corps has failed to implement the Clean Water Act's requirement of avoidance,

minimization and mitigation of impacts to wetlands, and in so doing has failed to comply with

the ESA, the CWA, and NEPA, a failure that mirrors the Corps' actions on a national level.

Plaintiffs chose to bring this case in the District of Columbia for a number of reasons that warrant the case being heard here. As the Supreme Court has explained, "there is ordinarily <u>a strong presumption in favor of the plaintiff's choice of forum</u>, which may be overcome <u>only</u> when the private and public interest factors <u>clearly point</u> toward trial in the alternative forum," <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1982) (emphasis added), and a district court should "accord[ ] [plaintiff's] forum choice <u>substantial weight</u>" in evaluating a transfer motion. <u>In re Scott</u>, 709 F.2d 717, 720 (D.C. Cir. 1983).

Defendants motion to transfer should be denied as a review of the standard transfer considerations make clear that the case should be resolved in the District of Columbia:

1)      Plaintiffs chose to bring this litigation in the District of Columbia which is, among other things, the location of Clean Water Actions' national headquarters and a major Sierra Club office focusing on national issues: it is thus their home forum;

2)      Defendants are resident in, and are headquartered in, the District of Columbia, and thus the District of Columbia is Defendants' home forum as well;

3)      The District of Columbia is the most convenient, and least expensive, place to litigate for both Plaintiffs and Defendants, particularly given that counsel for Plaintiffs and Defendants are located in the District of Columbia;

4)      This is an Administrative Record case and the forum's location will not impact access to proof or the witnesses' convenience;

5)      The issues raised by the litigation - the protection of biological diversity, including threatened and endangered species that persist in several states in the

South, and of the nation's system of wetlands and waters - are issues of national importance and interest, as Congress indicated in the very statutes at issue here;

6) The Corps' ongoing and repeated failure to comply with ESA section seven and CWA section 404, and the FWS's complicity in the Corps' failure, has a national scope, as demonstrated by numerous reports from the Government Accountability Office and the National Academy of Sciences, among other institutions;

7) Courts in the District of Columbia have repeatedly resolved administrative record cases concerning agency compliance with environmental statutes - including the ESA, the CWA, and NEPA Corps' section 404 permits - precisely for the reasons identified above.

In short, Defendants cannot meet their heavy burden to overcome the strong presumption in favor of the Plaintiffs' choice of forum because all of the relevant transfer factors weigh in favor of hearing the case in this forum.

## BACKGROUND

### I.    Factual Background

Plaintiffs in this action are the Sierra Club, Clean Water Action, the Gulf Restoration Network, and two individuals.  Plaintiff Sierra Club is a national conservation organization with over 750,000 members located throughout the United States, including thousands of members in the District of Columbia.  See generally, Compl. at 1, 4-5; see also, http://www.dc.sierraclub.org/about.asp.  It is a resident of the District of Columbia, and its office in the District of Columbia works to help spearhead Sierra Club's national programs with a nexus to the federal government.  See generally, **http://www.sierraclub.org/.**  The Sierra Club's

3

District of Columbia office is home to some of its most senior staff who work on wildlife, endangered species and environmental quality issues of national importance. Id. Plaintiff Clean Water Action is also a national organization, comprised of over one million members located throughout the United States. See Compl. at 1, 5-7; see generally

**http://www.cleanwateraction.org/about/.** It is also a resident of the District of Columbia, where it maintains its national headquarters that similarly focuses on national programs with a nexus to the federal government, including water and wetlands protection programs. Id.

Plaintiff Gulf Restoration Network is a multi-state regional organization that focuses on issues that relate to the five Gulf states - Texas, Louisiana, Mississippi, Alabama, and Florida - and the Gulf of Mexico. See Compl. at 7-8; see generally,

**http://www.healthygulf.org/role-of-grn/role-of-grn.html.** It regularly engages in educational and government relations work at a national level, and it also focuses its federal efforts in Washington D.C., particularly with respect to endangered species and water and wetland protection issues. See generally **http://www.healthygulf.org/** Its membership is predominately based in the five state Gulf region, though it also has members throughout much of the nation, including in Washington D.C. Its headquarters, and its legal staff, are located in New Orleans. Id. The individual plaintiffs, Richard Sommerville and Chris Loy, are members of the Sierra Club, and are residents of Florida. See generally Compl. at 9-11.

Defendants Corps, the United States Department of the Interior ("DOI"), and the Service, are headquartered in Washington, D.C. See Compl. at 1, 11-13. Defendants coordinate and implement their national programs, policies and guidelines from their national headquarters in the District of Columbia.

The Cypress Creek Town Center ("CCTC"), for which the permit challenged here was issued, is a massive regional mall project to be built in federally protected wetlands and surface waters that provide occupied habitat for federally listed threatened and endangered species, including the Wood Stork and the Eastern Indigo Snake.  See Compl. at 22-26.  The five hundred acre site will have over two million square feet of commercial space, hotels, residences, office complexes and thousands of parking spaces, and will effectively sever a "critical wildlife linkage" running along the Cypress Creek, an Outstanding Florida Water, that borders the site. Almost half of the wetlands to be destroyed will be destroyed for parking lots.  Id.; see also, Compl. at 33-34.

On July 17, 2007, Sierra Club sent a sixty day notice letter to Defendants, as required to assert statutory claims under the ESA, and it requested that the Corps suspend or revoke the permit.  Id. at 46.  On September 6, 2007, the Sierra Club again wrote the Corps, forwarding two notices of violations that were issued to the CCTC developers for discharging polluted water into Cypress Creek and its wetlands.  Id.  The Sierra Club again requested that the Corps suspend or revoke the CCTC permit.  The Corps never responded to either letter, nor to the Plaintiffs' subsequent requests on September 19, 2007, and September 28, 2007.  Id. at 46, 47.

## II.    Statutory And Regulatory Background

28 U.S.C. § 1404(a) authorizes the Court to transfer litigation to another forum in another district, or division within a district:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(emphasis added).  The section is intended to be a "federal housekeeping measure" for the just

and efficient resolution of claims within a unified federal judiciary system.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong - however brought in a court – presents issues . . . that make one District Court more convenient than another, the trial judge can . . . transfer the whole action to the more convenient court."  Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960) (emphasis added).

**ARGUMENT**

**This Case Should Remain In The District Of Columbia As It Is The Home Forum of Plaintiffs and Defendants, It Is Most Convenient For The Parties, And The Interests In Justice Warrant Resolving This Case In the District of Columbia.**

This case should proceed in the District of Columbia.  It is the home forum of both Plaintiffs and Defendants; the forum where Plaintiffs chose to file; the forum where both Plaintiffs' and Defendants' counsel are located; the forum that is most convenient to the parties; and a forum in which courts routinely resolve Administrative Record cases brought against federal agencies.

Courts analyze nine factors relating to the "private" and "public" interests in having a case  resolved in a particular forum.  These include: (1) the Plaintiffs' choice of forum; (2) the Defendants' choice of forum; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the ease of access to proof; (6) where the claims arose; (7) the transferee court's familiarity with the law; (8) the relative congestion of the transferor and transferee courts' calendars; and (9) the interest in deciding purely local controversies in the locality.  E.g. Akiachak Cmty. v. Dept. of the Interior, – F.Supp. 2d –, 2007 WL 2367754 * 2 (Aug. 21, 2007 D.D.C.); The Wilderness Soc'y v. Babbitt, 104 F.Supp.2d 10 (D.D.C. 2000).  Again, not all of these factors are weighed equally and there is great deference given to plaintiffs' choice of forum.

E.g., Piper Aircraft Co., 454 U.S. at 255; Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

It is Defendants' burden, as the moving party, to establish that transfer is appropriate in light of these considerations. Fund For Animals v. Norton, 352 F.Supp.2d 1, 2 (D.D.C. 2005) (citing cases). Yet nothing in Defendants' brief indicates that on balance, the nine transfer factors justify transferring this case to another forum.

Moreover, numerous courts in the District of Columbia have heard and resolved claims much like those that are raised in this case. In so doing, as discussed below, they have rebuffed the Corps' and the DOI's efforts to transfer such cases. E.g. The Wilderness Soc'y, 104 F.Supp.2d at 16.

**A. The Nine Transfer Factors Favor Resolution Of This Claim In the District of Columbia.**

**1. The Plaintiffs' Choice Of Their Home Forum Deserves Great Deference.**

The first factor, Plaintiffs' choice of forum, clearly supports maintaining the case in Washington D.C. Again, as the Supreme Court itself explained in Piper Aircraft Co., "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum." 454 U.S. at 255. See also The Wilderness Soc'y, 104 F.Supp.2d at 12 ("It is settled that a case should not be transferred 'from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff.'") (quoting Pain v. United Techs. Corp., 637 F.2d 775, 783 (D.C. Cir. 1980)); Gemological Institute of America, Inc. v. Thi-Dai Phan, 145 F.Supp.2d 68, 71 (D.D.C. 2001) ("Deference to a plaintiff's

choice of forum is particularly strong where plaintiff has chosen his home forum"); <u>Air Line Pilots Ass'n</u>, 672 F. Supp. at 526 ("<u>Plaintiff's choice of forum is given paramount consideration</u> and the burden of demonstrating that an action should be transferred is on the movant") (emphasis added); <u>Anonymous v. F.D.I.C.</u>, 617 F. Supp. 509, 511 (D.D.C. 1985) ("courts have repeatedly held . . . that unless the balance of conveniences greatly favors the alternative forum, the plaintiff's forum choice should ordinarily be afforded considerable respect.").

