UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-1756 (RCL) |
| ) | |
| LT. GEN. ROBERT L. VAN ) | |
| ANTWERP, *et al.* ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Now before the Court comes putative intervenors, Sierra Properties I, LLC, Pasco 54, LTD, Pasco Ranch, Inc., and JG Cypress Creek LLC's ("Intervenors") motion [8] to intervene under Federal Rule of Civil Procedure 24. Plaintiffs do not oppose permissive intervention pursuant to Rule 24(b). Upon consideration of the parties' filings, the applicable law, and the facts of this case, the Court finds that the motion to intervene will be GRANTED.

Upon deciding to grant Intervenors' motion to intervene, this Court next considers defendants' motion [5] to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). After full consideration of the party's filings, the facts, and applicable law, this Court finds that the motion to transfer venue will be DENIED and that this Court shall retain jurisdiction over this matter.

### I.  BACKGROUND

Intervenors are developers of Cypress Creek Town Center ("CCTC"), a regional

shopping mall with supporting commercial establishments, including retail businesses, hotels, restaurants, cinemas, and multi-family residential housing. The development is located on approximately 507 acres of undeveloped land in Pasco County, Florida. (*See* Compl. ¶¶ 56–58.) In May 2005, Sierra Properties applied for a Clean Water Act ("CWA") permit pursuant to CWA section 404. (*See* Intervenors' Mem. at 3.) On October 31, 2005, the Army Corps of Engineers ("Corps") issued a public notice regarding CCTC's proposed filling of approximately 54 acres of wetlands and 10 acres of surface waters with 270,418 cubic yards of fill material. (*See* Compl. ¶ 82.) At that time, a public comment period began wherein extensive comments were made regarding the environmental impact of the CCTC development. (*See id.* ¶¶ 84–87.) Following the comment period, the Corps issued an Environmental Assessment finding that CCTC would not cause unacceptable environmental impacts and issued the requested section 404 permit allowing development of CCTC to proceed. (*See id.* ¶ 88; Environmental Assessment, Ex. A to Intervenors' Mem.)

On October 1, 2007, plaintiffs[1] filed suit in this Court against the government defendants alleging improper issuance of the CWA section 404 permit and an improper concurrence letter issued by the United States Fish and Wildlife Service ("FWS") stating that CCTC would not adversely impact four endangered species, the Wood Stork, the Florida Scrub Jay, the Eastern Indigo Snake, and the Manatee. (*See* Compl. ¶¶ 1, 4.) Plaintiffs' complaint asks this court to

---

[1] Plaintiffs include three non-profit organizations and two private individuals: (1) Sierra Club, a national conservation organization incorporated in California with its headquarters in San Francisco and a legislative office in the District of Columbia; (2) Clean Water Action, a national conservation organization with its headquarters in the District of Columbia; (3) Gulf Restoration Network, an organization dedicated to restoring the Gulf of Mexico and connected ecosystems, with headquarters in New Orleans, Louisiana; (4) Chris Loy, a resident of the Middle District of Florida; and, 5) Richard Sommerville, a resident of the Middle District of Florida. (*See* Compl. ¶¶ 8–29; Pls.' Opp. to Transfer at 3–4.)

find that the section 404 permit was issued in violation of the Endangered Species Act, the CWA, the National Environmental Policy Act, the Administrative Procedure Act, and their accompanying regulations. (*See id.* ¶ 131.) Thus, plaintiffs request that the Corps' permit and the FWS concurrence letter be remanded to accurately assess impacts to threatened species and to compel compliance with CWA requirements for avoidance and minimization of impacts to wetlands and waters. (*See id.* ¶ 5.)

Intervenors filed their motion to intervene on October 16, 2007. Intervenor Sierra Properties is the developer of CCTC and holds the permit in question while each of the other intervenors owns a portion of the CCTC property. (*See* Intervenors' Mem. at 2.) Intervenors seek intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2), and alternatively ask this Court to grant permissive intervention pursuant to Rule 24(b). (*See id.* at 4, 10.) Plaintiffs do not oppose permissive intervention under Rule 24(b) but do object to intervention as a matter of right and state that intervenors have not shown how the interests of the government defendants and the intervenors may diverge. (*See* Pl's Resp. at 4–5.)

