UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, and RICHARD SOMMERVILLE, <br><br> Plaintiffs, <br><br> v. <br><br> LT. GEN. ROBERT L. VAN ANTWERP, in his official capacity as Chief of Engineers, U.S. Army Corps of Engineers, DIRK KEMPTHORNE, in his official capacity as Secretary, U.S. Department of the Interior, and H. DALE HALL, in his official capacity as Director, U.S. Fish and Wildlife Service, <br><br> Defendants, <br><br> and <br><br> SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., AND JG CYPRESS CREEK LLC, <br><br> Intervening Defendants. | Civil Action No.  1:07-cv-01756 (RCL) |

## INTERVENING DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER

In accordance with Local Rule 7(b), Intervening Defendants hereby file this

Memorandum in Opposition to Plaintiffs' Emergency Motion for Protective Order.  Based on the

points and authorities set forth herein, Intervening Defendants' respectfully request the Court

deny Plaintiffs' Motion.

## BACKGROUND

On October 1, 2007, four environmental organizations and two individuals filed suit in

this Court, challenging a permit the Corps of Engineers issued for a mixed-use development in Pasco County, Florida, known as Cypress Creek Town Center. Compl. ¶ 1. Plaintiffs allege that in issuing the permit for the project, federal agencies and officials violated the Endangered Species Act, the Clean Water Act (the "CWA"), the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). Compl. ¶ 4.

On December 4, 2007, this Court authorized the permit holder and owners of the project property to intervene as Defendants. D.E. 17. The Federal Defendants and Intervening Defendants have answered the Complaint and have raised various defenses, including Plaintiffs' lack of standing and laches. D.E. 15, 19. In Paragraphs 8 through 30 of the Complaint, Plaintiffs' counsel purports to identify each Plaintiff's unique interests in this case, and how each of Plaintiff's interests have been harmed by the permit and the activities undertaken under that permit since it was issued in May of 2007. The allegations in the Complaint, however, are largely conclusory, and lack the requisite specificity to establish this Court's jurisdiction under Article III of the United States Constitution.

Accordingly, on December 17, 2007, Intervening Defendants propounded Interrogatories focused primarily on the issue of Plaintiffs' standing. Motion at Exs. 5-9. Shortly thereafter, at the Local Rule 16.3 conference, Intervening Defendants informed Plaintiffs' counsel that they wanted to take Plaintiffs' depositions, anticipating, correctly, that Plaintiffs would fail to answer the interrogatories. After Plaintiffs' counsel declined to provide deposition dates for any of the Plaintiffs, on January 4, 2008 Intervening Defendants issued Notices of Deposition to the two individual Plaintiffs as well as corporate representatives of the three organizational Plaintiffs. D.E. 28.

On January 15, 2008, Plaintiffs served their responses to the Interrogatories. They

**WHITE & CASE**LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

refused to answer Intervening Defendants' Interrogatories directed to Sierra Club, Clean Water Action, or Chris Loy. Instead, they objected to every question, and to the extent they did not object, they simply referred to declarations attached to their Summary Judgment Motion. Remarkably, Plaintiffs refused to answer the Interrogatories directed to Gulf Restoration Network and Richard Sommerville by simply asserting that, "Plaintiffs do not intend to, and will not, rely on Mr. Sommerville [or Gulf Restoration Network] to establish standing to pursue this action." Plaintiff Richard Sommerville's and Gulf Restoration Network's Responses and Objections to Permissive Intervenors' First Set of Interrogatories, attached hereto as Exhibits 1 and 2, at 2, 4. Having filed suit and alleged harm as a result of the permit issued for the Cypress Creek Town Center, these Plaintiffs may not evade their responsibility to answer interrogatories and appear for deposition based on the facile suggestion that "Plaintiffs'" will not rely on them to establish standing.

On January 18, 2008, two weeks after the Notices of Deposition were served, Plaintiffs filed their "emergency" motion. As set forth below, none of the arguments advanced by Plaintiffs in their Emergency Motion for Protective Order has any merit. Citations to relevant authorities are noticeably absent from Plaintiffs' motion for the simple reason that there are no authorities that support the extraordinary relief Plaintiffs seek. Intervening Defendants have raised the threshold jurisdictional issue of Plaintiffs' standing in their responsive pleadings. Plaintiffs and their representatives are the only people who possess the knowledge of facts relevant to Plaintiffs' standing. They have refused to answer interrogatories and now seek to prevent their depositions from being taken. Abundant authority exists in this Circuit that supports the discovery and depositions sought by Intervening Defendants. Accordingly, this Court should deny the extraordinary relief sought in Plaintiffs' Emergency Motion for Protective

WHITE & CASE LLP  Wachovia Financial Center, Miami, Florida 33131-2352  Tel+ 1 305 371 2700

Order.

## DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure requires the party moving for a protective order to demonstrate "good cause" for limiting the discovery sought. Fed. R. Civ. P. 26(c). Since a protective order limits discovery, "good cause" is only established when the movant demonstrates that "disclosure would cause a clearly defined and serious injury." *Campbell v. United States Dep't of Justice*, 231 F.Supp. 2d 1, 7 (D.D.C. 2002). The moving party "has a heavy burden of showing extraordinary circumstances based on specific facts that would justify" a protective order. *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001). "A mere showing that discovery may involve inconvenience and expense" is insufficient. *Campbell*, 231 F.Supp. 2d at 7. Moreover, the movant "cannot rely on speculative or conclusory statements" to demonstrate "good cause." *Jennings*, 201 F.R.D. at 275.

"[P]rotective orders prohibiting depositions are 'rarely granted' and then only if the movant shows a 'particular and compelling need' for such an order." *Jennings*, 201 F.R.D. at 275. Indeed, this court has made clear that such "an extraordinary measure which should be resorted to only in rare occasions." *Id.* (citing *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998)). *See also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error"); *Naftchi v. N.Y. Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[It] is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition"); *Frideres v. Schlitz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("Protective orders prohibiting depositions are rarely granted"); *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 96 ("Protective orders which totally prohibit the deposition of

an individual are rarely granted absent extraordinary circumstances"); *Monstinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1998) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit the taking of a deposition")); *Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y. 1984) (courts rarely order that a deposition not be taken); *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 333 (S.D.N.Y. 1976) (request to vacate notice of deposition is unusual and unfavorable and, typically, is denied).  In their Motion, Plaintiffs have failed to meet the standard required to obtain a protective order.  Moreover, each of the arguments advanced in support of their "Emergency" Motion finds no support in, or is rejected by, applicable case law.

**I.     Discovery Is Appropriate in an APA Record Review Case to Determine Whether, Inter Alia, Plaintiffs Have Standing.**

First, Plaintiffs argue that discovery is not permitted in a record review case such as this.[1] Plaintiffs cite not a single statute, rule or case that stands for this proposition.  Indeed, there are numerous record review cases in which depositions of environmental organization plaintiffs have been permitted in order to determine whether they have standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992) (APA review case where Supreme Court relied upon depositions taken after plaintiff submitted standing declarations in concluding that plaintiffs lacked standing);[2] *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 667, 677 (D.C. Cir. 1996) (deposition taken of plaintiffs regarding discovery in APA review case where court found plaintiffs lacked standing); *Nat'l Wildlife Fed'n v. Clark*, No. 84-2272, 1987 WL 19220, at *3 fn. 7 (D.D.C. 1987) (extensive discovery taken, including depositions, in APA review case where

---

[1] It is surprising that Plaintiffs take the hard line position that the Court's review at summary judgment must be limited to the administrative record because Plaintiffs attached and relied upon several non-record documents in support of their Motion for Summary Judgment.  D.E. 32 (Exhibits 1-6).

[2] Surprisingly, Plaintiffs cite to this case in support of their contention that they have standing.  Motion at 7.

**WHITE & CASE** LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

court concluded that plaintiffs lacked standing). When environmental plaintiffs' bona fides, including their standing, has been contested, discovery has routinely been permitted as the foregoing cases note. Plaintiffs have cited not a single authority to the contrary. As the foregoing cases note, APA record review cases routinely include depositions of Plaintiffs addressing, among other things, standing.

## II.    Rule 56(f) Is Inapplicable Here.

Second, Plaintiffs argue that since they filed a Motion for Summary Judgment after the depositions were noticed, Intervening Defendants are relegated to filing counter-affidavits under Rule 56(f), and must seek leave of court in order to take their depositions. But there is no procedural rule, or ruling from the Court, requiring that Intervening Defendants seek leave of the Court prior to noticing depositions. Plaintiffs cite several cases interpreting Rule 56(f) in support of their contention that discovery is inappropriate here,[3] Motion at 7-8, but Intervening Defendants do not seek post-summary judgment discovery pursuant to Rule 56(f). Instead, Intervening Defendants sought discovery ***prior to*** the filing of Plaintiffs' motion for summary judgment. Intervening Defendants served interrogatories on Plaintiff on December 13, 2007, and informed Plaintiffs' counsel at the Local Rule 16.3 conference in December 2007 that they wanted to take Plaintiffs' depositions. Intervening Defendants noticed the depositions of Plaintiffs and their representatives on January 4, 2008, well before Plaintiffs filed their motions for summary judgment. Thus, Rule 56(f) is completely inapplicable.

Again, Plaintiffs cite not a single case that even remotely supports this stunningly novel interpretation of Rule 56(f) when Plaintiffs' standing and bona fides are challenged. None of the cases cited in Plaintiffs' Motion involved an opposing party seeking discovery on Plaintiffs'

---

[3] *See Hotel & Restaurant Employees Union, Local 25 v. Attorney General of the U.S.*, 804 F.2d 1269 (D.C. Cir. 1986); *Exxon Corp. v. FTC*, 663 F.2d 120, 126-27 (D.C. Cir. 1980); *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Dunning v. Quander*, 508 F.3d 8, 9-10 (D.C. Cir. 2007).

**WHITE & CASE** LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

standing.[4] Where Plaintiffs' standing has been raised as an issue, the Defendants, including

Intervening Defendants, must be given an opportunity to test the veracity of the standing

allegations in Plaintiffs' Complaint and the Declarations filed in support of their Motion for

Summary Judgment. Plaintiffs have not cited a single case that has prohibited discovery with

respect to the threshold jurisdictional issue of Plaintiffs' standing.

### III.     Intervening Defendants Have the Right Through Discovery to Test the Veracity of Plaintiffs' Allegations and Declarations Regarding Standing.

Finally, Plaintiffs argue that a protective order should be issued because the declarations

"demonstrate" standing. According to Plaintiffs, Intervening Defendants have no need to take

discovery regarding their alleged interest in this case and alleged harm caused by the permit

because Plaintiffs' standing is "unassailable." Plaintiffs often believe that the allegations in their

complaint "demonstrate" the righteousness of their cause and that their attorney-drafted

declarations are "unassailable." These Plaintiffs, however, are not exempt from discovery

simply because Plaintiffs' counsel believes their averments are beyond peradventure. The

purpose of discovery is to provide an opportunity for a party to test the veracity of the opposing

party's allegations, and in the case of Plaintiffs' standing, to be able to determine whether there

is an adequate and specific factual basis to meet the constitutional requirements for a case and

controversy.[5]

Jurisdictional discovery is particularly appropriate in this case because Plaintiffs'

---

[4] In addition to being irrelevant, Plaintiffs also cited to at least one case that was subsequently vacated by the Court. *See Hotel & Restaurant Employees Union, Local 25 v. Attorney General*, 804 F.2d 1256 (D.C. Cir. 1986), *vacated*, 808 F.2d 847 (D.C. Cir. 1987).

