UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SIERRA CLUB, et al.,

      Plaintiffs,

v.                                                                Civ. No. 1:07-cv-01756

LT. GEN. ROBERT L. VAN ANTWERP,
in his official capacity as Chief of Engineers,
U.S. Army Corps of Engineers, et al.,

      Defendants,

and

SIERRA PROPERTIES I, LLC, et al.

      Intervening Defendants.

_____/

**FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND
AND STAY OF THE LITIGATION AND MEMORANDUM IN SUPPORT THEREOF**

      Federal Defendants Lt. General Robert L. Van Antwerp, in his official capacity as Chief

of Engineers, United States Army Corps of Engineers ("Corps"), and Dirk Kempthorne, in his

official capacity as Secretary, United States Department of the Interior, and H. Dale Hall, in his

official capacity as Director, United States Fish and Wildlife Service ("FWS"), by and through

undersigned counsel, hereby move the Court for a voluntary remand of Department of the Army

("DA") permit No. SAJ-2003-2336 (IP-TEH) (hereinafter "permit"), which is at issue in the

above-captioned litigation.  Federal Defendants further move to stay all proceedings in this case,

including the summary judgment briefing schedule, until Federal Defendants take final action on

the remanded permit.

1

Federal Defendants have conferred with counsel for Plaintiffs and Intervening Defendants to ascertain their clients' respective positions on this motion. Counsel for Plaintiffs indicated that Plaintiffs will oppose the motion. Counsel for Intervening Defendants indicated that their clients take no position on the motion, but reserve their right to respond to the motion after reviewing it.

Federal Defendants request a voluntary remand in light of recent events that, although not precipitated by the instant litigation, could have an impact on the permit at issue. As noted in the Federal Defendants' Notice of Filing, Document No. 40, the Corps has suspended the permit and initiated an investigation into two instances of noncompliance with permit conditions. See Notice of Permit Suspension ("Notice"), at 2 (attached as Ex. A); Declaration of Tracy Hurst, Feb. 13, 2008 ("Hurst Decl.") ¶ 3 (Attached as Ex. B). The Corps "intends to carefully examine whether the repeated turbid discharges have any effect on the assurances provided by the Permittee and the Corps' reliance on them." Hurst Decl. ¶ 3; see also Notice"), at 2-3. Accordingly, the Corps plans to reevaluate the challenged permit decision and to conduct further environmental review of information submitted by the permittee in response to the suspension. See Hurst Decl. ¶¶3, 4; 33 C.F.R. § 325.7. During the suspension, the permittee is prohibited from doing any new work in the filled jurisdictional wetlands on the project site, with the exception of corrective measures. Declaration of Thomas A. Farrell, Feb. 13, 2008, ¶ 4 (attached as Ex. C). The Corps will also allow continued use of an access road that traverses the filled wetlands and will allow a construction office trailer and previously stockpiled soils and pipes to remain in place. Id.

Based upon its investigation, the Corps will make a determination to modify, revoke, or reaffirm its prior permit decision, and address any outstanding issues through its enforcement authority.  See Hurst Decl. ¶ 4.  In addition, should the Corps' review reveal significant new or changed circumstances on-site, the Corps may initiate additional review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., and further consultation under the Endangered Species Act ("ESA"),16 U.S.C. § 1536(a)(2).  See id. ¶ 4.  Depending on the decision reached by the Corps on remand, some or all of Plaintiffs' claims in this lawsuit may be rendered moot.  Accordingly, to conserve the resources of the parties and the Court, Federal Defendants also request a stay of all proceedings in this case until the Corps completes its investigation and takes final action to modify, revoke, or reaffirm the permit.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### BACKGROUND

The Clean Water Act ("CWA") requires persons wishing to discharge dredged or fill material into waters of the United States, including certain wetlands, to secure a permit ("section 404 permit") from the Corps before doing so.  See 33 U.S.C. §§ 1311(a), 1344(a).  Intervening Defendant Sierra Properties I, LLC, et al. ("Sierra Properties"), wishes to construct a regional shopping center and mixed-use residential/commercial development, known as the Cypress Creek Town Center or "CCTC."  The project site, located within Pasco County, Florida, contains wetlands and other waters subject to the Corps' section 404 permit jurisdiction.  Accordingly,

---

[1] The Corps estimates that it will take approximately 3-6 months to complete its investigation, take appropriate enforcement action, and take action to modify, revoke, or reaffirm the permit. See Hurst Decl. 5.

