# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SIERRA PROPERTIES I, LLC, et al., | ) |
| | ) |
| Intervening Defendants. | ) |

---

## PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND AND STAY OF THE LITIGATION (D.E. 41)

### INTRODUCTION

The Army Corps of Engineers ("Corps") now acknowledges that in issuing the Cypress Creek Town Center ("CCTC") permit it "relied heavily" on "assurances" of environmental protection from Intervening Defendants and that these "assurances" "have not been met." Corps Notice of Permit Suspension, Ex. 1 at 2-3 (emphasis added). Thus it is now "clear to the Corps that [the permittees'] assurances" "that the project would meet [Clean Water Act] 404(B)(1) guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality" have proven hollow. Suspension at 2-3 (emphasis added).

Indeed, as Plaintiffs predicted, almost immediately upon the commencement of significant construction activities last summer, the CCTC development began to significantly

degrade Cypress Creek and its wetlands with repeated, voluminous and unlawful discharges of polluted water.  E.g. Corps's August 2007 Notice of Noncompliance, Exhibit 2; see also Colson Affidavit, ¶¶ 17-18, Exhibit 3.  Over the past six months, government agencies such as Pasco County and the Southwest Florida Water Management District ("SWFMD") issued numerous citations for unlawful discharges and various other legal violations.  E.g. Exhibit 4 (copies of citations Plaintiffs were able to obtain).  During this time the Corps issued two notices of violations, in August 2007 and again in February 2008.  See Exhibit 2.

Only now, however, two weeks after Plaintiffs moved for summary judgment, and citing the "new evidence" of discharges that have been occurring since last July, the Corps requests a remand to examine the issue of the runoff from the CCTC site – one of a number of grave environmental concerns raised Plaintiffs.  See Federal Defendants' Motion For Voluntary Remand And Stay Of The Litigation And Memorandum In Support Thereof at 2, 8-9 ("Federal Defendants' Remand Mem.") (D.E. 41).  Moreover, the Corps requests a stay of all litigation to do so, id., and has unilaterally ceased summary judgment briefing in this case in violation of the Court's Order requiring their briefs to be filed by February 20, 2008.

But this case is not just about unlawful runoff from CCTC to Cypress Creek, although they are a significant environmental impact and one focus of Plaintiffs' CWA claims.  To the contrary, the Corps's issuance of the CCTC permit authorized the construction of a development with massive environmental ramifications beyond just discharges to Cypress Creek and its wetlands.  These impacts involve, e.g., the destruction of occupied habitat for federally listed species; the destruction of a critical wildlife linkage between protected conservation lands in the area; and the destruction of over fifty acres of wetlands.  See Memorandum Of Law In Support of

2

Plaintiffs' Motion For Summary Judgment at 18-32, 35-42 ("Plaintiffs' Summ. J. Mem.") (D.E. 32). Yet despite the Corps's admission that the Intervening Defendants' "assurances" upon which the CCTC permit was premised have proven untrue, the Corps has no intention to review any of these issues other than the discharges to Cypress Creek.[1]

Nonetheless, Federal Defendants now propose that all litigation be stayed for up to six months. Federal Defendants' Remand Mem. at 3 n1. In the meantime, Intervening Defendants will advance construction as rapidly as possible while the litigation is stayed. Indeed, far from a true suspension of the CCTC permit and all environmentally destructive actions taking place pursuant to it, the Corps is actually facilitating ongoing construction during the requested stay by allowing Intervening Defendants to continue construction related activities in the wetlands that are necessary for the development to proceed to completion. See Federal Defendants' Remand Mem., Ex. C, T. Farrell Declaration at ¶ 4. For example, Intervening Defendants are being permitted to continue driving construction equipment over the wetlands on the site's main access road; they can continue to use the wetlands to stockpile construction materials; and they are allowed to maintain their construction office in wetlands, from which they oversee CCTC construction. Id.

---

[1] In fact, Intervening Defendants' false "assurances" to the Corps permeate the entire permit. For example, Intervening Defendants misled the Corps and the United Stated Fish and Wildlife Service ("FWS") by assuring them that "[n]o wood storks have ever been observed on the project site," AR5562; see also e.g. ("Wood storks have never been observed foraging on the property"), when in fact their own surveys identified Wood Storks foraging on site with hundreds of other wading birds. FWS192 ("Woodstork . . . Yes, foraging"), FWS196; see also AR6560. Similarly, Intervening Defendants' contention that it is not practicable to reduce CCTC's massive size and resulting wetlands loss is premised on deceptive representations to the Corps. See Plaintiffs' Summ. J. Mem. 8-9, 25-30.

3

Plaintiffs strenuously oppose Federal Defendants' request for a stay and voluntary remand. Notwithstanding the Corps's protestations to the contrary, Plaintiffs will be tremendously prejudiced in their ability to defend their environmental interests if this litigation is stayed while construction advances. By the same token, the Court's ability to craft meaningful relief for the Corps's violations of federal environmental laws – including the ongoing degradation of threatened and endangered species' habitat – will be compromised as construction rapidly progresses.

In contrast, neither Federal Defendants nor Intervening Defendants have demonstrated any prejudice to them in moving forward with the litigation, beyond the burden of litigation itself. Nor will resolving Plaintiffs' claims at this time cause any additional burden on the Court as resolution of these claims would only be postponed with a stay: the Corps has no intention of addressing on remand Plaintiffs' Endangered Species Act ("ESA") claims, their National Environmental Policy Act ("NEPA") claims, nor their Clean Water Act ("CWA") claims asserting practicable alternatives to wetlands loss and challenging the Corps's mitigation plans. Therefore, the narrow "remand" sought by the Corps cannot and will not address these serious environmental claims that are presently before the Court and that independently warrant enjoining all construction activities on site and crafting other remedial measures that are necessary in light of the Corps's and Intervenors' violations.[2]

---

[2] Rather than identifying any real prejudice to them if a stay were denied, Intervening Defendants – whom the Corps has now concluded obtained the challenged permit on false pretenses – raise a number of ancillary arguments about the Plaintiffs' supposed identity and other issues which have already been raised and rejected in earlier filings, and thus the arguments are not further engaged by Plaintiffs at this time.

Plaintiffs therefore urge the Court to require litigation to proceed as previously ordered by the Court. In the meantime, the Corps can continue with its internal administrative review of the discharges to Cypress Creek and its wetlands, as the Corps has been doing since last July. If that review in fact results in revocation of the permit in its entirety, or in any other relief that in fact moots this case, the Court can take that development into account if and when it occurs.

Alternatively, if the Court is inclined to grant the Corps's motion, Plaintiffs request that the Court set an expedited schedule for Plaintiffs' filing of a motion for a preliminary injunction of all construction activities on the CCTC site during the Corps's remand, save for any necessary remediation activities. Such an injunction would be necessary to preserve the environmental status quo during the Corps's remand, and to ensure that Plaintiffs' are not prejudiced by a remand that is occasioned by continued development and the environmental harm – such as the degradation of Cypress Creek – that has and will inevitably flow from the issuance of the CCTC permit.

**ARGUMENT**

**I.     The Court Should Not Stay Litigation As It Will Cause Extreme Prejudice To The Environmental Interests Plaintiffs Seek To Protect.**

The Court "has broad discretion to stay proceedings before it as an incident to its power to control its own docket," though "the proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 707, 708 (1997) (stay was abuse of discretion and "nothing in the record [would] enable a judge to assess the potential harm" to movant if say was denied). In determining whether to stay proceedings, a court "must assess and balance the nature and substantiality of the injustices claimed on either side." Gordon v. Fed. Deposit Ins. Corp.,

427 F.2d 578, 580 (D.C. Cir. 1970); see also Dellinger v. Mitchell, 442 F.2d 782, 786 (D.C. Cir. 1971); GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 193, 197 (D.D.C. 2003) (explaining court "'must weigh competing interests and maintain an even balance'" and denying stay where movant had not shown "compelling need" or "hardship") (quoting Landis v. North American Co., 299 U.S. 248, 255 (1936)).  However, as the Supreme Court has explained, the "suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  Landis, 299 U.S. at 255 (emphasis added).

The Corps cannot meet its burden of establishing that a stay of the litigation is warranted. It is beyond question that Plaintiffs will be tremendously prejudiced by that stay, despite the limited permit "suspension" the Corps imposed.  No one disputes that Intervening Defendants intend to proceed as rapidly as possible with construction of CCTC during such a stay.  In fact, the Corps's expected duration of the stay – up to six months, or September 2008 – would, perhaps not coincidentally, be just long enough for Intervening Defendants to construct and open CCTC in the fall of 2008.  See Federal Defendants' Remand Mem. at 3 n.1; Exhibit 5 at 2, 4.[3]

Yet construction of CCTC during a stay will gravely and adversely impact the environmental interests Plaintiffs seek to protect, and the Corps's purported suspension of the permit, discussed below, will do little to prevent prejudice to Plaintiffs.  This is in part because critical environmental interests that Plaintiffs seek to protect in this case relate to the uplands

---

[3] Intervening Defendants have stated their intention to begin actual construction of buildings on the CCTC site in January or February of 2008, and they aim to open the first part of CCTC for business in the fall of 2008.  See Exhibit 5 at 2, 4.  Intervening Defendants are not expected to complete construction until 2011.  See AR4006.

now being destroyed as a result of the permit under review, and the massive development it authorized.  For example, Plaintiffs' ESA claim focuses in large part on uplands of the CCTC site that contain occupied habitat for federally listed species such as the Eastern Indigo Snake, and it challenges the Corps's failure to formally consult with the FWS regarding the destruction of habitat.  See Plaintiffs' Summ. J. Mem. at 8-9, 21-23.  Similarly, Plaintiffs' NEPA challenge focuses in significant part on impacts to uplands which support the government designated critical wildlife linkage running across the site and on cumulative impacts to federally listed species from loss of habitat in uplands.  See Plaintiffs' Summ. J. Mem. at 38-42.

Intervening Defendants plan to develop these areas.  See e.g. FWS 191,195 (Indigos share habitat with Gopher Tortoises and Gopher Tortoise habitat will be developed); AR6650, 72, AR6450.  A stay in litigation while Intervening Defendants proceed with such construction will undeniably prejudice Plaintiffs' ability to seek relief, for example, for this ongoing destruction and degradation of the habitat of listed species.[4]

Meanwhile, the Corps's "suspension" does nothing to limit construction in these areas, and in fact the Corps is actually facilitating ongoing construction in uplands during the suspension by allowing Intervening Defendants to use wetlands to continue construction around the wetlands.  See Federal Defendants' Remand Mem., Ex. C, T. Farrell Declaration at ¶ 4.  Far from a complete suspension of all activities in wetlands, Intervening Defendants are permitted to continue to stage construction materials in the wetlands, including "stockpile[s of] soils and

---

[4]  That the Corps will not even be considering these important issues on remand, as discussed below, only serves to highlight the injustice of a stay.  After ignoring Plaintiffs' concerns during the permitting process, and rebuffing Plaintiffs' efforts to discuss such issues despite the discharges that demonstrated the illegality of the CCTC permit, see Exhibit 7, the Corps now, in effect, seeks to enlist the Court in continuing to marginalize Plaintiffs' claims.

pipes;" they are permitted to maintain their construction office in the wetlands; and they are permitted to continue driving over the wetlands on the "site's main access road."  Id.  All of this activity is being allowed so that continued construction of CCTC may proceed, although the permit necessary for CCTC's viability is admittedly unlawful and supposedly under review by the Corps to decide whether to reinstate, modify or revoke the permit.  Indeed, the continuing construction on site, with the Corps's facilitation, and the Corps's narrow focus on preventing future discharges, belies any notion that the Corps will actually modify or revoke the permit beyond, at most, merely addressing the important but narrow issue of illegal discharges.

In addition, although the Corps's permit "suspension" is purportedly based upon Intervenors' violations of the CWA, Plaintiffs' CWA claims would also be prejudiced by a delay occasioned by a stay of litigation.  As a map overlaying the CCTC development on the permitted wetlands demonstrates, see AR6497, Exhibit 6, it is impossible to continue construction – as the project is presently designed – without effectively encircling such wetlands with the construction; destroying the protective upland buffers around them that are necessary for their health; and leaving pockets that simply await filling in.  Yet a central element of Plaintiffs' CWA claim is that there are practicable alternatives to the construction of CCTC that would reduce wetlands loss, and that greater upland buffers are necessary to protect remaining wetlands.  See Plaintiffs' Summ. J. Mem. at 25-31, 32-34.

In contrast to the extreme prejudice to Plaintiffs, neither the Corps nor Intervening Defendants have identified any prejudice to them in moving forward with the litigation beyond complying with the schedule already ordained by the Court.  Even the burden of litigation would not be lifted by a stay, but merely postponed, as again, the Corps does not even intend to address

most of the Plaintiffs' central arguments on remand and the parties will be back before the Court

six months from now, with the only real difference being that the crafting of relief will be more

difficult and expensive.  For this same reason, a stay is also highly unlikely to advance the

Court's long term interest in judicial economy or conserve the Court's resources.

