# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 1:07-cv-01756 (RCL) |
| ) | |
| LT. GEN. ROBERT L. VAN ANTWERP, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA PROPERTIES I, LLC, et al., ) | |
| ) | |
| Intervening Defendants. ) | |

## PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' NOTICE OF FILING OF ADDITIONAL CORRECTIVE MEASURES

Plaintiffs respectfully urge that the Court require defendants to immediately file oppositions to Plaintiffs' summary judgment motion. The Army Corps of Engineers' ("Corps's") justification for a stay of litigation in this case - that its review of the Clean Water Act section 404 permit challenged by Plaintiffs might result in some modification of the permit rendering Plaintiffs' claims moot – no longer exists. <u>The Corps has now provided its "preliminary" conclusion that the cause of the unlawful discharges - the sole issue it was "reviewing" - was supposedly attributable to human error, and not any defect in the permit that Plaintiffs are challenging in this case.</u> May 16, 2008, Notice of Additional Corrective Measures ("May 16, 2008, Notice"), Ex. C at 5. Meanwhile, continuing delay in the litigation greatly prejudices Plaintiffs given the ongoing planning, permitting and construction related activities in and/or around the Cypress Creek Town Center ("CCTC") site that will increasingly limit the

Plaintiffs' effective remedies in this case.[1]

More specifically, the Corps has now "made a preliminary determination that [the] discharges to date" - again, the only issue it is reviewing - "occurred as a result of human error[,] construction sequencing" and "inadequate best management practices." May 16, 2008, Notice, Ex. C at 5.  According to the Corps, "[t]here is no evidence to suggest that the discharges were a result of a fault in the design of the storm water management system."  Id.[2]

To be sure, Plaintiffs disagree with the Corps's renewed faith that the CCTC permit will not cause significant degradation to Cypress Creek in violation of the Clean Water Act.  But more importantly for present purposes, <u>the Corps's conclusion undermines its own justification for further delaying this litigation: that its review of the ongoing discharges could result in some revocation or modification of the CCTC permit such that "some or all of Plaintiffs' claims in this lawsuit may be rendered moot."</u>  Federal Defendants' Motion For Voluntary Remand And Stay Of The Litigation And Memorandum In Support Thereof ("Remand Motion") at 3 (emphasis added) (D.E. 41).

Meanwhile, the Corps has now authorized Intervening Defendants to "complete[] the infrastructure for the storm water management system and grading" within CCTC wetlands.

---

[1] Plaintiffs filed for summary judgment on January 16, 2008, pursuant to the Court's January 14, 2008, Scheduling Order still in effect in this case.  Federal and Intervening Defendants unilaterally failed to file their oppositions as required by the Scheduling Order.  On February 13, 2008, Federal Defendants moved for a stay and voluntary remand to review the issue of discharges of polluted water – which had been occurring since at least August 2007. Federal Defendants' motions are still pending.

[2] The Corps has refused to review the majority of issues in this case, including Plaintiffs' claims: i) in Count I that the Corps violated the Endangered Species Act; ii) in Count II that the Corps violated the Clean Water Act by failing to require Intervening Defendants to avoid and minimize impacts to wetlands, and by relying upon mitigation programs that have failed in the

May 16, 2008, Notice at 2-3. Notwithstanding the Corps's "suspension" of the permit at issue, Intervening Defendants were already allowed to proceed with construction in uplands on the CCTC site, and to use the wetlands to support such construction, including by stockpiling materials and supplies, maintaining their construction office and driving in the wetlands. E.g. Remand Motion, Ex. C, T. Farrell Declaration at ¶ 4. Thus, at this point, the Corps's purported "suspension" of the CCTC permit is now reduced, in effect, to its direction that Intervening Defendants "may not include any impervious surface nor advancement of construction of the [actual] retail structures" in wetlands, with certain purported limitations on grading. May 16, 2008, Notice at 4.

