UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, *et al.* | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 07-1756 (RCL) |
| | ) |
| LT. GEN. ROBERT L. VAN ANTWERP, *et al.* | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

Now before the Court comes federal defendants' motions [41] for voluntary remand and stay of the litigation, and [42] for extension or stay of briefing schedule and request for expedited consideration. Intervenors Sierra Properties I, LLC, Pasco 54, LTD, Pasco Ranch, Inc., and JG Cypress Creek LLC ("Intervenors") have filed responses in support of federal defendants' motions. Upon consideration of the parties' filings, applicable law, and the facts of this case, the Court finds that the motion for voluntary remand and stay will be GRANTED. Accordingly this case will be stayed pending the Army Corps of Engineers' ("Corps") final decision on remand. The motion for extension or stay of briefing schedule will be DENIED as moot.

**I.   BACKGROUND**

Intervenors are developers of Cypress Creek Town Center ("CCTC"), a regional shopping mall with supporting commercial establishments, including retail businesses, hotels, restaurants, cinemas, and multi-family residential housing. The development is located on

approximately 507 acres of undeveloped land in Pasco County, Florida.  (*See* Compl. ¶¶ 56–58.)  In May 2005, Sierra Properties applied for a Clean Water Act ("CWA") permit pursuant to CWA section 404.  (*See* Intervenors' Mem. [8-4] at 3.)  On October 31, 2005, the Corps issued a public notice regarding CCTC's proposed filling of approximately 54 acres of wetlands and 10 acres of surface waters with 270,418 cubic yards of fill material.  (*See* Compl. ¶ 82.)  At that time, a public comment period began wherein extensive comments were made regarding the environmental impact of the CCTC development.  (*See id.* ¶¶ 84–87.)  Following the comment period, on May 15, 2007, the Corps issued an Environmental Assessment finding that CCTC would not cause unacceptable environmental impacts and issued the requested section 404 permit allowing development of CCTC to proceed.  (*See id.* ¶ 88; Environmental Assessment, Ex. A to Intervenors' Mem. [8-4].)

On October 1, 2007, plaintiffs filed suit in this Court against federal defendants alleging improper issuance of the CWA section 404 permit and an improper concurrence letter issued by the United States Fish and Wildlife Service ("FWS") stating that CCTC would not adversely impact four endangered species, the Wood Stork, the Florida Scrub Jay, the Eastern Indigo Snake, and the Manatee.  (*See* Compl. ¶¶ 1, 4.)  Plaintiffs' complaint asks this court to find that the section 404 permit was issued in violation of the Endangered Species Act, the CWA, the National Environmental Policy Act ("NEPA"), the Administrative Procedure Act, and their accompanying regulations.  (*See id.* ¶ 131.)  Thus, plaintiffs request that the Corps' permit and the FWS concurrence letter be remanded to accurately assess impacts to threatened species and to compel compliance with CWA requirements for avoidance and minimization of impacts to wetlands and waters.  (*See id.* ¶ 5.)

On January 16, 2008, plaintiffs filed a motion [32] for summary judgment.  On February

5, 2008, before opposition briefs to this motion were due, federal defendants filed a notice [40] with the Court indicating that the Corps had suspended Sierra Properties' section 404 permit effective February 1, 2008. The Corps suspended the permit because the project had discharged turbid water into Cypress Creek. (*See* Notice of Permit Suspension, Ex. A to Notice [40] at 2.) During suspension, work "in any areas of the [CCTC] site that have been identified as waters of the United States" is prohibited unless authorized for remediation. (*See id.* at 3.) Further, the Corps indicated that it required initial corrective action to ensure that additional offsite discharges would not occur and stated that following the suspension, the Corps would decide whether to reinstate, modify, or revoke the permit. (*See id.* at 3–4; Hurst Decl., Ex. B to Mot. for Remand ¶¶ 3–4.)

On February 13, 2008, federal defendants filed their motion for voluntary remand and stay pending final Corps action on the remanded permit. According to the Corps, the intervening events that led to the permit's suspension and new evidence gained from subsequent investigation and review of the permit decision may render some or all of plaintiffs' claims moot.

Federal defendants filed a notice [52] with the Court on May 16, 2008, indicating that the Corps had authorized additional corrective measures to protect Cypress Creek and associated wetlands from potential discharges of turbid water. (*See* Approval Ltr., (May 16, 2008), Ex. B to Notice [52] at 2.) The Corps emphasized that its corrective measures did not alter the fact that it was still considering reinstatement, modification, or revocation of the suspended permit. (*See id.*) Plaintiffs, claiming that a remand and stay will prejudice environmental interests and only cause delay, oppose defendants' motion.

