# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| SIERRA CLUB, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | )  Civ. No. 1:07-cv-01756 (RCL) |
|  | ) |
| Van Antwerp, et al., | ) |
|  | ) |
| Defendants. | ) |

_____)

## PLAINTIFFS' RESPONSE
## TO FEDERAL DEFENDANTS' JUNE 12, 2009 STATUS REPORT

Almost a year and a half ago the Army Corps of Engineers ("Corps") and the Fish and

Wildlife Service ("FWS") (collectively "Federal Defendants") moved the Court for a voluntary

remand of this case because of the massive, repeated and unlawful discharges of polluted water

into Cypress Creek and its wetlands, an Outstanding Florida Water system, from the Cypress

Creek Town Center ("CCTC") construction site.  The Corps now estimates that it needs an

additional three months before it can even "reach a final decision on whether to reaffirm, modify

or revoke the permit."  See Federal Defendants' Status Report at 1 ("Report").  Although

Plaintiffs recognize that the Court will await the completion of the remanded proceedings before

taking any further action in this case, there are several issues raised by the Corps's filing that

warrant a brief response to ensure the Court has a clear understanding of the current posture of

the remanded proceedings.

The very fact that the Corps will take over a year and a half to determine whether the

CCTC permit complies with the Clean Water Act ("CWA") and other federal laws demonstrates

the potential for significant environmental impacts from the CCTC project and the clear need for

an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA").  See 42 U.S.C. § 4332.  Indeed, in suspending the CCTC permit, the Corps itself has acknowledged that CCTC has already had significant environmental impacts: "[i]t is clear to the Corps that [the permittees'] assurances" . . . "that the project would meet 404(b)(1) guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality" . . . "have not been met."  February 1, 2008 Notice of Permit Suspension at 2-3 ("Suspension") (emphasis added) (Ex. 1).

According to the Corps's June 12, 2009 Report, the Justice Department has deemed CCTC's violation sufficiently significant that it is filing a consent decree and imposing financial penalties.  See Report, Ex. 1 at ¶ 7.  Moreover, as Plaintiffs have explained, the sheer enormity of CCTC's millions of square feet of office, retail and residential space and its sixteen thousand parking spaces in such an environmentally sensitive location – including federally protected wetlands, occupied habitat for federally listed species, a government designated "critical wildlife linkage," and a state designated "Outstanding Florida Water" – renders the potential for such significant environmental impacts unavoidable.

Yet, despite these past and prospective impacts and the time that has elapsed since the remand, the Corps has not used this time to prepare an EIS.  Nor could the Corps prepare a comprehensive EIS in the three months that the Corps estimates it will take to make a new decision.  See Report, Ex. 1 at ¶ 8.

Moreover, Plaintiffs have repeatedly and unsuccessfully sought to meaningfully engage the Corps during the remand.  Plaintiffs have submitted detailed information to the Corps on several occasions including July 23, 2008, August 11, 2008, January 15, 2009, and May 8, 2009,

providing information concerning the environmental impacts of CCTC and feasible alternatives to CCTC that minimize those impacts.  Plaintiffs have requested to meet with the Corps to discuss this information.  Yet the Corps has never agreed to meet with Plaintiffs.  Unsuccessful in their entreaties to the Corps, and in an effort to ensure that their submissions were fully informed, Plaintiffs were relegated to filing a Freedom Of Information Act ("FOIA") request to obtain information relating to the Corps's review.  Even then, it took the Corps several months to begin providing documents in response to the FOIA request – by which time the Corps's formal opportunity for public comment had closed.[1]

To date, therefore, the Corps has largely excluded Plaintiffs from meaningful involvement in the new permit decision, although it has continued to afford Intervening Defendants extraordinary input, including multiple meeting and comment opportunities.  The Corps's heavy reliance on Intervening Defendants in reviewing the permit is particularly striking as the Corps itself determined that Intervening Defendants provided the Corps with unmet assurances to obtain the CCTC permit in the first instance.  Ex. 1, Suspension at 2-3.  Indeed, Plaintiffs themselves have identified for the Corps patently false statements that Intervening Defendants made to Federal Defendants in applying for the CCTC permit – including denying

---

[1]  Although the Corps issued a public notice and request for comment in its ongoing review of the permit, the notice omitted reference to the significant environmental values at risk, including the destruction of occupied habitat for endangered and threatened species, the fact that Cypress Creek is an Outstanding Florida Water ("OFW") and that the permit calls for the destruction of upland buffers around the OFW that protect the creek's water quality and comprise in significant part the critical wildlife linkage running across the site, and the fact that the OFW would receive drainage from parking lots, among other things.  In its initial Environmental Assessment, the Corps itself admitted serious concerns about such impacts and the effects of such impacts on, for example, the OFW's water quality, but the concerns are mentioned nowhere in the notice.  See December 16, 2008 Public Notice (Ex. 2).

outright that Intervening Defendants had observed the federally listed endangered wood stork on the CCTC site.

In short, the history of this case demonstrates that CCTC has had, and will have, significant environmental impacts.  Yet nothing about the Corps's remand to date suggests that the Corps is taking the legally mandated hard look at such impacts in an EIS, that it will "independent[ly] verif[y]" feasible alternatives to minimize the impacts, or that it will require Intervening Defendants to pursue such alternatives, as required by NEPA and the CWA.  See Utahns for Better Transp. v. U.S. Dep't of Transp., 305 F.3d 1152, 1165, 1186 (10th Cir. 2002), modified in part 319 F.3d 1207 (10th Cir. 2003) (emphasis added).  Nor has the Corps's remand been the transparent process that its Report would suggest.  Instead, despite CCTC's past permit violations and the other significant issues raised in this case, it appears that the Corps is gearing up to reissue substantially the same permit without performing an EIS or seriously scrutinizing project alternatives, and the parties will be back before this Court when it does so.[2]

_____

[2] Plaintiffs have requested that Federal Defendants stay the effective date of any reissued permit until Plaintiffs have had the opportunity to review the terms of the permit and the Court has had the opportunity to resolve any outstanding dispute.  Doing so would conserve the Court's resources by reducing the likelihood that the parties would need to seek preliminary injunctive relief.  To date, however, the parties have not been able to reach such an agreement.

Respectfully submitted,

/s/ Joshua Stebbins
Joshua Stebbins
D.C. Bar No. 468542
Eric R. Glitzenstein
D.C. Bar No. 358287

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW, Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049
jstebbins@meyerglitz.com
eglitzenstein@meyerglitz.com

Date: June 26, 2009                    Attorneys for Plaintiffs