UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB </br> 408 C Street, NE </br> Washington, DC 20002, </br> </br> CLEAN WATER ACTION </br> 4455 Connecticut Avenue NW, A300 </br> Washington, DC 20008-2328, </br> </br> GULF RESTORATION NETWORK </br> 338 Baronne Street, Suite 200 </br> New Orleans, LA 70112, </br> </br> CHRIS LOY </br> 7513 E. Veve Lane </br> Tampa, FL 33610, </br> </br> RICHARD SOMMERVILLE </br> 16205 Larson Lane </br> Hudson, FL 34667, </br> </br>        Plaintiffs, </br> </br>        v. </br> </br> LT. GEN. ROBERT L. VAN ANTWERP, </br>     U.S. Army Corp of Engineers </br>     Chief Counsel's Office </br>     441 G Street, NW </br>     Washington, DC 20314 </br> </br> Ken Salazar, </br>     Secretary, </br>     U.S. Department </br>     of the Interior, </br>     1849 C Street, NW </br>     Washington, DC 20240, </br> </br>        and | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | </br> </br> </br> </br> </br> No. 1:07-cv-1756 (RCL) |

```
Sam Hilton,                                          )
      Director,                                      )
      United States Fish and                         )
      Wildlife Service,                              )
      1849 C Street, NW                              )
      Washington, DC 20240,                          )
                                                     )
                  Defendants,                        )
                                                     )
            v.                                       )
                                                     )
Sierra Properties, Llc.,                             )
      509 Guisando de Avila, Suite 200               )
      Tampa, FL 33613,                               )
                                                     )
Pasco 54, Ltd.,                                      )
      509 Guisando de Avila, Suite 200               )
      Tampa, FL 33613,                               )
                                                     )
Pasco Ranch, Inc.,                                   )
      509 Guisando de Avila, Suite 200               )
      Tampa, FL 33613,                               )
                                                     )
JG Cypress Creek, Llc.,                              )
      25425 Center Ridge Rd.                         )
      Westlake, OH 44145,                            )
                                                     )
                  Intervening Defendants.            )
_____)
```

**REVISED
SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.  This revised supplemental complaint challenges the United States Army Corps of Engineers' ("ACOE's" or "Corps's") unlawful issuance of a modified Clean Water Act section 404 permit numbered SAJ-2003-2336 on September 3, 2009 for the dredging and filling of wetlands and surface waters, and the United States Fish and Wildlife Service's ("FWS's" or "Service's") unlawful August 3, 2009 issuance of a concurrence letter concluding that the

2

modified permit will not adversely affect and/or will have no effect on federally listed species. More specifically, this case challenges the Corps's decision to issue a modified permit for the destruction of federally protected wetlands and surface waters in order to allow construction of a massive mall and commercial complex called Cypress Creek Town Center – containing over two million square feet of retail space, half a million square feet of office space, hundreds of residences and hotel rooms and thousands of parking spaces – without statutorily required consultation on impacts to federally listed species; without ensuring that the action will not cause or contribute to the significant degradation of waters of the United States or violations of state water quality standards; without requiring that impacts to wetlands be avoided and minimized; and without preparing an Environmental Impact Statement. This case also challenges the Corps's unlawful take of federally listed species without formally consulting with the Fish and Wildlife Service and obtaining an Incidental Take Statement authorizing the take. This complaint supplements and incorporates by reference all allegations and claims made in Plaintiffs' October 1, 2007 complaint.

## Jurisdiction

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 16 U.S.C. § 1540(g), and 33 U.S.C. § 1365(a).

## Parties

3. The parties to this case include the same Plaintiffs as identified in the initial complaint filed in this case on October 1, 2007. Intervening Defendants also remain unchanged. Defendant Lt. Gen. Robert L. Van Antwerp continues as a Defendant. Pursuant to Fed. R. Civ. P. 25(d), Defendant officials sued in their official capacity have automatically been replaced upon ceasing

to hold office as follows: Defendant Ken Salazar is sued in his official capacity as Secretary of the Department of the Interior, and replaces Defendant Dirk Kempthorne, who was previously Secretary of the Department of the Interior; Defendant Sam Hamilton is sued in his official capacity as Director of the Fish and Wildlife Service, and replaces Defendant Dale Hall, who was previously Director of the Fish and Wildlife Service.

