UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SIERRA CLUB, *et al.*,

        Plaintiffs,

v.                                              Civ. No. 1:07-cv-01756-RCL

LT. GEN. ROBERT L. VAN ANTWERP, *et al.*,

        Defendants,

SIERRA PROPERTIES, *et al.*,

        Intervening Defendants.
_____/

**FEDERAL DEFENDANTS' BRIEF REGARDING REMEDY**

        Federal Defendants respectfully submit this brief regarding remedy pursuant to the Court's Memorandum Opinion ("Mem. Op.") and Order issued June 30, 2010 (D.E. 91, 92). In its June 30 Memorandum Opinion, the Court found that the Corps had failed to comply with the National Environmental Policy Act ("NEPA") and the Clean Water Act ("CWA") and thus remanded the permit to the Corps. The Court further requested the parties to address the exact parameters of appropriate additional relief, including possible vacatur, in light of the Court's summary judgment ruling. In its accompanying Order, the Court ordered the Federal Defendants and Intervening Defendants to submit a proposed remediation plan and any comments on the injunctive relief sought by Plaintiffs in their proposed order.

        As set forth below, the Court should remand the permit to the Corps without vacatur because the deficiencies identified by the Court in its June 30 Memorandum Opinion may be corrected by agency action on remand and the Corps has concluded that maintenance of the site

1

in its current condition, in accordance with certain permit conditions, is essential to protection of Cypress Creek and surrounding wetlands. Specifically, the Corps has found that continued operation and maintenance of the storm water management system is critical to preventing discharges of turbid water into Cypress Creek. Thus, vacating the permit, which requires the permittee to continue to operate and maintain the storm water management system, would be more disruptive than simply leaving the permit in place pending remand.

The Corps respectfully submits that Plaintiffs' additional requests for relief, including injunctive relief precluding any further activity on site until the Corps complies with NEPA and the CWA and any immediate restoration of the wetlands, seek relief against the Intervening Defendants, and not the Corps. Plaintiffs' claims against the Corps arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), which limits relief against the United States to orders to "hold unlawful and set aside agency action, findings, and conclusions." See also Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). Plaintiffs have not argued, much less established, any basis for this Court to go beyond the ordinary relief available in an APA case and issue an order that would direct the Corps' actions on remand.

Further, the Corps believes the issue of whether the Intervening Defendants should be required to undertake restoration of jurisdictional wetlands filled under the permit is premature. Until the Corps determines on remand whether or not to issue a permit, it is impossible to determine the extent of wetland restoration, if any, that is appropriate. Regarding Plaintiffs' request for an order that would preclude Intervening Defendants from undertaking additional activities on the project site pending a remand, it appears Plaintiffs have not met their burden to

justify such relief. Plaintiffs' sole argument in support of injunctive relief rests on a purported presumption of irreparable harm in NEPA cases. Plfs. Mot. Summ. J. (D.E. 70), at 45. However, the Supreme Court has recently clarified that no such presumption exists. Monsanto Co. v. Geerston Seed Farms, No. 09-475, 2010 WL 2471057, at *11-12 (S. Ct. June 21, 2010).

Notwithstanding Plaintiffs' failure to carry its burden, the Corps notes that if the Court did not enjoin on-going activities within the jurisdictional wetlands, such work could impact the Corps' or the Court's ability to require future restoration efforts, to the extent such relief is appropriate. To the extent the Court finds it appropriate to award permanent injunctive relief prohibiting further work in jurisdictional wetlands on-site, the Corps requests that such relief be narrowly tailored to ensure that those permit conditions related to operation and maintenance of the storm water management system remain in full force and effect.

