UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., <br><br>    Plaintiffs, <br><br> v. <br><br> LT. GEN. ROBERT L. VAN ANTWERP, et al., <br><br>    Defendants, <br><br> and <br><br> SIERRA PROPERTIES, et al., <br><br>    Intervenor-Defendants. | Civ. No. 1:07-cv-01756 (RCL) |

**PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS'
AND INTERVENORS' REMEDIES BRIEFS**

Largely mischaracterizing both the legal and factual terrain that governs the consideration of appropriate remedies at the present stage of this litigation, Intervenors argue that the Court can afford no further relief beyond the remand that has already been imposed. Intervening Defendants' Memorandum Regarding Remedies ("Int. Br.") (D.E. 94) (July 20, 2010). To the contrary, the Court plainly has the authority to both vacate the Cypress Creek Town Center ("CCTC") permit, and to issue appropriate injunctive relief, in light of Defendants' significant violations of both the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq. and the Clean Water Act ("CWA"), 33 U.S.C. § 1344, et seq. Indeed, while echoing many of the Intervenors' arguments, the Federal Defendants clearly signal that in the event the developer intends, pending remand, to engage in "on-going activities within the jurisdictional wetlands,"

further judicial relief may indeed be appropriate and necessary in order to preserve the "<u>Corps' or the Court's ability to require future restoration efforts, to the extent such relief [becomes] appropriate</u>."  Fed. Def. Brief Regarding Remedy ("Fed. Br.") (D.E. 93) at 3 (July 20, 2010) (emphasis added); <u>see also</u> <u>id.</u> at 14 (stating that "[t]he Corps neither opposes nor supports Plaintiffs' request for an order that would preclude Intervening Defendants from undertaking additional activities on the project site pending a remand," but "not[ing] that if the Court did not enjoin on-going activities within the jurisdictional wetlands, such work could impact the Corps' or the Court's ability to require wetlands restoration in the future if, following remand, such relief is found to be appropriate"); <u>id.</u> at 9 (noting that the Corps may ultimately require the Intervenors to "restore the remaining filled wetlands" or provide additional "compensation for all of the wetlands impacts previously authorized").

Nonetheless, as discussed further below, in light of Defendants' representations that <u>there are no development activities presently occurring on site</u> (with the exception of completing a road, which, as explained below, <u>see</u> <u>infra</u> at 12, Plaintiffs do not seek to halt), at this time the Court need not resolve whether additional remedies should be imposed.  Rather, so long as the Federal Defendants file Status Reports at appropriate intervals, and the Court retains jurisdiction so that Plaintiffs may seek further relief <u>if</u> construction commences before the Corps' reconsideration of the CCTC permit on remand is completed, Plaintiffs are willing to allow the remand to take its course without additional relief.

This approach is entirely consistent with the Supreme Court's recent decision in <u>Monsanto v. Geerston Seed Farms</u>, 130 S. Ct. 2743 (2010).  As explained below, contrary to Defendants' suggestion, <u>Monsanto</u> stands for the proposition that a court should afford a Plaintiff

with the relief necessary to address the injury the Plaintiff suffers as a result of Defendants' legal violation. On the record before the Court in Monsanto, the Court concluded that a remand and vacatur of the agency's decision provided sufficient relief, and that additional injunctive relief was unjustified. Id. at 2758-59. At this juncture, in this case a remand alone may be sufficient to remedy the legal violations found by the Court – although that may change should Intervenors opt to recommence development on the site during the remand period.

## Background

Plaintiffs filed this suit in 2007, challenging the Corps' permit to fill more than fifty acres of wetlands for the construction of CCTC in Pasco County, Florida. D.E. 1. After Plaintiffs filed their first motion for summary judgment, the Corps suspended the CCTC permit in part due to large, repeated, and unlawful discharges from the site into Cypress Creek, AR10886-87, and the Court remanded the matter to the Corps. In light of the partial suspension – which halted construction work in the jurisdictional wetlands, but allowed efforts to protect the Creek to continue – Intervenors apparently stopped construction of the project. Fed. Br. at 5.