Nonetheless, Defendants seek to dismiss the deference owed to Plaintiffs' choice of forum because, according to Defendants, the case supposedly lacks connection to the District. Contrary to Defendants' assertions, courts give great deference to plaintiffs' choice of forum when it is the plaintiffs' home forum <u>and</u> when the forum has strong connections to the claims asserted.  <u>E.g.</u> <u>Akiachak Native Cmty</u>, – F.Supp.2d at –, 2007 WL 2367754 at *2 (a "plaintiff's choice of forum is usually accorded great deference, <u>unless the plaintiff chooses a forum that is not his home and that has no substantial connection to the subject matter of the action.</u>").  Courts have therefore emphasized that "'[d]eference to the plaintiff's choice of forum is particularly strong where the plaintiff has chosen his home forum.'" <u>Great Socialist People's Libyan Arab Jamahiriya v. Miski</u>, 496 F.Supp.2d 137, 144 (D.D.C. 2007) (<u>quoting</u> <u>Reiffin v Microsoft Corp.</u>, 104 F.Supp.2d 48, 52 (D.D.C. 2000)) (emphasis added).

In this case, not only are Plaintiffs Sierra Club and Clean Water Action resident in the District of Columbia - indeed, Clean Water Action has its national headquarters in the District of Columbia - but the very claims they seek to advance here in their home forum intentionally complement the work they do in this forum.  Tellingly, the cases Defendants rely on to minimize deference to Plaintiffs' choice of forum are cases in which the plaintiffs had not filed suit in their

home forum, and in fact in several cases the requested transfer was to the forum where the

plaintiffs resided.  E.g. California Farm Bureau Fed'n v. Badgley, No. 02-2328 (RCL) 2005 WL

1532718 (D.D.C. June 29, 2005) (plaintiffs were a California non-profit and a California farmer,

government sought transfer to California); Trout Unlimited v. U.S. Dept. of Agric., 944 F.Supp.

13 (D.D.C. 1996) (neither plaintiff was a resident of District of Columbia); Hawksbill Sea Turtle

v. FEMA, 939 F.Supp. 1 (D.D.C 1996) (plaintiffs resided in the district the government sought

transfer to); Armco Steel Co. v. CSX Corp., 790 F.Supp. 311, 323 (D.D.C. 1991) (Armco did not

do significant business in, nor was it incorporated in, the District of Columbia, and the court

concluded it was "apparent that the District of Columbia is not Armco's 'home turf.'"); Harris v.

Republic Airlines, 699 F.Supp 961, 963, 964 (D.D.C. 1988) (plaintiffs were "foreigners in the

District of Columbia" and "presumption in favor of plaintiff's choice of forum is a much less

significant factor when the plaintiff is a foreigner in the chosen forum."); Citizen Advocates for

Responsible Expansion, Inc. v. Dole, 561 F.Supp. 1238 (D.D.C. 1983) (three of four plaintiffs

resident in forum to which defendants sought transfer).  Cf. Kafack v. Primerica Life Ins. Co.,

934 F.Supp. 3, 6 (D.D.C. 1996) (noting that "deference is mitigated where the plaintiff's choice

of forum has 'no meaningful ties to the controversy and no particular interest in the parties or

subject matter.'").

　　　　Moreover, as discussed more fully below, this case does have connection to the District

of Columbia; it does raise issues of national significance and interest; and the impact from the

outcome of this case will be felt here in the District of Columbia.  More specifically, Plaintiffs

and Defendants are located in the District of Columbia.  The resources at issue in Plaintiffs'

claims, including the loss of the nation's biodiversity and the protection of threatened and

endangered species, are resources of national import and value and issues of national concern.
And the impact of a ruling in this case against Defendants will most certainly have an effect on
the Defendants at their headquarters here in the District when they promulgate guidance to their
field offices.

Even if Defendants were correct, which they are not, deference to the Plaintiffs' choice is
not lost in a case like this, but merely diminished in the balancing test, a point which Defendants
acknowledge. Defs'. Mot. at 9. Courts in the District of Columbia have repeatedly rejected
motions to transfer cases filed in the District of Columbia to the plaintiffs' home forum despite
the governments' characterization of a case as local, regional, and/or unconnected to the District
of Columbia. E.g., Akiachak Native Cmty., – F.Supp.2d at –, 2007 WL 2367754 at *1-3
(rejecting DOI's transfer argument that "there is no connection between this case and the District
of Columbia" where plaintiffs were Indian tribes "located in Alaska" and "the ramifications of
any decision [] will affect principally Alaska"); Vencor Nursing Ctr. v. Shalala, 63 F.Supp.2d 1
(D.D.C. 1999) (RMU) (denying motion to transfer to plaintiffs' home forum in California, the
forum where the impacts of the decision would be felt, stating that though the "court has
transferred actions even though one of the parties was a federal agency located in the District" it
had "generally done so [] when the transferee forum was home to witnesses").[1]

_____

[1] Perhaps because the transfer criteria do not support transfer in this case, Defendants
seek to deny Plaintiffs their choice of forum on the grounds that Plaintiffs' law firm previously
represented a small, thirty five member community group, Citizens for Sanity.Com Inc., in a
challenge to the Corps' CCTC Permit. Defs'. Mot. at 2, 12. Contrary to Defendants'
implications, none of the Plaintiffs now before the Court in this case were plaintiffs in the
Citizens for Sanity.Com, Inc., case. In addition, Defendants fail to note Citizens for Sanity.Com,
Inc., also retained a second environmentally focused law firm based in Florida to litigate their
claims, a law firm absent here.
      Plaintiffs now before the court in this case - Sierra Club, Clean Water Action and Gulf

2.    **The District Of Columbia Is The Most Convenient For The Plaintiffs And The Defendants.**

This factor also strongly weighs in favor of the District of Columbia. Plaintiffs filed in this forum in part because they judged it to be the most convenient, and least expensive, forum in which to coordinate and litigate. Not only do they have major offices or otherwise work regularly in Washington D.C., but again, the subject matter of the litigation complements the work they do from their Washington, D.C., offices. Moreover, Plaintiffs' counsel is located in Washington, D.C., which drastically reduces their litigation costs. Indeed, there is no other venue that would be nearly as convenient to Plaintiffs, nor make as much sense given the national programs they are effecting from their Washington D.C. offices.

Similarly, Defendants United States Army Corps of Engineers, the United States Department of the Interior, and the United States Fish and Wildlife Service are all headquartered in Washington, D.C. Moreover, Defendants' counsel is also located in Washington D.C. See Defs'. Mot. at 13.

It will inescapably be more convenient, and less expensive, for Defendants to litigate in

---

Restoration Network, national and large regional environmental organizations - have brought a fundamentally different case reflecting different strategic decisions. Among other things, they assert claims directly under the Endangered Species Act, claims that are central to their case, and thus Plaintiffs provided the required statutory sixty day notice period prior to bringing suit. Compl. at 46. They are focusing on national issues which reflect their national agendas and the work they do here in the District of Columbia, and they thus chose the District of Columbia in which to file. Notably, Plaintiffs' opposition to the CCTC Permit has been longstanding since as early as 2005, and includes comments to the Corps opposing the project. See generally Compl. at 31-33.

Counsel is unaware of any case where plaintiffs' choice of a law firm, and the cases that the law firm had previously handled - particularly cases handled years ago in unrelated matters - were imputed to plaintiffs. Indeed, the inescapable intent behind Defendants' tactic is to force Plaintiffs in this case to choose between their preferred counsel and their preferred forum.

Washington D.C.  As discussed below, this is an Administrative Record review case where there will not be any evidentiary hearing, where the parties will not put on any witnesses to testify, where the record is already being gathered from a number of states, Defs'. Mot. at 12-13, and where Defendants' counsel is located in Washington.  Defs'. Mot. at 13.  Defendants' single passing reference to their convenience - the assertion that they have "offices in the Middle District of Florida" - fails to identify the role that these offices will play in the litigation, much less how their location in Florida, spread between various forums as they are, makes it any more convenient for Defendants to litigate there.

### 3, 4.    Neither the Convenience Of The Witnesses, Nor The Access To Proof, Favors Transfer As This Is An Administrative Record Review Case.

The convenience of the witnesses does not support the Defendant's Motion to Transfer given that this is an Administrative Record review case.  There is very little, if any, likelihood of witnesses being called to testify.  Defendants acknowledge as much when they state that "it is possible in this case that witnesses will be utilized, if only for limited purposes."  Defs'. Mot. at 12.

Plaintiffs certainly do not expect to present witnesses to testify in a hearing.  Nor do the Defendants identify any witnesses they expect to call to testify, much less where the witnesses reside, what they would testify about, or whether they would testify or provide affidavits.  In this regard Defendants' brief is reduced to pure conjecture, asserting that to "the extent that any witness testimony is required, Defendants anticipate that such witnesses would be located in Florida." Defs'. Mot. at 12-13.  Indeed, Defendants do not even state that they plan to seek an evidentiary hearing.