Government defendants moved to transfer this matter to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Defendants assert that the matter could have originally been brought in that district, and that the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer. Particularly, the government points to the suit's local Florida impact and state that plaintiffs' choice of forum is entitled to little deference because there is merely an attenuated connection between the controversy and the District of Columbia. (*See* Pls.' Mot. to Transfer at 4–11.) Additionally, both the government and Intervenors note that plaintiffs' counsel filed a substantially similar lawsuit in the Middle District of Florida—*Citizens for Sanity.Com, Inc. v. Antwerp*—on June 26, 2007, and filed a notice of voluntary dismissal the

following day once the case was assigned to Judge Steven D. Merryday. (*See* Compl., Ex. 1 to Mot. to Transfer; Notice of Dismissal, Ex. 2 to Mot. to Transfer.) Intervenors cite that case as evidence of "blatant forum shopping" that weighs in favor of this Court transferring venue to the Middle District of Florida. (*See* Intervenors' Reply at 8.) Plaintiffs respond that this case should not be transferred from the District of Columbia for reasons including: (1) plaintiffs are entitled to a strong presumption in favor of the chosen forum; (2) disposition of this case will be determined on the basis of the administrative record, thus making access to proof and convenience of witnesses irrelevant; and, (3) there is a connection between the subject of this litigation and the District of Columbia. (*See* Pls.' Opp. to Transfer at 7–18.)

## II.   ANALYSIS

### A.   Intervention

#### 1.   Legal Standard

Federal Rule of Civil Procedure 24 sets forth the requirements for intervention as of right and permissive intervention. FED. R. CIV. P. 24. Rule 24(a) provides for intervention as of right, stating that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The rule indicates that an applicant's right to intervene depends on:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action;" (3) whether the "applicant is so situated that the disposition of the action may as a practical matter impair or impede

4

>the applicant's ability to protect that interest;" and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *see also Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003). Additionally, an applicant must demonstrate that it has standing. *Jones*, 348 F.3d at 1017–18.

As an alternative to intervention as of right, Rule 24(b)(2) authorizes permissive intervention for an applicant who timely files a motion when the applicant "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). An applicant for permissive intervention must establish the threshold requirements of: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and, (3) a claim or defense that has a question of law or fact in common with the main action. *Id.*; *see E.E.O.C. v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "[P]ermissive intervention is an inherently discretionary enterprise" and the court enjoys considerable latitude under Rule 24(b). *Nat'l Children's Center*, 146 F.3d at 1046–48; *see Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (stating that "the court enjoys considerable discretion under Rule 24(b)"). In considering a motion for permissive intervention, a court must also determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

### 2. Application of Permissive Intervention Standard

This Court finds that it is appropriate to grant Intervenors' unopposed motion for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).[2]  First, the Court has an independent ground for asserting subject-matter jurisdiction.  *See* 28 U.S.C. § 1331 (setting forth federal question jurisdiction); *see also* 16 U.S.C. § 1540(g) (providing district courts with jurisdiction over citizen suits against "any person" who is alleged to be in violation of the Endangered Species Act).  As defendants, Intervenors would be subject to claims—namely violations of several federal statutes—"arising under" the laws of the United States.  *See* 28 U.S.C. § 1331.  Thus, the Court has subject-matter jurisdiction.

Second, the Court finds that the motion to intervene was timely filed.  Timeliness is determined by all of the circumstances in a case and is determined by the court in the exercise of its sound discretion.  *NAACP v. New York*, 413 U.S. 345, 365–66 (1973).  The timeliness of the motion to intervene is uncontested and the Court finds that the motion, filed within fifteen days after the complaint, was filed timely.

Third, Intervenors have defenses with common questions of law and fact with plaintiffs' claims.  Intervenors are jointly developing CCTC and intervenor Sierra Properties holds the section 404 permit that plaintiffs challenge.  Intervenors have an interest in retaining the permit and in continuing to develop CCTC, and they present defenses to the precise claims brought by plaintiffs.  This showing is sufficient for the purposes of permissive intervention.

Having found that Intervenors satisfy the three threshold requirements for permissive intervention, the Court finds that the rights of the original parties are not unduly prejudiced as

---

[2] Given that plaintiffs do not oppose permissive intervention pursuant to Rule 24(b), this Court will decide intervention under that standard without engaging in Rule 24(a) intervention as a matter of right analysis.  The Court does not intend to state that intervention as a matter of right is unwarranted here, but merely that intervention shall be granted under the permissive standard.

the motion is unopposed.  The Court, in its discretion, will grant Intervenors' motion.