[5] None of the cases that Plaintiffs cite in support of their argument that "it is not unusual for a court to prohibit discovery until resolution of motions for summary judgment, which may demonstrate that the sought after discovery is necessary" involved discovery regarding jurisdictional issues such as standing. *See Abourezk v. Reagan*, 785 F.2d 1043, 1049 (D.C. Cir. 1986) (staying ongoing discovery by plaintiff regarding substantive issues); *Byrd v. E.P.A.*, 174 F.3d 239, 248, n.8 (D.C. Cir. 1999) (on appeal, plaintiff argued that he was entitled to discovery under Rule 56(f) on remand regarding the merits of the EPA's claims); *Exxon Corp. v. FTC*, 663 F.2d 120, 124 (discovery regarding merits of action denied and postponed until dispositive motions filed).

declarations and discovery responses raise serious doubts as to Plaintiffs' standing. It is

Plaintiffs' burden alone to establish their standing by demonstrating, (1) "injury-in-fact," (2) "a

causal connection between the injury and the conduct," and (3) redressability. *Lemon v. Harvey*,

448 F. Supp. 2d 97, 101 (D.D.C. 2006). A plaintiff may not merely allege its standing to sue but

must support its claims with "specific facts." *See Lujan*, 504 U.S. at 561. Plaintiffs' declarations

do not allege with specificity that Plaintiffs have suffered any injury caused by the Corps'

issuance of the Cypress Creek Town Center permit.[6]

    Plaintiffs' conduct to-date, including their wholesale objections to Intervening

Defendants' interrogatories and their refusal to agree to any depositions only confirms the

importance of testing the sufficiency of Plaintiffs' allegations and declarations regarding

standing. In their Complaint, Plaintiffs alleged, albeit in a conclusory fashion, the interests of,

and alleged harm to, Gulf Action Network and Richard Sommerville. *See Compl.* ¶¶ 26-30.

These allegations were made to establish that such Plaintiffs had the requisite interests and injury

to have standing to pursue this litigation. Compl. at ¶¶ 26-30. In their Responses to

Interrogatories, however, Plaintiffs now assert that they are no longer seeking to have standing

determined for these two Plaintiffs. *See* Exhibit 1 at 2; Exhibit 2 at 4 ("Plaintiffs do not intend

to, and will not, rely on Mr. Sommerville [or on Gulf Restoration Network] to establish standing

to pursue this action."). Plaintiffs' counsel apparently believes that by asserting that other

Plaintiffs will be relied upon for standing, Mr. Sommerville and Gulf Restoration Network are

---

[6] Neither Sierra Club nor Clean Water Action avers an injury to any of its members and, thus, both fail to establish any causal connection with the Corps' issuance of the Cypress Creek Town Center permit. *See* Declaration of Sierra Club, attached hereto as Exhibit 3; Declaration of Clean Water Action, attached hereto as Exhibit 4. And while Sierra Club also submitted declarations from two of its individual members, Clay Colson and Plaintiff Chris Loy, which contain *general* averments of injury, neither of these declarations aver any specific facts regarding exactly *how* the Corps' issuance of the Cypress Creek Town Center permit has injured them. *See* Declaration of Clay Colson, attached hereto as Exhibit 5; Declaration of Chris Loy, attached hereto as Exhibit 6. The declaration of Clean Water Action member Thomas Armentano also does not aver that the Corps' permit is a cause of any injury to him. *See* Declaration of Thomas Armentano, attached hereto as Exhibit 7.

**WHITE & CASE** LLP  Wachovia Financial Center, Miami, Florida 33131-2352  Tel+ 1 305 371 2700

thereby exempt from complying with the rules of discovery.  Far from obviating the need for

discovery from these named Plaintiffs, the apparent willingness of Mr. Sommerville and Gulf

Restoration Network to disown the allegations in the Complaint only confirms the importance of

taking the depositions of these two individuals.

## CONCLUSION

For the foregoing reasons, Intervening Defendants respectfully request that the Court

deny Plaintiffs' Emergency Motion to Compel.  Intervening Defendants are entitled to test the

veracity of Plaintiff's statements in their Complaint regarding standing, their responses to the

interrogatories, and the declarations they have attached to their Motion for Summary Judgment.[7]

Depositions are routinely allowed in APA review cases when jurisdictional issues such as

standing are at issue.  Although Plaintiffs have attempted to re-characterize the discovery sought

in this case as inappropriate under *56(f)* because Plaintiffs have filed their Motion for Summary

Judgment, the Court should not be fooled by this argument.  Not only were the discovery

requests sought in this case served well before Plaintiffs' filed their Motion for Summary

Judgment, but Plaintiffs also could not point to a single case where Rule 56(f) has been used to

prevent discovery of standing.  Intervening Defendants have the right to test Plaintiffs'

statements as to standing – particularly in light of Plaintiffs' sudden decision to concede that two

of the Plaintiffs no longer have standing.  Accordingly, this Court should deny Plaintiffs'

Emergency Motion for Protective Order.

---

[7] Plaintiffs' state in their Motion that the Court's expedited schedule "did not contemplate a period for discovery."
While it may be true that Plaintiffs never contemplated complying with Intervening Defendants' discovery requests,
the Rule 16.3 Report filed by the parties specifically referred to then-pending interrogatories, and the Federal
Defendants "reserve[d] the right to have counsel participate in any depositions that may be noticed by Intervening
Defendants." D.E. 26 at 4.  Intervening Defendants asserted they were "entitled to discovery from Plaintiffs that may
lead to relevant evidence on issues and defenses, including, inter alia, Plaintiffs' standing." D.E. 26 at 4.  There is
nothing in the Court's Scheduling Order that curtails any party's right to take discovery.

**WHITE & CASE** LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

Respectfully submitted,

_____/s/_____
Counsel for Intervening Defendants

Douglas M. Halsey (Florida Bar No. 288586)
T. Neal McAliley (Florida Bar No. 172091)
Angela D. Daker (Florida Bar No. 681571)
White & Case LLP
Wachovia Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131-2352
(305) 371-2700 (telephone)
(305) 358-5744 (facsimile)

Eric Grannon (D.C. Bar No. 473778)
Erin M. Everitt (D.C. Bar No. 497407)
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)

**WHITE & CASE**LLP  Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

## CERTIFICATE OF SERVICE

I hereby certify that on the __22nd__ of January, 2008, I caused the foregoing to be served

via facsimile and U.S. mail upon the following:

Joshua R. Stebbins
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, NW
Suite 700
Washington, DC  20009-1056
(202) 588-5206
Fax:(202) 588-5049
Email: jstebbins@meyerglitz.com

*Counsel for Plaintiffs Sierra Club, Clean Water
Action, Gulf Restoration Network, Chris Loy
and Richard Sommerville*

Mark Arthur Brown
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resource Division
Wildlife and Marine Resources Section
P.O. Box 7369
Ben Franklin Station
Washington, DC  20044-7369
(202) 305-0204
Fax: (202) 514-0097
Email: mark.brown@usdoj.gov

*Counsel for Federal Defendants Robert Van
Antwerp, Dirk Kempthorne and Dale Hall*

Kristofer Swanson
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resource Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0248
Fax: (202) 305-0274
Email: kristofer.swanson@usdoj.gov

*Counsel for Federal Defendants Robert Van
Antwerp, Dirk Kempthorne and Dale Hall*

_____/s/_____
Douglas M. Halsey

**WHITE & CASE** LLP   Wachovia Financial Center, Miami, Florida 33131-2352   Tel+ 1 305 371 2700

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SIERRA PROPERTIES I, LLC, et al, | ) |
| | ) |
| Intervening Defendants. | ) |

**PLAINTIFF RICHARD SOMMERVILLE'S RESPONSES AND OBJECTIONS TO
PERMISSIVE INTERVENORS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Richard Sommerville ("Mr.

Sommerville") hereby responds to the Permissive Intervenors' First Set of Interrogatories as

follows:

**DEFINITIONS**

1.     As used herein, "not relevant" means not relevant to the subject matter of this action and

not reasonably calculated to lead to the discovery of admissible evidence.

**GENERAL OBJECTIONS**

1.     Mr. Sommerville objects to discovery in this agency action litigation, which will be

resolved based on the agencies' Administrative Records.  The discovery rules do not generally

apply to such cases.  See Fed. R. Civ. P. 26(a)(1)(B)(i).

2.     Mr. Sommerville further objects to these Interrogatories because they have not been

**CASE NO. 1:07-cv-01756 (RCL)**

**INTERVENING DEFENDANTS'
<u>EXHIBIT 1</u>**

authorized by the district court, which approved plaintiffs' and the federal defendants' proposed Scheduling Order, which did not provide a period for discovery, rather than the Permissive Intervenor's proposed schedule.

3.      Mr. Sommerville further objects to Permissive Intervenors' right to propound these Interrogatories in light of their limited participation in this suit as permissive intervenors. See Order of Dec. 4, 2007 (granting only permissive intervention). In seeking Permissive Intervention, Permissive Intervenors represented that their participation in this action would not prejudice plaintiffs. See Intervention Memorandum at 11 (Oct. 16, 2007). Requiring plaintiffs to respond to unnecessary discovery is precisely the kind of prejudice that Permissive Intervenors represented would not occur should they be permitted to participate in this action.

4.      Mr. Sommerville further objects to Permissive Intervenors' Interrogatories to Mr. Sommerville as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Plaintiffs do not intend to, and will not, rely on Mr. Sommerville to establish standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

5.      Mr. Sommerville objects to each Interrogatory to the extent that they are vague, ambiguous, overly broad, unduly burdensome, or seek irrelevant information.

6.      Mr. Sommerville also objects to each Interrogatory to the extent that they seek to impose any obligations beyond the requirements of the Federal Rules of Civil Procedure and the local rules of court.

7.      Mr. Sommerville objects to each Definition and each Interrogatory to the extent that they seek information protected against disclosure by the attorney-client privilege, the work-product doctrine, or any other privilege, immunity, doctrine, or rule of confidentiality.

8.      Mr. Sommerville does not waive any of the foregoing objections in responding to these Interrogatories, or concede by responding that the information sought or produced is relevant to the subject matter of this action or is calculated to lead to the discovery of admissible evidence.

9.      Mr. Sommerville expressly reserves the right to object to further discovery into the subject matter of these Interrogatories and the right to object to the introduction into evidence of any of the information provided in response to the Interrogatories.

10.     Mr. Sommerville reserves the right to amend or supplement these responses and objections to the Interrogatories if additional or different responsive information is discovered during discovery or otherwise hereafter.

11.     These general objections are to be considered continuing objections and responses to the specific Interrogatories that follow, even if not referred to in the objection and response to a specific Interrogatory. These objections and responses given herein shall not be construed to waive or preclude any objections that may be asserted at a later time.

## OBJECTIONS TO DEFINITIONS

1.      Mr. Sommerville objects to the definitions of the following terms to the extent they seek to impose discovery obligations exceeding those required by the applicable rules of civil procedure, and on the grounds that they are overly broad, unduly burdensome, oppressive, vexatious, vague, ambiguous, invades personal privacy rights and seeks overly broad, confidential and/or irrelevant information: "describe," "explain," "document," "documents,"

3

"identify," "refer," "referring", "relating to" or "relate to," "any," "all", and "each," and "every."

## RESPONSES AND SPECIFIC OBJECTIONS

Mr. Sommerville incorporates herein by reference his General Objections with respect to each Interrogatory to which those objections apply, as though fully set forth therein, and no specific objection or response is intended or shall be construed to waive any of those objections. Subject to and without waiving those objections, Mr. Sommerville answers Permissive Intervenors' Interrogatories as follows:

**Interrogatory No. 1:**
What is the name and address of the person answering these interrogatories and, if applicable, the person's office, position, or relationship with Plaintiff Richard Sommerville?

**Objection and Response to Interrogatory No. 1:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 2:**
State how long Richard Sommerville has resided in Hillsborough and/or Pasco County and every address in Hillsborough and/or Pasco County at which he has resided.

**Objection and Response to Interrogatory No. 2:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr.

4

Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 3:**
How long has Richard Sommerville resided at his current address, and how many miles is that address from the Cypress Creek Town Center project site?