Sierra Properties applied to the Corps for a section 404 permit, which the Corps granted on May 15, 2007.

The CWA further provides that any applicant for a section 404 permit "shall provide the . . . permitting agency a certification from the State . . . that any such discharge will comply with" certain water quality standards, including those set by the State's own laws. 33 U.S.C. § 1341(a)(1); S.D. Warren Co. v. Me. Bd. of Envtl. Prot., 126 S. Ct. 1843, 1846 (2006). The State water quality certification for this project is reflected in an Environmental Resource Permit issued by the Southwest Florida Water Management District ("SWFWMD"). The Corps relied upon the SWFWMD permit in making its permit decision and incorporated within its section 404 permit a special condition requiring compliance with the SWFWMD permit.

Plaintiffs in this action filed their Complaint in this Court on October 1, 2007.[2] Plaintiffs challenge the Corps' decision to issue the section 404 permit, and its Environmental Analysis and Finding of No Significant Impact under NEPA, 42 U.S.C. §§ 4321 et seq. Plaintiffs also challenge the decision of the U.S. Fish and Wildlife Service ("FWS") to concur in the Corps' determination that the proposed actions are "not likely to adversely affect" threatened and endangered species under Section 7 of the ESA,16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.13(a). Based on the alleged violations of the CWA, ESA, and NEPA, Plaintiffs seek permanent injunctive relief to stop further site preparation and construction under the challenged permit.

---

[2] This is not the first lawsuit brought challenging the project. On June 26, 2007, a group of plaintiffs represented by the same counsel as Plaintiffs in this case filed an action in the Middle District of Florida, challenging the Corps' permit and the FWS's concurrence in the Corps' ESA determinations. See Citizens for Sanity.Com and Danieal Rametta v. Antwerp and Hall, Case No. 8:07-cv-01106-SDM-MSS. The case was dismissed the day after it was filed.

Upon information and belief, at the time Plaintiffs filed their Complaint, the permittee had substantially completed work to fill the subject wetlands.

On October 2, 2007, Federal Defendants moved, pursuant to 28 U.S.C. § 1404(a), to transfer venue to the Middle District of Florida, the judicial district in which the challenged project is located and in which the challenged agency decisions were made. Document No. 5. On October 16, 2007, Sierra Properties moved to intervene in this action. Document No. 8. On December 4, 2007, the Court denied the Federal Defendants' motion to transfer venue and granted Sierra Properties motion to intervene. Document No. 17. On January 4, 2008, the Court entered a scheduling order adopting the schedule proposed by Plaintiffs and Federal Defendants. Document No. 28. Pursuant to the January 4, 2008 scheduling order, as extended on January 14, 2008, Plaintiffs filed their motion for summary judgment and supporting memorandum on January 16, 2008; Federal Defendants' and Intervenors' cross-motions for summary judgment are currently due on February 20, 2008.[3] Id.; Document No. 31.

As noted, on February 1, 2008, the Corps issued a Notice of Permit Suspension relating to the permit at issue in this case. See Federal Defendants' Notice of Filing, Document No. 40; Hurst Decl. ¶ 3; Farrell Decl. ¶ 3. In its Notice of Suspension, the Corps concluded that the permittee had violated the terms and conditions of the permit by "discharging turbid water to Cypress Creek on two occasions and in failing to comply with your state [SWFWMD] permit." Notice, at 2. In explaining the reasons for the suspension, the Corps noted that the Corps relied heavily on "the permittee's proposed plans and environmental controls [for treatment of on-site