**II.     A Remand Will Be Futile And Is Unwarranted Because The Corps's Remand Fails
To Address the Majority Of Plaintiffs' Claims Raised, And Thus Will Neither
Amend Its Decision In Relevant Respect, Nor Render Plaintiffs' Claims Moot.**

As suggested above, contrary to the Corps's suggestion, a remand will not moot

Plaintiffs' claims.  Both the Corps's Suspension, and its remand, are narrowly focused on the

singular issue of the CCTC site's discharges.  The Suspension itself explicitly provides it is in

place only "<u>until the permittee can provide assurance that an appropriate resolution to the</u>

<u>[discharges] has been developed and implemented.</u>"  Suspension, Ex. 1 at 3.  Indeed, the Corps's

position is that the "<u>permit suspension has no relationship with or bearing whatsoever on the</u>

<u>pending lawsuit.</u>"  Cypress Creek Town Center, Frequently Asked Questions, Corps, Exhibit 8 at

2; <u>see also</u> **http://www.saj.usace.army.mil/regulatory/hotTopics.htm** (emphasis added).

Similarly, the Corps's motion for a remand identifies nothing but the issue of the

discharges in discussing its request for a remand.  Federal Defendants' Remand Mem. at 2, 8-9.

And the Corps's declarations make it abundantly clear the Corps intends the remand to focus

solely on issues related to the discharges.  For example, as the declarants explain, the Corps

intends to "<u>ensure future discharges do not occur</u>" and to investigate "<u>the cause[s] of the</u>

<u>discharges.</u>"  <u>Id.</u>, Ex. B, T. Hurst Declaration at ¶ 4 (D.E. 41) (emphasis added).

Thus, as identified above, the Corps's proposed remand will leave unaddressed Plaintiffs'

claims that are central and critical to the interests Plaintiffs seek to protect, and that

independently warrant enjoining the CCTC permit and crafting other appropriate relief.  More specifically, the Corps will not review Plaintiffs' assertion that the Corps and FWS violated the ESA by failing to consult about adverse impacts to the Wood Stork and the Eastern Indigo Snake, given the destruction of occupied habitat that CCTC entails.  See Complaint For Declaratory And Injunctive Relief, Count I, at 47 ("Complaint") (Doc. No. 1); Plaintiffs' Summ. J. Mem. at 18-23.  Indeed, FWS – which Plaintiffs also contend violated the ESA – is not proposing to revisit on remand any aspect of its earlier decision that Plaintiffs are challenging in this case.

Nor, evidently, will the Corps reconsider Plaintiffs' claims that NEPA required preparation of an Environmental Impact Statement ("EIS"), or that the Corps's Environmental Assessment was insufficient, given proposed impacts to a critical wildlife linkage, to an Outstanding Florida Water which helps provide municipal drinking water, and to occupied habitat for federally listed species, among other things.  Complaint, Count III at 48-49; Plaintiffs' Summ. J. Mem. at 38-42.  Even with respect to Plaintiffs' CWA claims in Count II, the Corps has no intention to reconsider whether there are practicable alternatives to CCTC that would avoid and minimize wetlands impacts, or whether the mitigation plan it is relying upon is arbitrary and capricious.  Complaint, Count II, at 48; see also Plaintiffs' Summ. J. Mem. at 38-42.

Thus, the Corps's argument that administrative agencies "have an inherent authority to reconsider their own decisions," Federal Defendants' Remand Mem. at 6, quoting Trujillo v. Gen. Elec. Co., 621 F.2d 1084, 1086 (10th Cir. 1980), is inapposite here as the Corps has no intention to even "reconsider" any of these issues.  And yet any of Plaintiffs' claims based on

10

such issues, if sustained by the Court, would independently warrant enjoining the CCTC permit and crafting other appropriate relief.

The Corps's reliance on Ethyl Corp. v. Browner is no more supportive of a remand. As the D.C. Circuit explained in Ethyl Corp., the "tradition of allowing agencies to reconsider their actions where events . . . draw their decision in question" "allow[s] agencies to cure their own mistakes rather than wasting a courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." Ethyl Corp., 989 F.2d 522, 523, 524 (D.C. Cir. 1993) (concluding it "inappropriate to review the now stranded decision"). Yet in this case the Corps has not acknowledged that it even made any mistakes with regard to Plaintiffs' ESA and NEPA claims, nor with regard to Plaintiffs' CWA claims asserting practicable alternatives to wetlands loss and challenging the Corps's mitigation plan. Because the Corps will not review these issues on remand, even the record with regard to such issues will not be different following whatever administrative review the Corps undertakes. See also SKF USA Inc. v. U.S., 254 F.3d 1022, 1028-30 (Fed. Cir. 2001) (stating where agency stands on prior decision "obligation of the court is clear" and it should "review the agency's decision under the [APA]" but concluding remand was appropriate because of "change in agency policy or statutory interpretation").[5]

---

[5] Nor does Citizens Against The Pellissippi Parkway Extension, Inc. v. Minetta, support the Corps's request for remand in this case. 375 F.3d 412, 413, 414 (6th Cir. 2004) (reversing and ordering modification of injunction "so as to allow the [agency] to comply with NEPA," where Court had broadly enjoined agency from any "planning" in connection to challenged highway project). Again, the Corps in this case is standing by its challenged decision with respect, for example, to Plaintiffs' ESA and NEPA claims. Moreover, unlike in Citizens, the Corps is free to continue the internal administrative processes it began last summer regarding the discharges.

In short, the narrow remand sought by the Court would almost certainly prove a waste of resources of the parties and the Court, while, at the same time, severely prejudicing Plaintiffs by allowing construction to continue. The parties will simply end up back before the Court on Plaintiffs' claims under the ESA and NEPA, and their practicable alternatives and mitigation claims under the CWA, six months later and six months further into construction. See Northhampton Media Assoc. v. Federal Commc'ns Comm'n, 941 F.2d 1214, 1217 (D.C. Cir. 1991) ("remand is unnecessary where agency on remand would 'inevitably arrive at the same result'") (quoting D.C. Fed. Of Civic Ass'ns v. Volpe, 459 F.2d 1231, 1247 n. 84 (D.C. Cir. 1972)); see also SKF USA, 254 F.3d at 1029 ("remand may be refused if the agency's request is frivolous or in bad faith").

## III. The Court Should Allow The Litigation To Proceed And Provide Plaintiffs' A Forum Where Their Claims Can Finally Be Heard.

Plaintiffs' motion for summary judgment was filed almost five weeks ago. Both Federal Defendants and Intervening Defendants have failed to file any opposition, despite the Court's Order requiring that their briefs be filed this past Wednesday, February 20. Under the Scheduling Order still in effect in this case, the parties' summary judgment briefing is to be completed within the next several weeks.

The Corps's rationale for a remand at this time can only be understood to be a delay tactic. The discharges have been recurring since last July, yet now the Corps suddenly concludes the discharges warrant reconsideration of the permit and a stay of litigation – but only after Plaintiffs filed for summary judgment. Meanwhile, though the Corps purports to have "suspended" the permit to reconsider a narrow aspect of the case, it is facilitating construction.

Plaintiffs respectfully request that the Court deny the stay and order Federal Defendants and Intervening Defendants to file their summary judgment briefs immediately. If, in the future, defendants take an action that really <u>does</u> moot this controversy – i.e., by revoking the permit and mandating appropriate remediation for the destruction of endangered species' habitat – the Court can respond accordingly at that time. In the meantime, Plaintiffs are entitled to a resolution of their claims and, if they prevail, appropriate judicial relief.

Alternatively, if the Court grants the remand, it should be accompanied by a preliminary injunction of <u>all</u> activities on site. As reflected in the parties' Rule 16 Report, Plaintiffs agreed to proceed in an expedited summary judgment proceeding provided that the case did not "become delayed for any reason." Rule 16.3 Report at 3 (D.E. 26). And, as reflected in numerous cases, the environmental harm Plaintiffs will experience if construction is allowed to advance during a stay would certainly warrant an injunction in this case. <u>E.g.</u>, <u>Tenn. Valley Auth. v. Hill</u>, 437 U.S. 153, 155, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities"); <u>Realty Income Trust v. Eckerd</u>, 564 F.2d 447, 456 (D.C. Cir. 1977) ("when an action is being undertaken in violation of NEPA, there is a presumption" of irreparable harm justifying a court order precluding "continuation of the action until the agency brings itself into compliance."). It simply cannot be the case that when the Corps acknowledges that the permit Plaintiffs are challenging is unlawful and issued based on empty assurances by Intervening Defendants, and yet construction nonetheless continues on site, Plaintiffs are left with no means to protect the "national" environmental interests they seek to defend. Memorandum Opinion at 11-12 (D.E. 16). Given the extreme prejudice and change in circumstances a remand and stay of

litigation would represent, Plaintiffs would seek expedited briefing and resolution of a

preliminary injunction without any advance notice as discussed in the Rule 16 Report.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Federal

Defendants' motion for a stay and remand.  Alternatively, if the Court is inclined to grant the

stay, it should enter an Order providing for expedited briefing of a preliminary injunction of all

construction activities, which would be in effect during the remand.

Respectfully submitted,

_____/s/_____
Joshua Stebbins
D.C. Bar No. 468542
Howard M. Crystal
D.C. Bar No. 446189
Eric R. Glitzenstein
D.C. Bar No. 358287

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW, Suite 700
Washington, D.C. 20009
(202) 588-5206

Attorneys for Plaintiffs

January 25, 2008

CERTIFIED-RETURN RECEIPT REQUESTED



## DEPARTMENT OF THE ARMY
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
P. O. BOX 4970
JACKSONVILLE, FLORIDA 32232-0019

REPLY TO
ATTENTION OF                    February 1, 2008

Regulatory Division
Special Projects/Enforcement Branch
Enforcement Section
SAJ-2003-2336 (IP-TEH)


Mr. John R. Sierra, Jr.
Sierra Properties
509 Guisando De Avila, STE 200
Tampa, Florida  33613

### NOTICE OF PERMIT SUSPENSION

Dear Mr. Sierra:

     This letter is to notify you that the U.S. Army Corps of
Engineers (Corps) is suspending Department of the Army (DA)
permit No. 2003-2336 (IP-TEH), which authorized you to perform
work in jurisdictional wetlands associated with the Cypress Creek
Town Center commercial complex.  The project is located
immediately west of the junction of State Road 56 and I-75, Pasco
County, Florida.

     The site is adjacent to Cypress Creek, a regulated water of
the United States.  Cypress Creek is considered an Outstanding
Florida Water, a designation that recognizes the creek's
important environmental functions and resource value to the
citizens of the State of Florida.

#### Background

     The referenced DA permit was issued by the Corps to Sierra
Properties on May 15, 2007.  The permit contained general and
specific conditions, which identified required actions that must
be implemented by the permitee.

     The referenced DA permit included, as an attachment, a State
of Florida permit and water quality certification (No.
43026931.001), which was issued to you on January 30, 2007, by
the Southwest Florida Water Management District.  The state
permit did not authorize offsite discharges to Cypress Creek.
Compliance with the state permit is required as a condition of
your Federal permit.


EXHIBIT 1

-2-

On August 22, 2007, the Corps issued to Sierra Properties a Notice of Noncompliance for failure to comply with the conditions of the referenced DA permit. Noncompliance activities cited in the notice included offsite discharge of sediments and turbid water to Cypress Creek.

On January 24, 2008, Corps staff inspected the construction site and again documented the discharge of turbid water to Cypress Creek and an associated wetland.

### Reasons for Suspension of the Permit

1. In discharging turbid water to Cypress Creek on two occasions and in failing to comply with your state permit, you have failed to comply with general conditions 2 and 5 of your Federal permit. General condition 2 requires that you maintain your site in good condition and in conformance with the terms and conditions of the permit. General condition 5 requires compliance with your state water quality certification.

2. The discharge of turbid water from the construction site to the creek is contrary to the basis of the Corps's authorization for the project. The Environmental Assessment and Statement of Findings are the Corps "decision documents" that reflect all the areas of consideration that were evaluated by the Corps project manager in order to determine compliance with our 404(b)1 guidelines and to arrive at the rationale for authorization of the project. A review of those documents reveals that on-site stormwater treatment and water quality in Cypress Creek and its associated wetlands were of paramount concern to the Corps reviewer for the Cypress Creek Town Center project. It is evident that the Corps reviewer relied heavily on the permittee's proposed plans and environmental controls to gain assurance that the project would meet the 404(b)1 guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality.

In the secondary impact section of the 404(b)1 guidelines, the Corps reviewer felt assured that adverse secondary effects would be avoided as a result of the permittee's operation of a water management system that would pre-treat water before releasing it to adjacent wetlands.

-3-

In the water quality section of the 404(b)1 guidelines, the Corps reviewer found that "adverse impacts to water quality or downstream ecosystems as a result of the proposed project" would be avoided if the permittee pre-treated stormwater, obtained state water quality certification for a water management system, and established a water quality monitoring a program.

It is clear to the Corps that these assurances have not been met and that the lack of compliance warrants suspension of the permit until the permittee can provide assurance that an appropriate resolution to the observed problems has been developed and implemented.

### Initial Corrective Action

The Corps seeks initial corrective actions for immediate assurance that additional offsite discharges will not occur. The Corps has identified pond D on the construction site as the main source of the turbid discharges. We require a written plan to reinforce the barrier at the discharge point of pond D and to address improved storage capability of pond D and any other ponds as necessary to prevent additional discharges. The plan must be developed and sealed by a Florida-registered professional engineer and must include a time schedule for immediate implementation of the remedial measures. We also seek a report from a qualified environmental professional to assess possible sedimentation or other environmental damage that may have resulted downstream in Cypress Creek and in the receiving wetland below pond D. These assurances should be provided to the Corps Tampa Regulatory Office within ten (10) days.