      That the Corps finds itself compelled to allow work that it had previously suspended during its review - construction and grading in wetlands - as the "best option" to prevent further discharges simply demonstrates the prejudice to Plaintiffs of allowing defendants to unilaterally shelve the briefing schedule ordered by the Court. Id. at 3 (citations and quotations omitted). Over time the Corps and Intervening Defendants have and will continue to take incremental steps that, as a practical matter, reduce the availability of alternatives to the CCTC permit as issued, and that commit the Corps to eventually allowing the CCTC development to proceed largely as planned. Indeed, the Corps has now concluded that it is "urgent" and "important for this [construction and grading] work . . . to begin as soon as possible" because of the oncoming rainy season. Id. at 3 (citations and quotations omitted). Notably, discharges did not occur before work on the site commenced, and now further work on site is supposedly necessary to prevent further discharges.

---

past; and iii) in Count III that the Corps violated NEPA.

The prejudice to Plaintiffs of further delay - including the narrowing of potential alternatives and remedies - is also evident in the Corps's recent authorization of construction of an elevated highway interchange, including on the CCTC site and in CCTC wetlands, to service the traffic that CCTC and other development will generate — an action that was never even addressed in the Environmental Assessment for the CCTC permit.  See April 28, 2008, Notice Of Filing Of Declaration, Ex. 1 at 2-3 (D.E. 50).  Although the Corps has reserved the right to "require[] [Intervening Defendants] to restore the site," May 16, 2008, Notice at 4 (citations and quotations omitted), the Corps's authorization of construction and grading in wetlands demonstrates that, as a practical matter, construction in and/or around the CCTC site, and the Corps's authorization of it, increasingly limits the Corps's options and the Plaintiffs' effective remedies.  This is especially true with respect to environmental impacts - such as impacts on endangered and threatened species - not even addressed in the Corps's administrative review of its unlawfully issued permit.

As then judge Stephen Breyer explained, with each incremental action by the Corps, and with each advancement of construction in and/or around CCTC, the "difficulty of stopping the bureaucratic steamroller, once started," increases, as does the reluctance to dismantle work that has been completed.  Sierra Club v. Marsh, 872 F.2d 497, 504 (1st Cir. 1989).  The very risk that NEPA was designed to address - "that real environmental harm will occur through inadequate foresight and deliberation" - is intensified, as is the difficulty in rectifying NEPA's violations, to Plaintiffs' great prejudice.  Id.

NEPA requires that environmental review be done early in an agency's decision making processes precisely to ensure that the agency adequately identifies and considers environmental

impacts before making its decisions and commitments.  <u>See</u>, <u>e.g.</u>, 40 C.F.R § 1501.2 (apply NEPA at "the earliest possible time to insure that planning and decisions reflect environmental values").  For this reason, the Court should require that litigation proceed as already ordered.  This is all the more true given the ongoing harm to threatened and endangered species in the form of habitat loss on site, which continues unabated.

      Plaintiffs therefore respectfully urge the Court to order defendants to immediately file oppositions to Plaintiffs' motion for summary judgment.  The remote possibility that the Corps will reverse its "preliminary" findings of human error and decide instead to revoke or modify the permit should not be allowed to delay this litigation any further.  Prejudice to Plaintiffs increases with time, and the Corps itself acknowledges that its review will take another three months, subject to "additional delays in the receipt of necessary information from the Permittee," May 16, 2008, Notice, Ex. A at 2 – delays which have already extended the Corps's review by two and a half months to date.  May 16, 2008, Notice at 5 (Corps's review has been "hampered by a two-and-a-half month delay in receiving necessary technical reports from the permittee"); <u>see also</u> <u>id.</u>, Ex. B at 2.  To the extent that the Corps needs to finalize its review, there is no reason why it cannot do so while litigation proceeds: this is exactly what the Corps chose to do for the first half of this litigation when it reviewed the issue of the discharges between August 2007 and January 2008.  <u>E.g.</u> Remand Motion, Ex. C, Thomas A. Farrell Decl., at 1 (describing Corps's "multiple" visits to CCTC site and documentation of unlawful discharges between July 31, 2007, and January 31, 2008).

                                    Respectfully submitted,

                                    _____/s/_____
                                    Joshua Stebbins
                                    D.C. Bar No. 468542
                                    Eric R. Glitzenstein
                                    D.C. Bar No. 358287

                                    MEYER GLITZENSTEIN & CRYSTAL
                                    1601 Connecticut Ave., NW, Suite 700
                                    Washington, D.C. 20009
                                    (202) 588-5206

                                    Attorneys for Plaintiffs

June 3, 2008