## II. ANALYSIS

### A. Applicable Law

#### 1. Agency Power to Reconsider Own Actions

It is undisputed "that administrative agencies have inherent power to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Prieto v. United States*, 655 F. Supp. 1187, 1191 (D.D.C. 1987) (citing *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)); *see also Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962) (stating that an agency wishing to reconsider its action, should move the court to remand or hold the case in abeyance pending the agency's reconsideration). Accordingly, courts in this Circuit commonly grant motions to remand an administrative record to allow an agency to consider new evidence that became available after the agency's original decision. *See, e.g., Ethyl Corp. v. Browner*, 989 F.2d 522, 523–24 & n.3 (D.C. Cir. 1993). In making such decisions, the Circuit prefers "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Id.* at 524 (citing *Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C. Cir. 1992)). In the case where an intervening event may affect the validity of the agency action at issue, a remand is generally required. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028–29 (Fed. Cir. 2001) (citing *Ethyl*, 989 F.2d at 524); *see also Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (noting that it can be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action"). Even in the absence of intervening events, upon an agency's remand request, the reviewing court still has discretion over whether to remand. *See, e.g., id.* at 417 (citing *SKF USA*, 254 F.3d at 1029). In that situation, as long as the

4

agency's concern is substantial and legitimate, a remand is usually appropriate. *See id.*; *but cf. Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (indicating that an agency's remand request may be refused if the request is frivolous or in bad faith).

### 2. Scope of Judicial Review

In an administrative review case pursuant to the APA, "review is limited to the administrative record, which 'includes all materials compiled by the agency that were before the agency at the time the decision was made.'" *Piersall v. Winter*, 507 F. Supp. 2d 23, 34 (D.D.C. 2007) (Lamberth, J.) (quoting *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). Furthermore,

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Nat'l Treasury Employees Union v. Horner*, 854 F.2d 490, 500 (D.C. Cir. 1988) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

When analyzing a motion for stay, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). In its analysis, a district court should take into account the plaintiff's interest in bringing the case to trial. *See id.* at 707.

B.    **Remand for Agency Reconsideration Is Appropriate**

In this case, the Court finds that remand is appropriate and well within the Corps' inherent authority to reconsider a permit decision. The Corps suspended Sierra Properties' permit based on evidence of turbid water discharges that came to light subsequent to the original permit issuance. The favorable permit decision was based on Sierra Properties' proposed plans and environmental controls that gained assurance that the project would meet section 404 permit guidelines, would be in the public interest, and would not impose unacceptable impacts to the wetlands and water quality. (*See* Hurst Decl. ¶ 3.) Now, "[t]he Corps intends to carefully examine whether the repeated turbid discharges have any effect on the assurances provided by [Sierra Properties] and the Corps' reliance on them." (*See id.*) Based on the Corps' investigation, it may conduct additional environmental review pursuant to the Endangered Species Act or NEPA. (*See id.* at 4.) And, the Corps will ultimately decide to affirm, modify, or revoke the permit.[1] Reconsideration based on new evidence such as the turbid discharges into Cypress Creek is precisely the kind of reconsideration that courts typically permit. *See Ethyl Corp. v. Browner*, 989 F.2d 522, 523–24 & n.3 (D.C. Cir. 1993) (granting motion for reconsideration where tests provided to the Environmental Protection Agency after an original decision warranted remand to allow for consideration of the new evidence). Remand in this case will serve the interest of allowing the Corps to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources. *See id.* Furthermore, by remanding

---

[1] Plaintiffs emphasize that the Corps has reached a "preliminary determination" that the turbid water discharges were the result of human error rather than a fault in design. (*See* Hurst Mem. (May 16, 2008), Ex. C to Notice [52] at 5.) Yet, the Corps makes clear that this conclusion is preliminary, that its investigation is ongoing, and that its final decision will affirm, modify, or revoke the permit. (*See id*).

the case at this stage of the proceedings, the Court obviates the need to consider this case at a time when the Court's evaluation of the evidence would be highly unusual and problematic. First, if the Court evaluated the permit decision based on the entire record now available—including the discharges of turbid water—the Court would be issuing a decision based on materials not available to the Corps at the time when it made its decision. *See Pirlott v. NLRB*, 522 F.3d 423, 433 (D.C. Cir. 2008) ("[A] reviewing court must confine itself to the grounds upon which the record discloses that the agency's action was based."); *see also Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1105 n.18 (D.C. Cir. 1979) (noting that "[i]t is basic that the agency action cannot be sustained on the basis of information not relied upon by the agency or disclosed in its record of consideration") (citation omitted). And, if the Court based its decision on the full administrative record available to the Corps at the time when it issued the section 404 permit, the Court would effectively be issuing an advisory opinion on the validity of an action taken based on a factual record that excludes evidence that may now be relevant to Sierra Properties' ability to obtain a section 404 permit. Such a decision based on theoretical, rather than actual facts, would be an opinion in contravention of Article III of the Constitution. *See Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 23 (D.D.C. 2007) (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968)) (indicating that "Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues"). Given the above considerations, there is a substantial interest in delaying any judicial decision until the Corps has had an opportunity to reconsider its permit decision based on the evidence derived from the intervening turbid water discharges and resulting investigation.