## Relevant Facts

4.  This case was initially filed on October 1, 2007 challenging a permit issued by the Corps under section 404 of the Clean Water Act ("CWA") on May 15, 2007, for the filling of federally protected wetlands to build a sprawling "regional mall and supporting commercial enterprises, including retail businesses, financial institutions, hotels, restaurants, cinemas, offices and multi-family residential housing" to be known as "Cypress Creek Town Center" ("CCTC"). Corps Environmental Assessment and Statement of Finding Of No Significant Environmental Impact, May 15, 2007 ("EA") at 2.  The project will destroy wood stork habitat, eastern indigo snake habitat and Florida scrub jay habitat.  It will imperil the water quality, and quantity, of Cypress Creek and its associated wetlands – an Outstanding Florida Water ("OFW") – and therefore the City of Tampa's drinking water which Cypress Creek helps to supply.  It will pave over a recharge area for groundwater aquifers while drawing heavily upon that groundwater.  It also threatens a critical wildlife linkage that traverses the site and connects nearby conservation lands.  As set forth in Plaintiffs' October 1, 2007 Complaint, Plaintiffs contend that the Corps's actions, and the CCTC permit, violate the Clean Water Act, 33 U.S.C. § 1344 et seq. ("CWA"), the Endangered Species Act, 16 U.S.C. § 1532 et seq. ("ESA"), and the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA").

5. Almost immediately after construction work commenced at the CCTC site, the site began discharging massive amounts of polluted water into Cypress Creek and its remaining wetlands.  Over the next months government entities such as Pasco County and the Southwest Florida Water Management District ("SWFMD") issued numerous citations for unlawful discharges and various other legal violations.  During this time the Corps issued two notices of violations of the Clean Water Act in August 2007 and again in February 2008.  The discharges resulted in turbidity, as well as lead and copper levels that exceed state water quality standards.

6. On July 17, 2007 the Sierra Club formally provided the Corps with the statutorily required sixty days notice of the Sierra Club's intent to sue under the ESA.

7. On October 1, 2007 Plaintiffs filed suit challenging the CCTC permit and the Corps's and FWS's actions in connection therewith.  On January 16, 2008 Plaintiffs moved for summary judgment, arguing, among other things, that the project would degrade Cypress Creek and otherwise violate the CWA.

8. On February 1, 2008, approximately two weeks after being served with Plaintiffs' summary judgment motion, the Corps announced that it suspended the CCTC permit and moved for a voluntary remand of the case, which the Court granted on June 11, 2008.  As the Corps itself acknowledged in suspending the permit, it was "clear to the Corps that [the applicants'] assurances" – "that the project would meet [Clean Water Act] 404(B)(1) guidelines, would be in the public interest, and would not impose significant, unacceptable impacts to wetlands and water quality" – had proven false in view of the illegal discharges to Cypress Creek.

9. Despite the applicant's repeated assurances that the CCTC site would no longer unlawfully discharge turbid water to Cypress Creek and its wetlands, such discharges continued

until at least April 2008. As of the Corps's inspection of the site on March 4, 2009 standing water on site remained turbid. Department of the Army Supplemental Environmental Assessment and Statement of Finding, August 31, 2009 at 23 ("Supp. EA").

10. During the Corps's review on remand, Plaintiffs submitted further information to the Corps relevant to the myriad environmental impacts of the project. Plaintiffs repeatedly requested an opportunity to meet with the Corps, but the Corps refused to meet with Plaintiffs. During this same time frame the Corps repeatedly met and corresponded with the applicant and/or its agents.

11. On December 16, 2008 the Corps issued a public notice concerning its review on remand and its intention to issue a decision on whether to reinstate, revoke, or modify the CCTC permit. The Corps invited comments relating to the regulatory criteria for issuing the CCTC permit, and explained that the Corps would evaluate the activity pursuant to section 404 regulations. The Corps received numerous public comments opposed to the development and contesting the lack of information provided by the Corps in the public notice, including the Corps's failure to identify the existence of federally listed threatened and endangered species on site, the existence of an Outstanding Florida Water at the site, and the existence of a government designated critical wildlife linkage that crossed the site. Many commenters requested a public hearing. Plaintiffs also submitted extensive comments supplementing the information Plaintiffs had previously submitted to the Corps, and again requested a meeting with the Corps.

12. During its review on remand the Corps informally consulted with FWS concerning impacts to federally listed threatened and endangered species. The Corps and FWS did not engage in formal consultation, although the project will adversely affect three listed species

through habitat destruction, degradation and fragmentation.

13. In July 2009 the Corps initiated a civil action against the applicant for the discharges to Cypress Creek and its wetlands. The Corps resolved the civil suit through a consent decree and the issuance of a fine for almost $300,000.