## BACKGROUND

The statutory and factual background for this case is set forth in the Court's June 30 Memorandum Opinion. Here, we briefly summarize the procedural background and site status relevant to the Court's consideration on remedy. This case involves challenges to a permit issued by the United States Army Corps of Engineers ("Corps") pursuant to Clean Water Act section 404, 33 U.S.C. § 1344(a), to Intervening Defendants, authorizing discharges of dredged or fill materials into waters of the United States for construction of a regional shopping center and mixed-use residential and commercial development known as "Cypress Creek Town Center" or "CCTC," and the Fish and Wildlife Service's concurrence in the Corps' determination that the project is not likely to adversely affect any endangered or threatened species. Plaintiffs filed their Complaint on October 1, 2007, several months after issuance of the permit and after the permittee had substantially completed work to fill the jurisdictional wetlands. At no point did

Plaintiffs file a motion for temporary or preliminary relief to attempt to halt filling of the wetlands.

Shortly after Plaintiffs filed a motion for summary judgment, in February 2008, the Corps issued a Notice of Permit Suspension and sought a voluntary remand and stay of litigation (see D.E. 40, 41), which the Court granted on June 11, 2008 (D.E. 54). The Corps suspended the permit to address several instances of permit violations involving turbid discharges to Cypress Creek that occurred in connection with the permittee's construction of the storm water management system. During the suspension, the Corps prohibited the permittee from undertaking further construction activities in the filled jurisdictional wetlands, except for completion of the storm water management system and related corrective measures, which the Corps deemed necessary to stabilize the site and prevent further turbid discharges to Cypress Creek and surrounding wetlands. See 7/20/10 Decl. of T. Hurst ("Hurst Decl.") ¶ 7 (attached as Fed. Defs. Ex. A). The permittee completed the storm water management system and corrective measures ordered by the Corps. Id.

On September 3, 2009, the Corps issued a modified Clean Water Act permit (SAJ-2003-2336), following an investigation of the causes of the permit violations and further environmental review of the CCTC project. Plaintiffs filed a Revised Supplemental Complaint challenging the 2009 permit (D.E. 69), and this litigation resumed. Following briefing on summary judgment, the Court issued its June 30 Memorandum Opinion (D.E. 92) and Order (D.E. 91), granting Plaintiffs' motion for summary judgment on their NEPA and CWA claims and denying summary judgment on their ESA claim. Additionally, the Court granted the Corps' and Intervening Defendants' motions for summary judgment on Plaintiffs' ESA claim and denied the Corps' and Intervening Defendants' motions for summary judgment on Plaintiffs'

4

NEPA and CWA claims. The Court further remanded the permit to the Corps and requested the parties to address the exact parameters of appropriate additional relief, including possible vacatur, in light of the Court's summary judgment ruling. In its accompanying Order, the Court ordered the Federal Defendants and Intervening Defendants to submit a proposed remediation plan and any comments on the injunctive relief sought by Plaintiffs in their proposed order.

Following the remand, the Corps conducted a site visit to assess the status of the site and any construction activities. See Hurst Decl. ¶ 2. The Corps confirmed that all of the jurisdictional wetlands for which impacts were authorized under the permit have been filled. Id. Further, the Corps observed that "the only activity on the site relates directly to the construction of County Road 54 through the southern half of the project area" and that "[a]ll other areas within the project area remain unaltered from the stabilized condition attained in 2008." Id.

Because the wetland areas have been filled, "constructed storm water management system is necessary to adequately manage and treat storm water inputs from the project site." Id. ¶ 6. Several permit conditions pertain to the continued operation and maintenance of the storm water management system and ongoing stabilization of the site. Id. ¶ 8; see also AR15384, 15385, 15393 (General Conditions 2 & 5 and Special Condition 11) (attached as Fed. Defs. Ex. B). The Corps believes that "continued maintenance and operation of the storm water management system is necessary to protect waters of the United States within and adjacent to the project site, including Cypress Creek and its adjacent wetlands," and that the related permit conditions are "imperative to maintaining the stability of the project site." See id. ¶¶ 6-8.