After the Corps reissued the permit, Plaintiffs filed Amended Complaints and later a motion for summary judgment. In the accompanying Proposed Order Plaintiffs requested that the Court remand the CCTC permit. DN 70-1 (Jan. 4, 2010). In addition, because Plaintiffs did not know at that time how construction activities would proceed on the site, and in order to protect the site during the remand period, Plaintiffs also requested that the Court vacate the permit and direct that activities on the site stop during the remand period. Id. Finally, Plaintiffs

requested that the Court direct the Defendants to submit a proposed remediation plan for the restoration of wetlands that might be appropriate in light of the Court's Opinion. Id.[1]

On June 30, 2010, the Court granted Plaintiffs' motion for summary judgment on their NEPA and CWA claims. June 30, 2010 Memorandum Opinion ("Mem. Op.") (D.E. 92). As regards NEPA, the Court found that the Corps' "determination that there would not be significant environmental impacts" from the CCTC project "is so contrary to the record that the Court can find it to be nothing short of arbitrary and capricious." Id. at 10. In particular, the Court recognized that the wetlands covered by the CCTC permit both "provide[ ] a protective function for [Cypress] Creek through sediment removal, erosion control, and moderation of storm water runoff," and are "ecologically critical because of the 'critical wildlife linkage' that connects to other conservation lands in the area." Id. at 11 (citation omitted). The Court therefore recognized that removing these wetlands would have significant adverse environmental impacts. Id.; see also id. (noting that "removal of these buffer areas will result in an increase in surges of runoff with high levels of eroded sediment" – "the same kind of discharge of turbid water that occurred in 2008"). The Court similarly found significant impacts warranting an Environmental Impact Statement ("EIS") for the CCTC project in light of the project's violations of "Federal, state and local environmental law"; the cumulative impacts of the project; and the project's potential impact on wildlife, including species protected under the Endangered Species Act, 16 U.S.C. § 1531, et seq. Mem. Op. at 11-13.

---

[1] As discussed below, the fact that Plaintiffs did not seek emergency injunctive relief is irrelevant at this stage of the litigation. See infra at 7-8.

As for the CWA, the Court concluded that the Corps had violated CWA § 404, 33 U.S.C. § 1344, and the implementing regulations by accepting the Intervenors' claims that the CCTC project could not be reduced in size – and therefore in adverse environmental impacts – because doing so would not make the project sufficiently profitable to obtain the necessary financing. Mem. Op. at 17-24.  The Court found that the Corps had demonstrated neither that an 8% rate of return was necessary, nor that a smaller project could not obtain that rate.  Id. at 18-23.  As to the latter point, the Court rejected the Corps' claim that permitting the Intervenor to rely on the value of the land, rather than on its actual purchase cost, is within the agency's "technical expertise," concluding that "[u]sing the actual 'cost' in a column marked 'cost' is far from technical and even further from reasonable."  Id. at 21; see also id. at 23 ("the Corps impermissibly allowed the applicant to employ mathematical manipulation in order to show that practicable alternatives were unavailable").  The Court similarly concluded that "[t]he applicant failed to demonstrate, and the Corps failed to verify, why" the CCTC project requires "more parking than any existing comparable mall."  Id. at 24.

In light of these substantial legal violations, the Court remanded the CCTC permit for further review.  Order of June 30, 2010 at 2 (DN 91).  As for additional remedies, the Court directed Defendants to file "a proposed remediation plan and any comments on the injunctive relief sought by plaintiffs" within twenty days, and directed Plaintiffs to file this responsive brief on appropriate remedies.  Id.

In their brief on remedies, Federal Defendants argue that no further relief beyond a remand is necessary, and that any restoration on the site is premature at this time.  Fed. Br. at 6-9. Nonetheless, acknowledging the Court's authority to impose additional relief, including vacatur

or an injunction, the Federal Defendants request that any vacatur leave intact those portions of the permit requiring Intervenors to maintain the storm water management system – "critical to preventing discharges of turbid water into Cypress Creek," id. at 2 – and indicate that should work restart on the CCTC development an injunction or other relief may be necessary in order to preserve "the Corps' and the Court's ability to require future restoration efforts" following the Corp's determinations on remand. Id. at 3.