Similarly, "access to proof" does not support transfer because, again, this is an administrative record review case. The "proof" to be provided consists of the administrative record: documents compiled by the Defendants and filed with the Court, in this case in an electronic format. There is nothing to suggest that the record in this case is voluminous, let alone that it will be more difficult to file it with the court in Washington D.C. than in Florida. And to the extent that Plaintiffs seek to introduce any documents beyond what the agency chooses to include in its formal record, Plaintiffs will not be impacted by the forum.[2]

5.    **Defendants' Choice of Forum Does Not Warrant Transfer: Defendants Have Not Even Identified Their Preferred Forum, And Defendants' Rationales For Transfer Lead To Two Conflicting Forums.**

The Defendants' "preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equipment, Inc., 379 F.Supp.2d 728, 730 (E.D.Pa. 2005). This is particularly true in this case.

Defendants have never even identified what forum they seek to transfer to. To be sure, Defendants have stated they seek transfer to the "Middle District of Florida." Defs'. Mot. at 1. Yet the "Middle District of Florida" is actually five formal Divisions, and thus five forums, spanning over three hundred miles - Fort Myers, Tampa, Orlando, Ocala, and Jacksonville - and Defendants have not identified which division, that is, which forum, they seek transfer to.

Moreover, Defendants' purported rationales for transfer actually point to two different

_____

[2]  To the extent that Defendants assert the record is "currently being assembled" in Florida, the Defendants' Motion makes clear that the documents were not only created in Florida, but also in other states, Defs'. Mot. at 13, and the record presumably could just as conveniently be "assembled" in, or shipped to, Washington D.C., as undoubtedly will be done in any event given Defendants' counsel's offices in the District.

forums under the Defendants' analyses.  According to Defendants, the location where the claims actually arose - the Defendants' offices that issued the challenged decisions - are located in Jacksonville, Florida, in the Jacksonville Division of the Middle District of Florida.  <u>See</u> Defs.' Mot. at 5.[3]  Meanwhile, Defendants assert that the location where the impacts of the decision will be felt - the CCTC project site - is located across and midway down the state in Pasco County, Florida, in the Tampa Division of the Middle District of Florida.  Thus, even Defendants' own reasoning fails to lead to another forum that, considered individually, would be more appropriate, or have greater connections to the case, than Plaintiffs' and Defendants' home forum, the District of Columbia.

### 6, 7.    Neither The Transferee Court's Familiarity With Governing Law, Nor The Relative Congestion Of The Courts Warrants Transfer In This Case.

The controlling laws in the case are all Federal: the Endangered Species Act, the Clean Water Act, the National Environmental Policy Act, and the Administrative Procedure Act.  All federal courts are presumed to be equally familiar with them.  <u>E.g.</u> <u>The Wilderness Soc'y</u>, 104 F.Supp.2d at 16.  There are no state law issues in this case that would justify transfer in this case. <u>Cf.</u> <u>Trout Unlimited</u>, 944 F.Supp. at 19 (transferring case in part because it involved potential state law issues).

In addition, both the Middle District of Florida and the District of Columbia have similar case resolution times.  In 2006, the median time between filing and final termination of a case in the District of Columbia was 9.3 months, while the median time for disposition in the Middle

---

[3]  Other offices of Defendants were also involved in the challenged decisions, Defs'. Mot. at 12-13, though which specific offices, and in which specific states they are located, is information in control of Defendants.

District of Florida was 8.7 months.  See Federal Judicial Caseload Statistic, Table C-5 (2006)

http://www.uscourts.gov/caseload2006/tables/C05Mar06.pdf.

> **8, 9.     Neither The Location Where The Claims Arose, Nor The Local And National Interests In This Litigation, Warrant Transfer.**

As discussed above, Defendants' primary argument is that the case should be transferred to the Middle District of Florida because it supposedly has no connection to the District of Columbia.  According to Defendants, all of the acts that gave rise to the claim occurred in Florida and the impacts of the case will be local.  There are any number of problems with Defendants' arguments.

First, Defendants are highly inconsistent in seeking transfer in a case such as this, despite the fact that in other cases the "local interests," and the lack of a District of Columbia connection, would appear to be much stronger.  In numerous cases that have been filed in the District of Columbia - cases brought by environmental organizations against Defendants for actions taken in their field offices with environmental impacts felt in other regions of the country - Defendants never sought transfer and never raised supposed "local interests."  One can only speculate that Defendants' assertion that the "interests of justice" warrant transfer in this case is no more than a tactical ploy to advance forum shopping.

Just recently, for example, in Theodore Roosevelt Conservation P'ship v. Kempthorne, a conservation organization filed suit in the District of Columbia against the DOI to challenge gas drilling in south central Wyoming, and Defendants did not seek transfer.  1:07-cv-01486-RJL (D.D.C. filed August 17, 2007).  Similarly, in Humane Soc'y of the U.S. v. Kempthorne, animal welfare and conservation organizations brought an action against DOI and the Service

15

challenging the Service's issuance of a permit to take 43 grey wolves in Wisconsin: again, Defendants did not seek transfer.  481 F.Supp. 2d 53 (D.D.C. 2006).  See also, e.g., Utah Marblehead LLC v. Kempthorne, No. Civ. A. 05-008844, 2007 WL 1020822 (D.D.C. March 29, 2007) (challenge to DOI and BLM decision declaring mining permits in Utah null and void, no transfer requested); Michigan Gambling Opposition v. Norton, 477 F.Supp.2d 1 (D.D.C. 2007) (suit challenging Indian casino facilitation in Michigan, no transfer requested); Great Old Broads v. Kempthorne, 452 F.Supp.2d 71 (D.D.C. 2006) (suit against DOI challenging livestock grazing in Arizona and Utah, no transfer requested).

Second, even if Defendants' argument was not simply a tactical ploy, it is substantively flawed because it requires ignoring the transfer factors reviewed above that strongly point towards resolving the claims in the District of Columbia, including in particular, the great deference due to Plaintiffs' choice of their home forum.  Thus, among other things, Defendants argument requires ignoring the Supreme Court's edict of "a strong presumption in favor of the plaintiff's choice of forum," which, to be overcome, requires that the remaining transfer criteria "clearly point" in favor of transfer.  Piper Aircraft Co., 454 U.S. at 255 (emphasis added).

Third, the District of Columbia does in fact have connections to this case.  Plaintiffs and Defendants are located in the District of Columbia.  And though the case will have local interest and impact in Florida, it will also have national interest and impact in the District of Columbia. To be sure, threatened and endangered species will be affected in Florida, and wetlands will be impacted in Florida.  But Defendants' myopic characterization of this case distorts the larger context of the litigation.

The threatened and endangered species affected - the Wood Stork and the Eastern Indigo Snake, for examples, which exist in several states in the Southeast, see Comp. at 26-28 - are of national value, and thus impacts to the species impact the national interest in their preservation. Congress itself specifically "f[ou]nd and declar[ed]" in the ESA that the nation's imperiled "fish, wildlife, and plants are of esthetic, ecological, educational, historical, recreational and scientific value to the Nation," 16 U.S.C. § 1531(a) (emphasis added), and it enacted the ESA with the express purpose of providing both "a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species." Id. at § 1531(b). Similarly, Congress enacted the Clean Water Act with the specific objective of "restor[ing] and maintain[ing] [the] chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and the CWA implementing regulations declare that "[f]rom a national perspective, the degradation or destruction of . . . wetlands is considered to be among the most severe environmental impacts covered by the guidelines." 40 C.F.R. § 230.1(d) (emphasis added).

More specific to this case is that the challenged flaws in the Corps' decisions track the Corps' larger, nationwide failure to require avoidance and minimization of wetlands impacts, and to require effective mitigation of the impacts that are permitted, including impacts to threatened and endangered species. As described in greater detail in the complaint, twenty years of independent reports by institutions like the General Accounting Office and the National Academy of Sciences reflect the national scope of this problem. See e.g., Wetlands Protection: Corps Of Engineers Does Not Have an Effective Approach to Ensure That Compensatory Mitigation Is Occurring, General Accounting Office, September 2005; Compensating for

Wetland Losses under the Clean Water Act, National Academy of Sciences, 2001 at 2 ("[t]he goal of no net loss of wetlands is not being met for wetland functions by the mitigation program . . .."); The Corps of Engineers' Administration of the Section 404 Program, 1988, General Accounting Office at 3 (Corps not adequately considering cumulative impacts, and not requiring practicable alternatives be pursued). See generally, Compl. at 29-31. The problems identified in these reports are national in scope because they stem, in large part, from the policies adopted in the Corps' national headquarters here in the District of Columbia.

Plaintiffs - national and large environmental groups - brought this case in significant part because it typifies the larger concerns raised by the Corps' implementation of section 404. And, contrary to the Defendants' assertions, a decision in this case will, in fact, have an impact in the District of Columbia precisely because it will impact Defendants that are headquartered in the District, and that provide direction and guidance to their various offices throughout the country.