### B. Transfer to the Middle District of Florida

#### 1. Legal Standard

Having decided the issue of intervention, this Court now considers defendants' motion to transfer venue to the Middle District of Florida.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Courts ordinarily accord significant deference to a plaintiff's choice of forum; however, many cases in this Circuit recognize that plaintiffs that neither reside in nor have a substantial connection to their chosen forum, are entitled to less deference.  *DeLoach v. Phillip Morris Cos.*, 132 F. Supp. 2d 22, 24–25 (D.D.C. 2000) (citations omitted).  Under this standard, courts are vested with discretion "to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness."  *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 176–77 (D.D.C. 2007) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988)); *see In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983) (defining courts' discretion as *broad*).  Despite courts' broad discretion, a court may not transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff."  *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), *overruled in part on other grounds by Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

#### 2. Application of Legal Standard

##### a. Suit Could Have Been Brought in Middle District of Florida

As a threshold matter, this Court first finds that plaintiffs could have originally filed suit in the Middle District of Florida because "a substantial part of property that is the subject of the

action is situated" there.  28 U.S.C. § 1391(e)(2).

### b.        Deference to Plaintiffs' Chosen Forum

Next, this Court determines that it will afford great deference to plaintiffs' choice of forum in assessing whether transfer to the Middle District of Florida is appropriate.  Of the five plaintiffs that filed suit in this Court, at least one—Clean Water Action—has its headquarters in the District of Columbia, and is thus clearly a resident of this District.  Consequently, this plaintiff is entitled to a strong presumption in favor of the chosen forum.  *See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (citing *Piper*, 454 U.S. at 255–256 (stating that the plaintiff's choice of forum is "afforded great deference, except where plaintiff is a foreigner in that forum"); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (indicating that the general rule of substantial deference to plaintiff's chosen forum is "particularly true" where plaintiff is a resident of the chosen forum and the facts of the case have a significant connection with the forum).  Regardless of whether the remaining plaintiffs are entitled to a presumption in favor of the chosen forum,[3]

---

[3] Three of the five plaintiffs are not entitled to this Court's deference.  First, Gulf Restoration Network is headquartered in New Orleans, Louisiana, and maintains only one satellite office, which is located in the Middle District of Florida.  The organization's only apparent connection to this District is that it focuses federal efforts in Washington, D.C., with respect to endangered species and water and wetland protection issues.  Secondly, both of the private individual plaintiffs, Chris Loy and Richard Sommerville, reside in the Middle District of Florida near the CCTC site.  Regarding the remaining plaintiff, Sierra Club, this Court does not at this time determine whether it would afford deference to that party's choice of forum in this District.  Sierra Club is headquartered in California, but maintains its principal legislative office in Washington, D.C.  This legislative presence may be sufficient to warrant this Court's deference, but such a finding is not necessary in light of Clean Water Action's undisputed District of Columbia residency.

the Court determines that Clean Water Action's District of Columbia residency is sufficient to tip the balance in favor of this Court's strong presumption in favor of venue in this District.[4]

### c.    Administrative Record Review Case

The Court next assesses factors relating to the interests of (1) the convenience of the parties and witnesses and (2) justice, and finds that they do not favor transfer to the Middle District of Florida at this time. First, the Court notes that disposition of this case will likely be based solely on the administrative record. Contrarily, defendants assert that it may be necessary for the Court to look at limited extra-record evidence—including testimony of Florida agency staff—and that this case may not be suitable for summary judgment based solely on the administrative record. If such testimony in fact becomes necessary, defendants can at that time file another § 1404(a) motion to transfer venue setting forth justifications for transfer including whether the convenience of the parties and witnesses weigh in favor of transfer. However, at this time, the Court considers this case to be one based solely upon the administrative record, thus making the convenience of witnesses and access to proof irrelevant to the issue of transfer of venue.