**Objection and Response to Interrogatory No. 3:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 4:**
State whether Richard Sommerville has ever been to the permitted property in the past five years, and if so, also state 1) on how many occasions he has been to the permitted property in the past five years, 2) the exact geographic location he went to on the permitted property, 3) the date(s) upon which he was on the permitted property, and 4) what activity he engaged in on the permitted property.

**Objection and Response to Interrogatory No. 4:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 5:**
With regard to the allegations in Paragraph 28 of the Complaint that Richard Sommerville has canoed Cypress Creek, state 1) the dates upon which he canoed Cypress Creek, including the date of his last canoe trip on Cypress Creek, referenced in Paragraph 28 of the Complaint, and 2) the precise geographic location of each such canoe trip.

**Objection and Response to Interrogatory No. 5:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 6:**
With regard to the allegation in Paragraph 29 that Richard Sommerville enjoys seeing rare and/or listed species such as the Wood Stork, the Eastern Indigo Snake, the Florida Scrub Jay, and the gopher tortoise, state 1) the exact geographic locations in the Hillsborough River and Cypress Creek basins where he has observed such species, 2) on how many occasions he had made such observations, 3) the date(s) upon which he made each such observation, and 4) which species he observed on each such occasion.

**Objection and Response to Interrogatory No. 6:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

**Interrogatory No. 7:**
With regard to the allegation in Paragraphs 29 and 30 of the Complaint that Richard Sommerville has an interest in enjoying flora and fauna in the Hillsborough River and geographic location where he engaged in such activity, and 3) on how many occasions he engaged in such activity.

**Objection and Response to Interrogatory No. 7:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 8:**
State how Richard Sommerville will be harmed by issuance of the Cypress Creek Town Center Permit.

**Objection and Response to Interrogatory No. 8:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing").

Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

**Interrogatory No. 9:**
State the date upon which Richard Sommerville first learned of the Cypress Creek Town Center project and the manner in which Richard Sommerville first learned of the Cypress Creek Town Center project.

**Objection and Response to Interrogatory No. 9:**

Mr. Sommerville objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Mr. Sommerville does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Mr. Sommerville.

_____

Joshua Stebbins
D.C. Bar No. 468542

Howard M. Crystal
D.C. Bar No. 446189

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW, Suite 700
Washington, D.C. 20009
(202) 588-5206
Attorneys for Plaintiffs

January 15, 2008

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | )   Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) |
| | ) |
|     Defendants, | ) |
| | ) |
|     and | ) |
| | ) |
| SIERRA PROPERTIES I, LLC, et al, | ) |
| | ) |
|     Intervening Defendants. | ) |

## CERTIFICATE OF SERVICE

I, Joshua Stebbins, hereby certify that on this 15th day of January, 2008, I served the forgoing Responses and Objections to the First Set of Interrogatories of Permissive Intervenors on behalf of Chris Loy, Richard Sommerville, Gulf Restoration Network, Clean Water Action and Sierra Club on the following counsel for defendants and intervening defendants by first class, United States mail, postage prepaid, and via electronic transmission:

Mark A. Brown
Senior Trial Attorney
Wildlife & Marine Resources Section
U.S. Dept. of Justice
P.O. Box. 7369
Washington DC 20044-7369
Street Address:
601 D Street, N.W. Room 3034
Washington, D.C. 20004

Douglas M. Halsey (Florida Bar No. 288586)

T. Neal McAliley (Florida Bar No. 172091)
Angela D. Daker (Florida Bar No. 681571)
White & Case LLP
Wachovia Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida  33131-2352
(305) 371-2700 (telephone)
(305) 358-5744 (facsimile)

Joshua Stebbins

Dated: January 15, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 1:07-cv-01756 (RCL) |
| ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA PROPERTIES I, LLC, et al, ) | |
| ) | |
| Intervening Defendants. ) | |

**PLAINTIFF GULF RESTORATION NETWORK'S RESPONSES AND OBJECTIONS TO PERMISSIVE INTERVENORS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Gulf Restoration Network

hereby responds to the Permissive Intervenors' First Set of Interrogatories as follows:

**DEFINITIONS**

1.    As used herein, "not relevant" means not relevant to the subject matter of this action and

not reasonably calculated to lead to the discovery of admissible evidence.

**GENERAL OBJECTIONS**

1.    Gulf Restoration Network objects to discovery in this agency action litigation, which will

be resolved based on the agencies' Administrative Records.  The discovery rules do not generally

apply to such cases.  See Fed. R. Civ. P. 26(a)(1)(B)(i).

2.    Gulf Restoration Network further objects to these Interrogatories because they have not

been authorized by the district court, which approved plaintiffs' and the federal defendants'

**CASE NO. 1:07-cv-01756 (RCL)**

**INTERVENING DEFENDANTS'
EXHIBIT 2**

proposed Scheduling Order, which did not provide a period for discovery, rather than the Permissive Intervenor's proposed schedule.

3.      Gulf Restoration Network further objects to Permissive Intervenors' right to propound these Interrogatories in light of their limited participation in this suit as permissive intervenors. See Order of Dec. 4, 2007 (granting only permissive intervention). In seeking Permissive Intervention, Permissive Intervenors represented that their participation in this action would not prejudice plaintiffs. See Intervention Memorandum at 11 (Oct. 16, 2007). Requiring plaintiffs to respond to unnecessary discovery is precisely the kind of prejudice that Permissive Intervenors represented would not occur should they be permitted to participate in this action.

4.      Gulf Restoration Network further objects to Permissive Intervenors' Interrogatories to Gulf Restoration Network as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Plaintiffs do not intend to, and will not, rely on Gulf Restoration Network to establish standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

5.      Gulf Restoration Network objects to each Interrogatory to the extent that they are vague, ambiguous, overly broad, unduly burdensome, or seek irrelevant information.

6.      Gulf Restoration Network also objects to each Interrogatory to the extent that they seek to impose any obligations beyond the requirements of the Federal Rules of Civil Procedure and the local rules of court.

7.  Gulf Restoration Network objects to each Definition and each Interrogatory to the extent that they seek information protected against disclosure by the attorney-client privilege, the work-product doctrine, or any other privilege, immunity, doctrine, or rule of confidentiality.

8.  Gulf Restoration Network does not waive any of the foregoing objections in responding to these Interrogatories, or concede by responding that the information sought or produced is relevant to the subject matter of this action or is calculated to lead to the discovery of admissible evidence.

9.  Gulf Restoration Network expressly reserves the right to object to further discovery into the subject matter of these Interrogatories and the right to object to the introduction into evidence of any of the information provided in response to the Interrogatories.

10.  Gulf Restoration Network reserves the right to amend or supplement these responses and objections to the Interrogatories if additional or different responsive information is discovered during discovery or otherwise hereafter.

11.  These general objections are to be considered continuing objections and responses to the specific Interrogatories that follow, even if not referred to in the objection and response to a specific Interrogatory. These objections and responses given herein shall not be construed to waive or preclude any objections that may be asserted at a later time.

## OBJECTIONS TO DEFINITIONS

1.  Gulf Restoration Network objects to the definitions of the following terms to the extent they seek to impose discovery obligations exceeding those required by the applicable rules of civil procedure, and on the grounds that they are overly broad, unduly burdensome, oppressive, vexatious, vague, ambiguous, invades personal privacy rights and seeks overly broad,

confidential and/or irrelevant information: "describe," "explain," "document," "documents,"

"identify," "refer," "referring", "relating to" or "relate to," "any," "all", and "each," and

"every."

## RESPONSES AND SPECIFIC OBJECTIONS

Gulf Restoration Network incorporates herein by reference its General Objections with

respect to each Interrogatory to which those objections apply, as though fully set forth therein,

and no specific objection or response is intended or shall be construed to waive any of those

objections. Subject to and without waiving those objections, Gulf Restoration Network answers

Permissive Intervenors' Interrogatories as follows:

**Interrogatory No. 1:**
What is the name and address of the person answering these interrogatories and, if applicable, the
person's office, position, or relationship with Plaintiff Gulf Restoration Network?

**Objection and Response to Interrogatory No. 1:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 2:**
Identify the Gulf Restoration Network member(s) with the greatest personal knowledge of the
allegations in the Complaint, and the work address, work telephone number, home address, and
home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 2:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 3:**
Does Gulf Restoration Network have a chapter in Hillsborough and/or Pasco County and, if so, state the address of each such chapter?

**Objection and Response to Interrogatory No. 3:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 4:**
How many Gulf Restoration Network members live in Hillsborough and Pasco Counties?

**Objection and Response to Interrogatory No. 4:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 5:**
Identify each Gulf Restoration Network member who lives in Hillsborough and Pasco Counties, and state the work address, work telephone number, home address, and home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 5:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 6:**
Identify each Gulf Restoration Network member who has been to the permitted property in the past five years, and for each individual identified state 1) on how many occasions the individual has been to the permitted property in the past five years, 2) the exact geographic location the individual went to on the permitted property, 3) the date(s) upon which the individual was on the permitted property, 4) what activity the individual engaged in on the permitted property, and 5) the work address, work telephone number, home address, and home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 6:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 7:**
Identify each Gulf Restoration Network member who has observed the Wood Stork, the Florida
Scrub Jay, or the Eastern Indigo Snake on the permitted property and for each individual
identified state 1) which species the individual observed, 2) on how many occasions the
individual has observed the species, 3) the date(s) upon which the individual observed the
species, 4) the exact location on the permitted property where the individual observed the
species, and 5) the work address, work telephone number, home address, and home telephone
number for each individual identified.

**Objection and Response to Interrogatory No. 7:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 8:**
Identify each Gulf Restoration Network member who has observed, studied, or otherwise
enjoyed the Wood Stork, the Florida Scrub Jay, or the Eastern Indigo Snake, in Cypress Creek or
the wetlands and uplands in its basin, as alleged in Paragraph 20 of the Complaint, and state 1)
which species the individual observed, studied, or otherwise enjoyed, 2) whether the individual
observed, studied, or otherwise enjoyed the species and, if the individual otherwise enjoyed the
species, in what way the individual otherwise enjoyed the species, 3) the exact geographic
location at which the individual observed, studied, or otherwise enjoyed the species, 4) on how
many occasions the individual observed, studied, or otherwise enjoyed the species, 5) the date(s)
upon which the individual observed, studied, or otherwise enjoyed the species, and 6) the work
address, work telephone number, home address, and home telephone number for each individual
identified.

**Objection and Response to Interrogatory No. 8:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 9:**
Identify each Gulf Restoration Network member who has recreated in the Hillsborough River watershed, as alleged in Paragraph 17 of the Complaint, and, for each individual identified, state 1) what recreational activity the individual engaged in, 2) the date(s) upon which the individual engaged in the activity, 3) the precise geographic location where the individual engaged in the activity, 4) on how many occasions the individual engaged in the activity, and 5) the work address, work telephone number, home address, and home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 9:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 10:**
With regard to Joseph Murphy, state 1) the dates upon which he has canoed in the Hillsborough River watershed, as alleged in Paragraph 17 of the Complaint, 2) the precise geographic location where he canoed in the Hillsborough River watershed, including each tributary he has canoed in, and 3) his work address, work telephone number, home address, and home telephone number.

8

**Objection and Response to Interrogatory No. 10:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 11:**
Identify each Gulf Restoration Network member who has hiked through the conservation lands in
the Hillsborough River and Cypress Creek watersheds, as alleged in paragraph 17 of the
Complaint, and state 1) whether the individual hiked through conservation areas in the
Hillsborough River or the Cypress Creek watersheds or both, 2) the date(s) upon which the
individual engaged in such activity, 3) the precise geographic location where the individual
engaged in such activity, 4) on how many occasions the individual engaged in such activity, and
5) the work address, work telephone number, home address, and home telephone number for
each individual identified.