---

[3] Along with this motion for voluntary remand, Federal Defendants also submit a motion for an extension of time or stay of the briefing schedule, until ten days after the Court rules on the instant motion for voluntary remand.

stormwater] to gain assurance that the project would meet the 404(b)(1) guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality." Notice, at 2; <u>see also</u> Hurst Decl. ¶ 3. Specifically, the Corps' permitting decision relied on these assurances in concluding that secondary effects to wetlands and adverse affects to water quality and downstream ecosystems would be avoided if the permittee utilized a stormwater treatment system, obtained state water quality certification, and established a water quality monitoring plan. Notice, at 2-3; <u>see also</u> Hurst Decl. ¶ 3. As a result of the two instances of noncompliance, which demonstrated that the permittee's assurances had not been met, the Corps suspended the permit until the permittee could provide assurances that an appropriate resolution has been developed and implemented. <u>Id.</u> at 3.

Presently, the Corps is investigating the cause of the violations and intends to examine whether the violations have any effect on the assurances provided by the permittee and the Corps' reliance on those assurances. Hurst Decl. ¶ 4. Based upon the results of the investigation, it may be necessary to initiate additional NEPA review and further ESA consultation. <u>Id.</u> Upon the conclusion of the investigation, "the Corps will make a determination whether to revoke, reaffirm, or modify its prior permit decision" and address any outstanding issues through its enforcement authority. See <u>id.</u>; <u>see also</u> 33 C.F.R. § 325.7.

## <u>ARGUMENT</u>

"Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." <u>Trujillo v. Gen. Elec. Co.</u>, 621 F.2d 1084, 1086 (10th Cir. 1980); <u>see also</u> <u>Citizens Against the</u>

Pellissippi Parkway Extension v. Mineta, 375 F.3d 412, 416 (6th Cir. 2004); SKF USA Inc. v. United States, 254 F.3d 1022, 1030 (Fed. Cir. 2001) .

      This principle applies with full force in the context of a CWA section 404 permit.  Part and parcel of the CWA's broad grant of authority to the Corps to issue section 404 permits is the Corps' authority to reconsider its permit decisions.  To this end, the CWA's section 404 permit regulations provide that "[t]he district engineer may reevaluate the circumstances and conditions of any permit . . . and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest."  33 C.F.R. § 325.7(a).  Further, the Corps is authorized to suspend a permit when "immediate suspension is in the public interest."  Id. § 325.7(c).  At the conclusion of the suspension, the Corps may take action to modify, revoke, or reaffirm the permit.  Id.  The Corps also is authorized to evaluate whether additional environmental review is warranted in light of changed circumstances.  See Sierra Club v. U.S. Army Corps of Eng'rs, 295 F.3d 1209, 1221-22 & n.17 (11th Cir. 2002).

      Courts have inherent authority to allow the Corps to reconsider a permit decision and to prevent needless litigation over potentially moot issues from occurring pending completion of the agency's reconsideration.  For example, the APA states that a court may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  Moreover, courts possess ample discretion to grant agency requests for voluntary remands.  See, e.g., Loma Linda Univ. v. Schweiker, 705 F.2d 1123, 1127 (9th Cir. 1983).

      An agency "may seek a remand to reconsider its decision because of intervening events outside of the agency's control," among other reasons.  SKF, 254 F.3d at 1028.  Indeed, "courts

typically grant an agency's motion to remand a case if there has been an intervening change in law or new evidence." <u>Citizens</u>, 375 F.3d at 416 (citation omitted). Remand generally is appropriate if the new evidence "may affect the validity of the agency action," such as the terms and conditions of a section 404 permit. <u>SKF</u>, 254 F.3d at 1028-29 (citing <u>Ethyl Corp. v. Browner</u>, 989 F.2d 522, 524 (D.C. Cir. 1993)).