Compliance with this order for corrective action will not foreclose the Federal Government's options to initiate appropriate legal action or to later require the submission of a permit application or other remedial actions.

### Suspension Guidance

Accordingly, DA permit SAJ-2003-2336 (IP-TEH) is now suspended. Except as authorized by the Corps for remediation, you are prohibited from working in any areas of the Cypress Creek Town Center site that have been identified as waters of the United States.

-4-

Following this suspension the Corps will decide whether to reinstate, modify, or revoke the permit. Within ten (10) days after receiving this notice of suspension, you may request a meeting with the district engineer or request a public hearing to present information regarding this matter. If you request a hearing, we will follow the procedures prescribed in 33 CFR part 327. After completion of the meeting or hearing (or in a timely manner, if you chose neither) we will take action to reinstate, modify, or revoke the permit.

If you have questions regarding this notice, please contact Thomas Farrell at the letterhead address or by telephone at 813-769-7072.

Sincerely,

Paul L. Grosskruger
Colonel, U.S. Army
District Engineer



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)


Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

<u>NOTICE OF NONCOMPLIANCE</u>

Dear Gentlemen:

A recent inspection of your property by U.S. Army Corps of Engineers staff indicates that you have not complied with the terms and conditions of your Department of the Army permit. Department of the Army permit No. 2003-2336 (IP-TEH) authorized you to perform work in jurisdictional wetlands associated with the Cypress Creek Town Center project. The project is located at the junction of State Road 54 and I-75, Pasco County, Florida. (Lat. 28.19294° N; Long. 82.39138° W)

On July 31, 2007, district staff documented that 0.785 acres of jurisdictional wetlands had been mechanically cleared and compacted during construction activities. Although the wetland disturbance had been self-reported by you via your environmental consultant, the work was unauthorized and was in violation of your permit.

In addition, Army Corps staff documented unauthorized offsite discharges in Cypress Creek as follows: (1) During our July 31, 2007 inspection, staff documented the accumulation of eroded sediments in the creek. The sedimentation was associated with a failed sedimentation barriers along the eastern boundary of the creek. (2) On August 3, 2007, staff documented that turbid water had been discharged to the creek because water and sediments had breached your sedimentation screens. Your state water quality certification did not authorize offsite discharges. Failure to comply with your water quality certification and failure to maintain your site activities in good condition are violations of the general conditions of your Federal permit.

EXHIBIT 2

-2-

It is my responsibility, as District Engineer, to issue this Notice of Noncompliance. My staff is conducting an investigation to determine the most appropriate enforcement action to address the alleged violation.

Among the enforcement options available are actions in Federal District Court for fines and injunctions requiring work cessation and/or restoration. The Court may also require that the restoration be performed by a third-party contract and be funded through a money judgment against the Permittee.

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties assessed. The administrative penalty proceeding requires notice to the Department of Environmental Protection and to all interested persons, all of who can submit comments. If you do not request an administrative hearing, anyone who comments may request one. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days. You should provide any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

The Corps does acknowledge your good-faith efforts to address the referenced problems on site. As of this date, you have submitted a restoration plan to restore the damaged wetland and, to our knowledge, are working with Southwest Water Management District staff to improve your site stabilization measures to prevent further offsite discharges or degradation of water quality.

-3-

   If you have any questions regarding this letter, please
contact Thomas Farrell at the letterhead address or at telephone
813.769.7072.

                              Sincerely,

                              for:
                              Paul L. Grosskruger
                              Colonel, U.S. Army
                              District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569

CERTIFIED-RETURN RECEIPT REQUESTED



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
P. O. BOX 4970
JACKSONVILLE, FLORIDA 32232-0019

REPLY TO
ATTENTION OF                        February 1, 2008

Regulatory Division
Special Projects/Enforcement Branch
Enforcement Section
SAJ-2003-2336 (IP-TEH)


Mr. John R. Sierra, Jr.
Sierra Properties
509 Guisando De Avila, STE 200
Tampa, Florida 33613

<u>**SECOND NOTICE OF NONCOMPLIANCE**</u>

Dear Mr. Sierra:

    During a recent inspection of the Cypress Creek Town Center
construction site, U.S. Army Corps of Engineers (Corps) staff
documented that you have again failed to comply with the terms
and conditions of your Department of the Army (DA) permit.  DA
permit No. 2003-2336 (IP-TEH) authorized you to perform work in
jurisdictional wetlands associated with the Cypress Creek Town
Center commercial complex.  The project is located at the
junction of State Road 56 and I-75, Pasco County, Florida.  The
site is adjacent to Cypress Creek, a regulated water of the
United States.

    Corps personnel inspected the site on January 24, 2009, and
determined that you have discharged turbid water to Cypress
Creek, which is a failure to comply with General Conditions 2 and
5 of your Federal permit.  General Condition 2 of your Corps
permit requires that you maintain your site in good condition and
in conformance with the terms and other conditions of the permit.
General Condition 5 requires you to comply with your state water
quality certification, which did not allow offsite discharges.

    As District Engineer, it is my responsibility to issue this
Notice of Noncompliance.  My staff is conducting an investigation
to determine the most appropriate enforcement action to address
the alleged violation.

    Among the enforcement options available are actions in
Federal District Court for fines and/or injunctions requiring
work cessation and restoration.  The court may also require that
the restoration be performed by a third party and be funded
through a money judgment against the permittee.

-2-

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties may be assessed.  The administrative penalty proceeding requires notice to the Southwest Florida Water Management District and to all interested persons, any of whom can submit comments.  As the permittee, you may request an administrative hearing.  Anyone who responds during the comment period may also request a hearing. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days.  At that time, you may provide to us any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

If you have questions regarding this notice, please contact Thomas Farrell at the letterhead address or by telephone at 813-769-7072.

Sincerely,

Paul L. Grosskruger
Colonel, U.S. Army
District Engineer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al.,                                       ) | |
|                                                            ) | |
| Plaintiffs,                                             ) | |
|                                                            ) | |
| v.                                                         ) | Civ. No. 1:07-cv-01756 (RCL) |
|                                                            ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al.,                    ) | DECLARATION IN SUPPORT OF |
|                                                            ) | STANDING |
| Defendants,                                              ) | |
|                                                            ) | |
| and                                                      ) | |
|                                                            ) | |
| SIERRA PROPERTIES, et al.,                                 ) | |
|                                                            ) | |
| Intervening Defendants                                   ) | |

## DECLARATION OF CLAY COLSON

I, Clay Colson, do hereby declare the following:

1)     I am a resident of Pasco County, Florida, and have been a resident of Pasco County since 1988. Prior to that, I was a resident of Hillsborough County, where I had resided my entire life before moving to Pasco County. I currently live approximately six miles from Cypress Creek. I drive past the Cypress Creek Town Center site on a regular basis, including, for example, when I shop, such as at Sam's Club on State Road 56.

2)     I am and have been an active member of Sierra Club since 2000, and I have held leadership positions at the Sierra Club. I was a founding member of a new group of the Florida Chapter of the Sierra Club, the Naturecoast group, that is particularly focused on Pasco County issues. For approximately two and a half

EXHIBIT 3

years I was the Nature Coast Issue Chair of the Florida Chapter of the Sierra Club.

3) I use water from a well on my property to run my household and water my numerous animals, and the well draws from the surficial aquifer. When I first moved to Pasco County, I used this well as my drinking water, but, due to degradation of the aquifer, I no longer feel safe drinking this water myself, and therefore I no longer drink this water. Instead, I bottle and bring Pasco County municipal water to my home for my drinking water.

4) I am an outdoor enthusiast and greatly enjoy canoeing Florida's waters, particularly following its rivers and creeks from their headwaters to their mouths. On such trips I enjoy stopping along the banks of the creeks and rivers to explore Florida's flora and fauna. For example, I have canoed Cypress Creek and Hillsborough River numerous times.

5) I first canoed Cypress Creek in 1986, and I have returned approximately every year since, totaling about 27 trips. On almost every trip that I have canoed Cypress Creek, I have canoed past the Cypress Creek Town Center ("CCTC") site, as it is near the location where I put the canoe in. I have swum in Cypress Creek on almost every trip, until approximately three or four years ago, when I initially stopped swimming in the water because of low water levels, which were the result of a drought and overpumping of wellfields in the region. Although water levels on Cypress Creek fluctuate, and at times are now high enough to swim in again, now I do not swim because of concerns of pollution from CCTC.

6) I frequently stop on the banks of Cypress Creek, including to eat, walk around,

2

and observe the scenery, the plants, and the natural environment. I have stopped

on the banks of the proposed site for the Cypress Creek Town Center ("CCTC")

site. The first time I stopped on the banks of Cypress Creek, at the location of

CCTC, was on my first trip in 1986, on my way back to the location where I put

my canoe in. We stopped at banks at the CCTC site to rest, eat some food, and

enjoy the beautiful scenery, including the ancient oaks on site. These oaks no

longer exist on the property.

7)    I return to the Cypress Creek area again and again, and I intend to return to

Cypress Creek within several months, because I love its pristine beauty. It is a

designated Outstanding Florida Water because of its beauty and its pristine state.

I also enjoy looking for and observing its flora and fauna, including as discussed

below Wood Storks and Eastern Indigo Snakes. I also value the solitude of areas

few other people have been to. Until recently, Cypress Creek was one of those

places, although now the reach of Cypress Creek that flows past the CCTC

development has become degraded, and construction equipment can be seen and

heard from the Creek. As discussed further below, polluted water flows off the

CCTC site and into Cypress Creek.

8)    I have seen Wood Storks perched in the trees on the banks of Cypress Creek, and

along Cypress Creek's banks in shallow water areas at least a dozen times since

the first time I canoed Cypress Creek. The most common area where I have seen

Wood Storks on Cypress Creek is immediately east of I-75, in grass flats on the

north bank of the Creek. I see them here frequently enough that I have developed

3

an expectation of seeing them in this area. These grass flats are probably 500-1000 feet to the east of the CCTC site, just on the other side of I-75.

9) I have also seen Wood Storks on and around the CCTC site, along the north bank of Cypress Creek, in locations that stretch nearly the entire length of the site as it borders Cypress Creek: they typically are preening themselves in the trees. I have seen Wood Storks here almost every time I have seen Wood Storks in the grass flats to the east of the CCTC site. The first time I saw them on this part of the CCTC site was in 1986, and the last time was in February of 2006. I have not seen Wood Storks on the site since land clearing and construction began on the CCTC site.

10) On one such trip on Cypress Creek, on or around May 27, 2007, I found an Eastern Indigo Snake at the CCTC site. It was along the north/east bank of Cypress Creek, and it climbed up the bank and onto the CCTC site. I was able to identify the snake as an Eastern Indigo due to its distinctive lustrous coloring and movement, and I have knowledge regarding snakes as I used to sell snakes. On this same trip I observed over 48 Gopher Tortoise burrows in and around the southern portion of the CCTC site. Eastern Indigo Snakes utilize Gopher Tortoise burrows for shelter, and the two species share habitats.

11) I have routinely looked for Florida Scrub Jays by identifying their habitat in the Cypress Creek area. Florida Scrub Jay habitat is consistent with and overlaps with Gopher Tortoise habitat and Eastern Indigo Snake habitat. Florida Scrub Jays require scrub oaks that are between one and three meters tall and in sandy

4

soils, among other characteristics.  On the trip on Cypress Creek that I saw

Gopher Tortoise burrows on the CCTC site I also observed Florida Scrub Jay

habitat on the CCTC site.

12) In mid to late 2005 I began reading articles about the proposed construction of

CCTC on the Cypress Creek site.  Within a couple of weeks of reading the articles

I visited Cypress Creek to see if anything had changed.  A number of

organizations submitted comments opposing the CCTC permit unless the permit

was modified.

13) In May of 2007, the Corps granted the applicant a permit to begin dredging and

filling wetlands on the CCTC site.

14) Before the applicant began grading the CCTC site, it had to remove rare, state

listed Gopher Tortoises from where they were located in the southern portion of

the site.  The applicant initially obtained a permit to remove ten Gopher Tortoises.

This initial permit proved to be insufficient because there were many more

Gopher Tortoises, so it sought to amend its permit to remove an additional forty

Gopher Tortoises, which an environmental organization challenged. Before the

challenge could be heard, the applicant went on site at night and excavated the

remaining burrows and Gopher Tortoises that it found, resulting in a total of 66

excavated active and inactive burrows, and 25 Gopher Tortoises.

15) The excavation of the 66 Gopher Tortoise burrows, and the relocation of 25

Gopher Tortoises, was particularly sad for me not only as I care a great deal about

Gopher Tortoises, but also because this is prime Eastern Indigo Snake habitat that

5

was being removed. In fact, the overlap between Gopher Tortoises and Eastern

Indigo Snakes are so common that the FFWCC permits issued provided for the

incidental removal of Eastern Indigo Snakes as well, with qualifications.

16)  After the removal of the Gopher Tortoises, the applicant began clearing the site of

vegetation, and began land grading activities as well. At the time that the Sierra

Club issued its notice of intent to sue, the applicant accelerated its land clearing

activities by increasing the number of workers on site, and by working seven days

a week.

17)  Between June 2007 September 2007, I visited Cypress Creek over seven times,

either in a canoe or by walking the opposite bank from the CCTC site. During

these trips I almost always observed polluted water filled with sediment running

off the CCTC site, from the land clearing activities, into Cypress Creek. The

volumes of runoff varied from trip to trip, but at times a rushing torrent would

flow off the CCTC site into Cypress Creek. The CCTC runoff created a massive

plume in Cypress Creek and turned Cypress Creek, which is typically a clear,

dark color, <u>see</u> Fish And Wildlife Service Administrative Record 00500-00510,

into a creamy tan color like coffee with cream. The runoff covered the Creek, its

banks and surrounding wetlands in silt, and aquatic organisms, such as frogs, died

as a result of it.