Additionally, the Corps has a substantial and legitimate interest in reconsidering its permit decision on remand based on a more complete factual record.

The Court recognizes that plaintiffs allege that the section 404 permit at issue here is deficient for several reasons, only one of which relates to degradation of waters of the United States.[2]  Yet, the fact that plaintiffs assert more than one problem with the CCTC permit does not alter the factors assessed above that the Court considers in reaching its remand decision, and does not change the fact that the Corps may ultimately revoke the permit or modify its decision-making process in such a manner that would make these proceedings moot.  *Cf. Northhampton Media Assocs. v. FCC*, 941 F.2d 1214, 1217 (D.C. Cir. 1991) (quoting *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1247 n.84 (D.C. Cir. 1972)) (indicating that "remand is unnecessary where agency action on remand would 'inevitably arrive at the same result'").

Plaintiffs also contend that any stay of judicial proceedings will cause extreme prejudice to environmental interests.  Yet, the permit's suspension in effect removes the potential harm created by Intervenors in the areas under the Corps' jurisdiction.  The Corps' most recent notice of additional corrective measures indicates that the Corps' is "limit[ing] the work authorized to only that which is necessary to implement corrective measures." (*See* Hurst Mem. (May 16, 2008), Ex. C. to Notice [52] at 6; *see also* Farrell Decl., Ex. C. to Mot. for Remand ¶ 4 (indicating that during suspension, CCTC work on the wetlands will be restricted to: (1) interim corrective measures, and (2) use of the site's main access road and leaving Sierra Properties' office trailer and previously stockpiled soils and pipes in place.)  Thus, despite plaintiffs' alarm,

---

[2] For example, plaintiffs assert that the Corps' failure to consult the Fish and Wildlife Service about adverse impacts to endangered species before issuing the section 404 permit is a violation of the Endangered Species Act and that the Corps' remand will focus solely on the turbid water discharges.  (*See* Compl. ¶¶ 125–27.)

the Court fails to see how extreme prejudice would accompany a stay pending the Corps' reconsideration on remand.[3] Additionally, the Court notes that plaintiffs filed suit alleging that the Corps issued the section 404 permit without undertaking proper legal analysis, and now that the Corps has suspended that permit and voluntarily asked to reconsider its decision, plaintiffs object. Yet, even if plaintiffs are ultimately successful in this forum, the likely relief would be in the form of setting aside the original permit decision and remanding to the Corps for reconsideration in light of applicable law. *See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2529 (2007) (noting that upon an agency's arbitrary and capricious decision, the proper course is to remand to the agency) (citing *Gonzalez v. Thomas*, 547 U.S. 183 (2006) (per curiam)). The Corps' voluntary reconsideration of the permit appears to be a development along the lines of the relief that plaintiffs seek.

In light of the above discussion, and while taking into account plaintiffs' interest in proceeding to trial, the Court finds that remand of these proceedings to the Corps for reconsideration of its section 404 permit decision is appropriate.[4]

---

[3] Plaintiffs are concerned that CCTC development will continue during the permit's suspension. Yet, any such development would necessarily occur outside the Corps' jurisdiction. Granting relief based on development in these areas would not be appropriate.

[4] In the event that the Court granted federal defendants' motion for remand, Plaintiffs asked this Court to accompany the remand order with a preliminary injunction of all construction activities on the CCTC site except for necessary remediation activities. (*See* Opp. to Remand at 13.) The Court declines to order such relief. From the time that plaintiffs initiated this lawsuit, they had the ability to seek injunctive relief from this Court. Either because they thought that they were not entitled to such relief, or for some other strategic reason, plaintiffs did not seek an injunction. Plaintiffs have still filed no motion for preliminary injunction—ensuring that the issue is not properly before this Court—and yet they state that the Court should order such relief.

**III.     CONCLUSION**

Upon full consideration of federal defendants' motion [41] for voluntary remand and stay of litigation, the entire record herein, and applicable law, the Court finds that the motion will be GRANTED.  The section 404 permit will be remanded to the Corps and all proceedings in this case will be stayed pending final Corps action on remand.  Federal defendants' motion [42] for extension of time or stay of briefing schedule and request for expedited consideration will be DENIED as moot, and plaintiffs' motion [32] for summary judgment will be DENIED without prejudice to refiling said motion upon final Corps action.

A separate order shall issue this date.


Signed by Chief Judge Royce C. Lamberth, on June 11, 2008.