14. On September 3, 2009 the Corps reissued substantially the same permit, with relatively minor modifications to reflect, among other things, the transfer of ownership of parts of the CCTC parcel following issuance of the initial CCTC permit in 2007; changes to conservation easements; and changes in the mitigation plan. The Corps again made a Finding Of No Significant Impact – thus avoiding preparation of the required Environmental Impact Statement – without meaningfully revisiting its previous cumulative impacts assessment, and it prepared a Supplemental Environmental Assessment. The supplemental assessment left most of the original assessment unaffected and referred the reader to the original assessment.

15. In the re-issued permit, the Corps did not enforce the requirement that the applicant pursue practical alternatives to filling wetlands, it did not require the applicant to demonstrate that such alternatives were unpractical, nor did it require that the applicant minimize and/or avoid wetlands impacts. Instead, notwithstanding Plaintiffs' extensive comments urging it to take an alternative approach, the Corps continued to accept the applicant's assertion that reducing the size of CCTC was not practicable because, according to the applicant, the project must make an 8.0% rate of return (profit) on its costs and reducing the size of CCTC reduces the amount of rent CCTC obtains, thus supposedly reducing the rate of return (profit) to below 8% of CCTC's costs. Rather than requiring the applicant to use its actual costs in calculating a rate of return, the Corps used the supposed fair market value for the property as of 2006. Moreover, when the Corps used

the fair market value of the land in determining rates of return, the Corps did not use the fair market value of the property as of 2009 – the time that the Corps issued its determination that impacts to wetlands could not be avoided by reducing the size of CCTC and that the Corps decided to reissue the permit. Instead, despite the abundant evidence that the value of the land had decreased, and the Corps's own assessment that real estate prices did and/or would decrease, the Corps used the 2006 value of the land.

16. The Corps also arbitrarily and capriciously determined that the modified permit would not cause or contribute to the significant degradation of Cypress Creek and its remaining wetlands, despite the fact that the project <u>already</u> had done so, as Plaintiffs predicted and Defendants denied. Such degradation was also a violation of the Environmental Resource Permit issued to the applicant, which the Corps's 2007 permit and 2009 modified permit required compliance with. The Corps continued to rely upon a storm water sampling plan to protect Cypress Creek and its remaining wetlands when that plan had already proved defective and had failed to identify the significant discharges that had occurred to date.

17. The Corps also determined that the modified permit and discharges were not likely to adversely affect the wood stork and the eastern indigo snake, and would not affect the Florida scrub jay. The Corps failed to account for the full loss of wood stork habitat and did not consider the impact on the eastern indigo snake from the loss, degradation and fragmentation of its habitat, and it ignored the observation of an eastern indigo snake on site. With respect to the Florida scrub jay the Corps erroneously determined that there was no habitat on the CCTC site, although Plaintiffs had submitted evidence of such habitat. On August 3, 2009 FWS issued a decision concurring with the Corps and finding that the project was not likely to affect any listed species,

thus bypassing the formal consultation process set forth in the ESA and implementing regulations.  The Corps did not engage in formal consultation with FWS nor did it obtain an incidental take statement authorizing the take of the eastern indigo snake, the wood stork and the florida scrub jay.

18.  The Corps also refused to prepare an Environmental Impact Statement ("EIS") as required by NEPA despite the fact that the project triggered many of the criteria in the NEPA regulations for determining whether the environmental impacts of the project are likely to be significant.  For example, there are unique environmental features at the site, such as Cypress Creek and its wetlands, which are designated an Outstanding Florida Water, and the critical wildlife linkage that traverses the site.  These environmental features already have been significantly affected.  There is occupied habitat for federally listed species on site that will be destroyed.  Work on the project has already caused violations of state water quality standards.  Moreover, the project establishes precedent allowing the degradation of wetlands, Outstanding Florida Waters and critical wildlife linkages.

19.  According to the Corps, its review on remand was prolonged for more than eighteen months because of the continued releases of turbid water from the CCTC site and because the applicant failed to provide required information in a timely manner.

## CLAIM ONE
## THE CORPS: VIOLATIONS OF NEPA

20.  Plaintiffs incorporate the allegations of the initial complaint and paragraphs 1- 19 of the supplemental complaint herein.  By issuing the CCTC permit without providing adequate opportunity for public notice and comment; without taking a hard look at the environmental

impacts of the permit, including secondary and cumulative impacts of the permit and alternatives; without providing adequate and accurate information in the Supplemental Environmental Assessment to inform the public of such environmental impacts; and by failing to prepare an EIS, the Corps has violated NEPA and its implementing regulations, and has acted arbitrarily and capriciously in violation of the APA.  5 U.S.C. § 706(2).