## **POINTS AND AUTHORITIES**

**I.    REMAND WITHOUT VACATUR IS THE APPROPRIATE REMEDY**

The D.C. Circuit has often recognized a court's discretion to remand an agency rule without vacating it.  See, e.g., A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (remanding without vacating where no significant harm would result pending agency's further explanation); Checkosky v. SEC, 23 F.3d 452, 466 (D.C. Cir. 1994) (separate opinion of Judge Silberman listing 23 cases in three years where this Court remanded for inadequate explanation without vacating agency action).  Indeed, the Court has "commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, but also where the order was otherwise arbitrary and capricious."  Int'l Union, UMW v. Fed. Mine Safety & Health Admin., 920 F.2d 960, 966 (D.C. Cir. 1990) (citations omitted).

As this Court noted in its Memorandum Opinion, the decision "whether to remand or vacate 'depends on (1) the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and (2) the disruptive consequences of an interim change that may itself be changed.'"  Milk Train, Inc. v. Veneman, 310 F.3d 747, 755-56 (D.C. Cir. 2002) (quoting Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  Where there is a "serious possibility" that the agency can correct the defect on remand, see id. at 756, and no significant harm would result from keeping the agency's decision in place, see A.L. Pharma, Inc. v. Shalala, 62 F.3d at 1492, courts commonly remand without vacating the agency's rule.  In this case, remand without vacatur is the appropriate remedy because the deficiencies the Court identified in the Corps' analysis of the section 404 permit application are capable of correction on remand and keeping the permit in place would have the

least disruptive consequences to the environment.  Additionally, Plaintiffs have not identified any harm they would suffer if the challenged action is not vacated.

In this case, vacating the permit would be disruptive and could lead to more environmental damage than leaving the permit in place.  In light of the current site conditions and work that has been completed to date, the Corps believes the permit with its storm water management requirements is necessary to maintain stable conditions and prevent damage to Cypress Creek and surrounding wetlands.  As explained in the Declaration of Corps biologist and project manager, Tracy Hurst, all wetlands authorized to be impacted under the permit have already been filled and the storm water management system has been completed, including additional corrective measures related to the storm water management system that the Corps ordered during permit suspension.  Hurst Decl. ¶¶ 2, 7.

The storm water management system and related permit conditions were important aspects of the Corps' finding that filling of the wetlands would not significantly degrade Cypress Creek, which the Court upheld on summary judgment.  Fed. Defs. Mem. in Opp. to Summ. J. (D.E. 92) at 22-23; Mem. Op. 24-25.  The pertinent permit conditions include conditions requiring the permittee to comply with the conditions imposed by the State's water quality certification and the surface water quality monitoring plan.  See Hurst Decl. ¶ 8; AR15384, 15385, 15393 (General Conditions 2 & 5 and Special Condition 11) (attached as Fed. Defs. Ex. B).  The Corps has concluded that continued operation and maintenance of the storm water system in accordance with these permit conditions, as well as other corrective measures implemented during the permit suspension, are necessary to prevent damage to waters of the United States within and adjacent to the project site including Cypress Creek and its adjacent wetlands.  See id. ¶¶ 6-8.  Remanding the permit without vacatur would ensure permit conditions

related to continued operation and maintenance of the storm water management system remain in place and the site remains stable.

      Remand is also appropriate here because there is at least a possibility that the Court could correct the deficiencies noted by the Court in remanding the permit. In its Memorandum Opinion, the Court remanded the permit based on its findings that the Corps (1) did not prepare an EIS for the project pursuant to NEPA; and (2) did not require the applicant to demonstrate that practicable alternatives were not available pursuant to the CWA. Mem. Op. at 29-30. These are deficiencies that could be corrected with additional environmental review of the project pursuant to NEPA and the CWA, depending on information submitted by the permit applicant. While the Corps cannot predetermine the outcome of any additional reviews, several scenarios are possible. The Corps could reinstate the permit authorizing the same impacts to wetlands authorized under the current permit; the Corps could issue a modified permit, reducing the wetland impacts and/or requiring additional mitigation; the Corps also could deny the permit. See 33 C.F.R. § 325.7. Because it is at least possible that the Corps could reissue the permit, the Court has the discretion to remand the permit without vacatur. [1]