As for Intervenors, although their brief on remedies focuses on the people who will work on the site if construction gets under way, and the money they claim the site will generate for Pasco County, Int. Br. at 2, Intervenors explain that, for whatever reason, at present "only a handful of people are working at the project site" to complete a road, id. at 3, and neither their brief nor the accompanying declaration suggest any concrete plans to do any other work on the site pending the Court-ordered remand. Int. Br., Exh. A ¶ 9 (D.E. 94-1); see also Fed. Br., Exh. A ¶ 2 (Federal Defendants' declaration explaining no work is occurring on the project) (D.E. 93-1). Thus, while Intervenors complain that additional relief – including vacatur of the permit – would be "disruptive" because it would render work on the site "impractical" and would result in lost jobs and tax revenue, Int. Br. at 3, it appears that Intervenors themselves have chosen not to proceed further with the project at this time, and that they may not do so during some or all of the proceedings on remand.

## Discussion

Before turning to the appropriate path forward in this litigation, it is critical at the outset to set the record straight on several themes that run through Defendants' remedies briefs. First, Intervenors claim that because the "values and functions" of the wetlands it is destroying to build

the CCTC are being offset by other artificially created wetlands, the wetlands destruction at issue in this case is much ado about nothing. Int. Br. at 3, 14-17.  This argument ignores the fact that the CWA regulatory scheme is based on the premise that <u>all</u> of the Nation's dwindling natural wetlands are an invaluable resource that should not be destroyed except in accordance with the strict provisions of the statute and regulations.  <u>See</u> <u>e.g.</u>, 40 C.F.R. § 230.1.  It also ignores the Court's Opinion finding that the <u>specific</u> wetlands at issue here protect the "Creek through sediment removal, erosion control, and moderation of storm water runoff," and are also "ecologically critical" as a wildlife linkage area.  Mem. Op. at 11.  Indeed, as the Court explained, the loss of these wetlands "will result in an increase in surges of runoff with high levels of eroded sediment" – "the same kind of discharge of turbid water that occurred in 2008." <u>Id.</u>  The argument further disregards the findings of the National Academy of Science ("NAS") and the Government Accountability Office ("GAO") that the precise kind of mitigation measures on which Intervenors and the Corps have relied have proven largely ineffective to offset the destruction and degradation of wetlands.  <u>See</u> <u>e.g.</u>, AR10352 (NAS finding that "[t]he goal of no net loss of wetlands is not being met . . . by the [Corps'] mitigation program"); AR10383 (NAS citing a study indicating that in Florida as little as 10% of surveyed mitigation actually complied with Corps permits).  Accordingly, Intervenors' assertion that the loss of the affected wetlands is of no importance has no merit.

<u>Second</u>, both the Federal Defendants and Intervenors repeatedly note that Plaintiffs did not seek emergency injunctive relief in this case, suggesting that this should weigh heavily against the Court imposing additional remedies.  Fed. Br. at 4, 9, 13; Int. Br. at 18.  This is a curious argument given that Defendants argue against an injunction even now that Plaintiffs have

prevailed on the merits. Defendants cite no authority for the proposition that after Plaintiffs have won a final judgment they are not entitled to meaningful relief at that juncture because they did not burden the Court with a request for emergency injunctive relief at an earlier stage. Any such ruling would merely increase the Court's workload by encouraging parties to file for preliminary injunctions rather than allowing the case to be decided on the merits at one time on a full, rather than a partial, record.