**II.    Environmental and ESA Claims Like Those Asserted In This Case Are Routinely Heard And Resolved In The District Of Columbia, Despite Efforts To Transfer Them On The Same Grounds Raised By Defendants In This Case.**

Courts in the District of Columbia regularly review challenges to agency actions with environmental or other impacts in regions far from the District of Columbia. In so doing courts have repeatedly rebuffed Defendants' efforts to transfer the cases to other districts.

For example, in Akiachak Native Community Judge Rogers rejected DOI's transfer argument based on DOI's assertion that "there is no connection between this case and the District of Columbia," despite the fact that plaintiffs were Indian tribes "located in Alaska," and that "the ramifications of any decision [] will affect principally Alaska," id. at *1, *3, because, in the final analyses, the court found that the balance of the transfer factors favored resolution in the District

of Columbia.  Id.  Similarly, Judge Robertson refused to transfer a case challenging a Corps

project located on the banks of the Mississippi, despite the Corps' arguments that it was "a

quintessentially local controversy" where "the vast majority of the impacts associated with any

decision in this case will have a direct impact on local residents."  Environmental Defense v.

U.S. Army Corps Of Engineers, No. 04cv01575 (D.D.C. filed November 2, 2004) (transfer

motion) (Plfs'. Exh. B); Environmental Defense v. U.S. Army Corps Of Engineers, No.

04cv01575 (D.D.C. filed December 17, 2004) (Order) (Plfs'. Exh C).[4]  And in Fund For Animals

v. Norton Judge Sullivan refused to transfer a case concerning the winter use of Yellowstone

National Park, despite the fact that the transferee court was hearing a related challenge, because

as an Administrative Record case the convenience of the parties did not warrant transfer,

"defendants and their counsel are located in this district," and the court had previously issued

rulings on the subject at hand in earlier cases.  352 F.Supp.2d 1, 2 (D.D.C 2005) (EGS).

     Indeed, courts in the District of Columbia routinely hear, and refuse to transfer,

challenges to agency actions where the most immediate impacts are felt in other areas.  Thus, in

The Wilderness Society, a challenge to oil drilling plans that were developed in Alaska, to drill

on lands located in Alaska, in which several environmental plaintiffs were resident in Alaska,

Judge Roberts refused to transfer the case despite DOI's argument that the case had "no

meaningful connection to the District of Columbia."  104 F.Supp.2d at 13.  And Judges Green,

Kollar-Kottelly, and Friedman have all reached the same result in similar cases involving the

same federal agencies involved in this case.  See Concerned Rosebud Area Citizens v. Babbitt,

---

   [4]  Plaintiffs attach as Plaintiffs' Exhibit B the Corps' transfer motion to provide greater
context because the court's denial of the motion to transfer does not identify the facts, or
arguments, raised by the Corps and rejected by the court.

34 F.Supp.2d 775, 776 (D.D.C. 1999) (rejecting DOI's motion to transfer a NEPA action to

South Dakota because "the issue in this case is solely whether the federal government complied

with federal law, and that is the kind of questions that is routinely and properly answered in the

District and Circuit."); Defenders of Wildlife v. Babbitt, No. 99-206, at 2 (D.D.C. Oct. 8, 1999)

(CKK) (rejecting DOI's motion to transfer ESA case related to the Atlantic Salmon to Maine,

where the species exists, despite "relevance to interests located [in Maine]:" court had "witnessed

ample litigation of a similar nature under the ESA.") (Plfs'. Exh. D); Nat'l Wildlife Fed'n v.

Westphal, No. 98-2700 at 3 (D.D.C Mar. 3, 1999) (EGS) (rejecting motion to transfer challenge

to Corps project located in Mississippi, despite locus of events and likely impacts in Mississippi,

because "this court routinely reviews agency decisions brought under the APA.") (Plfs'. Exh. E);

Friends of the Earth v. U.S. Army Corps of Engineers, No. 98-0801 (D.D.C Aug 10, 1998) (PLF)

(rejecting Corps' motion to transfer CWA permit challenge) (Plfs'. Exh. F).[5]

 Moreover, the cases Defendants rely upon do not support transfer in this case.  For

example, and as discussed above, in the majority of the cases cited, the plaintiffs were not even

residents of the District of Columbia and thus had not filed in their home forum, a fact which

weighed heavily in the courts' decisions.  For example, in denying DOI's transfer request in The

Wilderness Society, Judge Roberts himself distinguished his earlier decision in Hawksbill Sea

Turtle, as a case where "every one of the Plaintiffs, and Plaintiffs' lead counsel . . ., live[d] on St.

Thomas, Virgin Islands' and were either owners or residents of a condominium project located

---

 [5]  Similarly, this district court routinely considers NEPA challenges to activities that
impact the environment elsewhere in the country.  E.g. Grand Canyon Trust v. F.A.A., 290 F.3d
339 (D.C. Cir. 2002) (ruling that the FAA's approval of an airport in Utah violated NEPA); S.
Utah Wilderness Alliance v. Norton, 237 F.Supp.2d 48 (D.D.C. 2002) (ruling that BLM's
approval of oil and gas exploration in Utah violated NEPA).

there."  104 F.Supp.2d at 14 (internal citations omitted).  See also Kent County, Delaware v. Welsh, No. 02-02306 (D.D.C. filed March 6, 2003) (Defs'. Mot. Exh. 4) (plaintiff was a county in Delaware, and transfer was back to plaintiffs' home forum); Miccosoukee Tribe of Indians of Florida v. United States, No. 99-2464 at 1, 5, 9 (D.D.C. filed December 28, 2000) (Defs'. Mot. Exh. 3) (noting that plaintiffs were all from south Florida, "transfer [was] sought to the plaintiffs' resident forum" and, "as in Trout Unlimited and Hawksbill, none of the plaintiffs reside in the District of Columbia."); Trout Unlimited, 944 F.Supp. at 19 (plaintiffs were not resident in the District of Columbia and case raised issues of state law).[6]

## CONCLUSION

In sum, transfer is not warranted in this case.  Plaintiffs and Defendants are located in the District of Columbia, Plaintiffs filed in their home forum, and the convenience of the parties all strongly support maintaining this case in the District.  Indeed, Defendants have not even managed to identify the forum that they believe would be more appropriate.  Although these considerations alone warrant denying the motion to transfer, the interests implicated by this case - national as much as they are local - also compel resolution of this case in the District of Columbia.  Defendants' motion to transfer should be denied.

---

[6] Nor do the other authorities relied upon by Defendants support transfer in this case.  In Nw. Forest Res. Council v. Babbitt, No. 93-1579 JHG, 1994 WL 908586 (D.D.C. Apr. 13, 1994), the court transferred the case to Washington state because the outcome of the case "would preempt" pending claims in the other forum, and, because, due to those pending claims, the other forum was already "extremely knowledgeable about the facts of [the] case and its administrative record."  Id. at * 3 - 4.  And in Sierra Club v Flowers, other factors not present in this case also weighed in favor of transfer, including the location of a voluminous record.  276 F.Supp. 2d 62 (D.D.C. 2003).

Respectfully submitted,


/s/ Joshua Stebbins
Joshua Stebbins
D.C. Bar No. 468542

/s/ Howard Crystal
Howard M. Crystal
D.C. Bar No. 446189

/s/ Eric Glitzenstein
Eric R. Glitzenstein
D.C. Bar No. 358287

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW, Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049
jstebbins@meyerglitz.com
hcrystal@meyerglitz.com

Attorneys for Plaintiffs

Date: October 12, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SIERRA CLUB, et al.,

      Plaintiffs,

      v.

Lt. Gen. Robert L. Van Antwerp, et al.,

      Defendants.

_____

Civ. No. 1:07-cv-01756 (RCL)

**PROPOSED ORDER**

This matter is before the Court on Federal Defendants' Motion to Transfer Venue to the Middle District of Florida ("Motion"). Upon consideration of Defendants' Motion, Plaintiffs' opposition thereto, as well as the entire record in this case, it is, by the Court, this __ day of ____, 2007, hereby

ORDERED that Defendants' Motion to Transfer be denied.

_____

Royce C. Lamberth

United States District Judge

Dated: _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ENVIRONMENTAL DEFENSE, NATIONAL WILDLIFE FEDERATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 1:04cv01575 |
| U.S. ARMY CORPS OF ENGINEERS, et al., | ) ) | (Hon. James Robertson) |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION TO TRANSFER

The Federal Defendants, by and through their undersigned counsel, hereby move this

Court pursuant to 28 U.S.C. § 1404(a), to transfer the litigation to the Federal District Court for

the Eastern District of Missouri. The Federal Defendants hereby submit the accompanying

statement of points and authority in support of its motion to transfer.

Respectfully submitted this 2nd day of November, 2004.

THOMAS L. SANSONETTI
Assistant Attorney General
United States Department of Justice

/s/ Devon M. Lehman
Devon M. Lehman, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
(202) 305-0434 (tel.)

1

Plaintiffs' Exhibit B
Sierra Club v. Van Antwerp
07-cv-1756 (RCL)

(202) 305-0267 (fax)
devon.lehman@usdoj.gov

Sara E. Culley, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.culley@usdoj.gov

Michael D. Rowe, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
(202) 514-3144 (tel.)
(202) 514-8865 (fax)
michael.rowe@usdoj.gov

Attorneys of record.