### d.    Forum Shopping

Defendants and Intervenors claim that plaintiffs' "blatant forum shopping" weighs in

---

[4] Because motions to transfer require an individualized case-by-case analysis wherein courts have discretion, this Court does not rule that one plaintiff's residency will always warrant deference to the chosen forum of multiple plaintiffs. This Court, in consideration of all relevant factors, only finds that such deference is appropriate in this case. The Court could easily conceive of a set of circumstances where relevant factors would weigh against deferring to plaintiffs' selected venue despite one plaintiff's residency in that district. *See, e.g.*, *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239–1240 (D.D.C. 1983) (transferring case to the Northern District of Texas where one of four plaintiffs was headquarted in the District of Columbia but as a whole, plaintiffs had "strong ties to the Northern District of Texas" and "little connection" to the District of Columbia).

favor of ordering transfer to the Middle District of Florida.  *See Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 4 (D.D.C. 2006) ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to a more appropriate forum."); *Schmid Labs, Inc. v. Hartford Accident and Indem. Co.*, 654 F. Supp. 734, 736 (D.D.C. 1986) (transferring case where the court found that plaintiff's forum shopping, when considered with other factors in favor of transfer such as a complete lack of nexus with the District of Columbia, was sufficient to deny plaintiff's chosen forum).  Such a claim concerns this Court; the similar Middle District of Florida lawsuit, *Citizens for Sanity.Com Inc.*, filed by plaintiffs' counsel and voluntarily dismissed the following day upon being assigned to Judge Merryday tends to suggest that plaintiffs—by subsequently filing suit in this Court—may be forum-shopping.[5]  However, this Court is well-aware that for each strategic rationale that motivated plaintiffs to file suit in this District, there is likely an equally compelling strategic basis—aside from the statutory standards of convenience and justice—for defendants and Intervenors' strong desire to ensure that this litigation takes place in the Middle District of Florida.  In this sense, defendants and Intervenors could be forum-shopping just as plaintiffs are allegedly doing so.  This is not to say that this Court endorses the practice of filing suit only to re-file in another district after the original action is assigned to a judge, but rather that in light of this Court's great deference to the plaintiffs' chosen forum and a general lack of other factors that would overcome this deference, the

---

[5] The Middle District of Florida lawsuit is similar to that filed in this Court in several ways:  (1) Plaintiffs' counsel is the same in both suits; (2) the two complaints set forth the same claims; (3) Daniel Remetta, a plaintiff in *Citizens for Sanity.Com*, is a member of the Sierra Club, a plaintiff in this suit (*See* Intervenor's Reply at 7.); and, (4) Richard Sommerville, a plaintiff in this suit, acted as representative for Citizens for Sanity.Com during administrative proceedings regarding CCTC's development permit.  (*See id.*)

plaintiffs' alleged forum shopping will be insufficient to warrant transfer to the Middle District of Florida.

### e.     Local Versus National Scope of Suit

As part of the inquiry into the interest of justice, this Court looks at whether the impact of the lawsuit is local.  A purely local impact in the proposed transferee district would weigh in favor of transfer.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded by statute on other grounds as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994) ("There is a local interest in having localized controversies decided at home."); *Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B.*, 694 F.2d 1289, 1300 (D.C. Cir. 1982) (noting that one fact in the court's analysis is whether the litigation's impact is local to one region).  Yet, the geographical location of specific land at issue in a case is not necessarily an indication that the effect of litigation stemming from the development of that land is restricted to the district where the land lies.  *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13–14 (D.D.C. 2000) (classifying the impact of development of the National Petroleum Reserve planning area in Alaska as not solely local to Alaska but rather the product of "a national policy decision determining the use of scarce national resources"); *see also Concerned Rosebud Area Citizens v. Babbitt*, 34 F. Supp. 2d 775, 776 (D.D.C. 1999) (denying defendants' motion to transfer away from the District of Columbia where the sole issue in a case concerning construction of a South Dakota pork production facility was whether the federal government complied with federal law).  Here, although CCTC is located in the Middle District of Florida and there will undoubtedly be a localized impact on that district's residents from the development, plaintiffs essentially allege that the federal government failed to comply with federal law.  Additionally, these alleged violations are national in scope.  *See* 16 U.S.C.

§ 1531(a) (declaring the *national value* of endangered species); 33 U.S.C. § 1251(a) (noting the *national* scope and goals of the Clean Water Act).  Based on both Congress' express declarations of the national character of the statutes at issue in this case and the fact that the issue here is whether federal agencies complied with federal law, the Court is unable to say that the localized Florida impact of this suit sufficiently weighs in favor of transfer absent other factors that would contribute toward undermining this Court's "great deference" for the plaintiffs' chosen forum.

**III.     CONCLUSION**

For the reasons set forth above, the motion [8] to intervene will be GRANTED. Furthermore, this Court will DENY defendant's motion [5] to transfer venue to the Middle District of Florida.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on December 4, 2007.