**Objection and Response to Interrogatory No. 11:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 12:**
Identify each Gulf Restoration Network member who has observed and/or looked for flora and
fauna in the Hillsborough River area, as alleged in paragraph 18 of the Complaint, and state 1)
whether the individual observed or looked for flora and fauna, 2) the date(s) upon which the
individual engaged in such activity, 3) the precise geographic location where the individual

engaged in such activity, 4) on how many occasions the individual engaged in such activity, and 5) the work address, work telephone number, home address, and home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 12:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 13:**
Identify each Gulf Restoration Network member who will be harmed by the issuance of the Cypress Creek Town Center Permit, and state how each individual identified will be harmed, and the work address, work telephone number, home address, and home telephone number for each individual identified.

**Objection and Response to Interrogatory No. 13:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and vexatious and unlikely to lead to the discovery of information relevant to the resolution of this litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any information concerning Gulf Restoration Network.

**Interrogatory No. 14:**
State the date upon which Gulf Restoration Network first learned of the Cypress Creek Town Center project and the manner in which Gulf Restoration Network first learned of the Cypress Creek Town Center project.

**Objection and Response to Interrogatory No. 14:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

**Interrogatory No. 15:**
Identify the individual Gulf Restoration Network member or staff person who first learned of the
Cypress Creek Town Center project, and state 1) whether the individual is a member or a staff
person, 2) how the individual learned of the Cypress Creek Town Center project, 3) if the
individual is a member, when, and the manner in which, the individual communicated his or her
knowledge of the Cypress Creek Town Center project to Gulf Restoration Network staff, and 4)
the work address, work telephone number, home address, and home telephone number for the
individual.

**Objection and Response to Interrogatory No. 15:**

Gulf Restoration Network objects to this Interrogatory as unduly burdensome and

vexatious and unlikely to lead to the discovery of information relevant to the resolution of this

litigation. Gulf Restoration Network does not seek to be found to have standing to pursue this

action. See, e.g., Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007)("Only one of the petitioners needs

to have standing"). Accordingly, Permissive Intervenors have no reason to obtain any

information concerning Gulf Restoration Network.

Joshua Stebbins
D.C. Bar No. 468542

Howard M. Crystal
D.C. Bar No. 446189

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW, Suite 700
Washington, D.C. 20009
(202) 588-5206

Attorneys for Plaintiffs

January 15, 2008

12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB, et al.,              )

    Plaintiffs,         )

    v.             )    Civ. No. 1:07-cv-01756 (RCL)

LT. GEN. ROBERT L. VAN ANTWERP, et al.,  )    DECLARATION IN SUPPORT OF
             )    STANDING OF SIERRA CLUB

    Defendants,     )

    and           )

SIERRA PROPERTIES, et al.,      )

    Intervening Defendants    )

## DECLARATION OF SIERRA CLUB

I, Athan Manuel, do hereby declare s follows:

    1)    I am the Director of Lands Protection for Sierra Club, and my office is located at

        408 C St. NE, Washington, DC 20002.

    2)    The Sierra Club is a national nonprofit organization of over 750,000 members.  It

        is organized into chapters, which to some extent correlate to individual states or

        regions, and within those chapters there may be groups.  The Sierra Club, Florida

        Chapter, has a Tampa Bay Group, which has 1,931 members, and a Nature Coast

        Group, which has 1,122 members.  Within Pasco County, there are 560 members;

        Hillsborough County has 1,958 members, and Pinellas has 2,576.  These numbers

        are approximate because membership changes over time, though they were

        accurate as of January 8, 2008.

**CASE NO. 1:07-cv-01756 (RCL)**

**INTERVENING DEFENDANTS'**
**EXHIBIT 3**

3)    The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places

of the earth; to practicing and promoting the responsible use of the earth's

ecosystems and resources; to educating and enlisting humanity to protect and

restore the quality of the natural and human environment; and to using all lawful

means to carry out these objectives.

4)    To achieve these ends Sierra Club, including for example the Tampa Bay Group,

organizes outings including hikes, canoe trips and bike trips for its members.

These trips are organized because Sierra Club members enjoy exploring and

observing their natural environment, including in particular the natural

environment in which Sierra Club's members live and work, the flora and fauna

in the area, especially rare and threatened or endangered species, and the scenic

beauty of the area. The trips are intended to be educational in so far as people

learn about the ecosystems around them. And they are intended to increase

awareness of the environment and potential impacts to it.

5)    Sierra Club also works to achieve these ends through informing its membership

through newsletters as to current pressing issues and the work Sierra Club is

undertaking. It comments on proposed laws, rules, permits, and other government

actions, and it files lawsuits to oppose laws, rules, permits and other such agency

actions. And it engages the media to raise public awareness generally about

environmental issues.

6)    The Sierra Club has had a longstanding involvement with Cypress Creek - and

with Hillsborough River, which of Cypress Creek is a major tributary – including

2

Cypress Creek's basin and watershed. This has included organizing trips to Cypress Creek basin, and working to protect and educate people about Cypress Creek.

7)  Sierra Club has organized trips, including hiking and walking and picnicking in the Cypress Creek area. The most recent outing was August of 2007 for hiking at the Cypress Creek wellfield area, which is approximately 5 miles from the Cypress Creek Town Center ("CCTC") site. Such events date back years. In addition, individual Sierra Club members recreate in the Cypress Creek, and on Cypress Creek itself, including canoeing on Cypress Creek in the location of the CCTC development, and they have done so for years, independent of Sierra Club's involvement. Sierra Club's members intend to continue using Cypress Creek, and the lands in the area, for recreation.

8)  Sierra Club, and the Sierra Club Tampa Bay Group has personally dedicated years toward public education and protection of the Cypress Creek, Hillsborough River, its basin and watershed through involvement in various land use processes at the local, state and federal levels; public school speaking engagements on the value of our eco-system in this area; and, involvement in state-wide/nation-wide campaigns to save Cypress Creek.

9)  For example, Sierra Club started a "National Save Cypress Creek Campaign" in 2000-01, in response to a plan by the Florida Department of Transportation to place an East/West Expressway through environmentally sensitive land in Hillsborough County, impacting the Hillsborough River watershed including

3

through the Cypress Creek watershed.  Unbridled growth in Pasco County and New Tampa in Hillsborough County prompted attention from the local group of Sierra Club to the Florida Chapter level and then to the National level and a campaign against destruction of the Cypress Creek area was initiated.  Canvassing and petitions were part of this campaign, and were sent to elected officials at the local, state and federal levels.

10)    Similarly, in 2000, Sierra Club participated as a representative on the Hillsborough County Land Acquisition Protection Program to establish the Cypress Creek Preserve.  In this capacity, Sierra Club successfully persuaded Hillsborough County to buy over 2,000 acres of environmentally sensitive land through which Cypress Creek runs.  These lands are approximately 5 miles from the CCTC site.  These lands are part of the interconnected conservation lands in Pasco County and Hillsborough County.

11)    Sierra Club filed a state law suit against the City of Tampa in 2000-02 concerning the rezoning for the Grand Hampton development contending that the City of Tampa was not protecting Cypress Creek and Trout Creek by allowing the construction of a golf course community in sensitive lands adjacent to Cypress Creek wetlands.  Sierra Club settled the lawsuit in exchange for, among other things, protective buffers along parts of the creeks, removal of the golf course, and protection of wetlands and habitat.

12)    Sierra Club also worked with the developers of Live Oak Preserve in 2002, which presented environmental impacts to conservation lands within the Cypress Creek

4

watershed, to minimize the impacts by removing a proposed golf course, creating

pedestrian trails and keeping conservation lands and wildlife habitat intact.

13)    Sierra Club volunteers have also presented programs at various elementary and

middle schools in the Tampa Bay metropolitan area on the importance of

wetlands, the significance of Cypress Creek Preserve, and the need to protect

water resources.

14)    Sierra Club became involved with the CCTC development as early as January

2004, when it attended meetings in Pasco County on the proposed CCTC

development. Sierra Club met with the Mayor of Tampa, in May 2004,

concerning potential impacts to Cypress Creek, and Hillsborough River, from the

CCTC development. Sierra Club Florida Nature Coast group sent a letter to the

Board of County Commissioners objecting to CCTC in September 2005.

15)    Sierra Club Tampa Bay Group sent its first alert to its members concerning the

CCTC development, pertaining to local and state issues concerning rezoning for

the development and the issuance of a development of regional impact ("DRI")

permit, for a hearing on November 23, 2004. A representative for Sierra Club

testified at the November 23 hearing before the Pasco County Commission.

16)    Sierra Club worked to oppose the DRI for CCTC, including by coordinating with

the Hillsborough River Greenways Task Force, sending alerts to members to write

to the Department of Community Affairs ("DCA"), the Governor, and the DCA

Secretary and Staff, objecting to the DRI. Sierra Club met with DCA staff and

attorneys, the Florida Department of Environmental Protection, the Hillsborough

County Commission; and City of Tampa regarding CCTC and the DRI it had requested.

17)    Sierra Club and its members also sent a number of comments opposing issuance of the United States Army Corps of Engineers ("Corps") permit challenged in this case, seeking the protection of Cypress Creek, wetlands, and wildlife.  AR03136-03141; AR03345-3370; AR04303-4304.

18)    Sierra Club believes that the CCTC permit as issued will have significant environmental impacts on Cypress Creek, on the wetlands in the area, on water supplies, and on the flora and fauna in the area, including threatened and endangered species such as the Wood Stork, the Eastern Indigo Snake and the Florida Scrub Jay.  These impacts will result from, among other things, the destruction of wetlands and the nutrient assimilation capacities of the environment in the area, introduction of new sources of pollution and contamination, increased demands for water, and the destruction and fragmentation of wildlife habitat, including the critical wildlife linkage running along Cypress Creek.  It will also result in aesthetic harms to a beautiful creek and area.

19)    Sierra Club was surprised by the issuance of the Corps's CCTC permit because it believed that the permit would be under review for a longer time given the environmental impacts that needed review.  Since the issuance of the CCTC permit, Sierra Club has continued to press the Corps to rescind or suspend the permit to comply with federal environmental laws, and to protect the sensitive Cypress Creek environment.  Sierra Club sent the Corps and the United States

Fish and Wildlife Service a notice of intent to bring suit in July, 2007, which the CCTC was aware of. Sierra Club and other plaintiffs, through their attorneys, have corresponded with the Corps on several occasions providing information as to violations of the environmental laws at issue in this case. E.g. Attachment A. As recently as this past December, we have sought to meet with the Corps to explain why we believe the Corps and the Service violated the law, but the agencies have declined to meet with us.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Executed on January _14_, 2008.

Athan Manuel for
SIERRA CLUB

7

## Meyer Glitzenstein & Crystal

1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

September 6, 2007

Lt. Gen. Robert L. Van Antwerp
Chief of Engineers,
Army Corps of Engineers
20 Massachusetts Ave., N.W.
Washington, D.C. 20314
202-761-1683 (fax)

Lt. Gen. Robert L. Van Antwerp
Mr. Lance Wood, Esq.
U.S. Army Corp of Engineers
Chief Counsel's Office
441 G. Street, NW
Washington, D.C 20314
lance.d.wood@usace.army.mil

Dirk Kempthorne
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
exsec@ios.doi.gov (executive secretary)
(202) 208-6956 (fax)

Dale Hall,
Director,
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240
dale_hall@fws.gov
703 358 2594 (fax)

RE:    **Cypress Creek Town Center in Pasco County, Florida**

We are writing on behalf of the Sierra Club concerning the Department of Army Permit



recycled paper

Attachment A

No. SAJ-2003-2336 (IP-THE) (May 15, 2007) ("Permit"), authorizing the destruction of wetlands for construction of the Cypress Creek Town Center ("CCTC") under section 404 of the Clean Water Act. As you know, Sierra Club gave notice of its intent to sue to challenge the Permit in its correspondence of July 17, 2007, unless the Corps suspends or revokes the Permit.