For example, in <u>Ethyl Corp.</u>, the court considered a challenge to the United States Environmental Protection Agency's ("EPA") denial of an application for a waiver from an otherwise applicable requirement of the Clean Air Act. 989 F.3d at 523. During the pendency of the judicial action, one party provided EPA with new evidence that "undermined" the initial justification for the waiver denial. <u>Id</u>. EPA sought voluntary remand, and the D.C. Circuit granted the agency's request. <u>Id</u>. at 524. The court expressed a general preference for granting motions for voluntary remand to avoid "wasting the courts' and the parties' resources." <u>Id</u>.

Remand is appropriate here because the Corps' investigation of two permit violations will present the Corps with "intervening . . . new evidence" that relates to the assumptions and findings underlying its permit decision. <u>Citizens</u>, 375 F.3d at 416. As the Corps stated in its Notice of Suspension: "The discharge of turbid water from the construction site to the creek is contrary to the basis of the Corps's authorization for the project." Notice, at 2. Thus, the Corps plans to reevaluate its findings in light of this new evidence and has suspended the permit until it can complete its review. <u>See</u> Hurst Decl. ¶ 4. Upon further review, the Corps may decide to revoke the permit, reinstate the permit, or modify the permit and its conditions to reflect the new evidence. <u>See</u> 33 C.F.R. § 325.7.

8

Granting the Corps' request for a remand and stay of the proceedings in this case will conserve judicial resources and allow the parties to avoid unnecessary litigation.  See e.g. Ethyl Corp, 989 F.2d at 524.  Wasting judicial resources is an appropriate concern here, because the Corps' review of the challenged permit could result in modification or revocation of the permit. These actions, if taken, could render moot or otherwise resolve some or all of Plaintiffs' claims. For example, Plaintiffs contend that the Corps did not adequately consider the potential impacts of the project to Cypress Creek and its adjacent wetlands, including the effects of run-off from the project site on the water quality in Cypress Creek.  See Pls. Mot. Summ. J., Document No. 32, at 32-35.  The Corps' review on remand could address this concern because the review will focus on the effectiveness of the stormwater management system to pre-treat water before it is released into wetlands or Cypress Creek.  In addition, should the Corps' review reveal significant new or changed circumstances on-site, the Corps may initiate additional NEPA review, and further ESA consultation.

Even in the absence of an "intervening event[]," such as the Corps' permit suspension and reevaluation of the permit, the decision to grant a voluntary remand is within the Court's discretion.  SKF, 254 F.3d at 1029.  Where, as here, "the agency's concern is substantial and legitimate, a remand is usually appropriate."  Id.; Citizens, 375 F.3d at 417.  The Corps has a substantial and legitimate interest in investigating the violations leading to the permit suspension to determine whether they have any effect on the Corps' permitting decision.  The Corps also has substantial discretion in assuring that its permit process incorporates the most current and accurate information regarding stormwater and other water quality matters.  See, e.g., City of Olmstead Falls, Ohio v. EPA, 435 F.3d 632, 638 (6th Cir. 2006) (affirming issuance of a CWA

9

permit given, among other things, the Corps' continuing review following the State's assessment of the project's impacts on water quality). Granting Federal Defendants' motion will allow the Corps to fulfill this important function.

Moreover, this motion for voluntary remand and stay of proceedings will not unduly prejudice Plaintiffs. The Corps has suspended the permit pending its final action to modify, reinstate, or revoke the permit. See Notice, at 3; Farrell Decl. ¶ 4. During the suspension, the permittee is prohibited from doing any new work in the filled jurisdictional wetlands on the project site, with the exception of corrective measures. Farrell Decl. ¶ 4. Additionally, if the Corps decides to issue a modification to the permit, it will issue a public notice and solicit public comment. Hurst Declaration, ¶ 6. Further, if, at the completion of the Corps' review, any of Plaintiffs' claims in this case have not been rendered moot, Plaintiffs may proceed with this litigation.