18)  Because I was greatly concerned that CCTC runoff was degrading Cypress Creek,

I called a number of governmental organizations and reported the discharges.

Two governmental organizations, Southwest Florida Water Management District

6

("SWFMD"), and the Corps, both issued notices of violation, both for unauthorized discharges, and one for unauthorized destruction of wetlands. These notices are attached. <u>See</u> Attachment A. Even after these notices were issued, I witnessed continuing discharges from CCTC to Cypress Creek, though to my knowledge, no governmental agencies responded, nor did they issue any other notices of violations.

19)  Once the Sierra Club served its notice of intent to sue, I saw the applicant transfer a significant portion of its crew to the northern portion of the CCTC site, across State Road 56, to hasten wetlands dredging and filling. Prior to the Sierra Club's service of the notice of intent, the applicant had done only limited work on the northern portion of the site, including vegetation removal.

20)  These activities, which would not have been undertaken if not for the Army Corps of Engineers' permit, have had an affect on the quality of the area, and have impacted my enjoyment of it. As discussed above, before construction on the CCTC began, the waters of the creek were a clear brown. It was possible for me to see down to the bottom of the Creek. Today, the waters are murky and filled with particulate matter and turbidity. At times, I cannot see more than two inches beneath the water surface. Because of the change in the water, I will not swim in the Creek, which I had planned on resuming because water levels in Cypress Creek had increased. I no longer feel safe eating the fish I catch in the Creek, so I catch and release. I have also rerouted my drives, and changed the stores I patronage, so that I do not have to witness the destruction of the site.

21)   The development adversely affects my ability to look for and potentially observe threatened and endangered species such as the Wood Stork, the Eastern Indigo Snake and the Florida Scrub Jay. It will cause the destruction and degradation of the habitat that these species use in and near Cypress Creek.

22)   I believe that CCTC, with the other development in the area, will also adversely affect the water quality in Cypress Creek, and Hillsborough River, because of the increase in demand and extraction of water for municipal use. This lowers water tables, water levels in wetlands, and flows in surface waters such as Cypress Creek and Hillsborough River, and has been an issue in this area. Indeed, in the Cypress Creek basin, including in the vicinity of CCTC, I have seen damage from over extraction of water, including wetlands and cypress swamps that were dried out and subsided, and trees that had fallen over.

23)   The development undertaken pursuant to the permit adversely affects my aesthetic interests in the site, because it is no longer the serene, peaceful place I came to enjoy. I will therefore reduce, and may even discontinue, my visits to Cypress Creek, particularly in the location of CCTC, if the CCTC development is built as planned.

I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge.

Executed on _Friday, January 11_, 2008

_Clay J. Colson_

Clay Colson

8

# Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

September 6, 2007

Lt. Gen. Robert L. Van Antwerp
Chief of Engineers,
Army Corps of Engineers
20 Massachusetts Ave., N.W.
Washington, D.C. 20314
202-761-1683 (fax)

Lt. Gen. Robert L. Van Antwerp
Mr. Lance Wood, Esq.
U.S. Army Corp of Engineers
Chief Counsel's Office
441 G. Street, NW
Washington, D.C 20314
lance.d.wood@usace.army.mil

Dirk Kempthorne
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
exsec@ios.doi.gov (executive secretary)
(202) 208-6956 (fax)

Dale Hall,
Director,
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240
dale_hall@fws.gov
703 358 2594 (fax)

RE:    Cypress Creek Town Center in Pasco County, Florida

We are writing on behalf of the Sierra Club concerning the Department of Army Permit


recycled paper

Attachment A

No. SAJ-2003-2336 (IP-THE) (May 15, 2007) ("Permit"), authorizing the destruction of wetlands for construction of the Cypress Creek Town Center ("CCTC") under section 404 of the Clean Water Act. As you know, Sierra Club gave notice of its intent to sue to challenge the Permit in its correspondence of July 17, 2007, unless the Corps suspends or revokes the Permit.

Among other legal violations identified by the Sierra Club in its July 17, 2007, Notice, the Sierra Club explained that the CCTC development will cause significant degradation of Cypress Creek, an Outstanding Florida Water, and ultimately the Hillsborough River, to which Cypress Creek flows. Moreover, in issuing the Permit the Corps failed to take a hard look at such degradation, both during the construction and during the operation of the CCTC development; it did not require that practicable alternatives to reduce or avoid impacts be pursued; and it did not require minimization of such impacts.

Land clearing of the CCTC development site has begun. Not surprisingly, the project has unlawfully discharged large amounts of turbid storm water into wetlands and Cypress Creek, significantly degrading the wetlands and the Creek. The developer of the site has now been cited twice for discharges, see attached, by two separate agencies. As the Sierra Club explained earlier, the CCTC project will inescapably cause significant degradation of Cypress Creek, and ultimately Hillsborough River, which is unlawful under the Clean Water Act.

The Sierra Club continues to be gravely concerned that the Corps has failed to comply with the ESA, the CWA, and NEPA in granting the Permit at issue. The Sierra Club again requests that the Corps suspend or revoke the Permit authorizing the CCTC project while the Corps undertakes the additional analyses mandated by federal law. Absent such actions, the Sierra Club intends to file suit to bring the Corps into compliance with the law. In the meantime, the Sierra Club also requests that the Corps station officers at the CCTC site to monitor activities and prevent any further discharges. Please feel free to contact us to discuss these matters.

Sincerely,

Joshua R. Stebbins

cc:

Governor Charles Crist
Office of the Governor
The Capitol
400 South Monroe Street
Tallahassee, FL 32399





**Southwest Florida**
*Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
On the internet at: WaterMatters.org

An Equal
Opportunity
Employer

**Bartow Service Office**
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

**Lecanto Service Office**
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

**Sarasota Service Office**
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

**Tampa Service Office**
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 20, 2007

Hank King
15330 Cypress Creek Run
Lutz, FL 33559-08606

Subject:        Letter Dated August 14, 2007
                Construction Inspection Deviation for Cypress Creek Town Center

Dear Mr. King:

Enclosed you will find a copy of a letter dated on August 14, 2007, by Compliance Engineer, Clay Black concerning the Cypress Creek Town Center – Phase 1, Permit No. 43026931.001. This letter is being sent to you, as requested by H. Robert Lue, Director, Brooksville Regulation Department.

If I can be of any further assistance, please don't hesitate in contacting me at 1-800-423-1476, extension. 4349.

Sincerely,

Sandy Sumegen
Field Service Supervisor
Brooksville Regulation Department

SS:jen
Enclosure
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        C. Clay Black, P.E., Senior Professional Engineer
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician





Southwest Florida
*Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
On the Internet at: WaterMatters.org

An Equal
Opportunity
Employer

Bartow Service Office
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-3448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

Lecanto Service Office
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

Sarasota Service Office
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

Tampa Service Office
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:     CONSTRUCTION INSPECTION DEVIATION
             Project Name:   Cypress Creek Town Center – Phase 1
             Permit No.:     43026931.001
             CT No.:         181111
             Sec/Twp/Rng:    27/26S/19E
             County:         Pasco

Dear Permittee:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

- Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
- Turbidity levels in Wetland R and Wetland L are very high.
- Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:     Files of Record 43026931.001/CT 181111 and CT 191098
        WilsonMiller Inc.
        Don Campbell, Kearney Construction Co., LLC
        Brent Guy, Quality Control Inspection, Inc.
        H. Robert Lue, P.E., Director, Brooksville Regulation Department
        Wojciech M. Mroz, P.E., Surface Water Regulation Manager
        Leonard Bartos, P.W.S., Environmental Regulation Manager
        Sandy Semegen, Field Technician Manager
        Frank Gargano, Senior Field Technician
        Cliff Jackson, Senior Field Technician



CERTIFIED MAIL    RETURN RECEIPT REQUESTED

DEPARTMENT OF THE ARMY
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)

Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

NOTICE OF NONCOMPLIANCE

Dear Gentlemen:

A recent inspection of your property by U.S. Army Corps of Engineers staff indicates that you have not complied with the terms and conditions of your Department of the Army permit. Department of the Army permit No. 2003-2336 (IP-TEH) authorized you to perform work in jurisdictional wetlands associated with the Cypress Creek Town Center project. The project is located at the junction of State Road 54 and I-75, Pasco County, Florida. (Lat. 28.19294° N; Long. 82.39138° W)

On July 31, 2007, district staff documented that 0.785 acres of jurisdictional wetlands had been mechanically cleared and compacted during construction activities. Although the wetland disturbance had been self-reported by you via your environmental consultant, the work was unauthorized and was in violation of your permit.

In addition, Army Corps staff documented unauthorized offsite discharges in Cypress Creek as follows: (1) During our July 31, 2007 inspection, staff documented the accumulation of eroded sediments in the creek. The sedimentation was associated with a failed sedimentation barriers along the eastern boundary of the creek. (2) On August 3, 2007, staff documented that turbid water had been discharged to the creek because water and sediments had breached your sedimentation screens. Your state water quality certification did not authorize offsite discharges. Failure to comply with your water quality certification and failure to maintain your site activities in good condition are violations of the general conditions of your Federal permit.

-2-

It is my responsibility, as District Engineer, to issue this Notice of Noncompliance. My staff is conducting an investigation to determine the most appropriate enforcement action to address the alleged violation.

Among the enforcement options available are actions in Federal District Court for fines and injunctions requiring work cessation and/or restoration. The Court may also require that the restoration be performed by a third-party contract and be funded through a money judgment against the Permittee.

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties assessed. The administrative penalty proceeding requires notice to the Department of Environmental Protection and to all interested persons, all of who can submit comments. If you do not request an administrative hearing, anyone who comments may request one. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days. You should provide any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

The Corps does acknowledge your good-faith efforts to address the referenced problems on site. As of this date, you have submitted a restoration plan to restore the damaged wetland and, to our knowledge, are working with Southwest Water Management District staff to improve your site stabilization measures to prevent further offsite discharges or degradation of water quality.

-3-

If you have any questions regarding this letter, please
contact Thomas Farrell at the letterhead address or at telephone
813.769.7072.

Sincerely,



for:

Paul L. Grosskruger
Colonel, U.S. Army
District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569



An Equal
Opportunity
Employer

# Southwest Florida
*Water Management District*

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
*On the Internet at: WaterMatters.org*

| Bartow Service Office | Lecanto Service Office | Sarasota Service Office | Tampa Service Office |
|---|---|---|---|
| 170 Century Boulevard | Suite 226 | 6750 Fruitville Road | 7601 Highway 301 North |
| Bartow, Florida 33830-7700 | 3600 West Sovereign Path | Sarasota, Florida 34240-9711 | Tampa, Florida 33637-6759 |
| (863) 534-1448 or | Lecanto, Florida 34461-8070 | (941) 377-3722 or | (813) 985-7481 or |
| 1-800-492-7862 (FL only) | (352) 527-8131 | 1-800-320-3503 (FL only) | 1-800-836-0797 (FL only) |
| SUNCOM 572-6200 | | SUNCOM 531-6900 | SUNCOM 578-2070 |

Judith C. Whitehead
Chair, Hernando

Nell Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:    CONSTRUCTION INSPECTION DEVIATION
Project Name: Cypress Creek Town Center -- Phase 1
Permit No.:    43026931.001
CT No.:    181111
Sec/Twp/Rng:    27/26S/19E
County:    Pasco

Dear Permittees:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

- Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
- Turbidity levels in Wetland R and Wetland L are very high.
- Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:    Files of Record 43026931.001/CT 181111 and CT 191098
    WilsonMiller Inc.
    Don Campbell, Kearney Construction Co., LLC
    Brent Guy, Quality Control Inspection, Inc.
    H. Robert Lue, P.E., Director, Brooksville Regulation Department
    Wojciech M. Mroz, P.E., Surface Water Regulation Manager
    Leonard Bartos, P.W.S., Environmental Regulation Manager
    Sandy Semegen, Field Technician Manager
    Frank Gargano, Senior Field Technician
    Cliff Jackson, Senior Field Technician

EXHIBIT 4

# PASCO COUNTY ORDINANCE CITATION

| Agency No. | Court Case No. | The undersigned officer certifies that on | 9/14/07 | at 2:30 PM |
|---|---|---|---|---|
| 2007273903 | 51-2007-33094-COA ES | | Month, Day, Year | Time |

Defendant (Last, First, Middle, Alias): GUY - BRET - HUGH

Social Security Number: _____  SPN Number: _____

| DOB | Sex | Race | Height | Weight | Hair | Eyes | Driver's License No. |
|---|---|---|---|---|---|---|---|
| 8/31/58 | M | W | 5'10" | 165 | | | FL-G000-068-58-391-0 |

Location of Violation: 30975 August An Webster FL

Physical Address (Street, City, State): 30975 August An, Webster, FL 33597-9731

Work or Mailing Address (Street, City, Zip): QUALITY CONTROL INSPECTION
40 TARBELL AN - BEDFORD - OH - 44146

Home Telephone: 813-779-2557  Work Telephone: 1-800-76...7273

## The above named person did violate the following provision of the Pasco County Code of Ordinances:

- [ ] **Improper Confinement of Aggressive Animal**
  § 14-41 (a/b)  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Failure to Attach Animal License Tag**
  § 14-96 (d)  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Animal Constituting a Nuisance**
  § 14-98  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____