21.  These violations of the NEPA, the applicable regulations, and APA have caused and will continue to cause Plaintiffs injuries as described in ¶¶ 8-30 of the original complaint.

## CLAIM TWO
## THE CORPS: VIOLATIONS OF THE CLEAN WATER ACT

22.  Plaintiffs incorporate the allegations of the initial complaint and paragraphs 1- 19 of the supplemental complaint herein.  By issuing the modified CCTC permit for the destruction of over fifty acres of wetlands and surfaces waters without providing adequate public notice; without requiring the applicant to clearly demonstrate the lack of practicable alternatives; without making determinations supported by information before the agency about the availability of practicable alternatives; without requiring the applicant to pursue alternatives to avoid and minimize impacts to waters of the United States; without ensuring that there would not be significant degradation of waters of the United States; by premising the permit in reliance on mitigation to prevent impacts without addressing the shortfalls of the mitigation when evidence before the agency indicated that mitigation would be unsuccessful; and by failing to take a hard look at the environmental impacts of the permit, including secondary and cumulative impacts, the Corps has violated the Clean Water Act, and has acted arbitrarily and capriciously in violation of the APA.  5 U.S.C. § 706(2).

23. These violations of the CWA, the applicable regulations, and APA have caused and will continue to cause Plaintiffs injuries as described in ¶¶ 8-30 of the original complaint.

### CLAIM THREE
### THE FWS: VIOLATION OF THE ESA

24. Plaintiffs incorporate the allegations of the initial complaint and paragraphs 1- 19 of the supplemental complaint herein.  By issuing its concurrence letter that the CCTC project was not likely to adversely affect the wood stork and the eastern indigo snake, and would have no effect on the Florida scrub jay, and by failing to use the best available data, the FWS violated section 7 of the ESA, 16 U.S.C. § 1536(a), and its implementing regulations, and has acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA").  5 U.S.C. § 706(2).

25. This violation of the ESA, the applicable regulations, and APA have caused and will continue to cause Plaintiffs injuries as described in ¶¶ 8-30 of the original complaint.

### CLAIM FOUR
### THE CORPS: VIOLATION OF THE ESA

26. Plaintiffs incorporate the allegations of the initial complaint and paragraphs 1- 19 of the supplemental complaint herein.  By issuing the section 404 CCTC permit without engaging in formal section 7 consultation with the FWS about the potential impacts, including cumulative impacts, to the Wood Stork and the Eastern Indigo Snake, and the Florida Scrub Jay, and by failing to utilize the best available data, the Corps violated sections 7 and 9 of the ESA, and caused and contributed to others violating the ESA, 16 U.S.C. § 1536(a), and its implementing regulations, and has acted arbitrarily and capriciously in violation of the APA, 5 U.S.C. § 706(2).

27. These violations of the ESA, the applicable regulations, and APA have caused and will continue to cause plaintiffs injuries as described in ¶¶ 8-30.

**WHEREFORE**, Plaintiffs request the Court issue an order:

(1) declaring that the Corps's issuance of the modified permit, and FWS's August 3, 2009 concurrence letter, violated the Endangered Species Act, the Clean Water Act, NEPA, and their implementing regulations, and the Administrative Procedure Act;

(2) preliminarily and permanently setting aside the Corps's modified permit and the FWS's August 3, 2009 concurrence letter and requiring the Corps and/or Intervening Defendants to ameliorate or cause to be ameliorated the damage resulting from the modified permit the Corps unlawfully issued, including but not limited to requiring the restoration of the CCTC site;

(3) awarding Plaintiffs their costs and reasonable attorneys' fees, including expert fees; and

(4) awarding Plaintiffs any other relief that is just and proper.

                          Respectfully submitted,

                          _____/s_____
                          Joshua Stebbins
                          D.C. Bar No. 468542

                          _____/s_____
                          Eric R. Glitzenstein
                          D.C. Bar No. 358287

                          MEYER GLITZENSTEIN & CRYSTAL
                          1601 Connecticut Ave., NW, Suite 700
                          Washington, D.C. 20009
                          (202) 588-5206
                          (202) 588-5049
                          jstebbins@meyerglitz.com
                          eric@meyerglitz.com

                          Attorneys for Plaintiffs

Date: December 14, 2009