      There is little, if any, harm to Plaintiffs in remanding the permit without vacatur. Plaintiffs have made clear throughout this litigation their concern regarding potential impacts to Cypress Creek and surrounding wetlands. For the reasons just discussed, vacating the permit could potentially harm those interests, while remanding without vacatur would protect Cypress Creek and surrounding wetlands. Further, the wetlands authorized to be impacted under the

---

[1]     The possible actions on remand assume that the United States would not seek to appeal the Court's decision, a decision that has not yet been made. Of course, unless and until there is a successful appeal, the Corps intends to proceed consistent with the Court's decision.

permit have already been filled. Hurst Decl. ¶ 2. As noted above, it is possible that the Corps could reissue the permit under similar conditions, which would render the fill lawful. Alternatively, the Corps could issue a modified permit that reduces permitted wetland impacts and requires the permittee to restore the remaining filled wetlands or perform additional mitigation. The Corps could also revoke the permit and require compensation for all of the wetland impacts previously authorized. It is impossible to assess any harm to Plaintiffs until the Corps takes final action on remand. To the extent Plaintiffs claim entitlement to restoration of the status quo as it existed prior to the litigation, Plaintiffs' failure to seek any preliminary injunctive relief militates against such a result. Plaintiffs had the opportunity to move for preliminary injunctive relief upon the issuance of the permit and before the filling was completed, and chose to forego that opportunity, even after the Court reminded them they could do so. See Sierra Club v. Antwerp, No. 07-1756, slip op. (D.E. 54) at 9 n.4 (June 11, 2008). Plaintiffs cannot now claim that restorative relief is necessary pending a remand, when they themselves failed to act to preserve the status quo. To the extent the Court finds Plaintiffs have established that any that may occur pending action on remand as a result of further activities within the jurisdictional wetlands that have already been filled, such harms could be addressed through appropriate injunctive relief.

## II.   PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR INJUNCTIVE RELIEF AGAINST THE CORPS

Plaintiffs' proposed order seeks injunctive relief precluding any further activity on site until the Corps complies with NEPA and the CWA and restoration of jurisdictional wetlands on the CCTC site. However, Plaintiffs' claims against the Corps arise under the APA, 5 U.S.C. § 706(2), which limits relief against agencies of the United States to orders to "hold unlawful and

set aside agency action, findings, and conclusions." See also Florida Power & Light Co. v. Lorion, 470 U.S. at 744 ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). Plaintiffs have not argued, much less established, any basis for this Court to go beyond the ordinary relief available in an APA case and issue an order that would direct the Corps' actions on remand. [2]

In a review of administrative action, the relief that is available is, except in rare circumstances, limited to a remand of the challenged action. In Florida Power & Light, 470 U.S. at 743-44, the Supreme Court set forth the relevant rule:

> The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 … (1971). If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. We made precisely this point last term in a case involving review under the Hobbs Act, *FCC v. Communications, Inc.*, 466 U.S. 464, 468-469, see also *Camp v. Pitts*, [411 U.S. 138].

The United States Court of Appeals for the District of Columbia has held that, " '[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the

---

[2] Plaintiffs' claims also rely on the CWA citizen-suit provision, 33 U.S.C. § 1365(a). See Pls. Revised Supp. Compl. (D.E. 67) ¶ 2. While that provision authorizes injunctive relief against the United States in some circumstances, it does not apply against the Corps here. Specifically, the citizen-suit provision authorizes a court to (1) enforce against violations of an effluent limitation or administrative order regarding effluent limitations, or (2) enforce a mandatory duty against EPA. Id. Neither of these provisions authorizes injunctive relief against the Corps here. Id.; cf. Bennett v. Spear, 520 U.S. 154, (holding that term "violation" in similar ESA citizen-suit provision does not include the Secretary's failure to perform his duties as administrator of the ESA).