In any event, Plaintiffs can hardly be penalized for following the presumptive approach the Supreme Court outlined in <u>Monsanto</u>, 130 S. Ct. 2743, where the Court stressed the stringent standard for injunctive relief, and reversed an injunction it found unnecessary specifically <u>in light of the other remedies imposed</u> by the district court on summary judgment – <u>i.e.</u>, specifically remand and vacatur – to redress a failure to prepare an EIS. In this case, since it appears that no major construction work has occurred on the site since the Corps suspended the permit almost two-and-a-half years ago, Plaintiffs have been willing not to seek emergency injunctive relief, but rather to allow the case to be resolved on summary judgment – as are the vast majority of cases brought pursuant to the APA. And as for seeking relief before Intervenors commenced work in 2007, since they were plainly on notice that Plaintiffs were challenging the permit, AR6450-51 – and proceeded as quickly as possible, and at their own peril, despite that notice, AR17847 (discussing effort to "commence as quickly as possible to minimize or avoid further challenges to the environmental impacts resulting from the project") – Intervenors can hardly be heard to complain about <u>any</u> relief that might ultimately be imposed by either the Corps on remand, or the Court. See <u>Nat'l Parks and Conservation Ass'n v. Babbitt</u>, 241 F.3d 722, 738 (9th Cir. 2001) (where Intervenor was long on notice of relief sought, evidence of financial hardship "fails to tip

the balance of harms in its favor"); see also Fund for Animals v. Norton, 294 F. Supp. 2d 92, 116-17 (D.D.C. 2003), amended on other grounds, 323 F. Supp. 2d 7 (D.D.C. 2004) (refusing to adjust relief based on impact to parties aware of the relief sought by plaintiffs on summary judgment).

Third, Intervenors are wrong in asserting that a remand would be the only appropriate relief here even if work on the CCTC project were proceeding at this time. Int. Br. at 7-22. To the contrary, the APA specifically provides that a reviewing court "shall . . . set aside" agency action found to be arbitrary and capricious, 5 U.S.C. § 706(2)(A), and hence both the Supreme Court and the D.C. Circuit have held that vacatur, along with remand, is, at the very least, the presumptively appropriate remedy for a Defendants' violation of the APA. Fed. Commc'ns Comm'n v. Nextwave Personal Commc'ns. Inc., 537 U.S. 293, 300 (2003) ("agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (other citations omitted); see also, e.g., Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs., 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("We have made clear that '(w)hen a reviewing court determines that the agency regulations are unlawful, the ordinary result is that the rules are vacated . . .'") (quoting Harmon v. Thornburgh, 878 F.2d 484, 495, n.21 (D.C. Cir. 1989)) (emphasis added); Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (explaining that a plaintiff who "prevails on its APA claim . . . is entitled to relief under that statute, which normally will be a vacatur") (emphasis added); see also Comcast Corp. v. Fed. Commc'ns Comm'n, 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J., concurring) ("Section 706(2)(A) of the APA could not be clearer: a court faced with an arbitrary and capricious agency rule or order 'shall hold unlawful and set aside' that agency action. 'Set aside' means vacate,

according to the dictionaries and the common understanding of judges . . . .") (quoting 5 U.S.C. § 706(2)(A)).[2]

To be sure, in certain circumstances a reviewing court may decline to set aside the agency decision under review, and instead simply remand the matter back to an agency for further consideration. E.g. Chamber of Commerce of the United States v. Secs. & Exch. Comm'n, 443 F.3d 890, 908 (D.C. Cir. 2006). This approach may be appropriate where the agency carries its burden to demonstrate that the normal APA relief should not be issued because both (a) the deficiencies that led the court to find an APA violation are not serious and (b) vacatur would be overly disruptive in the interim period. Id.[3]