OF COUNSEL:

James Merritt
Assistant Division Counsel
Mississippi Valley Division, Corps of Engineers
1400 Walnut Street
Vicksburg, MS 39180

David E. Sirmans
District Counsel
Memphis District, Corps of Engineers
167 N. Main Street B-202
Memphis, TN 38103

Elizabeth Pitrolo
Assistant District Counsel
St. Louis District, Corps of Engineers
1222 Spruce STreet
St. Louis, MO 63103

Ann Cornett
Assistant District Counsel
Memphis District, Corps of Engineers
167 N. Main Street B-202
Memphis, TN 38103

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ENVIRONMENTAL DEFENSE, | ) | |
| NATIONAL WILDLIFE FEDERATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Civil No. 1:04cv01575 |
|  | ) | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | ) | (Hon. James Robertson) |
|  | ) | |
| Defendants. | ) | |

## STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO TRANSFER

Seeking to bring a quintessentially local controversy to the nation's capitol, Plaintiffs Environmental Defense and the National Wildlife Federation challenge the construction of the St. Johns Bayou/New Madrid Floodway project ("the Floodway Project"), located on the banks of the Mississippi River in southeastern Missouri. There can be no question that the vast majority of the impacts associated with any decision in this case will have a direct impact on local residents. This case pits local farmers and municipalities against local challengers to the Floodway Project, who purport to "use and enjoy the floodplan and wetland resources in the St. Johns basin and the New Madrid Floodway . . . [for] sightseeing, scientific investigation, birdwatching, and fishing." In contrast, there is no meaningful connection between the controversy and the District of Columbia.

Defendants therefore move, pursuant to 28 U.S.C. § 1404(a), to transfer the litigation to the Federal District Court for the Eastern District of Missouri. This Court should grant

1

Defendants' motion to transfer for two reasons. First, "controversies should be resolved in the locale where they arise." *Trout Unlimited v. USDA*, 944 F. Supp. 13, 19 (D.D.C. 1996). Second, the balance of convenience favors the Eastern District of Missouri. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003) (finding that balance in similar record-review circumstances weighed in favor of transfer).

Relevant documents that will be contained in the administrative record and other pertinent documents are attached to the Defendants' motion.

## THE TRANSFER STATUTE

The federal change of venue provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision broadens the common law grounds for a *forum non conveniens* dismissal, while mitigating any harsh results associated with dismissal pursuant to the traditional rule. *See id.*; *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("The harshest result of the old doctrine of *forum non conveniens*, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer."). Defendants bear the burden of establishing the need for transfer away from Plaintiffs' chosen forum. *Flowers*, 276 F. Supp. 2d at 65, *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 23 (D.D.C. 2002), and the statute explicitly requires that the transfer be to a forum where venue is proper.[1] However, although the statute lists three factors — convenience of the parties,

---

[1]  Because the Court of Appeals is understandably disinclined to disrupt a District Court's decision on a transfer motion except in genuinely extraordinary circumstances, *Ukiah Adventist Hospital v. FTC*, 981 F.2d 543, 546–47 (D.C. Cir. 1993) (noting that interlocutory appeals not permitted from transfer orders); *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (per curiam) (applying the "gross abuse" standard for mandamus with regard to transfer) the

2

convenience of witnesses, and the interest of justice — the Court is specifically *not* limited to

consideration of these factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)

(noting that "courts have not limited their consideration to the three enumerated factors" and

instead have considered "many variants of the private and public interests protected by the

language of § 1404(a)"); *Trout Unlimited*, 944 F. Supp. at 16 (same). Instead, the transfer

provision "vests 'discretion in the district court to adjudicate motions for transfer according to an

individualized, case-by-case consideration of convenience and fairness.'" *Flowers*, 276 F. Supp.

2d at 65 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (citation omitted);

*see also Shawnee Tribe*, 298 F. Supp. 2d at 23.

The courts have developed a substantial set of criteria for evaluating transfer motions,

cataloged by Judge Urbina in *Trout Unlimited* and characterized as "public" and "private"

factors. 944 F. Supp. at 16. The private considerations include the parties' respective choices of

forum, separate consideration of their convenience and that of likely witnesses, whether the

claim arose elsewhere, and "the ease of access to sources of proof." *Id.*; *see also Shawnee Tribe*,

298 F. Supp. 2d at 23–24. Public factors, said to be those of the Court, as distinct from the

litigants before it, include the transferee court's familiarity with the governing law, calendar

congestion concerns, and "the local interest in deciding local controversies at home." *Trout*

*Unlimited*, 944 F. Supp. 2d at 16, *Shawnee Tribe*, 298 F. Supp. 2d at 24.

In practice, and particularly in a record review case like the one presently before the

Court, the inquiry can often be boiled down still further, to what amounts to a contest between

the Plaintiffs' choice of forum — a "private" factor — and the local interest in having cases that

---

discretion in these circumstances is much more than an abstract legal principle. In most instances, the law plainly
contemplates that the initial exercise of sound discretion by the trial court will settle the matter.

3

both arise locally and have impacts felt there — a "public" factor. *See, e.g., TOMAC v. Norton,* 193 F. Supp. 2d 182, 196 (D.D.C. 2002) (noting that convenience of witnesses is a minor issue in administrative cases); *Flowers,* 276 F. Supp. 2d at 68–69 (considering, but minimizing, convenience considerations). There is admittedly some doubt about the level of deference to be paid to a Plaintiff's initial choice. *Compare, e.g., TOMAC,* 193 F. Supp. 2d at 196 (noting that the "[p]laintiff's choice of forum is still entitled to some weight") *and Jackson v. District of Columbia,* 89 F. Supp. 2d 48, 53 (D.D.C. 2000) *vacated in part on other grounds* 254 F.3d 262 (D.C. Cir. 2001) (noting that "plaintiff's choice of a forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant") (citation omitted; alteration in original) *with Flowers,* 276 F. Supp. 2d at 67 (listing both plaintiff's and defendant's choices as "private interest" factors and noting that plaintiff's choice of forum is mitigated as a consideration if it "has no meaningful ties to the controversy and no particular interest in the parties or subject matter" (internal citations omitted)); *Trout Unlimited,* 944 F. Supp. at 17 n. 13 (noting decisions suggesting that plaintiff's choice of forum is not entitled to consideration); *and Comptroller v. Cahhoun,* 626 F. Supp. 137, 140 n.9 (D.D.C. 1985) ("The Court notes that some decisions in this Circuit suggest that the plaintiff's choice of forum is no longer entitled to a great deal of weight . . . particularly when there is an insubstantial factual nexus with the plaintiff's choice" (citations omitted)).

It is clear, however, that whatever weight the Court might accord a plaintiff's choice should be diminished "if a plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Flowers,* 276 F. Supp. 2d at 67 (quoting *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 13 (D.D.C. 2000); *Shawnee Tribe,* 298

F. Supp. 2d at 24 (noting that plaintiff's choice of forum is entitled to some weight but is not a "paramount consideration" when choice of forum is not the plaintiff's home forum); *but see TOMAC*, 193 F. Supp. 2d at 196 (noting that the plaintiff's choice still entitled to "some weight" even when the plaintiff chooses to litigate in a forum other than its home forum).

When a record-review plaintiff chooses a forum with little or no connection to the question presented in the litigation, the "plaintiff's choice" idea runs afoul of the public factor that measures the nexus between the case and its logical environs, variously expressed as "the local interest in deciding local controversies at home," *Flowers,* 276 F. Supp. 2d at 70; *Shawnee Tribe,* 298 F. Supp. 2d at 26, "controversies should be resolved in the locale where they arise," *Trout Unlimited,* 944 F. Supp. at 19, and, in pure statutory terms as "the interest of justice." *Jackson,* 89 F. Supp. 2d at 53. In these situations, the same practical considerations that lead to a depreciated consideration of a plaintiff's choice tend to weigh rather heavily in favor of transferring the case to the locale with which it has the most obvious connections, particularly if those connections are pervasive.

Finally, the courts in the District of Columbia have repeatedly rebuffed the notion that they are the repository of special expertise in federal environmental matters, as the Plaintiff in the *Flowers* litigation was rather pointedly reminded:

> [T]he plaintiffs maintain that there exists 'overwhelming precedent' in this circuit for resolving environmental claims in the District of Columbia notwithstanding the fact that the animals or habitat at issue may be located elsewhere, particularly for 'nationally significant, federally protected resources' . . .
>
> [N]otwithstanding the slew of cases cited by the plaintiffs, precedent in this circuit does not require or even encourage resolution in this forum of [Endangered Species Act] or other environmental claims involving nationally known resources.

276 F. Supp. 2d at 67–68 (citations omitted); *see also Shawnee Tribe,* 298 F. Supp. 2d at 26

("Judge Kessler explained that venue is not appropriate in the District of Columbia, where 'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process.'") (alterations in original) (quoting *DeLoach v. Phillip Morris Co.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000)). As the D.C. Circuit noted:

> Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.

*Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) (overturning district court's finding that venue was proper in the District of Columbia when "all acts and omissions related to [plaintiff's] complaint" occurred in Indiana or Missouri); *see Flowers*, 276 F. Supp. 2d at 67 (granting transfer to Southern District of Florida partly because federal officials in the District of Columbia did not play an "active or significant role" in the case).[2]

## THE FLOODWAY PROJECT

The facts relevant to the motion to transfer are not in dispute. In this case, the Floodway Project is designed to reduce the duration and frequency of backwater flooding from the Mississippi River and the headwaters of the St. Johns Basin. Exhibit 1 [Revised Supplemental Environmental Impact Statement (hereinafter RSEIS) at p. iii]. It has several major components

---

[2] *Compare with Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 126–27 (D.D.C. 2001) (declining to transfer case when officials in the District of Columbia contributed to the challenged decision, noting that "The decision to reissue the permit [in question], along with adjustment to the analysis schedule, was made by officials in Washington D.C. and officials . . . in Montana," and "[t]hree of the meetings addressing the . . . permit occurred at the Forest Service's headquarters in Washington D.C."); *Wilderness Society v. Babbitt*, 104 F. Supp. 2d at 14 (declining transfer based, in part, on Secretary of Interior's active role in the decision).

6

involving channel improvements, pump stations, and closure of a 1,500 foot gap in the Mississippi River project levees. Amended Complaint ¶ 22.

The Floodway Project will impact Scott, Mississippi, and New Madrid counties in Missouri including the communities of New Madrid, Charleston, Sikeston, East Prairie, Pinhook and surrounding areas. Exhibit 1 [RSEIS at p. iii]. These areas are in the flood plain of the Mississippi River; land use in the region is primarily agricultural. Amended Complaint ¶ 16; Exhibit 1 [RSEIS at p. iii].

The Floodway Project is also subject to ongoing litigation before the Missouri Clean Water Commission. Amended Complaint ¶¶ 30–31, 33. The Corps and the Missouri Department of Natural Resources (MDNR) reached a settlement concerning water quality certifications (§§ 401 and 404). Amended Complaint ¶ 31; Exhibit 3 [Settlement Agreement]. Plaintiff Environmental Defense and the Missouri Coalition for the Environment are challenging this settlement. Amended Complaint ¶¶ 30–31, 33; Exhibit 4 [Cover Page of Proceedings Before Missouri Clean Water Commission]. The parties are contesting the case in Jefferson City, Missouri. Amended Complaint ¶¶ 30–31, 33; Exhibit 4 [Cover Page of Proceedings Before Missouri Clean Water Commission].

## ARGUMENT

The transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties

and witnesses, in the interest of justice" a civil action may be transferred "to any other district or

division where it might have been brought." In this case, transfer is proper because the case

could have been brought in the Eastern District of Missouri, and the motion is timely, as the case

is in the earliest stages of litigation. The parties have yet to file dispositive motions, and the

Court has not been required to make any substantive decisions thus far. Accordingly, the case is

at an appropriate stage for transfer. *Trout Unlimited*, 944 F. Supp. at 19 (granting motion to

transfer venue where court had neither dealt with other issues in suit nor familiarized itself with

merits; since case was in earliest stages, there would be no delay associated with transferee court

having to familiarize itself with case); *but see TOMAC*, 193 F. Supp. 2d at 195–96 (motion to

transfer denied, in part, because "defendants have already largely waived their own convenience

concerns by filing the motion to dismiss . . . . The interests of justice, efficiency, and fairness

would not be served by transfer after this Court has invested significant time in the case.").

The question before the Court, then, is whether the balance of factors favors transfer to

the Eastern District of Missouri. In this case, transfer is appropriate because (1) Plaintiffs'

choice of forum is entitled to little, if any, deference, (2) the case has extensive contacts with

Missouri, and (3) the balance of convenience factor weighs in favor of transfer.

## I.    The Court Should Disregard the Plaintiffs' Choice of Forum Because of the Lack of Ties to the District of Columbia.

The Plaintiffs' choice to file the action in the District of Columbia is entitled to little, if

any deference. The subject matter of this litigation is "solely concentrated" in the Eastern

District of Missouri, not the District of Columbia which has no meaningful ties to, or interest in,

the factual and policy issues underlying this litigation. *See Valley Cmty. Pres. Com'n v. Mineta*, 231 F. Supp. 2d 23, 45 (D.D.C. 2002) (granting transfer upon determining "the subject-matter of this lawsuit is solely concentrated" in New Mexico rather the District of Columbia).

The only connections between Plaintiffs' claims and the District of Columbia are that (1) Corps and USDA headquarters are located here, (2) Plaintiff Environmental Defense has a program office here, and (3) Plaintiff National Wildlife Federation's principal place of business is in the District of Columbia. These connections do little to bolster Plaintiffs' choice of forum. The location of the headquarters offices of the federal agencies does not require that the case should be heard in the District of Columbia. *Shawnee Tribe*, 298 F. Supp. 2d at 26. The *Shawnee Tribe* court noted that the "[m]ere involvement on the part of federal agencies, or some federal officials is not determinative." In the case at bar, the majority of the employees assigned to this litigation, as well as those working on the Floodway Project are located in the Corps' Memphis district. The Memphis district includes a portion of southeastern Missouri along the Mississippi River; its offices are located in Memphis, Tennessee. The Record of Decision that forms the basis of Plaintiffs' complaint was signed by the Brigadier General from the Memphis District. Exhibit 5 [Record of Decision at p. 5]. There is no evidence officials at the headquarters offices played a substantive role in the final decision involving the Floodway Project. *Flowers*, 276 F. Supp. 2d at 67–68 ("[T]he parties' presence in the District of Columbia is overshadowed by the lack of evidence that federal officials in this forum played an 'an active or significant role' in the decision.") (citations omitted). Accordingly, "the decisionmaking process, by and large, has not been substantially focused" in the District of Columbia. *Shawnee Tribe*, 298 F. Supp. 2d at 25.

9

Likewise, the location of Plaintiffs' offices does not entitle them to great deference in their choice of forums. "The fact that the parties each have offices in the District of Columbia is not dispositive of the question of deference." *Flowers*, 276 F. Supp. 2d at 67 (D.D.C. 2003) (citations omitted). *See also Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004) (approving transfer despite the fact Plaintiffs had offices in District of Columbia). This principle applies even more fully here because Plaintiffs' standing is premised, in part, on their members who regularly use and enjoy the flood plain and wetland resources in the St Johns Basin and New Madrid floodway.[3] Accordingly, Plaintiffs offer no countervailing connection with this forum great enough to overcome the strong local interest in deciding this matter in Missouri.

In any event, although Plaintiffs may argue that this Court is better equipped to decide their case because of its familiarity with environmental claims, this factor should not play a role in determining what deference to allot the Plaintiffs' choice of forum. *See Flowers*, 276 F. Supp. 2d at 68 ("plaintiffs' choice of forum does not warrant deference simply because the plaintiffs bring an ESA claim involving the nationally known Everglades ecosystem") (citations omitted). Furthermore, parties may not "shop" for favorable precedent within the federal system. *Id.* at 69 n. 4 ("In federal-question cases, transfer is permissible even when the transferee forum is in a circuit that has interpreted a federal law differently that the circuit of the transferor forum . . . [V]enue provisions are designed with geographical convenience in mind, and not to guarantee that the plaintiff will be able to select the law that will govern the case"), 70 n.6 (discounting the

---

[3] The Plaintiffs' Amended Complaint does not specify the identity of its standing witnesses. In the ongoing state litigation, the Plaintiffs furnished declarations from Alan Journet and William Eddleman to establish standing; both are residents of Cape Girardeau, Missouri. Exhibit 6 [Journet and Eddleman Declarations].

10

public interest factor pertaining to expertise in the transferee forum, noting "the plaintiffs base all of their claims on federal environmental law, and courts follow 'the principle that the transferee federal court is competent to decide federal issues correctly'" (citation omitted)); *Jackson,* 89 F. Supp. 2d at 53 n.20 (declining to consider "self-serving arguments regarding 'forum shopping'").

## II.     This Case Contains Overwhelming Missouri Contacts.

The localized nature of the case also supports its transfer to the Eastern District of Missouri.  The Floodway Project is "far more likely to constitute a 'matter of great public concern'" in the Eastern District of Missouri as compared to the District of Columbia.  *DeLoach,* 132 F. Supp. 2d at 24 (approving transfer to North Carolina from District of Columbia in class action suit brought by tobacco growers against tobacco buyers).  The citizens of southeastern Missouri, particularly in the communities of New Madrid, Charleston, Sikeston, East Prairie, and Pinhook have substantial interests in the project.  Exhibit 1 [RSEIS at p. iii, S-4].  Its construction aims to alleviate flooding, which causes crop losses and affects roads, utilities, housing, and businesses. Exhibit 1 [RSEIS at p. iii].

Interest in the Floodway Project can be seen in the numerous articles concerning the project published in local newspapers such as Charleston's *The Enterprise-Courier,*[4] the *St.*

---

[4] Liz Anderson, *Hearing dates set for environmentalists' appeal of St. John's water quality permits,* ENTERPRISE-CHRONICLE, Nov. 6, 2003.  Exhibit 7.