Among other legal violations identified by the Sierra Club in its July 17, 2007, Notice, the Sierra Club explained that the CCTC development will cause significant degradation of Cypress Creek, an Outstanding Florida Water, and ultimately the Hillsborough River, to which Cypress Creek flows. Moreover, in issuing the Permit the Corps failed to take a hard look at such degradation, both during the construction and during the operation of the CCTC development; it did not require that practicable alternatives to reduce or avoid impacts be pursued; and it did not require minimization of such impacts.

Land clearing of the CCTC development site has begun. Not surprisingly, the project has unlawfully discharged large amounts of turbid storm water into wetlands and Cypress Creek, significantly degrading the wetlands and the Creek. The developer of the site has now been cited twice for discharges, see attached, by two separate agencies. As the Sierra Club explained earlier, the CCTC project will inescapably cause significant degradation of Cypress Creek, and ultimately Hillsborough River, which is unlawful under the Clean Water Act.

The Sierra Club continues to be gravely concerned that the Corps has failed to comply with the ESA, the CWA, and NEPA in granting the Permit at issue. The Sierra Club again requests that the Corps suspend or revoke the Permit authorizing the CCTC project while the Corps undertakes the additional analyses mandated by federal law. Absent such actions, the Sierra Club intends to file suit to bring the Corps into compliance with the law. In the meantime, the Sierra Club also requests that the Corps station officers at the CCTC site to monitor activities and prevent any further discharges. Please feel free to contact us to discuss these matters.

Sincerely,

Joshua R. Stebbins

cc:

Governor Charles Crist
Office of the Governor
The Capitol
400 South Monroe Street
Tallahassee, FL 32399



## Southwest Florida
### *Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
*On the Internet at: WaterMatters.org*

An Equal
Opportunity
Employer

**Bartow Service Office**
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

**Lecanto Service Office**
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

**Sarasota Service Office**
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

**Tampa Service Office**
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 20, 2007

Hank King
15330 Cypress Creek Run
Lutz, FL 33559-08606

Subject:      Letter Dated August 14, 2007
              Construction Inspection Deviation for Cypress Creek Town Center

Dear Mr. King:

Enclosed you will find a copy of a letter dated on August 14, 2007, by Compliance Engineer, Clay Black concerning the Cypress Creek Town Center – Phase 1, Permit No. 43026931.001. This letter is being sent to you, as requested by H. Robert Lua, Director, Brooksville Regulation Department.

If I can be of any further assistance, please don't hesitate in contacting me at 1-800-423-1476, extension. 4346.

Sincerely,

Sandy Semegen
Field Service Supervisor
Brooksville Regulation Department

SS/jen
Enclosure
cc:      Files of Record 43026931.001/CT 181111 and CT 191098
         H. Robert Lua, P.E., Director, Brooksville Regulation Department
         Wojciech M. Mroz, P.E., Surface Water Regulation Manager
         Leonard Bartos, P.W.S., Environmental Regulation Manager
         C. Clay Black, P.E., Senior Professional Engineer
         Frank Gargano, Senior Field Technician
         Cliff Jackson, Senior Field Technician



An Equal
Opportunity
Employer

# Southwest Florida
*Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899

(352) 796-7211 or 1-800-423-1476 (FL only)

SUNCOM 628-4150 , TDD only 1-800-231-6103 (FL only)

*On the Internet at: WaterMatters.org*

**Bartow Service Office**
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

**Lecanto Service Office**
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

**Sarasota Service Office**
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

**Tampa Service Office**
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481, or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
Desoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:     **CONSTRUCTION INSPECTION DEVIATION**
    Project Name:   Cypress Creek Town Center – Phase 1
    Permit No.:   43026931.001
    CT No.:   181111
    Sec/Twp/Rng:   27/26S/19E
    County:   Pasco

Dear Permittees:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

* Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
* Turbidity levels in Wetland R and Wetland L are very high.
* Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
    WilsonMiller Inc.
    Don Campbell, Kearney Construction Co., LLC
    Brent Guy, Quality Control Inspection, Inc.
    H. Robert Lue, P.E., Director, Brooksville Regulation Department
    Wojciech M. Mroz, P.E., Surface Water Regulation Manager
    Leonard Bartos, P.W.S., Environmental Regulation Manager
    Sandy Samegen, Field Technician Manager
    Frank Gargano, Senior Field Technician
    Cliff Jackson, Senior Field Technician



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)


Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

<u>NOTICE OF NONCOMPLIANCE</u>

Dear Gentlemen:

A recent inspection of your property by U.S. Army Corps of
Engineers staff indicates that you have not complied with the
terms and conditions of your Department of the Army permit.
Department of the Army permit No. 2003-2336 (IP-TEH) authorized
you to perform work in jurisdictional wetlands associated with
the Cypress Creek Town Center project. The project is located at
the junction of State Road 54 and I-75, Pasco County, Florida.
(Lat. 28.19294° N; Long. 82.39138° W)

On July 31, 2007, district staff documented that 0.785
acres of jurisdictional wetlands had been mechanically cleared
and compacted during construction activities. Although the
wetland disturbance had been self-reported by you via your
environmental consultant, the work was unauthorized and was in
violation of your permit.

In addition, Army Corps staff documented unauthorized
offsite discharges in Cypress Creek as follows: (1) During our
July 31, 2007 inspection, staff documented the accumulation of
eroded sediments in the creek. The sedimentation was associated
with a failed sedimentation barriers along the eastern boundary
of the creek. (2) On August 3, 2007, staff documented that
turbid water had been discharged to the creek because water and
sediments had breached your sedimentation screens. Your state
water quality certification did not authorize offsite
discharges. Failure to comply with your water quality
certification and failure to maintain your site activities in
good condition are violations of the general conditions of your
Federal permit.

-3-

If you have any questions regarding this letter, please contact Thomas Farrell at the letterhead address or at telephone 813.769.7072.

Sincerely,

for:
Paul L. Grosskruger
Colonel, U.S. Army
District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569

PRIVILEGED AND CONFIDENTIAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al.,       ) | |
|                 ) | |
|     Plaintiffs,    ) | |
|                 ) | |
|     v.           ) | Civ. No. 1:07-cv-01756 (RCL) |
|                 ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al.,   ) | DECLARATION IN SUPPORT OF |
|                 ) | STANDING OF CLEAN WATER |
|     Defendants,   ) | ACTION |
|                 ) | |
|     and         ) | |
|                 ) | |
| SIERRA PROPERTIES, et al.,   ) | |
|                 ) | |
|     Intervening Defendants   ) | |

## DECLARATION OF CLEAN WATER ACTION

I, Kathleen E. Aterno, do hereby declare as follows:

1)    I am the Managing and Florida Director, of Clean Water Action ("CWA") and Clean Water Fund (CWF). CWA's headquarters is located in Washington D.C.

2)    CWA is a national non-profit environmental organization of over one million members dedicated to protecting and improving the quality of all of America's waters, and the aquatic ecosystems of which those waters are a part. CWA has approximately 2,500 members that reside in and around Cypress Creek, and over 22,000 members in the Tampa Bay area generally.

3)    CWA seeks to protect wetlands, lakes and streams, and in so doing, to protect their ecosystems, the flora and fauna that are part of them, and the clean and

**CASE NO. 1:07-cv-01756 (RCL)**

**INTERVENING DEFENDANTS'
EXHIBIT 4**

healthy drinking water they provide for Americans nationally. CWA seeks to help its members press for the enforcement, and advancement, of the nation's environmental laws among national decision-makers like the Corps, and expends funds educating the public about the value of aquatic ecosystems and the consequences of the Corps' issuance of permits.

4) CWA's members enjoy exploring the nation's wetlands, rivers, and streams and the wetlands and ecosystems of which they are part, including Hillsborough River and Cypress Creek. They enjoy looking for and/or observing the flora therein, such as the ecology of the bottom lands with their cypress stands, red maples, water oaks, and laurel oaks, as well as the uplands, and the fauna that inhabit such habitat, including for example threatened and endangered species such as Wood Storks and Eastern Indigo Snakes and Florida Scrub Jays. They depend upon the water that the nation's wetlands, rivers and streams, including Hillsborough River and Cypress Creek, provide - both directly and indirectly such as through groundwater recharge - for drinking and other household uses.

5) CWA believes that Cypress Creek Town Center ("CCTC") will have significant negative environmental impact on Cypress Creek, the ecosystems of its basin and of the Hillsborough basin, on water supplies, and on the flora and fauna in the area, including threatened and endangered species such as the Wood Stork, the Eastern Indigo Snake and the Florida Scrub Jay. Clean Water Action believes these impacts will result from, among other things, the destruction of wetlands, the loss of water purification capacities , the introduction of pollution, increased

demand for water, and loss and fragmentation of wildlife habitat. It will also

result in aesthetic harms to a beautiful creek and area.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my

knowledge.


Executed on January _11, 2008.


Kathleen E. Aterno for
Clean Water Action

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civ. No. 1:07-cv-01756 (RCL) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) | DECLARATION IN SUPPORT OF STANDING |
| Defendants, | ) | |
| and | ) | |
| SIERRA PROPERTIES, et al., | ) | |
| Intervening Defendants | ) | |

## DECLARATION OF CLAY COLSON

I, Clay Colson, do hereby declare the following:

1)     I am a resident of Pasco County, Florida, and have been a resident of Pasco County since 1988. Prior to that, I was a resident of Hillsborough County, where I had resided my entire life before moving to Pasco County. I currently live approximately six miles from Cypress Creek. I drive past the Cypress Creek Town Center site on a regular basis, including, for example, when I shop, such as at Sam's Club on State Road 56.

2)     I am and have been an active member of Sierra Club since 2000, and I have held leadership positions at the Sierra Club. I was a founding member of a new group of the Florida Chapter of the Sierra Club, the Naturecoast group, that is particularly focused on Pasco County issues. For approximately two and a half

CASE NO. 1:07-cv-01756 (RCL)

INTERVENING DEFENDANTS'
**EXHIBIT 5**

years I was the Nature Coast Issue Chair of the Florida Chapter of the Sierra Club.

3)    I use water from a well on my property to run my household and water my

numerous animals, and the well draws from the surficial aquifer. When I first

moved to Pasco County, I used this well as my drinking water, but, due to

degradation of the aquifer, I no longer feel safe drinking this water myself, and

therefore I no longer drink this water. Instead, I bottle and bring Pasco County

municipal water to my home for my drinking water.

4)    I am an outdoor enthusiast and greatly enjoy canoeing Florida's waters,

particularly following its rivers and creeks from their headwaters to their mouths.

On such trips I enjoy stopping along the banks of the creeks and rivers to explore

Florida's flora and fauna. For example, I have canoed Cypress Creek and

Hillsborough River numerous times.

5)    I first canoed Cypress Creek in 1986, and I have returned approximately every

year since, totaling about 27 trips. On almost every trip that I have canoed

Cypress Creek, I have canoed past the Cypress Creek Town Center ("CCTC")

site, as it is near the location where I put the canoe in. I have swum in Cypress

Creek on almost every trip, until approximately three or four years ago, when I

initially stopped swimming in the water because of low water levels, which were

the result of a drought and overpumping of wellfields in the region. Although

water levels on Cypress Creek fluctuate, and at times are now high enough to

swim in again, now I do not swim because of concerns of pollution from CCTC.

6)    I frequently stop on the banks of Cypress Creek, including to eat, walk around,

2

and observe the scenery, the plants, and the natural environment. I have stopped

on the banks of the proposed site for the Cypress Creek Town Center ("CCTC")

site. The first time I stopped on the banks of Cypress Creek, at the location of

CCTC, was on my first trip in 1986, on my way back to the location where I put

my canoe in. We stopped at banks at the CCTC site to rest, eat some food, and

enjoy the beautiful scenery, including the ancient oaks on site. These oaks no

longer exist on the property.

7)  I return to the Cypress Creek area again and again, and I intend to return to

Cypress Creek within several months, because I love its pristine beauty. It is a

designated Outstanding Florida Water because of its beauty and its pristine state.