Finally, Federal Defendants request only a remand of its permit decision and stay of the proceedings pending the Corps' action on remand, rather than a vacatur of its decision. Remanding without vacatur is appropriate where, as here, the Court does not render a decision on the merits. See Ford Motor Co. v. Nat'l Labor Relations Bd., 305 U.S. 364, 375 (1939) (affirming lower court's decision to grant agency's request for remand, reasoning that unless precluded by statute, it is entirely consistent with principles of judicial review to "giv[e] an administrative body an opportunity to meet [a challenged party's] objections to its order"); Boise Cascade Corp. v. EPA, 942 F.2d 1427, 1431 (9th Cir. 1991) (granting agency's motion for voluntary remand so that the agency could reconsider the challenged decision).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Federal Defendants' motion for a voluntary remand and stay of all proceedings in this case pending the Corps' action under 33 C.F.R. § 325.7 to modify, reaffirm, or revoke the permit.  Federal Defendants will provide this Court with a report of the status of that remand within 60 days after the Court grants the motion. In addition, the Corps will notify the Court and the parties within ten days of taking final action on the remanded permit.

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division


Date: February 13, 2008_____          /s/ *Jessica O'Donnell*_____
JESSICA O'DONNELL
D.C. Bar No. 473166
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone:  (202) 305-085
Facsimile:  (202) 514-8865
D.C. Bar No. 473166
jessica.odonnell@usdoj.gov

MARK A. BROWN
D.C. Bar No. 470050
Senior Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0204
Facsimile: (202) 305-0275

mark.brown@usdoj.gov

KRISTOFOR SWANSON
Colo. Bar No. 39378
TRIAL ATTORNEY
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone:  (202) 305-0248
Facsimile:  (202) 305-0274
kristofor.swanson@usdoj.gov

Of Counsel:

Dorothy L. Boardman
U.S. Army Corps of Engineers
Jacksonville District
P.O. Box 4970
Jacksonville, Florida 32232-0019
Tel: (904) 232-1165
Fax: (904) 232-3692
E-mail:  Dorothy.L.Boardman@saj02.usace.army.mil
Attorney for Federal Defendants

Delores Young
Department of the Interior
Office of the Regional Solicitor
Southeast Region
75 Spring St., S.W.
Suite 304
Atlanta, GA  30303
Telephone: (404) 331-3379
Facsimile: (404) 730-2682

# Exhibit A

CERTIFIED-RETURN RECEIPT REQUESTED



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
P. O. BOX 4970
JACKSONVILLE, FLORIDA 32232-0019

REPLY TO
ATTENTION OF

February 1, 2008

Regulatory Division
Special Projects/Enforcement Branch
Enforcement Section
SAJ-2003-2336 (IP-TEH)


Mr. John R. Sierra, Jr.
Sierra Properties
509 Guisando De Avila, STE 200
Tampa, Florida  33613

## NOTICE OF PERMIT SUSPENSION

Dear Mr. Sierra:

This letter is to notify you that the U.S. Army Corps of Engineers (Corps) is suspending Department of the Army (DA) permit No. 2003-2336 (IP-TEH), which authorized you to perform work in jurisdictional wetlands associated with the Cypress Creek Town Center commercial complex.  The project is located immediately west of the junction of State Road 56 and I-75, Pasco County, Florida.

The site is adjacent to Cypress Creek, a regulated water of the United States.  Cypress Creek is considered an Outstanding Florida Water, a designation that recognizes the creek's important environmental functions and resource value to the citizens of the State of Florida.

### Background

The referenced DA permit was issued by the Corps to Sierra Properties on May 15, 2007.  The permit contained general and specific conditions, which identified required actions that must be implemented by the permitee.

The referenced DA permit included, as an attachment, a State of Florida permit and water quality certification (No. 43026931.001), which was issued to you on January 30, 2007, by the Southwest Florida Water Management District.  The state permit did not authorize offsite discharges to Cypress Creek. Compliance with the state permit is required as a condition of your Federal permit.

-2-

On August 22, 2007, the Corps issued to Sierra Properties a Notice of Noncompliance for failure to comply with the conditions of the referenced DA permit. Noncompliance activities cited in the notice included offsite discharge of sediments and turbid water to Cypress Creek.