- [ ] **Improper Confinement of Vicious Animal**
  § 14-41 (a/c)  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Failure to Vaccinate (Rabies)**
  § 14-76  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Animal Running-At-Large**
  §14-97(c)  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____

- [ ] **Inoperative/Wrecked/or Unlicensed Vehicles**
  § 106-54  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Commercial Vehicles**
  § 530.19  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Accumulation of junk/debris**
  § 530.10  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____

- [ ] **RVs, Boats, Trailers**
  § 530.5  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Zoning Violation**
  §____  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Illegal Watering**
  §____  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____

- [x] **Other:** ILLICIT DISCHARGE
  § 90.45 A  [ ] Mandatory Court* (if checked)
  Class VI  Counts A  Offense 1
- [ ] **Prohibited Signs**
  § 601  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____
- [ ] **Tree Removal / Protection Violatio**
  § 602  [ ] Mandatory Court* (if checked)
  Class____ Counts____ Offense____

Officer's Statement of Facts Concerning Violation: Defendant discharged sediment from construction activities to the stormwater system

[x] Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age): ____

Witness (Name, Address): Mauricio Guerrero - 4454 Gand Blvd, New Port Richey, FL 34652

Witness (Name, Address): Andrew Kaplinski - 4454 Gand Blvd, NPR - FL 34652

Witness (Name, Address): Cliff Jackson, SWFWMD - Brooksville

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 9-17-07 | 12 noon | _signature_ ENGINEERING INSPECTOR | |
|---|---|---|---|
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

**ARRAIGNMENT INFORMATION**

December 21, 2007, 8:30 am
Date and Time

**YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT"**

- [x] East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
- [ ] W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828.27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

## TOTAL FINE AMOUNT = $ 200.00
PLUS $13 Court Case

Defendant's Signature / Date: Bret H. Guy 9/11/07

Original – Clerk    Canary – State Attorney    Pink – Agency    Goldenrod – County Attorney    Blue – Defendant

Defendant's Fingerprint

Rev. 7/05

IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA, IN AND FOR PASCO COUNTY, FLORIDA

STATE OF FLORIDA,

      Plaintiff,

vs.                          Case No.: 51-2007-33094-COAES

BRET HUGH GUY,            Division:  11

      Defendant.

_____/

## NOTICE OF FILING

Plaintiff, PASCO COUNTY, a political subdivision of the State of Florida, by and

through its undersigned attorney, hereby gives notice of filing Plaintiff's Additional List of

Witnesses in the above-captioned matter.

DATED: September ____ 2007.

_____

Kristi Wooden,
Senior Assistant County Attorney
Office of the County Attorney
7530 Little Road, Suite 340
New Port Richey, Florida 34654
Tel: (727) 847-8120
Fax: (727) 847-8021
FBN: 0565091

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing
was furnished by regular U.S. Mail to Bret Hugh Guy, 3475 August Avenue, Webster, FL
33597 and c/o Quality Control Inspections, 40 Tarbell Avenue, Bedford, OH 44146, this
_____ day of September, 2007.

_____

Kristi Wooden
Senior Assistant County Attorney

## CYPRESS CREEK TOWN CENTER
### Wesley Chapel Blvd. @ SR 56

The areas we looked at were:
1. Erosion control deficiencies at two areas in Wetland J.
2. Erosion control deficiencies, turbidity, and deposited sediment in Wetland R
3. Erosion control deficiencies, turbidity, and deposited sediment in Wetland L

### *Additional Witnesses*

Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad Street
Brooksville, Florida 34604-6899

do
notice of
filing
33094

Clay Black
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad Street
Brooksville, Florida 34604-6899

Steve Carter
Engineering Inspector
Pasco County Stormwater Management
4454 Grand Blvd
NPR, FL  34652-5402

# PASCO COUNTY ORDINANCE CITATION

| Agency No. Z00725403 | Court Case No. 51-2007-33095 COAES | The undersigned officer certifies that on 9/14/07 at 2:30P |
|---|---|---|
| | | Month, Day, Year / Time |

Defendant (Last, First, Middle, Alias)
GUY, BRET HUGH

| Social Security Number | SPN Number |

| DOB 10/31/58 | Sex M | Race W | Height 5'10" | Weight 185 | Hair | Eyes | Driver's License No. FL G000-068-58-391-0 |

Location of Violation SOUTH SIDE OF CYPRESS CREEK TOWN CENTER, SR. 56

Physical Address (Street, City, State) 34075 AUGUST AVE. WEBSTER FL. 33597

Work or Mailing Address (Street, City, Zip) QUALITY CONTROL INSPECTIONS, 40 TARBELL AVE. BEDFORD OH. 44146

| Home Telephone (815)777-2557 | Work Telephone 766-7273 |

## The above named person did violate the following provision of the Pasco County Code of Ordinances:

☐ **Improper Confinement of Aggressive Animal**
§ 14-41 (a/b) ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Failure to Attach Animal License Tag**
§ 14-96 (d) ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Animal Constituting a Nuisance**
§ 14-98 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Improper Confinement of Vicious Animal**
§ 14-41(a/c) ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Failure to Vaccinate (Rabies)**
§ 14-76 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Animal Running-At-Large**
§14-97(c) ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Inoperative/Wrecked/or Unlicensed Vehicles**
§ 106-54 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Commercial Vehicles**
§ 530.19 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Accumulation of junk/debris**
§ 530.10 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **RVs, Boats, Trailers**
§ 530.5 ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Zoning Violation**
§___ ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Illegal Watering**
§___ ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☑ **Other:** SEDIMENT CONTROL
§ 604.3 ☐ Mandatory Court* (if checked)
Class VI Counts 5 Offense 1

☐ **Prohibited Signs**
§ 601___ ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

☐ **Tree Removal / Protection Violation**
§ 602___ ☐ Mandatory Court* (if checked)
Class___ Counts___ Offense___

Officer's Statement of Facts Concerning Violation: DEFENDANT FAILED TO PROPERLY INSTALL SOIL EROSION AND SEDIMENT CONTROL DEVICES IN ACCORDANCE WITH FDEP STANDARDS

☑ Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)
/

Witness (Name, Address) ANDREW KAPLINSKI, 4454 GRAND BLVD. NPR 34652

Witness (Name, Address) MAURICIO GUERRERO, 4454 GRAND BLVD. NPR, 34652

Witness (Name, Address) CLIFF JACKSON, SWFWMD, BROOKSVILLE

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| Date of Issue 9-17-07 | Time of Issue 12 NOON | Issuing Officer's Signature / Title Jam O Owl ENGINEERING INSPECTOR | Supervisory Approval |

| **ARRAIGNMENT INFORMATION** | DEC. 21 2007 8:30 AM Date and Time | * YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT" |

☑ East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
☐ W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828 27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

## TOTAL FINE AMOUNT = $ 2500.00

PLUS = $13.00 Court Cost

Defendant's Signature Brett R Guy
Date 9/17/07

Defendant's Fingerprint

Original – Clerk    Canary – State Attorney    Pink – Agency    Goldenrod – County Attorney    Blue – Defendant

Rev. 7/05



# PASCO COUNTY ORDINANCE CITATION

| Agency No. | Court Case No. | | The undersigned officer certifies that on |
|---|---|---|---|
| 200723405 | 51-2007-33098-COAES | | 9-26-07 at 2 PM, Month, Day, Year / Time |

Defendant (Last, First, Middle, Alias)
GUY, BRET HUGH

Social Security Number

SPN Number

| DOB 10-31-58 | Sex M | Race W | Height 5'10" | Weight 165 | Hair | Eyes | Driver's License No. FL G000-068-58-391-0 |
|---|---|---|---|---|---|---|---|

Location of Violation NORTH SIDE OF CYPRESS CREEK TOWN CENTER SR54

Physical Address (Street, City, State) 34075 AUGUST AVE WEBSTER FL 33597

Work or Mailing Address (Street, City, Zip) QUALITY CONTROL INSPECTIONS 40 TARBELL AVE BEDFORD, OH 44146

Home Telephone 813-777-2557

Work Telephone 800-766-9273

The above named person did violate the following provision of the Pasco County Code of Ordinances:

☐ **Improper Confinement of Aggressive Animal**
§ 14-41 (a/b)  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Failure to Attach Animal License Tag**
§ 14-96 (d)  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Animal Constituting a Nuisance**
§ 14-98  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Improper Confinement of Vicious Animal**
§ 14-41(a/c)  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Failure to Vaccinate (Rabies)**
§ 14-76  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Animal Running-At-Large**
§14-97(c)  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Inoperative/Wrecked/or Unlicensed Vehicles**
§ 106-54  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Commercial Vehicles**
§ 530.19  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Accumulation of junk/debris**
§ 530.10  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **RVs, Boats, Trailers**
§ 530.5  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Zoning Violation**
§  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Illegal Watering**
§___  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☑ **Other:** SEDIMENT CONTROL
§ 60.3  ☐ Mandatory Court* (if checked)
Class VI   5 Counts   1 Offense

☐ **Prohibited Signs**
§ 601.___  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

☐ **Tree Removal / Protection Violation**
§ 602.___  ☐ Mandatory Court* (if checked)
Class___   ___ Counts   ___ Offense

Officer's Statement of Facts Concerning Violation: DEFENDANT FAILED TO PROPERLY INSTALL SOIL EROSION AND SEDIMENT CONTROL DEVICES IN ACCORDANCE WITH FDEP STANDARDS

☑ Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal – breed, colors, name, sex, age)

Witness (Name, Address)
STEVEN CARTER   4454 GRAND BLVD   NPR, FL 34652-5402

Witness (Name, Address)
ANDREW KAPLINSKI   4454 GRAND BLVD   NPR, FL 34652-5402

Witness (Name, Address)

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 10-1-07 | 9:15AM | James O. Cook  ENGINEERING INSPECTOR | |
|---|---|---|---|
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

**ARRAIGNMENT INFORMATION**
12-21-07   8:30 AM
Date and Time

* YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT"

☑ East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
☐ W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828 27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

**TOTAL FINE AMOUNT = $ 2500.00**
PLUS $73.00 COURT COST

Defendant's Signature / Date  Bret H. Guy  10-1-07

Defendant's Fingerprint

Original – Clerk   Canary – State Attorney   Pink – Agency   Goldenrod – County Attorney   Blue – Defendant



# PASCO COUNTY ORDINANCE CITATION

| Agency No. | Court Case No. | |
|---|---|---|
| 2007 23403 | 51-200 **8-33459** COA ES | The undersigned officer certifies that on **1-22-08** at **2:45 PM** |
| | | Month, Day, Year    Time |

**Defendant (Last, First, Middle, Alias)**
GUY, BRET HUGH    Social Security Number    SPN Number

| DOB | Sex | Race | Height | Weight | Hair | Eyes | Driver's License No. |
|---|---|---|---|---|---|---|---|
| 10-31-58 | M | W | 5'10" | 165 | | | FL G000-068-58-391-0 |

**Location of Violation** NORTH SIDE OF
CYPRESS CREEK TOWN CENTER CR54    **Physical Address (Street, City, State)** 34075 AUGUST AVE WEBSTER FL 33597

**Work or Mailing Address (Street, Town, City, Zip)**
QUALITY CONTROL INSPECTIONS 40 TARBELL AVE BEDFORD, OH 44146
Home Telephone 813-777-2557    Work Telephone 800-766-7273

## The above named person did violate the following provision of the Pasco County Code of Ordinances:

- [ ] **Improper Confinement of Aggressive Animal**
  § 14-41 (a/b)   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Improper Confinement of Vicious Animal**
  § 14-41(a/c)   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Inoperative/Wrecked/or Unlicensed Vehicles**
  § 106-54   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **RVs, Boats, Trailers**
  § 530.5   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [x] **Other:** SEDIMENT CONTROL
  § 604.3   [ ] Mandatory Court* (if checked)
  Class VI   1 Counts   2 Offense

- [ ] **Failure to Attach Animal License Tag**
  § 14-96 (d)   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Failure to Vaccinate (Rabies)**
  § 14-76   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Commercial Vehicles**
  § 530.19   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Zoning Violation**
  § ___   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Prohibited Signs**
  § 601   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Animal Constituting a Nuisance**
  § 14-98   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Animal Running-At-Large**
  § 14-97(c)   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Accumulation of junk/debris**
  § 530.10   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Illegal Watering**
  § ___   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

- [ ] **Tree Removal / Protection Violation**
  § 602   [ ] Mandatory Court* (if checked)
  Class ___   Counts ___   Offense ___

**Officer's Statement of Facts Concerning Violation:** DEFENDANT FAILED TO PROPERLY INSTALL SOIL EROSION AND SEDIMENT CONTROL DEVICES IN ACCORDANCE WITH FDEP STANDARDS SEDIMENT ON CR 54

[ ] **Photographic Evidence**

**Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)**

**Witness (Name, Address)**
DAN WILLISTON - PASCO COUNTY ENGINEERING INSPECTOR    TROUBLE CREEK & GRAND BU

**Witness (Name, Address)**

**Witness (Name, Address)**

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 1-28-08 | 11 AM | James O. Cook - ENGINEERING INSPECTOR | |
|---|---|---|---|
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

**ARRAIGNMENT INFORMATION**
25 APRIL 08    8:30 AM
Date and Time

**\* YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT"**

- [x] East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
- [ ] W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828.27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