agency for further action consistent with the corrected legal standards.'" County of Los Angeles v. Shalala, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (quoting PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995) (citations omitted).  In that case, the circuit court found that once the district court held that the Secretary of Health and Human Services had misinterpreted a statute, it should have remanded the matter to the Secretary for further proceedings consistent with its conception of the statute.  Id.  Further, the Court found it was unnecessary and an error for the district court to devise a specific remedy for the Secretary to follow.  County of Los Angeles, 192 F.3d at 1011-12; see Ommaya v. Nat'l Insts. of Health, 726 F.2d 827, 830 (D.C. Cir. 1984) ("If MSPB relied on incorrect legal grounds, it would be error for this court to enforce without first remanding for agency examination of the evidence and proper fact-finding.") (quoting White v. Dep't of the Army, 720 F.2d 209, 210 (D.C. Cir. 1983)).  Accordingly, remand is the remedy this Court should order at this time.  A direction to the Corps to revoke the permit and order remediation could only be made based on the Court's own conclusions with regard to the potential environmental impacts of the project and would thus necessarily involve a substitution of judgment for that of the agency.  As noted in SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), "such a procedure clearly runs the risk of propelling the court into the domain which Congress has set aside exclusively for the administrative agency."  See Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp., 423 U.S. 326, 333 (1976) (Absent substantial justification for doing otherwise, upon remand a reviewing court may not proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry and ordering the results to be reported to the court without further opportunity for consideration of new evidence by the agency).

Plaintiffs request that, as part of an injunction, the Court order a remedial plan for the CCTC site is premature because the Corps has not decided whether to issue a permit and, if so, what type of permit would be appropriate in light of the Court's decision. Any decision to remediate the previously-filled areas of the site lies at this time within the discretion of the Corps and a court should not direct the Corps as to how to exercise that discretion in advance of a decision by the Corps in that regard. Such an order could only be issued as a writ of mandamus, and Plaintiffs have not and cannot meet the requirements for such a writ. Those requirements are: (1) the party seeking a writ must have no other adequate means to obtain the relief they seek; (2) that party must bear the burden of showing that its right to issuance of a writ is clear and indisputable; and (3) even if the first two prerequisites are met, the issuing court in the exercise of its discretion must be satisfied that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Court for the Dist. of Columbia, 542 U.S. 367 380-81 (June 24, 2004). The Supreme Court in Cheney, called mandamus a "drastic and extraordinary remedy reserved for really extraordinary causes." Id. at 380 (citation omitted). Under the circumstances of this case, Plaintiffs cannot meet this test and have no "clear and indisputable right" to such relief, especially where the Corps has determined, and the Court has found, that the project will not cause or contribute to significant degradation of Cyprus Creek or its surrounding wetlands and that the Corps did not violate the ESA.

Further, even if this case is not treated as one seeking mandamus, the injunctive relief sought by Plaintiffs would interfere with the Corps' exercise of its prosecutorial discretion. The jurisdiction granted under the APA does not extend to a decision by an administrative agency to exercise its discretion not to undertake enforcement actions. Heckler v. Chaney, 470 U.S. 821, 831 (1985). In Heckler, the Supreme Court held that individual decisions of the Food and Drug

Administration not to take enforcement action in response to a citizen's request are presumptively not reviewable under the APA. Id. The same rule is applicable in this case where such a decision "involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." Id. As in Heckler, the "agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies." Id. The agency is "far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." Id. at 831-32.

The Corps further notes that Plaintiffs' failure to seek any preliminary relief to prevent the Intervening Defendants from filling the jurisdictional wetlands pending the outcome of this litigation militates against restoration of the wetlands at this time. Plaintiffs filed their Complaint on October 1, 2007, several months after issuance of the permit and after the permittee had substantially completed work to fill the jurisdictional wetlands. At no point did Plaintiffs file a motion for temporary or preliminary relief to attempt to halt filling of the wetlands. In addition, Plaintiffs did not seek any preliminary injunctive relief to bar any further on-site work after the permit was modified in 2009. As the Court stated in its June 11, 2008, Memorandum Opinion granting a voluntary remand, "[f]rom the time that plaintiffs initiated this lawsuit, they had the ability to seek injunctive relief from this Court. Either because they thought that they were not entitled to seek such relief, or for some other strategic reason, plaintiffs did not seek an injunction. Plaintiffs have still filed no motion for preliminary injunction – ensuring that the issue is not properly before this Court – and yet they state that the Court should order such relief." Sierra Club v. Antwerp, No. 07-1756, slip op. (D.E. 54) at 9 n.4.