---

[2] Accordingly, while Intervenors refer the Court to remand-only decisions, a far longer list can be compiled of cases where the courts in this Circuit and elsewhere have done exactly what the APA says, including in cases involving violations of the very statutes at issue here. See MD. Pharm., Inc. v. Drug Enforcement Agency, 133 F.3d 8, 16 (D.C. Cir. 1998) ("The judiciary has a responsibility under the APA to set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (internal citations and quotations omitted); Southern Co. Servs. v. Fed. Energy Regulatory Comm'n, 416 F.3d 39, 48 (D.C. Cir. 2005) (vacating FERC orders); Friends of the Earth v. U.S. Army Corps of Eng'rs, 109 F. Supp. 2d 30, 44 (D.D.C. 2000) (vacating permits based on violations of NEPA and the CWA); Humane Soc'y. of the U.S. v. Dep't of Commerce, 432 F. Supp. 2d 4, 25 (D.D.C. 2006) (vacating decision in light of violation of NEPA); Fund for Animals, 294 F. Supp. 2d at 115 (same); Florida Wildlife Fed'n. v. U.S. Army Corps of Eng'rs, 404 F. Supp. 2d 1352 (S.D. Fla. 2005) (setting aside Corps permit); Ohio Valley Envtl Coalition v. Hurst, 604 F. Supp. 2d 860 (S.D. W.Va. 2009) (vacating Corps permit).

[3] Nothing in Monsanto calls into question Circuit precedent that vacatur is at least the presumptive remedy in an APA case. To the contrary, in considering whether expansive injunctive relief – in addition to remand or vacatur – was appropriate in that case, the Court explained that, "[i]f a less drastic remedy (such as partial or complete vacatur of APHIS's deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted." 130 S. Ct. at 2761 (emphasis added). It is also notable that the Court in no way suggested that even where vacatur has the effect of halting an otherwise permitted activity, a reviewing court is required to undertake an injunction analysis before issuing vacatur. Id. at 2578 ("The District Court may well have acted within its discretion in refusing to craft a judicial remedy that would have authorized the continued

Applying the Circuit test here, the Court would be extremely justified in partially vacating the CCTC permit to ensure that construction on the site does not occur during the remand, i.e., a vacatur that mirrors the partial suspension previously imposed by the Corps itself, which allowed continued operation of the storm water discharge system but otherwise halted work on site. See AR10886.[4]

In particular, a partial vacatur would be entirely appropriate because the violations here are indeed serious and not easily rectified; the Court discerned several significant violations of NEPA warranting an EIS, and, as for the CWA, the Court concluded that, among other things, Defendants violated that statute by improperly calculating the necessary size of the CCTC project. Mem. Op. at 17-24. Indeed, as to that issue in particular, the Court's Opinion does not permit the Corps to simply undertake further analysis and reach the same result; rather, the Corps will have to recalculate both the necessary rate of return, and whether the project can meet that return rate, based on factors that simply will not permit the same answer as before. E.g., id. at 20-21 (requiring use of the actual cost of the land rather than its purported "value").[5]

---

planting and harvesting of RRA while the EIS is being prepared") (emphasis in original).

[4] As the Federal Defendants themselves recognize, allowing work on the project to continue during the remand could prejudice the agency's ability to reconsider the permit in light of the Court's ruling, threatening to turn the remand process into a make-work exercise. Fed. Br. at 3 (acknowledging that further development may undermine "the Corps' or the Court's ability to require further restoration efforts").

[5] As for the disruptiveness of vacatur, this factor generally focuses not on whether there will be disruption to the permittee – which will almost always be the case – but rather whether vacatur threatens any significant disruption to the federal objective or activity that Congress sought to promote in passing one or more of the statutes at issue. See, e.g., Ne. MD. Waste Disposal Auth. v. EPA, 358 F.3d 936, 950 (D.C. Cir. 2004) (declining to vacate rule promulgated under the Clean Air Act because it would result in "disruption of EPA's pollution control program"); Advocates for Highway Safety v. Fed. Motor Carrier Safety Admin., 429 F.

Nonetheless, given the present circumstances on the ground, it appears that a remand remedy is sufficient and appropriate <u>at this time</u>. As the Federal Defendants emphasize, leaving the permit intact insures that Intervenors continue to operate the storm water discharge system that is essential in light of the wetlands destruction that has occurred on the site. Fed. Br. at 2. At the same time, since additional work on CCTC is not now occurring, a remand appears to be adequate at this juncture.