Louis Post Dispatch,[5] the *East Prairie Eagle*[6] and Cape Girardeau's *Southeast Missourian*.[7] It is also demonstrated by the many Missourians who commented on the Draft Revised Supplemental Environmental Impact Statement. *See* Exhibit 11 [Appx. M to the RSEIS, listing comments and responses received on Draft Supplemental Environmental Impact Statement]; Exhibit 12 [Comments received on Draft Supplemental Environmental Impact Statement]. Many local citizens may wish to observe and participate in this matter, and transfer to the Eastern District of Missouri would allow them to do so. *See Hawkbill Sea Turtle v. Federal Emergency Management Agency*, 939 F. Supp. 1, 3 n.5 (D.D.C. 1996) (noting importance of allowing local citizens to attend and observe proceedings).

The importance of the Floodway Project to southeastern Missouri is also demonstrated by the town of East Prairie's involvement in the project. East Prairie receives special funding from the USDA's rural development program to promote economic development and alleviate poverty. Amended Complaint ¶ 22. The town identified flooding as a major impediment to economic development and elected to use its grant funds to sponsor part of the project. *Id*. East Prairie, Missouri is designated local sponsor of the Floodway Project. Exhibit 1 [RSEIS at p. S-2].

Both the citizens of southeastern Missouri and the state of Missouri have strong interests in the case concerning the restoration of Big Oak Tree State Park. This 1,029 acre state park is

---

[5] Ben Hallman, *Testimony backs Corps plan for bootheel*, ST. LOUIS POST DISPATCH, Jan. 25, 2004. Exhibit 8.

[6] *Milestone Ceremony set Friday for St Johns Bayou and New Madrid Flood Project*, EAST PRAIRIE EAGLE, Oct. 9, 2003, at 1, 3. Exhibit 9.

[7] Susan Bryant, letter, *After half-century time to complete St. John's project*, SOUTHEAST MISSOURIAN, Oct. 31, 2003. Exhibit 10.

located near East Prairie. In its settlement agreement with the MDNR, the Corps agreed to restore the park's hydrology and reforest 1800 acres around the park. Exhibit 2 [RSEIS at p. 132]; Exhibit 3 [Settlement Agreement]. The Missouri Clean Water Commission is reviewing a claim concerning the Floodway Project. Exhibit 4 [Cover Page of Proceedings Before Missouri Clean Water Commission]. The state action could potentially be affected by this lawsuit, if the mitigation acreages at issue were deemed arbitrary and capricious. Other parties involved in the state lawsuit share this interest including MDNR of Jefferson City and Appellant Missouri Coalition for the Environment of St. Louis.

Considering the aforementioned, it is clear local issues of primary concern to Missouri citizens dominate this matter.

## III.    The Balance Of Convenience Favors The Transfer.

The "balance of convenience" factor also favors transfer to the Eastern District of Missouri. Defendants anticipate that this controversy will be decided by dispositive motion pursuant to the APA. Upon filing of the administrative record, if supplementation is necessary "the court may require the administrative officials who participated in the decision to give testimony explaining their action." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). These Corps' officials are generally located in the Memphis district offices. *Trout Unlimited*, 944 F. Supp. at 18 (finding the "balance of convenience" supported transfer. The court acknowledged "the convenience of witnesses . . . has less relevance because this case involves judicial review of an administrative decision," but noted any necessary testimony would

13

be more conveniently provided if transfer occurred.).[9] Additionally, if the Defendants decide to

depose individuals used to establish standing in this case, their depositions would be more

readily obtained in Missouri. *See id.*

## CONCLUSION

The Defendants respectfully suggest that it makes no more sense to hear a case involving

a Mississippi flood control project in the District of Columbia than it would to hear a case

emerging from the District's recently publicized lead-in-drinking-water problems in Philadelphia

or New York. Because that is so, and for additional reasons stated herein, the Court should

transfer the case to the Eastern District of Missouri.

Respectfully submitted this 2nd day of November, 2004.

THOMAS L. SANSONETTI
Assistant Attorney General
United States Department of Justice


/s/ Devon M. Lehman
Devon M. Lehman, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
(202) 305-0434 (tel.)
(202) 305-0267 (fax)
devon.lehman@usdoj.gov

---

[9] *Compare with Initiative & Referendum Inst. v. United States Postal Serv.*, 154 F. Supp. 2d 10, 16 (D.D.C. 2001) ("[D]efendant has not shown that litigating this controversy in ten different jurisdictions would promote efficiency or fairness.").

14

Sara E. Culley, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.culley@usdoj.gov

Michael D. Rowe
U.S. Department of Justice, Trial Attorney
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
(202) 514-3144 (tel.)
(202) 514-8865 (fax)
michael.rowe@usdoj.gov

Attorneys of record.

OF COUNSEL:

James Merritt
Assistant Division Counsel
Mississippi Valley Division, Corps of Engineers
1400 Walnut Street
Vicksburg, MS  39180

David E. Sirmans
District Counsel
Memphis District, Corps of Engineers
167 N. Main Street B-202
Memphis, TN  38103

Elizabeth Pitrolo
Assistant District Counsel
St. Louis District, Corps of Engineers
1222 Spruce Street
St. Louis, MO  63103

Ann Cornett
Assistant District Counsel

15

Memphis District, Corps of Engineers
167 N. Main Street B-202
Memphis, TN  38103

**Full docket text:**

ORDER denying motion to transfer case [13] . Signed by Judge James Robertson on December 17, 2004. (MT)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/10/2007 11:05:56 | | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:04-cv-01575-JR |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

Plaintiffs' Exhibit _C_
Sierra Club v. Van Antwerp
07-cv-1756 (RCL)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE. *et. al.*,

    Plaintiffs,

    v.

BRUCE BABBITT, *et. al.*,

    Defendants.

Civil Action No. 99-206  (CKK)

## ORDER

Before the Court are several motions asking this Court (1) to transfer the above-captioned case, *Defenders of Wildlife et. al. v. Babbitt et. al.* ("*Defenders of Wildlife*") to the United States Court for the District of Maine pursuant to 28 U.S.C. § 1404(a); (2) to consolidate this case with Civil Action No. 99-2143, *Trout Unlimited et. al. v. Babbitt, et. al.* ("*Trout Unlimited*"), pursuant to Federal Rule of Civil Procedure 42(a), or, in the alternative, to stay *Trout Unlimited*; and (3) to amend the briefing schedule for *Defenders of Wildlife* as established in the Court's July 6, 1999 Scheduling Order. The Court shall briefly consider each request in turn.

Both the State of Maine, a proposed intervenor, and federal Defendants seek to have these cases transferred to Maine. claiming that, "[o]ther than being the statutory home of the Federal Defendants, this case has no nexus to the District of Columbia." Defs.' Mem. Supp. Mot. Transfer Venue at 2. Defendants remind the Court that, in a case in which the moving party seeks to transfer the case to the forum where the plaintiff resides, the usual deference accorded a plaintiff's choice of forum is diminished where only an attenuated factual nexus connects that

forum to the claims alleged. *See id.* at 6 (citing, *inter alia*, *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991); *Harris v. Republic Airlines*, 699 F. Supp. 961, 963 (D.D.C. 1988); *Citizen Advocates for Responsible Expansion v. Dole*, 561 1238, 1239 (D.D.C. 1983)). Nonetheless, the Court agrees with Plaintiffs that, since this case satisfies *each* of the three factors governing whether venue is appropriate under 28 U.S.C. § 1391 (mandating that venue is appropriate either (1) where any defendant resides; (2) where a substantial portion of the disputed events or omissions occurred; or (3) where any plaintiff resides), the question becomes whether considerations particular to this case militate strongly in favor of transfer. *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1982); *NAACP v. Levi*, 418 F. Supp. 1109, 1113-14 (D.D.C. 1976).

The two cases before this Court both involve actions under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Plaintiffs allege that the Fish and Wildlife Service and the National Marine Fisheries Service have acted in a manner arbitrary, capricious, or contrary to law when they declined to designate the Atlantic Salmon as a "threatened species" under the Endangered Species Act ("ESA"). Over the past decade this jurisdiction has witnessed ample litigation of a similar nature under the ESA. *See, e.g.*, *City of Las Vegas v. Lujan*, 891 F.2d 927 (D.C. Cir. 1989) (listing of Nevada desert tortoise); *Endangered Species Committee v. Babbitt*, 852 F. Supp. 32 (D.D.C. 1994) (listing of California gnatcatcher); *Biodiversity Legal Foundation v. Babbitt*, 943 F. Supp. 23 (D.D.C. 1996) (listing of Alaskan wolf); *Defenders of Wildlife v. Babbitt*, 958 F. Supp. 670 (D.D.C. 1997) (listing of Canada lynx). The Court sees no reason why the cases involving the Atlantic salmon, despite their undisputed relevance to interests located within the jurisdiction of Maine, should not seek resolution in the jurisdiction where the contested

2

administrative actions transpired. Plaintiffs have announced their preference for this forum, and the Court shall not exercise its discretion to disturb that preference.