I also enjoy looking for and observing its flora and fauna, including as discussed

below Wood Storks and Eastern Indigo Snakes. I also value the solitude of areas

few other people have been to. Until recently, Cypress Creek was one of those

places, although now the reach of Cypress Creek that flows past the CCTC

development has become degraded, and construction equipment can be seen and

heard from the Creek. As discussed further below, polluted water flows off the

CCTC site and into Cypress Creek.

8)  I have seen Wood Storks perched in the trees on the banks of Cypress Creek, and

along Cypress Creek's banks in shallow water areas at least a dozen times since

the first time I canoed Cypress Creek. The most common area where I have seen

Wood Storks on Cypress Creek is immediately east of I-75, in grass flats on the

north bank of the Creek. I see them here frequently enough that I have developed

an expectation of seeing them in this area. These grass flats are probably 500-1000 feet to the east of the CCTC site, just on the other side of I-75.

9) I have also seen Wood Storks on and around the CCTC site, along the north bank of Cypress Creek, in locations that stretch nearly the entire length of the site as it borders Cypress Creek: they typically are preening themselves in the trees. I have seen Wood Storks here almost every time I have seen Wood Storks in the grass flats to the east of the CCTC site. The first time I saw them on this part of the CCTC site was in 1986, and the last time was in February of 2006. I have not seen Wood Storks on the site since land clearing and construction began on the CCTC site.

10) On one such trip on Cypress Creek, on or around May 27, 2007, I found an Eastern Indigo Snake at the CCTC site. It was along the north/east bank of Cypress Creek, and it climbed up the bank and onto the CCTC site. I was able to identify the snake as an Eastern Indigo due to its distinctive lustrous coloring and movement, and I have knowledge regarding snakes as I used to sell snakes. On this same trip I observed over 48 Gopher Tortoise burrows in and around the southern portion of the CCTC site. Eastern Indigo Snakes utilize Gopher Tortoise burrows for shelter, and the two species share habitats.

11) I have routinely looked for Florida Scrub Jays by identifying their habitat in the Cypress Creek area. Florida Scrub Jay habitat is consistent with and overlaps with Gopher Tortoise habitat and Eastern Indigo Snake habitat. Florida Scrub Jays require scrub oaks that are between one and three meters tall and in sandy

4

soils, among other characteristics. On the trip on Cypress Creek that I saw

Gopher Tortoise burrows on the CCTC site I also observed Florida Scrub Jay

habitat on the CCTC site.

12) In mid to late 2005 I began reading articles about the proposed construction of

CCTC on the Cypress Creek site. Within a couple of weeks of reading the articles

I visited Cypress Creek to see if anything had changed. A number of

organizations submitted comments opposing the CCTC permit unless the permit

was modified.

13) In May of 2007, the Corps granted the applicant a permit to begin dredging and

filling wetlands on the CCTC site.

14) Before the applicant began grading the CCTC site, it had to remove rare, state

listed Gopher Tortoises from where they were located in the southern portion of

the site. The applicant initially obtained a permit to remove ten Gopher Tortoises.

This initial permit proved to be insufficient because there were many more

Gopher Tortoises, so it sought to amend its permit to remove an additional forty

Gopher Tortoises, which an environmental organization challenged. Before the

challenge could be heard, the applicant went on site at night and excavated the

remaining burrows and Gopher Tortoises that it found, resulting in a total of 66

excavated active and inactive burrows, and 25 Gopher Tortoises.

15) The excavation of the 66 Gopher Tortoise burrows, and the relocation of 25

Gopher Tortoises, was particularly sad for me not only as I care a great deal about

Gopher Tortoises, but also because this is prime Eastern Indigo Snake habitat that

5

was being removed.  In fact, the overlap between Gopher Tortoises and Eastern

Indigo Snakes are so common that the FFWCC permits issued provided for the

incidental removal of Eastern Indigo Snakes as well, with qualifications.

16)   After the removal of the Gopher Tortoises, the applicant began clearing the site of

vegetation, and began land grading activities as well.  At the time that the Sierra

Club issued its notice of intent to sue, the applicant accelerated its land clearing

activities by increasing the number of workers on site, and by working seven days

a week.

17)   Between June 2007 September 2007, I visited Cypress Creek over seven times,

either in a canoe or by walking the opposite bank from the CCTC site.  During

these trips I almost always observed polluted water filled with sediment running

off the CCTC site, from the land clearing activities, into Cypress Creek.  The

volumes of runoff varied from trip to trip, but at times a rushing torrent would

flow off the CCTC site into Cypress Creek.  The CCTC runoff created a massive

plume in Cypress Creek and turned Cypress Creek, which is typically a clear,

dark color, see Fish And Wildlife Service Administrative Record 00500-00510,

into a creamy tan color like coffee with cream.  The runoff covered the Creek, its

banks and surrounding wetlands in silt, and aquatic organisms, such as frogs, died

as a result of it.

18)   Because I was greatly concerned that CCTC runoff was degrading Cypress Creek,

I called a number of governmental organizations and reported the discharges.

Two governmental organizations, Southwest Florida Water Management District

("SWFMD"), and the Corps, both issued notices of violation, both for unauthorized discharges, and one for unauthorized destruction of wetlands. These notices are attached. See Attachment A. Even after these notices were issued, I witnessed continuing discharges from CCTC to Cypress Creek, though to my knowledge, no governmental agencies responded, nor did they issue any other notices of violations.

19)   Once the Sierra Club served its notice of intent to sue, I saw the applicant transfer a significant portion of its crew to the northern portion of the CCTC site, across State Road 56, to hasten wetlands dredging and filling. Prior to the Sierra Club's service of the notice of intent, the applicant had done only limited work on the northern portion of the site, including vegetation removal.

20)   These activities, which would not have been undertaken if not for the Army Corps of Engineers' permit, have had an affect on the quality of the area, and have impacted my enjoyment of it. As discussed above, before construction on the CCTC began, the waters of the creek were a clear brown. It was possible for me to see down to the bottom of the Creek. Today, the waters are murky and filled with particulate matter and turbidity. At times, I cannot see more than two inches beneath the water surface. Because of the change in the water, I will not swim in the Creek, which I had planned on resuming because water levels in Cypress Creek had increased. I no longer feel safe eating the fish I catch in the Creek, so I catch and release. I have also rerouted my drives, and changed the stores I patronage, so that I do not have to witness the destruction of the site.

7

21)    The development adversely affects my ability to look for and potentially observe threatened and endangered species such as the Wood Stork, the Eastern Indigo Snake and the Florida Scrub Jay. It will cause the destruction and degradation of the habitat that these species use in and near Cypress Creek.

22)    I believe that CCTC, with the other development in the area, will also adversely affect the water quality in Cypress Creek, and Hillsborough River, because of the increase in demand and extraction of water for municipal use. This lowers water tables, water levels in wetlands, and flows in surface waters such as Cypress Creek and Hillsborough River, and has been an issue in this area. Indeed, in the Cypress Creek basin, including in the vicinity of CCTC, I have seen damage from over extraction of water, including wetlands and cypress swamps that were dried out and subsided, and trees that had fallen over.

23)    The development undertaken pursuant to the permit adversely affects my aesthetic interests in the site, because it is no longer the serene, peaceful place I came to enjoy. I will therefore reduce, and may even discontinue, my visits to Cypress Creek, particularly in the location of CCTC, if the CCTC development is built as planned.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge.

Executed on _FRIDAY, JANUARY 11_, 2008

Clay Colson

8

# Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

September 6, 2007

Lt. Gen. Robert L. Van Antwerp
Chief of Engineers,
Army Corps of Engineers
20 Massachusetts Ave., N.W.
Washington, D.C. 20314
202-761-1683 (fax)

Lt. Gen. Robert L. Van Antwerp
Mr. Lance Wood, Esq.
U.S. Army Corp of Engineers
Chief Counsel's Office
441 G. Street, NW
Washington, D.C 20314
lance.d.wood@usace.army.mil

Dirk Kempthorne
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
exsec@ios.doi.gov (executive secretary)
(202) 208-6956 (fax)

Dale Hall,
Director,
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240
dale_hall@fws.gov
703 358 2594 (fax)

RE:    Cypress Creek Town Center in Pasco County, Florida

We are writing on behalf of the Sierra Club concerning the Department of Army Permit



recycled paper

Attachment A

No. SAJ-2003-2336 (IP-THE) (May 15, 2007) ("Permit"), authorizing the destruction of wetlands for construction of the Cypress Creek Town Center ("CCTC") under section 404 of the Clean Water Act. As you know, Sierra Club gave notice of its intent to sue to challenge the Permit in its correspondence of July 17, 2007, unless the Corps suspends or revokes the Permit.

Among other legal violations identified by the Sierra Club in its July 17, 2007, Notice, the Sierra Club explained that the CCTC development will cause significant degradation of Cypress Creek, an Outstanding Florida Water, and ultimately the Hillsborough River, to which Cypress Creek flows. Moreover, in issuing the Permit the Corps failed to take a hard look at such degradation, both during the construction and during the operation of the CCTC development; it did not require that practicable alternatives to reduce or avoid impacts be pursued; and it did not require minimization of such impacts.

Land clearing of the CCTC development site has begun. Not surprisingly, the project has unlawfully discharged large amounts of turbid storm water into wetlands and Cypress Creek, significantly degrading the wetlands and the Creek. The developer of the site has now been cited twice for discharges, see attached, by two separate agencies. As the Sierra Club explained earlier, the CCTC project will inescapably cause significant degradation of Cypress Creek, and ultimately Hillsborough River, which is unlawful under the Clean Water Act.

The Sierra Club continues to be gravely concerned that the Corps has failed to comply with the ESA, the CWA, and NEPA in granting the Permit at issue. The Sierra Club again requests that the Corps suspend or revoke the Permit authorizing the CCTC project while the Corps undertakes the additional analyses mandated by federal law. Absent such actions, the Sierra Club intends to file suit to bring the Corps into compliance with the law. In the meantime, the Sierra Club also requests that the Corps station officers at the CCTC site to monitor activities and prevent any further discharges. Please feel free to contact us to discuss these matters.

Sincerely,

Joshua R. Stebbins

cc:

    Governor Charles Crist
    Office of the Governor
    The Capitol
    400 South Monroe Street
    Tallahassee, FL 32399



# Southwest Florida
## Water Management District

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
On the Internet at: WaterMatters.org

Bartow Service Office          Lecanto Service Office          Sarasota Service Office          Tampa Service Office
170 Century Boulevard          Suite 226                       6750 Fruitville Road             7601 Highway 301 North
Bartow, Florida 33830-7700     3600 West Sovereign Path        Sarasota, Florida 34240-9711     Tampa, Florida 33637-6759
(863) 534-1448 or              Lecanto, Florida 34461-8070     (941) 377-3722 or                (813) 985-7481 or
1-800-492-7862 (FL only)       (352) 527-8131                  1-800-320-3503 (FL only)         1-800-836-0797 (FL only)
SUNCOM 572-6200                                                SUNCOM 531-6900                  SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 20, 2007

Hank King
15330 Cypress Creek Run
Lutz, FL 33559-08806

Subject:  Letter Dated August 14, 2007
Construction Inspection Deviation for Cypress Creek Town Center

Dear Mr. King:

Enclosed you will find a copy of a letter dated on August 14, 2007, by Compliance Engineer, Clay Black concerning the Cypress Creek Town Center – Phase 1, Permit No. 43026931.001. This letter is being sent to you, as requested by H. Robert Lue, Director, Brooksville Regulation Department.

If I can be of any further assistance, please don't hesitate in contacting me at 1-800-423-1476, extension. 4349.