On January 24, 2008, Corps staff inspected the construction site and again documented the discharge of turbid water to Cypress Creek and an associated wetland.

### Reasons for Suspension of the Permit

1. In discharging turbid water to Cypress Creek on two occasions and in failing to comply with your state permit, you have failed to comply with general conditions 2 and 5 of your Federal permit. General condition 2 requires that you maintain your site in good condition and in conformance with the terms and conditions of the permit. General condition 5 requires compliance with your state water quality certification.

2. The discharge of turbid water from the construction site to the creek is contrary to the basis of the Corps's authorization for the project. The Environmental Assessment and Statement of Findings are the Corps "decision documents" that reflect all the areas of consideration that were evaluated by the Corps project manager in order to determine compliance with our 404(b)1 guidelines and to arrive at the rationale for authorization of the project. A review of those documents reveals that on-site stormwater treatment and water quality in Cypress Creek and its associated wetlands were of paramount concern to the Corps reviewer for the Cypress Creek Town Center project. It is evident that the Corps reviewer relied heavily on the permittee's proposed plans and environmental controls to gain assurance that the project would meet the 404(b)1 guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality.

In the secondary impact section of the 404(b)1 guidelines, the Corps reviewer felt assured that adverse secondary effects would be avoided as a result of the permittee's operation of a water management system that would pre-treat water before releasing it to adjacent wetlands.

-3-

In the water quality section of the 404(b)1 guidelines, the Corps reviewer found that "adverse impacts to water quality or downstream ecosystems as a result of the proposed project" would be avoided if the permittee pre-treated stormwater, obtained state water quality certification for a water management system, and established a water quality monitoring a program.

It is clear to the Corps that these assurances have not been met and that the lack of compliance warrants suspension of the permit until the permittee can provide assurance that an appropriate resolution to the observed problems has been developed and implemented.

### Initial Corrective Action

The Corps seeks initial corrective actions for immediate assurance that additional offsite discharges will not occur.  The Corps has identified pond D on the construction site as the main source of the turbid discharges.  We require a written plan to reinforce the barrier at the discharge point of pond D and to address improved storage capability of pond D and any other ponds as necessary to prevent additional discharges. The plan must be developed and sealed by a Florida-registered professional engineer and must include a time schedule for immediate implementation of the remedial measures.  We also seek a report from a qualified environmental professional to assess possible sedimentation or other environmental damage that may have resulted downstream in Cypress Creek and in the receiving wetland below pond D. These assurances should be provided to the Corps Tampa Regulatory Office within ten (10) days.

Compliance with this order for corrective action will not foreclose the Federal Government's options to initiate appropriate legal action or to later require the submission of a permit application or other remedial actions.

### Suspension Guidance

Accordingly, DA permit SAJ-2003-2336 (IP-TEH) is now suspended.  Except as authorized by the Corps for remediation, you are prohibited from working in any areas of the Cypress Creek Town Center site that have been identified as waters of the United States.

-4-

   Following this suspension the Corps will decide whether to
reinstate, modify, or revoke the permit.  Within ten (10) days
after receiving this notice of suspension, you may request a
meeting with the district engineer or request a public hearing to
present information regarding this matter.  If you request a
hearing, we will follow the procedures prescribed in 33 CFR part
327.  After completion of the meeting or hearing (or in a timely
manner, if you chose neither) we will take action to reinstate,
modify, or revoke the permit.

   If you have questions regarding this notice, please contact
Thomas Farrell at the letterhead address or by telephone at
813-769-7072.