**TOTAL FINE AMOUNT = $ 500.00**
PLUS $13.00 COURT COST

Defendant's Signature    Date 1-29-08

Defendant's Fingerprint

Original – Clerk    Canary – State Attorney    Pink – Agency    Goldenrod – County Attorney    Blue – Defendant

Rev. 7/05

# PASCO COUNTY ORDINANCE CITATION



| Agency No. | Court Case No. | | |
|---|---|---|---|
| 20072340.3 | 51-2008-33460-COAES | The undersigned officer certifies that on 1-28-08 | at 4:30 PM |
| | | Month, Day, Year | Time |

| Defendant (Last, First, Middle, Alias) | | | | | Social Security Number | SPN Number |
|---|---|---|---|---|---|---|
| GUY, BRET HUGH | | | | | | |

| DOB | Sex | Race | Height | Weight | Hair | Eyes | Driver's License No. |
|---|---|---|---|---|---|---|---|
| 10-31-58 | M | W | 5'10" | 165 | | | FL G000-068-58-391-0 |

Location of Violation SOUTH SIDE of CYPRESS CREEK TOWN CENTER SR50 | Physical Address (Street, City, State) 34075 AUGUST AVE WEBSTER, FL 33597-9731

Work or Mailing Address (Street, City, Zip) QUALITY CONTROL INSPECTIONS 40 TARBELL AVE BEDFORD, OH 44146 | Home Telephone 813-777-2557 | Work Telephone 800-766-7273

## The above named person did violate the following provision of the Pasco County Code of Ordinances:

☐ **Improper Confinement of Aggressive Animal**
§ 14-41 (a/b)  ☐ Mandatory Court* (if checked)
Class___  ☐ Counts  ___ Offense

☐ **Improper Confinement of Vicious Animal**
§ 14-41(a/c)  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Inoperative/Wrecked/or Unlicensed Vehicles**
§ 106-54  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **RVs, Boats, Trailers**
§ 530.5  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☑ **Other:** ILLICIT DISCHARGE
§ 604.5  ☐ Mandatory Court* (if checked)
Class VI  1 Counts  2 Offense

☐ **Failure to Attach Animal License Tag**
§ 14-96 (d)  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Failure to Vaccinate (Rabies)**
§ 14-76  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Commercial Vehicles**
§ 530.19  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Zoning Violation**
§___  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Prohibited Signs**
§ 601  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Animal Constituting a Nuisance**
§ 14-98  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Animal Running-At-Large**
§14-97(c)  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Accumulation of junk/debris**
§ 530.10  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Illegal Watering**
☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

☐ **Tree Removal / Protection Violation**
§ 602  ☐ Mandatory Court* (if checked)
Class___  ___ Counts  ___ Offense

Officer's Statement of Facts Concerning Violation: DEFENDANT DISCHARGED SEDIMENT FROM CONSTRUCTION ACTIVITIES TO THE STORMWATER SYSTEM & CYPRESS CREEK WETLAND J

☐ Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)
FRANK GARGANO   SWFWMD   2379 BROAD ST (US 41 S) BROOKSVILLE, FL 34604-6899
Witness (Name, Address)
CLIFF JACKSON   SWFWMD   2379 BROAD ST (US 41 S) BROOKSVILLE FL 34604-6899
Witness (Name, Address)

Witness (Name, Address)

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

1-28-08 | 11 AM | James O. Croft  ENGINEERING INSPECTOR | 
Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval

| **ARRAIGNMENT INFORMATION** | 25 APRIL 08   8:30 AM | * YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT" |
|---|---|---|
| | Date and Time | |

☑ East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
☐ W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828 27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

## TOTAL FINE AMOUNT = $ 500.00

PLUS $13.00 COURT COST

Bret H Guy  1-29-08
Defendant's Signature  Date

Defendant's Fingerprint

Original – Clerk   Canary – State Attorney   Pink – Agency   Goldenrod – County Attorney   Blue – Defendant

Rev. 7/05

# PASCO COUNTY ORDINANCE CITATION



| Agency No. 200723403 | Court Case No. 51-2008-33450-COAES | The undersigned officer certifies that on 1-28-08 at 11:30 AM |
| --- | --- | --- |

Month, Day, Year   Time

Defendant (Last, First, Middle, Alias)
GUY, BRET HUGH

Social Security Number   SPN Number

| DOB 10-31-58 | Sex M | Race W | Height 5'10" | Weight 165 | Hair | Eyes | Driver's License No. FL G 000-068-58-391-0 |
| --- | --- | --- | --- | --- | --- | --- | --- |

Location of Violation SOUTH SIDE OF CYPRESS CREEK TOWN CENTER SR54
Physical Address (Street, City, State) 34075 AUGUST AVE WEBSTER, FL 33597-9731

Work or Mailing Address (Street, City, Zip) QUALITY CONTROL INSPECTIONS 40 TARBELL AVE BEDFORD, OH 44146
Home Telephone 813-777-2557
Work Telephone 800-766-7273

## The above named person did violate the following provision of the Pasco County Code of Ordinances:

☐ **Improper Confinement of Aggressive Animal**
§ 14-41 (a/b)  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Improper Confinement of Vicious Animal**
§ 14-41 (a/c)  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Inoperative/Wrecked or Unlicensed Vehicles**
§ 106-54  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **RVs, Boats, Trailers**
§ 530.5  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☑ **Other:** ILLICIT DISCHARGE
§ 604.5  ☐ Mandatory Court* (if checked)
Class VI  3 Counts  3 Offense

☐ **Failure to Attach Animal License Tag**
§ 14-96 (d)  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Failure to Vaccinate (Rabies)**
§ 14-76  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Commercial Vehicles**
§ 530.19  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Zoning Violation**
§___  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Prohibited Signs**
§ 601.___  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Animal Constituting a Nuisance**
§ 14-98  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Animal Running-At-Large**
§ 14-97(c)  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Accumulation of junk/debris**
§ 530.10  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Illegal Watering**
§___  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

☐ **Tree Removal / Protection Violation**
§ 602.___  ☐ Mandatory Court* (if checked)
Class___ ☐ Counts___ Offense

Officer's Statement of Facts Concerning Violation: DEFENDANT DISCHARGED SEDIMENT FROM CONSTRUCTION ACTIVITIES TO CYPRESS CREEK (WETLAND L-J-P

☑ Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)

Witness (Name, Address)
FRANK GARGANO   SWFWMD   2379 BROAD ST (US 41) BROOKSVILLE, FL 34604-6899

Witness (Name, Address)
CLIFF JACKSON   SWFWMD   S/A ABOVE

Witness (Name, Address)

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 1-28-08 | 11 AM | Jan O. Cin  ENGINEERING INSPECTOR | |
| --- | --- | --- | --- |
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

| ARRAIGNMENT INFORMATION | 25 APRIL 08   8:30 AM | * YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT" |
| --- | --- | --- |
| | Date and Time | |

☑ East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
☐ W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828 27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

## TOTAL FINE AMOUNT = $1500.00

$13 00 COURT COST

Defendant's Signature   Date 1/29/08

Defendant's Fingerprint

Original – Clerk   Canary – State Attorney   Pink – Agency   Goldenrod – County Attorney   Blue – Defendant

Rev. 7/05

# PASCO COUNTY ORDINANCE CITATION



| Agency No. | Court Case No. | |
|---|---|---|
| 200723403 | 51-200 8 33461 - COA ES | The undersigned officer certifies that on _1-28-08_ at _12 NOON_ |

Month, Day, Year    Time

**Defendant (Last, First, Middle, Alias)**
GUY , BRET HUGH

Social Security Number _____   SPN Number _____

| DOB | Sex | Race | Height | Weight | Hair | Eyes | Driver's License No. |
|---|---|---|---|---|---|---|---|
| 10-31-58 | M | W | 5'10" | 165 | | | G 000-068-58-391-0 |

**Location of Violation** NORTH SIDE OF   **Physical Address (Street, City, State)**
CYRESS CREEK TOWN CENTER SR56   34075 AUGUST AVE   WEBSTER , FL 33597-9731

**Work or Mailing Address (Street, City, Zip)**   44146
QUALITY CONTROL INSPECTIONS  40 TARBELL AVE  BEDFORD OH

| Home Telephone | Work Telephone |
|---|---|
| 813-777-2557 | 800-766-7273 |

The above named person did violate the following provision of the Pasco County Code of Ordinances:

☐ **Improper Confinement of Aggressive Animal**
§ 14-41 (a/b)  ☐ Mandatory Court* (if checked)
Class___  ☐ Counts___  Offense___

☐ **Failure to Attach Animal License Tag**
§ 14-96 (d)  ☐ Mandatory Court* (if checked)
Class___  ☐ Counts___  Offense___

☐ **Animal Constituting a Nuisance**
§ 14-98  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Improper Confinement of Vicious Animal**
§ 14-41(a/c)  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Failure to Vaccinate (Rabies)**
§ 14-76  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Animal Running-At-Large**
§14-97(c)  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Inoperative/Wrecked/or Unlicensed Vehicles**
§ 106-54  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Commercial Vehicles**
§ 530.19  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Accumulation of junk/debris**
§ 530.10  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **RVs, Boats, Trailers**
§ 530.5  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Zoning Violation**
§___  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Illegal Watering**
☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☑ **Other:** ILLICIT DISCHARGE
§ 604.5  ☐ Mandatory Court* (if checked)
Class VI  3 Counts  5 Offense

☐ **Prohibited Signs**
§ 601  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

☐ **Tree Removal / Protection Violation**
§ 602  ☐ Mandatory Court* (if checked)
Class___  Counts___  Offense___

**Officer's Statement of Facts Concerning Violation:** DEFENDANT DISCHARGED SEDIMENT FROM CONSTRUCTION ACTIVITIES TO WETLAND A, WETLAND E AND WETLAND AT I75 AND SR 56

☐ Photographic Evidence

**Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)**

**Witness (Name, Address)**   34604-6899
FRANK GARGANO  SWFWMD  2379 BROAD ST (US HWY 41 S) BROOKSVILLE FL

**Witness (Name, Address)**
CLIFF JACKSON  SWFWMD  S/A ABOVE

**Witness (Name, Address)**

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 1-29-08 | 11 AM | Jame O. Clof  ENGINEERING INSPECTOR | |
|---|---|---|---|
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

**ARRAIGNMENT INFORMATION**

25 APRIL 08    8:30 AM
Date and Time

* **YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT"**

☑ East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
☐ W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828-27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

**TOTAL FINE AMOUNT = $ 1500.00**
PLUS $13.00 COURT COST

| Defendant's Signature | Date |
|---|---|
| Brut H. G | 1/28/08 |

Defendant's Fingerprint

Original – Clerk    Canary – State Attorney    Pink – Agency    Goldenrod – County Attorney    Blue – Defendant

Rev. 7/05



# PASCO COUNTY ORDINANCE CITATION

| Agency No. 200723403 | Court Case No. 51-2008-33451-COA ES | The undersigned officer certifies that on 1-28-08 at 1:00 PM |
|---|---|---|
| | | Month, Day, Year — Time |

| Defendant (Last, First, Middle, Alias) GUY, BRET HUGH | | | | | Social Security Number | SPN Number |
|---|---|---|---|---|---|---|

| DOB 10-31-58 | Sex M | Race W | Height 5'10" | Weight 165 | Hair | Eyes | Driver's License No. G 000-068-58-391-0 |
|---|---|---|---|---|---|---|---|

Location of Violation SOUTH SIDE OF CYPRESS CREEK TOWN CENTER 525B

Physical Address (Street, City, State) 34075 AUGUST AVE WEBSTER, FL 33597-9731

Work or Mailing Address (Street, Town, City, Zip) QUALITY CONTROL INSPECTIONS 40 TARBELL AVE BEDFORD, OH 44146

Home Telephone 813-777-2557   Work Telephone 800-766-7273

### The above named person did violate the following provision of the Pasco County Code of Ordinances:

- [ ] **Improper Confinement of Aggressive Animal** § 14-41 (a/b) ☐ Mandatory Court* (if checked) Class___ Counts___
- [ ] **Improper Confinement of Vicious Animal** § 14-41(a/c) ☐ Mandatory Court* (if checked) Class___ Counts___
- [ ] **Inoperative/Wrecked/or Unlicensed Vehicles** § 106-54 ☐ Mandatory Court* (if checked) Class___ Counts___
- [ ] **RVs, Boats, Trailers** § 530.5 ☐ Mandatory Court* (if checked) Class___ Counts___
- [✓] **Other:** ILLICIT DISCHARGE § 604.5 ☐ Mandatory Court* (if checked) Class VI   1 Counts   4 Offense
- [ ] **Failure to Attach Animal License Tag** § 14-96 (d) ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Failure to Vaccinate (Rabies)** § 14-76 ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Commercial Vehicles** § 530.19 ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Zoning Violation** §___ ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Prohibited Signs** § 601. ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Animal Constituting a Nuisance** § 14-98 ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Animal Running-At-Large** § 14-97(c) ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Accumulation of junk/debris** § 530.10 ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Illegal Watering** § ___ ☐ Mandatory Court* (if checked) Class___ Counts___ Offense
- [ ] **Tree Removal / Protection Violation** § 602. ☐ Mandatory Court* (if checked) Class___ Counts___ Offense

Officer's Statement of Facts Concerning Violation: DEFENDANT DISCHARGED SEDIMENT FROM CONSTRUCTION ACTIVITIES TO CYPRESS CREEK (WETLAND J)

☑ Photographic Evidence

Physical Description (Defendant – tattoos, scars, features; Animal - breed, colors, name, sex, age)

Witness (Name, Address) FRANK GARGANO SWFWMD 2379 BROAD ST (US 41S) BROOKSVILLE FL 34604-6899

Witness (Name, Address) CLIFF JACKSON SWFWMD S/A ABOVE

Witness (Name, Address)

I swear and affirm that the above statements are true and correct to the best of my knowledge and belief.

| 1-28-08 | 11 AM | James O. Croft ENGINEERING INSPECTOR | |
|---|---|---|---|
| Date of Issue | Time of Issue | Issuing Officer's Signature / Title | Supervisory Approval |

| **ARRAIGNMENT INFORMATION** | 25 APRIL 08 8:30 AM | * YOU ARE REQUIRED TO APPEAR AT ARRAIGNMENT ON ANY CHARGE MARKED "MANDATORY COURT" |
|---|---|---|
| | Date and Time | |

- [✓] East Pasco County Courthouse, 38053 Live Oak Avenue, Dade City
- [ ] W. Pasco Judicial Center, 7530 Little Rd., New Port Richey

FAILURE TO COMPLY WITH THE INSTRUCTIONS TO PERSONS CITIED (SET FORTH ON THE REVERSE SIDE OF THIS CITATION) MAY RESULT IN A JUDGMENT ENTERED AGAINST YOU IN AN AMOUNT UP TO $500.00 OR A WARRANT BEING ISSUED FOR YOUR ARREST. ANY PERSON WHO WILLFULLY REFUSES TO SIGN AND ACCEPT A CITATION ISSUED BY AN OFFICER MAY BE GUILTY OF A MISDEMEANOR OF THE SECOND DEGREE, IN ACCORDANCE WITH FS 828 27(5), PUNISHABLE AS PROVIDED IN FS 775.082, 775.084. YOUR SIGNATURE IS NOT AN ADMISSION OF GUILT.