Plaintiffs' failure to seek any type of relief to stay the activity on the site weighs heavily against the granting of an injunction that would restore the on-site wetlands pending the Corps' decision on remand.  Cf. Natural Res. Def. Council v. Pena, 147 F.3d 1012, 1026 (D.C. Cir. 1998) ("If the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, the district court should be reluctant to award relief."); Allens Creek/Corbetts Glen Preservation Group, Inc. v. Caldera, 88 F. Supp. 2d 77, 83 (W.D.N.Y. 2000), aff'd, 2 Fed.Appx. 162 (2d Cir. 2001) (finding that plaintiffs' failure to seek any type of injunction against the construction at issue, which included the filling in of wetlands, operated as laches against plaintiffs seeking to enjoin the work after it had begun).

The Corps neither opposes nor supports Plaintiffs' request for an order that would preclude Intervening Defendants from undertaking additional activities on the project site pending a remand.  It appears, however, Plaintiffs have not met their burden to justify such relief.  Plaintiffs' sole argument in support of injunctive relief rests on a purported presumption of irreparable harm in NEPA cases.  Plfs. Mot. Summ. J. (D.E. 70), at 45.  However, the Supreme Court has recently clarified that no such presumption exists.  Monsanto Co. v. Geerston Seed Farms, No. 09-475, 2010 WL 2471057, at *11-12 (S. Ct. June 21, 2010).

Notwithstanding Plaintiffs' failure to carry its burden, the Corps notes that if the Court did not enjoin on-going activities within the jurisdictional wetlands, such work could impact the Corps' or the Court's ability to require wetlands restoration in the future if, following remand, such relief is found to be appropriate.  To the extent the Court finds it appropriate to award permanent injunctive relief prohibiting further work in jurisdictional wetlands on-site, the Corps requests that such relief be narrowly tailored to ensure that those permit conditions related to

operation and maintenance of the storm water management system remain in full force and effect.

## CONCLUSION

For the foregoing reasons, the Corps respectfully requests that the Court enter an order (1) denying Plaintiffs' request that the permit be vacated; and (2) denying Plaintiffs' request for injunctive relief against the Corps, including relief related to restoration of the wetlands or submission of a remedial plan.

Respectfully submitted this 20th day of July, 2010,

IGNACIA S. MORENO
Assistant Attorney General

  s/ *Jessica O'Donnell*

MARK ARTHUR BROWN
D.C. Bar No. 470050
Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0204
Facsimile: (202) 305-0275
mark.brown@usdoj.gov

JESSICA O'DONNELL
D.C. Bar No. 473166
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

        Telephone:  (202) 305-085
        Facsimile:  (202) 514-8865
        jessica.odonnell@usdoj.gov

        KRISTOFOR R. SWANSON
        Colo. Bar No. 39378
        JODY SCHWARZ
        D.C. Bar. No. 493998
        U.S. Department of Justice
        Environment & Natural Resources Division
        Natural Resources Section
        P.O. Box 663
        Washington, D.C. 20044-0663
        Telephone: (202) 305-0248
        Facsimile: (202) 305-0274
        kristofor.swanson@usdoj.gov

Of Counsel:

Christina D. Storz
Assistant District Counsel
U.S. Army Corps of Engineers
701 San Marco Boulevard
Jacksonville, Florida 32207
Telephone: (904) 232-1165
Facsimile: (904) 232-1954
Christina.D.Storz@usace.army.mil