Moreover, a remand-only remedy will also allow the road presently under construction to be completed. While Plaintiffs dispute Intervenors' contention that further relief regarding that road would require the participation of Pasco County, Int. Br. at 12, n.3, Plaintiffs have concluded that there is little value in halting completion of that road and that the environmental concerns with the CCTC project itself are the most significant at this stage. Int. Br., Exh. A at ¶ 12. Rather than litigate over halting the road, therefore, Plaintiffs believe the Corps and Intervenors should focus on addressing the concerns raised in the Court's Opinion concerning the project itself.

Plaintiffs emphasize that they do not believe additional relief is necessary at this time solely <u>because Intervenors are not taking any other construction action on the site</u>. Thus, should Intervenors change course and proceed with other aspects of CCTC during the remand period, Plaintiffs reserve the right to seek vacatur and, if necessary, further relief at that time – relief that

---

3d 1136, 1152 (D.C. Cir. 2005) (leaving inadequate safety rule in place during remand because rule would do more good than harm in terms of promoting highway safety). In any case, given that the Intervenors have elected not to proceed with the project since the Corps' suspension several years ago, and thus the long-standing <u>status quo</u> is that the project is at a standstill, it hardly makes sense to claim that halting the project would be disruptive at this point in time.

the Federal Defendants have indicated may be appropriate in those circumstances. Fed. Br. at 14.[6]

In order to determine whether such additional relief is necessary, Plaintiffs request that the Court direct the Federal Defendants to file periodic Status Reports – every sixty days – regarding future plans for work on the site and the progress of the remand. These reports would indicate what has occurred in the prior sixty days and what steps are anticipated in the following sixty days. Plaintiffs are attaching a Proposed Order that provides for this limited relief.

Finally, as regards remediation measures, while Plaintiffs do not disagree with Defendants that, in light of the Court's Opinion, it makes sense to finally resolve the specific remediation steps that should be taken in this case after the Corps has made a new decision on the permit, Plaintiffs note that the Court's Order directed the Defendants to submit a "proposed remediation plan," Order of June 30, 2010 at 2 (D.E. 91), and simply arguing that remediation is premature at this time does not comply with this direction. Fed. Br. at 12 (claiming that the Court can consider a remediation order only through "a writ of mandamus"). Nonetheless, in light of Monsanto – which makes it clear that the agency should make such decisions in the first

---

[6] Should Intervenors elect to proceed with construction, and relief beyond vactur prove necessary to enjoin that work, Plaintiffs would plainly be entitled to such an injunction under Monsanto, since, unlike that case, proceeding with the project would cause irreparable injury to Plaintiffs' interests. See D.E. 32-8 through 32-12.

Moreover, although the Court need not resolve the issue at this time, Intervenors are off the mark in asserting that the Court could not afford injunctive relief without holding an evidentiary hearing. Int. Br. at 12. Courts have often issued injunctions based on violations of the APA without holding such a hearing. E.g. Envtl. Def. v. U.S. Army Corps of Eng'rs, 515 F. Supp. 2d 69, 88 (D.D.C. 2007) (setting aside Corps Record of Decision and enjoining work on project). And although the petitioners in Monsanto specifically argued that an evidentiary hearing is required before issuing an injunction in a NEPA case, the Court did not address that issue. 130 S. Ct. at 2761-62.

instance on remand – Plaintiffs are not pressing their request that this Court craft an appropriate remediation plan at this time. Rather, Plaintiffs simply request that the Court, consistent with Monsanto, instruct the Corps to address on remand what remedial steps are appropriate in view of the Court's legal ruling. This is also encompassed within Plaintiffs' Proposed Order.

                                                    Respectfully submitted,

                                                   /s/ Joshua Stebbins
                                                 Joshua Stebbins
                                                 D.C. Bar No. 468542
                                                 Eric R. Glitzenstein
                                                 D.C. Bar No. 358287
                                                 Howard M. Crystal
                                                 D.C. Bar. No. 448189

                                               MEYER GLITZENSTEIN & CRYSTAL
                                               1601 Connecticut Ave., NW, Suite 700
                                               Washington, D.C. 20009
                                               (202) 588-5206 (202) 588-5049
                                               jstebbins@meyerglitz.com

Date: August 6, 2010                        Attorneys for Plaintiffs