Second, Defendants in both cases have moved to consolidate the two actions. In both cases, Plaintiffs concerned about the welfare and fate of the Atlantic salmon challenge a single action: the decision not to list the Atlantic Salmon as a "threatened species" under the ESA. *See Defenders of Wildlife* Compl. ¶ 1; *Trout Unlimited* First Amended Compl. ¶ 1. Moreover, the *Trout Unlimited* Plaintiffs specifically amended their original Complaint to eliminate two counts and prayers for relief such that the claims at issue in the two cases are now identical. *See Trout Unlimited* Pls.' Sur Reply at 2. Plaintiffs in both cases champion consolidation. Accordingly, because the two actions involve common questions of law and fact, the Court shall grant Defendants' Motion to Consolidate.[1] *See* Fed. R. Civ. P. 42(a).

Finally, the Court has considered Defendants' Motion to Amend the Briefing Schedule in *Defenders of Wildlife*, as well as Plaintiffs' expressed reservations about delaying adjudication of the claims addressed in both cases. *See* Pl.'s Sur Reply at 2. To the extent that Plaintiffs Trout Unlimited et. al. have amended their Complaint to eliminate any claims that diverge from those in *Defenders of Wildlife*, and to render the two actions identical, the Court sees no need to amend the briefing schedule as Defendants propose. Furthermore, in forwarding their most recent request for a 15-day extension to the extant briefing schedule, Defendants have neglected to comply with District of Columbia Local Civil Rule 7.1(m), Duty of Counsel to Confer on Nondispositive Motions (formerly Local Rule 108(m)). As a consequence of this neglect, the

---

[1] In granting this Motion, the Court necessarily denies the alternative Motion to Stay *Trout Unlimited* [# 38-4].

Court remains unaware of Plaintiffs' position, if any, on this alteration of the briefing schedule. Therefore, the Court shall deny Defendants' Motion to Amend. In light of the consolidation of these two cases and the Court's denial of the Motions to Transfer, however, the Court shall, *sua sponte*, afford all parties one additional week to file their briefs as indicated in the revised schedule below.

Accordingly it is, this ___8___ day of October, 1999, hereby

**ORDERED** that Proposed Intervenor the State of Maine's and federal Defendants' Motions to Transfer Venue [#10 and # 29] are DENIED; and it is further

**ORDERED** that Defendants' Motion to Consolidate [#38-1] *Defenders of Wildlife v. Babbit*, Civil Action No. 99-206, with *Trout Unlimited v. Babbit*, Civil Action No. 99-2143, is GRANTED; and it is further

**ORDERED** that Defendants' Motion to Amend the Scheduling Order of July 6, 1999 [#38-2], and its Motion to Stay *Trout Unlimited* [#38-4] are DENIED; and it is further

**ORDERED** that the duplicative Motions pending in Trout Unlimited [#4-1, #4-2, #4-3, and #4-4]] are rendered MOOT; and it is further

**ORDERED** that both names and civil action numbers shall appear on all future documents filed with this Court; and it is further

**ORDERED** that the parties shall abide by the following revised briefing schedule:

| Event | Date |
|---|---|
| Defendants file Cross-Motion for Summary Judgment/ Opposition to Plaintiffs' Motion for Summary Judgment | October 15, 1999 |
| Plaintiffs file Opposition to Defendants' Cross-Motion for Summary Judgment/ Reply Briefs | November 5, 1999 |
| Defendants file Consolidated Reply | December 7, 1999 |

SO ORDERED.

COLLEEN KOLLAR-KOTELLY
United States District Judge

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, INC.,<br><br>and<br><br>GULF ISLANDS CONSERVANCY, INC.,<br><br>   Plaintiffs,<br><br>  v.<br><br>UNITED STATES ARMY CORPS OF<br> ENGINEERS,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 98-0801 (PLF)

**FILED**

AUG 1 0 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

ORDER

Upon consideration of the government's motion to transfer pursuant to 28

U.S.C. § 1404(a), plaintiff's opposition and the government's reply, the Court in its discretion

concludes that the government's motion should be denied. The government has failed to show

that transfer is appropriate under 28 U.S.C. § 1404(a) in this case, especially in light of the

fact that this Court has previously considered a case involving virtually the same parties, facts

and geographical location, as well as many of the same legal issues. See Gulf Islands

Conservancy v. United States Army Corps of Engineers, Civil Action No. 94-2567 (Friedman,

J.). The totality of the facts and circumstances that led Judge Urbina to order transfer in Trout

Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13 (D.D.C. 1996), are not

present in this case. The circumstances presented in this case are insufficient, either in the

name of convenience to the parties and witnesses or in the interests of justice, to override the

Plaintiffs' Exhibit E
Sierra Club v. Van Antwerp
07-cv-1756 (RCL)

deference normally paid to plaintiff's choice of forum and this Court's familiarity with the matters at issue. See Dooley v. United Technologies Corp., 786 F. Supp. 65, 82 (D.D.C. 1992). Accordingly, it is hereby

ORDERED that the government's Motion to Transfer Venue to the Southern District of Mississippi, Southern Division is DENIED; it is

FURTHER ORDERED that upon review of the file in this case and the file in Civil Action No. 98-1699, and having considered the representations of counsel for plaintiffs and the government in open Court, the Court concludes that this case, Civil Action No. 98-0801, and Civil Action No. 98-1699 present sufficiently similar and related issues of fact and law, warranting consolidation. The Clerk of the Court shall therefore consolidate Civil Action No. 98-0801 and Civil Action No. 98-1699; and it is

FURTHER ORDERED that counsel in both cases shall meet and confer and file a proposed scheduling order by August 31, 1998, which places the consolidated cases on the same track.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7/10/98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR - 3 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

NATIONAL WILDLIFE FEDERATION )
)
             Plaintiff )
)
      v. ) Civil Action No. 98-2700
) (EGS)
)
DR. JOSEPH WESTPHAL, et al., )
)
            Defendants. )

## MEMORANDUM OPINION AND ORDER

### I. Background

Plaintiff the National Wildlife Federation, pursuant to the Administrative Procedure Act 5 U.S.C. § 702 ("APA"), challenges the decision of the Army Corps of Engineers ("Corps") approving the Big Sunflower River Maintenance Project ('the project") in northwestern Mississippi. Plaintiff alleges that the Corps' decision violates the Water Resources Development Acts of 1986 and 1996, 33 U.S.C. § 2201 et seq.; and the National Environmental Policy Act, 42 U.S.C. § 4231 et seq.

Defendants have moved to transfer this case to the United States District Court for the Southern District of Mississippi on the grounds that the project lands are located in Mississippi; the decision was made in Mississippi by Mississippeans; and the documents regarding the decision are located in Mississippi. Plaintiffs oppose defendants' motion on the grounds that the parties' headquarters are located in the District; an APA

Plaintiffs' Exhibit ⌐
Sierra Club v. Van Antwerp
07-cv-1756 (RCL)

challenge to an agency decision is limited to the administrative record; local considerations improperly influenced the Corps' decision; and because the anticipated effects of the project will transcend state boundaries.

Upon consideration of defendants' motion, plaintiff's response, and defendants' reply, it is hereby

ORDERED that defendants' motion is **DENIED**.

### II. Discussion

The parties agree that venue is proper both in this Court and in the United States District Court for the Southern District of Mississippi. Under 28 U.S.C. § 1404(a), the Court in its discretion may transfer a case

> [f]or the convenience of the parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought.

Defendant "bears the burden of establishing that the transfer of this case is proper" because the factors balance in the defendant's favor, *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 5 (D.D.C. 1996), and against the deference generally accorded the plaintiff's choice of forum. *See Armco Steel Corp. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991).

Defendants have failed to persuade the Court that it would be more convenient for this case to be brought in Mississippi nor that the interests of justice weigh in favor of the transfer. Rather, the convenience of the parties dictates that this case should remain here since defendants concede that the Corps'

2

statutory headquarters are located in the District, and the
plaintiff maintains its national office here.  Furthermore, the
convenience of witnesses is not an issue in an APA challenge to
an administrative decision because the Court is limited to the
administrative record in reaching its decision.  Although the
complete administrative record may be located in Mississippi,
plaintiff has already attached the portions of the record it
believes are relevant to its claims to its motion for summary
judgment.

The interests of justice further dictate that this case
should not be transferred.  Central to plaintiff's claims is the
allegation that in making the decision at issue here, the Corps
improperly allowed local considerations to override the national
interest expressed in the statutes plaintiff alleges have been
violated.  Furthermore, although plaintiff concedes that the
physical impacts of the project will primarily be felt in
Mississippi, plaintiff contends that the effects of the project
will transcend state boundaries.  This court routinely reviews
agency decisions sought under the APA.  Furthermore, mindful of
the allegations in the complaint here, this court appears to be
the appropriate neutral forum in which to decide this case.

### III. Conclusion

Neither the convenience of the parties nor the interests of
justice dictate that this case should be transferred to the
United States District Court for the Southern District of
Mississippi.  Accordingly, it is hereby

**ORDERED** that defendants' motion to transfer is **DENIED**; and it is

**FURTHER ORDERED** that defendants' opposition to plaintiff's motion for summary judgment, filed December 1, 1998, shall be filed by no later than **April 1, 1999**; and that plaintiff's reply shall be filed by no later than **April 15, 1999**; and it is

**FURTHER ORDERED** that as this case is an administrative appeal, counsel are relieved of the requirement of filing a Rule 206 report.

Further proceedings will be scheduled as appropriate.

**IT IS SO ORDERED.**

3/3/99
DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

4