Sincerely,

Sandy Semegen
Field Service Supervisor
Brooksville Regulation Department

SS:jen
Enclosure
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        C. Clay Black, P.E., Senior Professional Engineer
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician



# Southwest Florida
## Water Management District

An Equal
Opportunity
Employer

2379 Broad Street, Brooksville, Florida 34604-6899

(352) 796-7211 or 1-800-423-1476 (FL only)

SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)

On the Internet at: WaterMatters.org

| Bartow Service Office | Lecanto Service Office | Sarasota Service Office | Tampa Service Office |
|---|---|---|---|
| 170 Century Boulevard | Suite 226 | 6750 Fruitville Road | 7601 Highway 301 North |
| Bartow, Florida 33830-7700 | 3600 West Sovereign Path | Sarasota, Florida 34240-9711 | Tampa, Florida 33637-6759 |
| (863) 534-1448 or | Lecanto, Florida 34461-8070 | (941) 377-3722 or | (813) 985-7481 or |
| 1-800-492-7862 (FL only) | (352) 527-8131 | 1-800-320-3503 (FL only) | 1-800-836-0797 (FL only) |
| SUNCOM 572-0200 | | SUNCOM 531-6900 | SUNCOM 578-2070 |

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:      CONSTRUCTION INSPECTION DEVIATION
            Project Name:   Cypress Creek Town Center – Phase 1
            Permit No.:     43026931.001
            CT No.:         181111
            Sec/Twp/Rng:    27/26S/19E
            County:         Pasco

Dear Permittees:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

- Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
- Turbidity levels in Wetland R and Wetland L are very high.
- Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
        WilsonMiller Inc.
        Don Campbell, Kearney Construction Co., LLC
        Brent Guy, Quality Control Inspection, Inc.
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        Sandy Semegen, Field Technician Manager
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician

CERTIFIED MAIL    RETURN RECEIPT REQUESTED



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)

Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

<u>NOTICE OF NONCOMPLIANCE</u>

Dear Gentlemen:

A recent inspection of your property by U.S. Army Corps of Engineers staff indicates that you have not complied with the terms and conditions of your Department of the Army permit. Department of the Army permit No. 2003-2336 (IP-TEH) authorized you to perform work in jurisdictional wetlands associated with the Cypress Creek Town Center project. The project is located at the junction of State Road 54 and I-75, Pasco County, Florida. (Lat. 28.19294° N; Long. 82.39138° W)

On July 31, 2007, district staff documented that 0.785 acres of jurisdictional wetlands had been mechanically cleared and compacted during construction activities. Although the wetland disturbance had been self-reported by you via your environmental consultant, the work was unauthorized and was in violation of your permit.

In addition, Army Corps staff documented unauthorized offsite discharges in Cypress Creek as follows: (1) During our July 31, 2007 inspection, staff documented the accumulation of eroded sediments in the creek. The sedimentation was associated with a failed sedimentation barriers along the eastern boundary of the creek. (2) On August 3, 2007, staff documented that turbid water had been discharged to the creek because water and sediments had breached your sedimentation screens. Your state water quality certification did not authorize offsite discharges. Failure to comply with your water quality certification and failure to maintain your site activities in good condition are violations of the general conditions of your Federal permit.

-2-

It is my responsibility, as District Engineer, to issue this Notice of Noncompliance. My staff is conducting an investigation to determine the most appropriate enforcement action to address the alleged violation.

Among the enforcement options available are actions in Federal District Court for fines and injunctions requiring work cessation and/or restoration. The Court may also require that the restoration be performed by a third-party contract and be funded through a money judgment against the Permittee.

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties assessed. The administrative penalty proceeding requires notice to the Department of Environmental Protection and to all interested persons, all of who can submit comments. If you do not request an administrative hearing, anyone who comments may request one. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days. You should provide any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

The Corps does acknowledge your good-faith efforts to address the referenced problems on site. As of this date, you have submitted a restoration plan to restore the damaged wetland and, to our knowledge, are working with Southwest Water Management District staff to improve your site stabilization measures to prevent further offsite discharges or degradation of water quality.

-3-

If you have any questions regarding this letter, please
contact Thomas Farrell at the letterhead address or at telephone
813.769.7072.

Sincerely,

for:

Paul L. Grosskruger
Colonel, U.S. Army
District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) DECLARATION IN SUPPORT OF |
| | ) STANDING |
| Defendants, | ) |
| and | ) |
| | ) |
| SIERRA PROPERTIES I LLC, et al., | ) |
| | ) |
| Intervening Defendants. | ) |

### DECLARATION OF CHRIS LOY

I, Chris Loy, do hereby declare the following:

1)  I am and have been a resident of the Tampa metropolitan area for 9 years. I currently live on the Hillsborough River and my backyard forms part of the river's bank. Cypress Creek is a major tributary to the Hillsborough River.

2)  I am a member of Sierra Club and have been since at least 2002.

3)  I canoe and swim in the Hillsborough River from my back yard. Upstream from my home, on the Hillsborough River, is a dam that is used to divert water flowing down Hillsborough River out of the natural course of the river and into the Tampa municipal water system. This system is managed by Tampa Bay Water.

4)  The water quality in the Hillsborough River behind my house is directly affected

## CASE NO. 1:07-cv-01756 (RCL)

## INTERVENING DEFENDANTS'
## EXHIBIT 6

by the quality and quantity of water that flows into it, and that is removed from it for municipal water supplies.  For example, when water is diverted from the Hillsborough River for municipal drinking water supplies, the river behind my house slows its flow and changes from its clear dark color, to a murky color. When the water is a murky color I no longer swim in the water because I am concerned for my health and it is aesthetically unpleasant.

5)    I draw my home water from a well on my property.  My children drink Tampa's municipal water at school, and I use Tampa's municipal water at my office.

6)    I enjoy exercising in the natural environment in my community.  I have canoed approximately 80% of the rivers in west central Florida.  Most frequently I canoe the Hillsborough River, about 10-12 times a year, including 2-3 times a year in the upper Hillsborough River near - within a mile or so – where Cypress Creek enters the Hillsborough River.  I also canoe with my children on the Hillsborough River near my house.

7)    I drive past the Cypress Creek Town Center ("CCTC") site on a regular basis, several times a month.

8)    Approximately three or four times a year I hike and bike in the public conservation lands in the Hillsborough River and Cypress Creek basin, including a conservation area (Cypress Creek Preserve ELAPP site) that is between approximately a quarter mile to three quarters of a mile from the CCTC site.

9)    I enjoy recreating in these lands and waterways because I enjoy the solitude and the escape from crowded urban areas.  I come to these areas in part to enjoy the

scenery and the plants and wildlife I observe, including among others the Wood Stork, egrets and ibis.

10)    For example, I enjoy traveling to the conservation land mentioned above that is nearby the CCTC site. I go to this site because it is convenient to my home and work, because it is part of my natural community in which I live, and because it has natural flora and fauna that I enjoy observing, including Wood Storks. I have been to this conservation land approximately 10 times, the most recent being within the 12 months. The conservation land has a wide body of water with an island in it that is approximately one half to one mile from the CCTC site. On the island I see Wood Storks, ibis, cattle egrets, white egrets, snowy egrets, little blue herons, tricolored herons, and anhingas. These birds can be incredibly loud and active: their sqwuaking and interactions are quite interesting to observe. I have shared my enjoyment of this site by leading hikes with co-workers and friends as well as family visiting Florida. Cypress Creek flows through this conservation land, and there is a small foot bridge that crosses Cypress Creek. I enjoy crossing the bridge and standing on the bridge and absorbing the beautiful and scenic qualities of Cypress Creek and its environs.

11)    I believe that the CCTC's impacts on wood stork habitat and other wading bird habitat will adversely affect the wood storks and wading birds that utilize the Cypress Creek basin, and that I travel to Cypress Creek in part to see. Destruction of wildlife habitat necessarily adversely affects the species. It will also, therefore, adversely affect my ability to enjoy seeing these species. I also believe that the

CCTC will adversely affect the water quality and quantity in Cypress Creek as a result of discharges to the creek: indeed it already has, as reflected by the attached citations issued to the developers of CCTC for unlawful discharges to Cypress Creek. Degradation of Cypress Creek will ultimately adversely affect my enjoyment of lands, and the flora and fauna in the area.

12)    I believe that CCTC, with the other development rapidly taking place in the Cypress Creek and Hillsborough River basins, will also adversely affect the quality of water in Cypress Creek and Hillsborough River because of the increased demand on water supplies in the area. It is common knowledge that demand for drinking and household water in the Tampa area generally has caused an overexploitation of water resources in the area, and that this has lead to decreased water quality in water bodies in the area, including Hillsborough River. This is reflected, for example, in news articles, such as the one in the Administrative Record at AR03496-98, that document that water extraction adversely affects the water quantity, and therefore quality, in the Hillsborough River. As a result, Hillsborough River, as it flows behind my home, will become less aesthetically pleasing and more stagnant, and a murky color, more often. This will negatively affect my enjoyment of my home and back yard, as one reason I purchased my home was to enjoy the view of Hillsborough River, and to recreate in it. As a result, I will also decrease my swimming and canoeing in Hillsborough River. I am also concerned about the effects that overexploitation will have on the aquifer that I rely upon for my home water use.

13)    Seeing the CCTC development and the impacts to the site as I drive past the site

causes me great disappointment, frustration, and sadness, though I am

increasingly resigned to agencies' failure to enforce environmental laws.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my

knowledge.

Executed on ___January 11_____ , 2008

_____

Chris Loy

Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

September 6, 2007

Lt. Gen. Robert L. Van Antwerp
Chief of Engineers,
Army Corps of Engineers
20 Massachusetts Ave., N.W.
Washington, D.C. 20314
202-761-1683 (fax)

Lt. Gen. Robert L. Van Antwerp
Mr. Lance Wood, Esq.
U.S. Army Corp of Engineers
Chief Counsel's Office
441 G. Street, NW
Washington, D.C 20314
lance.d.wood@usace.army.mil

Dirk Kempthorne
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
exsec@ios.doi.gov (executive secretary)
(202) 208-6956 (fax)

Dale Hall,
Director,
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240
dale_hall@fws.gov
703 358 2594 (fax)

RE:    Cypress Creek Town Center in Pasco County, Florida

We are writing on behalf of the Sierra Club concerning the Department of Army Permit



recycled paper

Attachment A

No. SAJ-2003-2336 (IP-THE) (May 15, 2007) ("Permit"), authorizing the destruction of wetlands for construction of the Cypress Creek Town Center ("CCTC") under section 404 of the Clean Water Act. As you know, Sierra Club gave notice of its intent to sue to challenge the Permit in its correspondence of July 17, 2007, unless the Corps suspends or revokes the Permit.

Among other legal violations identified by the Sierra Club in its July 17, 2007, Notice, the Sierra Club explained that the CCTC development will cause significant degradation of Cypress Creek, an Outstanding Florida Water, and ultimately the Hillsborough River, to which Cypress Creek flows. Moreover, in issuing the Permit the Corps failed to take a hard look at such degradation, both during the construction and during the operation of the CCTC development; it did not require that practicable alternatives to reduce or avoid impacts be pursued; and it did not require minimization of such impacts.

Land clearing of the CCTC development site has begun. Not surprisingly, the project has unlawfully discharged large amounts of turbid storm water into wetlands and Cypress Creek, significantly degrading the wetlands and the Creek. The developer of the site has now been cited twice for discharges, see attached, by two separate agencies. As the Sierra Club explained earlier, the CCTC project will inescapably cause significant degradation of Cypress Creek, and ultimately Hillsborough River, which is unlawful under the Clean Water Act.

The Sierra Club continues to be gravely concerned that the Corps has failed to comply with the ESA, the CWA, and NEPA in granting the Permit at issue. The Sierra Club again requests that the Corps suspend or revoke the Permit authorizing the CCTC project while the Corps undertakes the additional analyses mandated by federal law. Absent such actions, the Sierra Club intends to file suit to bring the Corps into compliance with the law. In the meantime, the Sierra Club also requests that the Corps station officers at the CCTC site to monitor activities and prevent any further discharges. Please feel free to contact us to discuss these matters.