                    Sincerely,

                    Paul L. Grosskruger
                    Colonel, U.S. Army
                    District Engineer

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SIERRA PROPERTIES, et al., | ) |
| | ) |
| Intervening Defendants. | ) |
| | ) |

## DECLARATION OF TRACY E. HURST

I, Tracy E. Hurst, declare as follows:

1.    I am a biologist in the South Permits Branch of the Regulatory Division for the Jacksonville District of the U.S. Army Corps of Engineers ("Corps"). My field office is located at 10117 Princess Palm Avenue, Suite 120, Tampa, Florida, and among my duties I am responsible for reviewing and evaluating applications for Department of the Army permits under Section 404 of the Clean Water Act. I have been in this position since 20 March 2005. From 23 May 2004 to 19 March 2005, I held an identical position in the Palm Beach Gardens field office of the Regulatory Division of the Jacksonville District. From 14 January 2001 to 22 May 2004, I was a biologist for the Permits Branch of the Regulatory Division for the Charleston District of the Corps. From 28 August 2000 to 13 January 2001, I served as a biologist in the Planning Division of the Louisville District of the Corps. Prior to my employment with the Corps I was employed by the Commonwealth of Kentucky for 3 years as a biologist in the Division of Water, Department for Surface Mining, and the Department of Fish and Wildlife Resources. I am experienced in the evaluation of Department of the Army permit applications for work in waters of the United States for compliance with National Environmental Policy Act, Endangered Species Act, Magnuson Stevens Fishery Conservation Act, and National Historic Preservation Act. I hold a Bachelor of Science degree in Environmental Studies from Vanderbilt University and a Masters of Science degree in Forestry with a wildlife management specialization from the University of Kentucky.

2.    I am familiar with the Cypress Creek Town Center ["CCTC"] project in Pasco County, Florida, and have visited the site on multiple occasions throughout the permitting process, which began in May of 2005. Department of Army Permit No. SAJ-2003-2336 (IP-TEH) was issued to Sierra Properties on 15 May 2007.

3.       The Corps documented turbid discharges into Cypress Creek on both 3 August 2007 and 24 January 2008. On 1 February 2008, the Corps issued a Notice of Permit Suspension. The turbid discharge into Cypress Creek violates the terms of the permit which require that the Permittee maintain the site in good condition and adhere to state water quality standards. Furthermore, the discharge of turbid water into Cypress Creek is contrary to the basis of the Corps' authorization of the project. The favorable permit decision was based on the Permittee's proposed plans and environmental controls to gain assurance that the project would meet the 404(b)(1) Guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality. The Corps intends to carefully examine whether the repeated turbid discharges have any effect on the assurances provided by the Permitee and the Corps' reliance on them.

4.       The Corps required the Permittee to implement initial corrective measures for immediate insurance that additional turbid water would not be discharged into Cypress Creek. The Permitee has already instituted some measures such as fortification of storm water pond outlet structures, construction of berms, and sediment barriers within the affected wetland. The Corps continues to review the initial corrective measure plan to ensure future discharges do not occur. The Corps will also require a permanent plan to ensure future discharges do not occur over the lifetime of the project. This will require an investigation and fact-finding to determine the cause(s) of the discharges. The Corps will also assess the environmental damage that may have resulted in the affected wetland and Cypress Creek. Based upon the results of the investigation, it may be necessary to conduct additional environmental review pursuant to the Endangered Species Act and/or the National Environmental Policy Act. The results of the investigation will also be used by the Corps to determine appropriate enforcement action. Upon the conclusion of this investigation, the Corps will make a determination whether to revoke, reaffirm, or modify the permit.

5.       The Corps estimates that it will take approximately 3-6 months to complete its investigation, take appropriate enforcement action, and take action to reaffirm, modify, or revoke the permit.

6.       In the event the Corps decides to modify the permit or hold a public hearing or meeting, a public notice will be circulated to advise the public and Plaintiffs of their opportunity to provide comment and/or participate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 13 February 2008

Signed by:

Tracy E. Hurst
Biologist
U.S. Army Corps of Engineers

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:07-cv-01756 (RCL) |
| | ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SIERRA PROPERTIES, et al., | ) | |
| | ) | |
| Intervening Defendants. | ) | |
| | ) | |

DECLARATION OF THOMAS A. FARRELL

I, Thomas A. Farrell, declare as follows:

1.     I am a biologist in the Enforcement Branch of the Regulatory Division for the Jacksonville District of the U.S. Army Corps of Engineers ("Corps"). My field office is located at 10117 Princess Palm Drive, Tampa, Florida, and among my duties I am responsible for inspecting and evaluating suspected violations of Section 404 of the Clean Water Act and proposing initial corrective measures and appropriate resolution of violations to the Chief of the Enforcement Branch. I have been in this position since July 2007. I have held a number of other positions within the Corps including serving for 5 ½ years as a permitting-enforcement project manager in the Corps of Engineers Wilmington District and for 2 years as permit project manager in the Jacksonville District. Prior to my employment with the Corps I was employed for 10 years as an environmental regulatory specialist by the Florida Department of Environmental Protection, West Palm Beach, Florida. In addition, I worked for 10 years as a biologist-manager at the Seaville (Cape May County) Field Station for the NJ Marine Sciences Consortium, a nonprofit research and education organization. I hold a Bachelor's degree in biology from Montclair (NJ) State University and a Masters of Biological Science degree from Florida Atlantic University.

2.     I am familiar with the Cypress Creek Town Center ["CCTC"] project in Pasco County, Florida, and have visited the site on multiple occasions to investigate alleged violations of offsite discharges of turbid water and sediments. In addition, I have been to the site to meet with the principals in charge of the CCTC project and with staff from other regulatory agencies.

3.     Between July 31, 2007 and January 31, 2008, I visited the CCTC on multiple occasions and documented instances of noncompliance with the Corps permit. On August 22, 2007, and on

February 1, 2008, the Corps issued notices of permit noncompliance to Sierra Properties for offsite discharges of sediments and turbid water to Cypress Creek, a water body that is classified as an Outstanding Florida Water. Because of the apparent inability of the permittee to maintain the construction site in good condition and because of the site's adjacency to an important aquatic resource, the Corps issued a notice of permit suspension along with the second notice of noncompliance.

4.  In the suspension letter the Corps seeks initial corrective actions for immediate assurance that additional offsite discharges will not occur. During the permit suspension, new work on the wetlands that had been filled under the corps authorization is prohibited except for the construction or completion of berms that will be used solely to contain surface water on the site. The berms are interim corrective measures that will help prevent new discharges to Cypress Creek. The Corps also has allowed the permittee to continue to use the site's main access road, which traverses a previously filled wetland. In addition, the Corps will allow the construction office trailer and previously stockpiled soils and pipes to remain in place. Except as has been identified here or may be addressed later for other corrective actions, no other new work is authorized in the former wetlands on site. The suspension will remain in effect until the Corps takes action to modify, suspend, or revoke the permit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:

By:
Thomas A. Farrell
Biologist
U.S. Army Corps of Engineers

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SIERRA CLUB, et al.,

      Plaintiffs,

v.                                                                 Civ. No. 1:07-cv-01756

LT. GEN. ROBERT L. VAN ANTWERP,
in his official capacity as Chief of Engineers,
U.S. Army Corps of Engineers, et al.,

      Defendants,

and

SIERRA PROPERTIES I, LLC, et al.

      Intervening Defendants.

_____/


**[PROPOSED] ORDER**

      Upon consideration of Federal Defendants' Motion for Voluntary Remand and to Stay

this Case Pending Completion of That Remand, all briefs and other filings filed by the parties,

and for good cause shown,

      IT IS ORDERED THAT the Federal Defendants' motion is hereby GRANTED.

      The Department of the Army ("DA") permit, No. SAJ-2003-2336 (IP-THE), issued by the

United States Corps of Engineers ("Corps"), on May 15, 2007, is hereby remanded to the Corps,

and all proceedings in this case are stayed pending the completion of that remand.

IT IS FURTHER ORDERED THAT the Corps shall file a report within 60 days of this order apprising the Court of the status of that remand.  In addition, the Corps shall notify the Court and the parties within ten days of taking final action on the remand.

IT IS SO ORDERED, THIS _____ DAY OF _____, 2008.


_____
Royce C. Lamberth
United States District Judge