## TOTAL FINE AMOUNT = $ 500.00

PLUS $13.00 COURT COST

Defendant's Signature Bret H St    Date 1-29-08

| Original – Clerk | Canary – State Attorney | Pink – Agency | Goldenrod – County Attorney | Blue – Defendant | Defendant's Fingerprint |
|---|---|---|---|---|---|

Rev. 7/05

Restaurants In Lineup For Cypress Creek -
DEVELOPER REVEALS 1st TENANT LIST
Tampa Tribune, The (FL) - November 29, 2007
Author: KEVIN WIATROWSKI, The Tampa Tribune
By KEVIN WIATROWSKI

The Tampa Tribune

WESLEY CHAPEL - P.F. Chang's and Panera Bread are two of the dozen eateries announced
Wednesday by the developers of Cypress Creek Town Center .

Cleveland-based Richard E. Jacobs Group officially announced part of its tenant lineup for the
regional mall it is building on the southwest corner of State Road 56 and Interstate 75. The list of
retailers, which includes Sports Authority, Books-A-Million and Circuit City, has been revealed
through building permits, engineering plans and other public records.

Until Wednesday, Jacobs was extremely tight-lipped about its future tenants, declining to discuss
even those revealed by public records.

Wednesday's statement, released by Jacobs spokesman Bill Fullington, represented the first time
the developers unveiled the mix of restaurants, special-interest stores and personal services on
tap for the mall.

Fullington said there will another round of tenant announcements, but he didn't say when.

"When we feel like we've got enough critical mass to make a decent splash, we'll make an
announcement," Fullington said.

Jacobs is one of three major retail developers planning to compete for the shopping dollars of
residents of southern Pasco and northern Hillsborough counties. Like its rivals, Jacobs plans to
build an open-air "lifestyle center"; it originally planned an enclosed mall.

When it was approved by Pasco County commissioners in 2004, Cypress Creek Town Center
was the first of the three plazas out of the blocks.

Since then, Jacobs' rivals, The Grove at Wesley Chapel and Shops at Wiregrass, managed to get
the jump on development as Jacobs' project got bogged down by legal challenges.

The Grove opened its first phase this month just north of County Road 54 and Oakley Boulevard.
The rest of the 800,000-square-foot mall is expected to open in the spring.

Shops at Wiregrass, being developed by Jacobs' hometown rival Forest City Enterprises, is under
construction at S.R. 56 and Bruce B. Downs Boulevard. The 750,000-square-foot plaza could
open as soon as next spring.

EXHIBIT 5

Jacobs hopes to begin erecting its buildings by January or February, Fullington said. The company still plans to open the mall next fall.

"At this point, everything's on schedule," Fullington said.

Environmentalists continue to fight the project because it sits on the banks of Cypress Creek, an Outstanding Florida Water and a major tributary of the Hillsborough River. The Hillsborough provides Tampa's drinking water.

Critics of the mall contend runoff from the site will ruin the creek. Jacobs has agreed to extensive measures aimed at avoiding that by reducing runoff from the site.

Jacobs has fended off every challenge to date but faces a federal lawsuit by the Sierra Club aimed at overturning a federal wetlands-fill permit granted this year.

(CHART) CYPRESS CREEK TOWN CENTER TENANTS

Here is the list of tenants Richard E. Jacobs Group revealed Wednesday. Company officials say they'll release more names, possibly early next year.

Restaurants

P.F. Chang's; TGI Friday's; Akaya Japanese Steak House; Fish City; Red Brick Pizza; Matoi Sushi; 5 Guys Original Hamburgers; Panera Bread; Bamboo Creek Asian Bistro; Jamba Juice; Coldstone Creamery; Urban Flats

Fashion, Specialty Stores

Picture Factor; Yankee Candle; Hallmark; Family Christian Bookstore; Payless Shoe Source; Asphalt; Motherhood Maternity; Claire's Boutique; Movie Stop; Game Stop; Soccer Corner; Vitamin Stop

Home, Personal Services

Mattress Firm; Nail Trix; Grow Financial Federal Credit Union; T-Mobile; Caribbean Adventures Travel; Hair Matrix

Other Stores

Sports Authority; Linens-N-Things; Old Navy; Kohl's; Staples; Justice for Girls; Dress Barn; Famous Footwear; SuperTarget; Books-A-Million; Circuit City

Movie theater

AMC Theatre

Reporter Kevin Wiatrowski can be reached at (813) 948-4201 or kwiatrowski@tampatrib.com.
Edition: FINAL
Section: PASCO
Page: 1
Record Number: MERLIN_9939997
Copyright (c) 2007 The Tribune Co.

WEEK IN REVIEW
Tampa Tribune, The (FL) - December 2, 2007
Cypress Creek Tenants Announced

P.F. Chang's, 5 Guys Original Hamburgers, Circuit City, Old Navy, Kohl's and Books-A-Million are among the stores scheduled to open at the planned Cypress Creek Town Center in Wesley Chapel.

The Cleveland-based Richard E. Jacobs Group on Wednesday announced part of its tenant lineup for the regional mall it is building on the southwest corner of State Road 56 and Interstate 75.

Though the names of some businesses previously had been revealed through building permits , engineering plans and other documents, Wednesday marked the first time the tight-lipped developer disclosed a list of tenants. An announcement about other tenants is expected, though company officials would not say when.

Jacobs plans to start construction in January or February and open Cypress Creek in the fall.

For the list of tenants, go to pasco.tbo.com/pasco/MGBLZKOMK9F.html.



Wetland Impact Area
W-A3 (0.07 Ac.)

Wetland Impact Area
W-A1 (0.18 Ac.)

Project Limits (507.7 Ac.)

Wetland Impact Area
W-F (0.30 Ac.)

Isolated Non-COE Jurisdictional
Wetland Impact Area
W-G (2.54 Ac.)

Surfacewater Impact Area
W-D1 (0.17 Ac.)

Wetland Impact Area
W-L1 (1.46 Ac.)

Wetland Impact Area
W-H (3.73 Ac.)

Wetland Impact Area
W-A (23.26 Ac.)

Isolated Non-COE Jurisdictional
Wetland Impact Area
W-I (0.59 Ac.)

Relocated DOT
Stormwater Pond (3.26 Ac.)

Wetland Impact Area
W-L (0.004 Ac.)

Wetland Impact Area
W-A2 (0.84 Ac.)

Wetland Impact Area
W-L (13.96 Ac.)

Temporary Impact Area
W-L (0.007 Ac.)

Isolated Non-COE Jurisdictional
Surfacewater Impact Area
W-S (0.44 Ac.)

Surfacewater Impact Area
W-N (4.43 Ac.)

Wetland Impact Area
W-J (9.33 Ac.)

Surfacewater Impact Area
W-K (3.84 Ac.)
(DOT Floodplain Mitigation Area)

Surfacewater Impact Area
W-T (0.18 Ac.)

Surfacewater Impact Area
W-U (1.69 Ac.)

Temporary Impact Area
W-K (0.005 Ac.)

Wetland Impact Area
W-O (0.82 Ac.)

Relocated DOT Floodplain
Mitigation Area M-3 (8.27 Ac.)

### Wetland Impacts Table

| ID | ACRES |
|---|---|
| A | 23.26 |
| A1 | 0.18 |
| A2 | 0.84 |
| A3 | 0.07 |
| F | 0.30 |
| H | 3.73 |
| J | 9.33 |
| L | 13.96 |
| L1 | 1.46 |
| O | 0.82 |
| Total: | 53.89 |

### Surfacewater Impact Table

| ID | ACRES |
|---|---|
| D1 | 0.12 |
| K | 3.84 |
| N | 4.43 |
| T | 0.18 |
| U | 1.69 |
| Total: | 9.65 |

### Temporary Wetland Impact Table

| ID | ACRES |
|---|---|
| L | 0.007 |
| K | 0.005 |
| Total: | 0.012 |

CYPRESS CREEK TOWN CENTER
SAJ-2003-2336 (IP-TEH)

ATTACHMENT 1
SHEET __3__ OF 25

U:\gis\7714001\working\card\BRA-Cypress-Creek-COE.dwg

1000    0    500    1000    1 inch ≈ 1000 ft.

Figure 11

*Figure 11*
*Cypress Creek Town Center*
*Impact Location Map*

Biological Research Associates
3905 CRESCENT PARK DRIVE
RIVERVIEW, FL 33569
(813) 664-8501 FAX (813) 664-6440
www.biologicalresearch.com

AR06497

EXHIBIT 6

# Meyer Glitzenstein & Crystal

1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

September 6, 2007

Lt. Gen. Robert L. Van Antwerp
Chief of Engineers,
Army Corps of Engineers
20 Massachusetts Ave., N.W.
Washington, D.C. 20314
202-761-1683 (fax)

Lt. Gen. Robert L. Van Antwerp
Mr. Lance Wood, Esq.
U.S. Army Corp of Engineers
Chief Counsel's Office
441 G. Street, NW
Washington, D.C 20314
lance.d.wood@usace.army.mil

Dirk Kempthorne
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
exsec@ios.doi.gov (executive secretary)
(202) 208-6956 (fax)

Dale Hall,
Director,
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240
dale_hall@fws.gov
703 358 2594 (fax)

**RE:    Cypress Creek Town Center in Pasco County, Florida**

We are writing on behalf of the Sierra Club concerning the Department of Army Permit



recycled paper

EXHIBIT 7

No. SAJ-2003-2336 (IP-THE) (May 15, 2007) ("Permit"), authorizing the destruction of wetlands for construction of the Cypress Creek Town Center ("CCTC") under section 404 of the Clean Water Act. As you know, Sierra Club gave notice of its intent to sue to challenge the Permit in its correspondence of July 17, 2007, unless the Corps suspends or revokes the Permit.

Among other legal violations identified by the Sierra Club in its July 17, 2007, Notice, the Sierra Club explained that the CCTC development will cause significant degradation of Cypress Creek, an Outstanding Florida Water, and ultimately the Hillsborough River, to which Cypress Creek flows. Moreover, in issuing the Permit the Corps failed to take a hard look at such degradation, both during the construction and during the operation of the CCTC development; it did not require that practicable alternatives to reduce or avoid impacts be pursued; and it did not require minimization of such impacts.

Land clearing of the CCTC development site has begun. Not surprisingly, the project has unlawfully discharged large amounts of turbid storm water into wetlands and Cypress Creek, significantly degrading the wetlands and the Creek. The developer of the site has now been cited twice for discharges, see attached, by two separate agencies. As the Sierra Club explained earlier, the CCTC project will inescapably cause significant degradation of Cypress Creek, and ultimately Hillsborough River, which is unlawful under the Clean Water Act.

The Sierra Club continues to be gravely concerned that the Corps has failed to comply with the ESA, the CWA, and NEPA in granting the Permit at issue. The Sierra Club again requests that the Corps suspend or revoke the Permit authorizing the CCTC project while the Corps undertakes the additional analyses mandated by federal law. Absent such actions, the Sierra Club intends to file suit to bring the Corps into compliance with the law. In the meantime, the Sierra Club also requests that the Corps station officers at the CCTC site to monitor activities and prevent any further discharges. Please feel free to contact us to discuss these matters.