Sincerely,

Joshua R. Stebbins

cc:

Governor Charles Crist
Office of the Governor
The Capitol
400 South Monroe Street
Tallahassee, FL 32399



# Southwest Florida
## Water Management District

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
On the internet at: WaterMatters.org

Bartow Service Office
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

Lecanto Service Office
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

Sarasota Service Office
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

Tampa Service Office
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 20, 2007

Hank King
15380 Cypress Creek Run
Lutz, FL 33559-08606

Subject:       Letter Dated August 14, 2007
               Construction Inspection Deviation for Cypress Creek Town Center

Dear Mr. King:

Enclosed you will find a copy of a letter dated on August 14, 2007, by Compliance Engineer, Clay Black concerning the Cypress Creek Town Center – Phase 1, Permit No. 43026931.001. This letter is being sent to you, as requested by H. Robert Lue, Director, Brooksville Regulation Department.

If I can be of any further assistance, please don't hesitate in contacting me at 1-800-423-1476, extension. 4349.

Sincerely,

Sandy Samegen
Field Service Supervisor
Brooksville Regulation Department

SS:jen
Enclosure
cc:     Files of Record: 43026931.001/CT 181111 and CT 191098
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        C. Clay Black, P.E., Senior Professional Engineer
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician





**Southwest Florida**
*Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150   TDD only 1-800-231-6103 (FL only)
On the Internet at: WaterMatters.org

An Equal
Opportunity
Employer

**Bartow Service Office**
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

**Lecanto Service Office**
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

**Sarasota Service Office**
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

**Tampa Service Office**
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
*Chair, Hernando*
Neil Combee
*Vice Chair, Polk*
Todd Pressman
*Secretary, Pinellas*
Jennifer E. Closshey
*Treasurer, Hillsborough*
Thomas G. Dabney
*Sarasota*
Patricia M. Glass
*Manatee*
Heidi B. McCree
*Hillsborough*
Ronald E. Cabbey
*Pasco*
Sallie Parks
*Pinellas*
Maritza Rovira-Forino
*Hillsborough*
Patsy C. Symons
*DeSoto*

David L. Moore
*Executive Director*
William S. Bilenky
*General Counsel*

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:     **CONSTRUCTION INSPECTION DEVIATION**
Project Name:   Cypress Creek Town Center – Phase 1
Permit No.:   43026931.001
CT No.:       181111
Sec/Twp/Rng:   27/26S/19E
County:       Pasco

Dear Permittees:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

• Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
• Turbidity levels in Wetland R and Wetland L are very high.
• Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
        WilsonMiller Inc.
        Don Campbell, Kearney Construction Co., LLC
        Brent Guy, Quality Control Inspection, Inc.
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        Sandy Semegen, Field Technician Manager
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician



DEPARTMENT OF THE ARMY
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)


Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

<u>NOTICE OF NONCOMPLIANCE</u>

Dear Gentlemen:

   A recent inspection of your property by U.S. Army Corps of
Engineers staff indicates that you have not complied with the
terms and conditions of your Department of the Army permit.
Department of the Army permit No. 2003-2336 (IP-TEH) authorized
you to perform work in jurisdictional wetlands associated with
the Cypress Creek Town Center project. The project is located at
the junction of State Road 54 and I-75, Pasco County, Florida.
(Lat. 28.19294° N; Long. 82.39138° W)

   On July 31, 2007, district staff documented that 0.785
acres of jurisdictional wetlands had been mechanically cleared
and compacted during construction activities. Although the
wetland disturbance had been self-reported by you via your
environmental consultant, the work was unauthorized and was in
violation of your permit.

   In addition, Army Corps staff documented unauthorized
offsite discharges in Cypress Creek as follows: (1) During our
July 31, 2007 inspection, staff documented the accumulation of
eroded sediments in the creek. The sedimentation was associated
with a failed sedimentation barriers along the eastern boundary
of the creek. (2) On August 3, 2007, staff documented that
turbid water had been discharged to the creek because water and
sediments had breached your sedimentation screens. Your state
water quality certification did not authorize offsite
discharges. Failure to comply with your water quality
certification and failure to maintain your site activities in
good condition are violations of the general conditions of your
Federal permit.

-2-

It is my responsibility, as District Engineer, to issue this Notice of Noncompliance. My staff is conducting an investigation to determine the most appropriate enforcement action to address the alleged violation.

Among the enforcement options available are actions in Federal District Court for fines and injunctions requiring work cessation and/or restoration. The Court may also require that the restoration be performed by a third-party contract and be funded through a money judgment against the Permittee.

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties assessed. The administrative penalty proceeding requires notice to the Department of Environmental Protection and to all interested persons, all of who can submit comments. If you do not request an administrative hearing, anyone who comments may request one. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days. You should provide any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

The Corps does acknowledge your good-faith efforts to address the referenced problems on site. As of this date, you have submitted a restoration plan to restore the damaged wetland and, to our knowledge, are working with Southwest Water Management District staff to improve your site stabilization measures to prevent further offsite discharges or degradation of water quality.

-3-

If you have any questions regarding this letter, please contact Thomas Farrell at the letterhead address or at telephone 813.769.7072.

Sincerely,

for:
Paul L. Grosskruger
Colonel, U.S. Army
District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:07-cv-01756 (RCL) |
| | ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SIERRA PROPERTIES, et al., | ) | |
| | ) | |
| Intervening Defendants | ) | |

## DECLARATION OF THOMAS ARMENTANO

I, Thomas Armentano, do hereby declare as follows:

1)   I am a resident of Pasco County, Florida, and live approximately five miles from the Cypress Creek Town Center ("CCTC") site.  I drive past the CCTC site when I drive around Pasco County for errands, and I will do so again.

2)   I am a member of Clean Water Action ("CWA") and have been since May 2005. I have a PhD in ecology and have spent over 30 years working as an ecologist.

3)   I greatly enjoy exploring and observing natural ecosystems and environments and the flora and fauna therein.  I travel to the conservation lands around my home to do so, including conservation lands in the Cypress Creek watershed.  It is my intent to continue exploring and expanding my trips to and in these lands.

**CASE NO. 1:07-cv-01756 (RCL)**

**INTERVENING DEFENDANTS'**
**EXHIBIT 7**

4) I have visited three areas, in particular, to explore and observe Cypress Creek's ecology; and I intend to continue to do so, including in the next year. From my house I have biked many times along State Road 54 sometimes following it to where it crosses Cypress Creek, near the intersection of State Road 54 and 56, right near the CCTC site on Old Cypress Creek Road. In so doing I have stopped on the bridge over Cypress Creek to observe and appreciate the Creek, including the creek bottom and its surface waters (particularly for submerged and floating aquatic plants) and the bottomlands in the area, including a significant cypress stand and associated bottomland hardwood forest. I also look for fauna that might inhabit the area as I do in all my forays.

5) I have also biked up to a half-dozen times in a South West Florida Water Management District site which is part of the Cypress Creek basin. When I do so, I follow along trails through the area, sometimes leaving them to explore and to observe the area's wetlands, bottomlands, and uplands, and the waters of the Cypress Creek system.

6) I also have gone to lands around a municipal well field in the area two or three times. In so doing, I cross over a tiny bridge under which Cypress Creek flows; and I enjoy seeing the beauty of the Creek and the ecology as I do so.

7) I go to such areas because I enjoy examining the vegetation and the ecosystems of such lands. I enjoy observing the cypress, the cabbage palms, and the bottomland hardwood trees such as red maple, swamp laurel oak, water oak, tupelo, and other native bottomland tree species as well as the bromeliads, ferns, and other

herbaceous species. I enjoy looking for birds, including arboreal and wading birds, and seeing a wood stork would be a great attraction for me. I also enjoy exploring the uplands and looking for the flora and fauna that use such habitat. I look for gopher tortoise burrows and gopher tortoises, and it would be of special interest to see eastern indigo snakes, - which utilize gopher tortoise burrows for shelter, - given their rarity. Similarly, I would like to see a Florida Scrub Jay – particularly because I have not yet seen one – and I keep an eye out for them as they use the same general type of upland habitat as eastern indigo snakes.

8) As an ecologist, I also enjoy examining the creek and its environs as a functioning riparian ecosystem. In this respect, the creek is seen in cross-section as a lowland flow channel with adjacent higher elevation terraces and vegetated zones on slopes that tie together the bottomland and upland zones. These vegetated zones serve several functions, including both vital wildlife habitat and providing buffers which protect the downslope wetlands and stream, and it concerns and saddens me that larger protective buffers are not being maintained around Cypress Creek and its wetlands and that these areas will be impacted.

9) It is my intent to continue to explore the natural lands near my home, including the conservation lands in and along Cypress Creek. When I drive past the CCTC development and witness its destruction of the natural environment in such a vast and sensitive site, I find it appalling and am saddened. I believe that the development will adversely affect the Cypress Creek ecosystem, water supply and water quality, and the flora and fauna in the area, including threatened and

endangered species such as the Wood Stork, the Eastern Indigo Snake, and the Florida Scrub Jay. I believe these impacts will result from, among other things, the destruction of wetlands, the introduction of pollution, increased demand for water, and loss and fragmentation of wildlife habitat. It will also result in aesthetic harm to a beautiful creek and a beautiful area. It diminishes my interest and enjoyment in exploring this area and this part of the Cypress Creek basin and its ecology.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Executed on January __11__, 2008.

_____
Thomas Armentano

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, and RICHARD SOMMERVILLE, <br><br> Plaintiffs, <br><br> v. <br><br> LT. GEN. ROBERT L. VAN ANTWERP, in his official capacity as Chief of Engineers, U.S. Army Corps of Engineers, DIRK KEMPTHORNE, in his official capacity as Secretary, U.S. Department of the Interior, and H. DALE HALL, in his official capacity as Director, U.S. Fish and Wildlife Service, <br><br> Defendants, <br><br> and <br><br> SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., AND JG CYPRESS CREEK LLC, <br><br> Intervening Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:07-cv-01756 (RCL) ) ) ) ) ) ) ) ) ) ) ) ) ) ) / |

## [PROPOSED] ORDER DENYING
## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

This matter is before the Court on Plaintiffs' Motion for a Protective Order, Intervenors'

opposition thereto, and Plaintiffs' reply. Upon consideration of the briefs, as well as the entire

record in this case, it is, by the Court, this _____ day of _____, 2008, hereby

ORDERED that Plaintiffs' Motion for Protective Order be denied.

_____
U.S. District Court Judge
Royce C. Lamberth

Dated: _____

Copies furnished: All counsel listed on the attached service list

SERVICE LIST
Sierra Club, et al. v. Antwerp, et al.
Case No. 1:07-cv-01756 (RCL)

Douglas M. Halsey
T. Neal McAliley
Angela D. Daker
White & Case LLP
Wachovia Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131-2352
(305) 371-2700 (telephone)
(305) 358-5744 (facsimile)

*Counsel for Intervening Defendants*

Eric Gannon
Eric M. Everitt
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)

*Counsel for Intervening Defendants*

Joshua R. Stebbins
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009-1056
(202) 588-5206
Fax: (202) 588-5049
Email: jstebbins@meyerglitz.com

*Counsel for Plaintiffs Sierra Club, Clean Water Action, Gulf Restoration Network, Chris Loy and Richard Sommerville*

Kristofer Swanson
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resource Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0248
Fax: (202) 305-0274
Email: kristofer.swanson@usdoj.gov

*Counsel for Federal Defendants Robert Van Antwerp, Dirk Kempthorne and Dale Hall*

Mark Arthur Brown
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resource Division
Wildlife and Marine Resources Section
P.O. Box 7369
Ben Franklin Station
Washington, DC 20044-7369
(202) 305-0204
Fax: (202) 514-0097
Email: mark.brown@usdoj.gov

*Counsel for Federal Defendants Robert Van Antwerp, Dirk Kempthorne and Dale Hall*