Sincerely,

Joshua R. Stebbins

cc:

    Governor Charles Crist
    Office of the Governor
    The Capitol
    400 South Monroe Street
    Tallahassee, FL 32399



# Southwest Florida
## Water Management District

An Equal
Opportunity
Employer

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)
On the Internet at: WaterMatters.org

**Bartow Service Office**
170 Century Boulevard
Bartow, Florida 33830-7700
(863) 534-1448 or
1-800-492-7862 (FL only)
SUNCOM 572-6200

**Lecanto Service Office**
Suite 226
3600 West Sovereign Path
Lecanto, Florida 34461-8070
(352) 527-8131

**Sarasota Service Office**
6750 Fruitville Road
Sarasota, Florida 34240-9711
(941) 377-3722 or
1-800-320-3503 (FL only)
SUNCOM 531-6900

**Tampa Service Office**
7601 Highway 301 North
Tampa, Florida 33637-6759
(813) 985-7481 or
1-800-836-0797 (FL only)
SUNCOM 578-2070

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 20, 2007

Hank King
15330 Cypress Creek Run
Lutz, FL 33559-08606

Subject:    Letter Dated August 14, 2007
            Construction Inspection Deviation for Cypress Creek Town Center

Dear Mr. King:

Enclosed you will find a copy of a letter dated on August 14, 2007, by Compliance Engineer, Clay Black concerning the Cypress Creek Town Center – Phase 1, Permit No. 43026931.001. This letter is being sent to you, as requested by H. Robert Lue, Director, Brooksville Regulation Department.

If I can be of any further assistance, please don't hesitate in contacting me at 1-800-423-1476, extension. 4349.

Sincerely,

Sandy Semegen
Field Service Supervisor
Brooksville Regulation Department

SS:jen
Enclosure
cc:    Files of Record 43026931.001/CT 181111 and CT 191098
       H. Robert Lue, P.E., Director, Brooksville Regulation Department
       Wojciech M. Mroz, P.E., Surface Water Regulation Manager
       Leonard Bartos, P.W.S., Environmental Regulation Manager
       C. Clay Black, P.E., Senior Professional Engineer
       Frank Gargano, Senior Field Technician
       Cliff Jackson, Senior Field Technician





Southwest Florida
Water Management District

2379 Broad Street, Brooksville, Florida 34604-6899
(352) 796-7211 or 1-800-423-1476 (FL only)
SUNCOM 628-4150  TDD only 1-800-231-6103 (FL only)

On the Internet at: WaterMatters.org

An Equal
Opportunity
Employer

| | | | |
|---|---|---|---|
| **Bartow Service Office** | **Lecanto Service Office** | **Sarasota Service Office** | **Tampa Service Office** |
| 170 Century Boulevard | Suite 226 | 6750 Fruitville Road | 7601 Highway 301 North |
| Bartow, Florida 33830-7700 | 3600 West Sovereign Path | Sarasota, Florida 34240-9711 | Tampa, Florida 33637-6759 |
| (863) 534-1448 or | Lecanto, Florida 34461-8070 | (941) 377-3722 or | (813) 985-7481 or |
| 1-800-492-7862 (FL only) | (352) 527-8131 | 1-800-320-3503 (FL only) | 1-800-836-0797 (FL only) |
| SUNCOM 572-6200 | | SUNCOM 531-6900 | SUNCOM 578-2070 |

Judith C. Whitehead
Chair, Hernando

Neil Combee
Vice Chair, Polk

Todd Pressman
Secretary, Pinellas

Jennifer E. Closshey
Treasurer, Hillsborough

Thomas G. Dabney
Sarasota

Patricia M. Glass
Manatee

Heidi B. McCree
Hillsborough

Ronald E. Oakley
Pasco

Sallie Parks
Pinellas

Maritza Rovira-Forino
Hillsborough

Patsy C. Symons
DeSoto

David L. Moore
Executive Director

William S. Bilenky
General Counsel

August 14, 2007

Pasco 54 Ltd., Pasco 54 Inc., Pasco Ranch Inc., and Pasco Properties
509 Guisando De Avila, Suite 200
Tampa, FL 33613

Subject:    CONSTRUCTION INSPECTION DEVIATION
            Project Name:  Cypress Creek Town Center – Phase 1
            Permit No.:    43026931.001
            CT No.:        181111
            Sec/Twp/Rng:   27/26S/19E
            County:        Pasco

Dear Permittees:

The District has received a complaint alleging that turbid water is discharging from your site located at SR 56 in Pasco County. District staff investigated and found the following deviations:

- Water levels in Wetland R are very high and it appears that unauthorized discharges have occurred.
- Turbidity levels in Wetland R and Wetland L are very high.
- Erosion control and sedimentation barriers have not been repaired around Wetland L.

These problems must be corrected immediately in order to assure continued compliance with your permit. I suggest you employ a Florida Professional Engineer to investigate, devise solutions, and oversee remedial construction.

Please respond to this letter within 14 days of receipt with the results of your investigation, a repair plan, and a construction schedule. Your plan should address dewatering activities, turbidity reduction, and erosion control measure construction and maintenance.

You may contact me at the Brooksville Service Office, extension 4325 if you wish to discuss this matter further.

Sincerely,

C. Clay Black, P.E.
Brooksville Regulation Department

CCB:jen
cc:    Files of Record 43026931.001/CT 181111 and CT 191098
       WilsonMiller Inc.
       Don Campbell, Kearney Construction Co., LLC
       Brent Guy, Quality Control Inspection, Inc
       H. Robert Lue, P.E., Director, Brooksville Regulation Department
       Wojciech M. Mroz, P.E., Surface Water Regulation Manager
       Leonard Bartos, P.W.S., Environmental Regulation Manager
       Sandy Semegen, Field Technician Manager
       Frank Gargano, Senior Field Technician
       Cliff Jackson, Senior Field Technician

CERTIFIED MAIL   RETURN RECEIPT REQUESTED



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
Tampa Regulatory Office
10117 Princess Palm Ave, STE 120
Tampa, FL 33610

REPLY TO
ATTENTION OF

Regulatory Division
Enforcement Section
Tampa Regulatory Office
SAJ-2003-2336 (IP-TEH)

Sierra Properties
509 Guisando De Avila, STE 200
Tampa, FL 33613

<u>NOTICE OF NONCOMPLIANCE</u>

Dear Gentlemen:

A recent inspection of your property by U.S. Army Corps of
Engineers staff indicates that you have not complied with the
terms and conditions of your Department of the Army permit.
Department of the Army permit No. 2003-2336 (IP-TEH) authorized
you to perform work in jurisdictional wetlands associated with
the Cypress Creek Town Center project. The project is located at
the junction of State Road 54 and I-75, Pasco County, Florida.
(Lat. 28.19294° N; Long. 82.39138° W)

On July 31, 2007, district staff documented that 0.785
acres of jurisdictional wetlands had been mechanically cleared
and compacted during construction activities. Although the
wetland disturbance had been self-reported by you via your
environmental consultant, the work was unauthorized and was in
violation of your permit.

In addition, Army Corps staff documented unauthorized
offsite discharges in Cypress Creek as follows: (1) During our
July 31, 2007 inspection, staff documented the accumulation of
eroded sediments in the creek. The sedimentation was associated
with a failed sedimentation barriers along the eastern boundary
of the creek. (2) On August 3, 2007, staff documented that
turbid water had been discharged to the creek because water and
sediments had breached your sedimentation screens. Your state
water quality certification did not authorize offsite
discharges. Failure to comply with your water quality
certification and failure to maintain your site activities in
good condition are violations of the general conditions of your
Federal permit.

-2-

It is my responsibility, as District Engineer, to issue this Notice of Noncompliance. My staff is conducting an investigation to determine the most appropriate enforcement action to address the alleged violation.

Among the enforcement options available are actions in Federal District Court for fines and injunctions requiring work cessation and/or restoration. The Court may also require that the restoration be performed by a third-party contract and be funded through a money judgment against the Permittee.

On an administrative level, the permit may be suspended, revoked, or modified and administrative penalties assessed. The administrative penalty proceeding requires notice to the Department of Environmental Protection and to all interested persons, all of who can submit comments. If you do not request an administrative hearing, anyone who comments may request one. The Corps may levy a Class I Administrative penalty in an amount not exceeding $27,500 in a case such as this.

You are advised to acknowledge receipt of this letter within 15 days. You should provide any information concerning why the terms and conditions of your Department of the Army permit have not been complied with.

The Corps does acknowledge your good-faith efforts to address the referenced problems on site. As of this date, you have submitted a restoration plan to restore the damaged wetland and, to our knowledge, are working with Southwest Water Management District staff to improve your site stabilization measures to prevent further offsite discharges or degradation of water quality.

-3-

If you have any questions regarding this letter, please contact Thomas Farrell at the letterhead address or at telephone 813.769.7072.

Sincerely,

for:

Paul L. Grosskruger
Colonel, U.S. Army
District Commander

cc: Frank Gargano
Senior Field Technician
Brooksville Regulation Department
Southwest Florida Water Management District
2379 Broad ST
Brooksville, Florida 34604-6899

Biological Research Associates
c/o John Bailey and Eva Bailey
3905 Crescent Park DR
Riverview FL 33569

Cypress Creek Town Center

Frequently Asked Questions

**How did the Permittee violate the Corps permit issued for Cypress Creek Town Center?**

The Permittee failed to maintain the site in good condition resulting in the discharge of turbid water into Cypress Creek. In doing so, the Permittee also failed to comply with the state Environmental Resource Permit, a requirement of the Corps permit.

**Has the Permittee been cited by the Corps for other violations on this site in the past?**

There have been 2 incidences of noncompliance with the Corps permit. The first occurred in August of 2007 and involved the clearing of a wetland that was not authorized to be impacted and also the offsite discharge of sediments and turbid water into Cypress Creek. The second incident was discovered by the Corps on January 24, 2008, and again involved discharge of sediments and turbid water into Cypress Creek.

**Why did the Corps suspend the permit for this project?**

By discharging turbid water into Cypress Creek on two occasions and failing to comply with the state Environmental Resource Permit, the Permittee failed to comply with the Corps permit. The Corps' decision to issue the permit was based on assurances that adequate storm water management practices would be implemented and the state Environmental Resource Permit would be complied with. It is clear to the Corps that these assurances have not been met. The permit will be suspended until the Permittee can provide assurance that a solution to the problem has been developed and implemented.

**How has Cypress Creek been affected?**

The Corps is currently in the process of identifying any adverse impacts that may have occurred to Cypress Creek and adjacent wetlands.

EXHIBIT 8

**Why did the violation occur?**

The Corps identified one of the stormwater ponds constructed adjacent to Cypress Creek, in the southwest corner of the project site, as the main source of the turbid discharge. The precise failure of this pond to adequately control discharge has not been identified at this time.

**What has been done to fix the problem and prevent additional turbid discharge to Cypress Creek?**

The Corps inspection of January 24, 2008, found temporary structures constructed of plywood board at the discharge weir of the stormwater pond. The structures did not provide assurances of permanent cessation of discharge from the project site. The Corps is requiring Initial Corrective Measures, (a plan to be provided by a certified Professional Engineer) which will temporarily prevent discharge of turbid waters from leaving the project site. A plan to address the situation permanently will be required.

**What effect does the permit suspension have on the development of Cypress Creek Town Center?**

The permit will remain suspended until the Permittee can provide assurance that a solution to the problem has been developed and implemented. The Permittee is no longer authorized to work in areas that have been identified as waters of the United States.

**Now that the permit has been suspended, what happens next?**

The permit will remain suspended until the Permittee can provide assurance that a solution to the problem has been developed and implemented. Within 10 days of the suspension, the Permittee must provide the Corps with a written plan to prevent future turbid discharges. The Corps will then decide to reinstate, modify, or revoke the permit.

**How does the permit suspension affect the ongoing lawsuit filed by the Sierra Club against the Corps?**

The permit suspension has no relationship with or bearing whatsoever on the pending lawsuit.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| SIERRA CLUB, et al., Plaintiffs ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 1:07-cv-01756 (RCL) |
| ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA PROPERTIES, et al., ) | |
| ) | |
| Intervening Defendants ) | |

_____)

## [PROPOSED] ORDER DENYING
## FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND AND
## STAY OF THE LITIGATION AND MEMORANDUM IN SUPPORT THEREOF

This matter is before the Court on Federal Defendants' Motion For Voluntary Remand And Stay Of The Litigation And Memorandum In Support Thereof and Plaintiffs' Opposition thereto. Upon consideration of the briefs, as well as the entire record in this case, it is, by the Court, this __ day of ____, 2008, hereby

ORDERED that Federal Defendants' request for remand and a stay of the briefing schedule during remand be denied.

_____

U.S. District Court Judge
Royce C. Lamberth

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| SIERRA CLUB, et al., Plaintiffs | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civ. No. 1:07-cv-01756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| and | ) |
| | ) |
| SIERRA PROPERTIES, et al., | ) |
| | ) |
| Intervening Defendants | ) |

_____ )

**ALTERNATIVE [PROPOSED] ORDER**
**ESTABLISHING A BRIEFING SCHEDULE**
**FOR TEMPORARY INJUNCTIVE RELIEF**

This matter is before the Court on Federal Defendants' Motion For Voluntary Remand

And Stay Of The Litigation And Memorandum In Support Thereof and Plaintiffs' Opposition

thereto.  Upon consideration of the briefs, as well as the entire record in this case, it is, by the

Court, this __ day of ____, 2008, hereby

ORDERED that within fourteen days, Plaintiffs will file their motion for a preliminary

injunction;

ORDERED that within eleven days after the filing of any motion for a preliminary

injunction, Federal Defendants and Intervening Defendants shall file any Opposition thereto; and

ORDERED that within five days after the filing of any Opposition, Plaintiffs shall file their reply thereto.

_____
U.S. District Court Judge
Royce C. Lamberth