APPEAL, TYPE−C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:07−cv−01756−RCL
### *Internal Use Only*

SIERRA CLUB et al v. VAN ANTWERP et al
Assigned to: Chief Judge Royce C. Lamberth
Case in other court:   USCA, 10−05284
                    USCA, 10−05297
Cause: 33:1319 Clean Water Act

Date Filed: 10/01/2007
Jury Demand: None
Nature of Suit: 893 Environmental Matters
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**SIERRA CLUB**

represented by **Eric Robert Glitzenstein**
MEYER GLITZENSTEIN &CRYSTAL
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009
(202) 588−5206 x 13
Fax: (202) 588−5049
Email: eric@meyerglitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard M. Crystal**
MEYER GLITZENSTEIN &CRYSTAL
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009
(202) 588−5206
Fax: (202) 588−5049
Email: howardcrystal@meyerglitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua R. Stebbins**
MEYER GLITZENSTEIN &CRYSTAL
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009
(202) 588−5206
Email: jstebbins@meyerglitz.com
*TERMINATED: 08/06/2010*

**Plaintiff**

**CLEAN WATER ACTION**

represented by **Eric Robert Glitzenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard M. Crystal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua R. Stebbins**
(See above for address)
*TERMINATED: 08/06/2010*

**Plaintiff**

**GULF RESTORATION NETWORK**       represented by   **Eric Robert Glitzenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard M. Crystal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua R. Stebbins**
(See above for address)
*TERMINATED: 08/06/2010*

**Plaintiff**

**CHRIS LOY**       represented by   **Eric Robert Glitzenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard M. Crystal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua R. Stebbins**
(See above for address)
*TERMINATED: 08/06/2010*

**Plaintiff**

**RICHARD SOMMERVILLE**       represented by   **Eric Robert Glitzenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard M. Crystal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua R. Stebbins**
(See above for address)
*TERMINATED: 08/06/2010*

V.

**Defendant**

**ROBERT L. VAN ANTWERP**
*Lieutenant General, U.S. Army Corp of Engineers*

represented by **Mark Arthur Brown , Sr.**
U.S. DEPARTMENT OF JUSTICE
Wildlife &Marine Resources Section
P.O. Box 7369
Ben Franklin Station
Washington, DC 20044−7369
(202) 305−0204
Fax: (202) 305−0275
Email: mark.brown@usdoj.gov
*LEAD ATTORNEY*

**Jessica O'Donnell**
U.S. DEPARTMENT OF JUSTICE
P.O. Box23986
Washington, DC 20026−3986
(202) 305−0851
Email: jessica.odonnell@usdoj.gov

**Kristofor R. Swanson**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 663
Washington, DC 20044
(202) 305−0248
Email: kristofor.swanson@usdoj.gov

**Samantha Klein Frank**
U.S. DEPARMENT OF JUSTICE
Natural Resources Section
P.O. Box 663
Washington, DC 20044
(202) 305−0474
Email: samantha.frank@usdoj.gov

**Defendant**

**DIRK KEMPTHORNE**
*Secretary, U.S. Department of the Interior*
*TERMINATED: 11/02/2009*

represented by **Mark Arthur Brown , Sr.**
(See above for address)
*LEAD ATTORNEY*

**Jessica O'Donnell**
(See above for address)

**Kristofor R. Swanson**
(See above for address)

|  | **Samantha Klein Frank** |
|  | (See above for address) |

**Defendant**

| **DALE HALL** | represented by | **Mark Arthur Brown , Sr.** |
| *Director, United States Fish and Wildlife* | | (See above for address) |
| *Service* | | *LEAD ATTORNEY* |
| *TERMINATED: 11/02/2009* | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jessica O'Donnell** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Kristofor R. Swanson** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Samantha Klein Frank** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **KEN SALAZAR** | represented by | **Kristofor R. Swanson** |
| *Secretary, U.S. Department of the Interior* | | U.S. DEPARTMENT OF JUSTICE |
| | | ENRD |
| | | P.O. Box 663 |
| | | Washington, DC 20044 |
| | | (202) 305−0248 |
| | | Email: kristofor.swanson@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Mark Arthur Brown , Sr.** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jessica O'Donnell** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **SAM HILTON** | represented by | **Kristofor R. Swanson** |
| *Director, United States Fish and Wildlife* | | (See above for address) |
| *Service* | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Mark Arthur Brown , Sr.** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Jessica O'Donnell**
(See above for address)
*ATTORNEY TO BE NOTICED*


V.

**Intervenor Defendant**

**SIERRA PROPERTIES I, LLC**                     represented by   **Eric Grannon**
                                                                  WHITE &CASE LLP
                                                                  701 13th Street, NW
                                                                  Washington, DC 20005
                                                                  (202) 626−3600
                                                                  Fax: (202) 639−9355
                                                                  Email: egrannon@whitecase.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Angela D. Daker**
                                                                  WHITE &CASE LLP
                                                                  200 South Biscayne Boulevard
                                                                  Miami, FL 331131
                                                                  (305) 371−2700
                                                                  Fax: (305) 358−5744
                                                                  Email: adaker@whitecase.com
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Douglas M. Halsey**
                                                                  WHITE &CASE LLP
                                                                  Wachovia Financial Center
                                                                  200 South Biscayne Boulevard
                                                                  Miami, FL 33131
                                                                  (305) 371−2700
                                                                  Fax: (305) 358−5744
                                                                  Email: dhalsey@whitecase.com
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **T. Neal McAliley**
                                                                  WHITE &CASE LLP
                                                                  Wachovia Financial Center
                                                                  200 South Biscayne Boulevard
                                                                  Miami, FL 33131
                                                                  (305) 371−2700
                                                                  Fax: (305) 358−5744
                                                                  Email: nmcaliley@whitecase.com
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**PASCO 54, LTD.**                               represented by   **Eric Grannon**
                                                                  (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Angela D. Daker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas M. Halsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**T. Neal McAliley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**PASCO RANCH, INC.**                 represented by   **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Angela D. Daker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas M. Halsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**T. Neal McAliley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**JG CYPRESS CREEK LLC**              represented by   **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Angela D. Daker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas M. Halsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**T. Neal McAliley**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/01/2007 | 1 | | COMPLAINT against ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL ( Filing fee $ 350, receipt number 4616007260) filed by RICHARD SOMMERVILLE, SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY.(tg, ) (Entered: 10/02/2007) |
| 10/01/2007 | 2 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by SIERRA CLUB (tg, ) (Entered: 10/02/2007) |
| 10/01/2007 | 3 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CLEAN WATER ACTION (tg, ) (Entered: 10/02/2007) |
| 10/01/2007 | 4 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GULF RESTORATION NETWORK (tg, ) (Entered: 10/02/2007) |
| 10/01/2007 | | | Summons (5) Issued as to ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL, U.S. Attorney and U.S. Attorney General (tg, ) (Entered: 10/02/2007) |
| 10/02/2007 | 5 | | MOTION to Transfer Case *(Federal Defendants' Motion to Transfer Venue)* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Exhibit Ex. 1−complaint in related case# 2 Exhibit Ex. 2−dismissal notice# 3 Errata Ex. 3−Miccosukee slip op.# 4 Exhibit Ex. 4−Kent slip op.# 5 Exhibit Ex. 5−rice slip op.# 6 Exhibit Ex. 6−rice order)(Brown, Mark) (Entered: 10/02/2007) |
| 10/11/2007 | 6 | | NOTICE of Appearance by Samantha Klein on behalf of all defendants (Klein, Samantha) (Entered: 10/11/2007) |
| 10/12/2007 | 7 | | Memorandum in opposition to re 5 MOTION to Transfer Case *(Federal Defendants' Motion to Transfer Venue)* MOTION to Transfer Case *(Federal Defendants' Motion to Transfer Venue)* filed by SIERRA CLUB. (Attachments: # 1 Text of Proposed Order # 2 Exhibit B# 3 Exhibit C# 4 Exhibit # 5 Exhibit E# 6 Exhibit F)(Stebbins, Joshua) (Entered: 10/12/2007) |
| 10/16/2007 | 8 | | MOTION to Intervene as Defendants by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC (Attachments: # 1 Exhibit A to Motion to Intervene# 2 Exhibit B to Motion to Intervene# 3 Memorandum in Support# 4 Exhibit A to Memorandum in Support# 5 Exhibit B To Memorandum in Support# 6 Exhibit C to Memorandum in Support)(nmw, ) (Entered: 10/16/2007) |
| 10/22/2007 | 9 | | REPLY to opposition to motion re 5 MOTION to Transfer Case *(Federal Defendants' Motion to Transfer Venue)* MOTION to Transfer Case *(Federal Defendants' Motion to Transfer Venue)* filed by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Brown, Mark) (Entered: 10/22/2007) |
| 10/24/2007 | 10 | | Memorandum in opposition to re 8 MOTION to Intervene filed by SIERRA CLUB. (Attachments: # 1 Text of Proposed Order)(Stebbins, Joshua) (Entered: 10/24/2007) |

| 10/31/2007 | 11 | | NOTICE *Of Filing* by SIERRA CLUB (Attachments: # 1 Exhibit Correspondence# 2 Exhibit Correspondence)(Stebbins, Joshua) (Entered: 10/31/2007) |
|---|---|---|---|
| 10/31/2007 | 12 | | NOTICE of Appearance by Kristofor R. Swanson on behalf of all defendants (Swanson, Kristofor) (Entered: 10/31/2007) |
| 11/05/2007 | 13 | | REPLY to opposition to motion re 8 MOTION to Intervene filed by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC. (Attachments: # 1 Certificate of Service)(Grannon, Eric) (Entered: 11/05/2007) |
| 11/26/2007 | 14 | | ERRATA by SIERRA CLUB 7 Memorandum in Opposition, filed by SIERRA CLUB. (Stebbins, Joshua) (Entered: 11/26/2007) |
| 11/30/2007 | 15 | | *Federal Defendants'* ANSWER to Complaint by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. Related document: 1 Complaint filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY.(Brown, Mark) (Entered: 11/30/2007) |
| 12/04/2007 | 16 | | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 12/04/2007. (lcrcl1, ) (Entered: 12/04/2007) |
| 12/04/2007 | 17 | | ORDER denying Motion to Transfer Case 5 ; granting 8 Motion to Intervene. Signed by Judge Royce C. Lamberth on 12/04/2007. (lcrcl1, ) (Entered: 12/04/2007) |
| 12/04/2007 | 18 | | MEET AND CONFER ORDER. Signed by Judge Royce C. Lamberth on 12/04/2007. (lcrcl1, ) (Entered: 12/04/2007) |
| 12/04/2007 | 19 | | ANSWER to Complaint by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC. Related document: 1 Complaint filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY.(tg, ) (Entered: 12/05/2007) |
| 12/05/2007 | | | Set/Reset Deadlines: Meet &Confer Report with Proposed Scheduling Order due by 12/31/2007. (rje) (Entered: 12/05/2007) |
| 12/10/2007 | 20 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Douglas M. Halsey, :Firm− White and Case LLP, :Address− Wachovia Financial Center 200 South Biscayne Blvd Miami, FL 33131. Phone No. − (305) 371−2700. Fax No. − (305) 358−5744 by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC (Attachments: # 1 Declaration # 2 Text of Proposed Order)(Grannon, Eric) (Entered: 12/10/2007) |
| 12/10/2007 | 21 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Angela D. Daker, :Firm− White &Case LLP, :Address− Wachovia Financial Center 200 South Biscayne Blvd. Miami, FL 331131. Phone No. − (305) 371−2700. Fax No. − (305) 358−5744 by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC (Attachments: # 1 Declaration # 2 Text of Proposed Order)(Grannon, Eric) (Entered: 12/10/2007) |
| 12/10/2007 | 22 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− T. Neal McAliley, :Firm− White &Case LLP, :Address− Wachovia Financial Center |

| | | |
|---|---|---|
| | | 200 South Biscayne Blvd. Miami, FL 33131. Phone No. − (305) 371−2700. Fax No. − (305) 358−5744 by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC (Attachments: # 1 Declaration # 2 Text of Proposed Order)(Grannon, Eric) (Entered: 12/10/2007) |
| 12/11/2007 | 23 | ORDER granting 20 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Royce C. Lamberth on 12/11/07. (lcrcl1, ) (Entered: 12/11/2007) |
| 12/11/2007 | 24 | ORDER granting 21 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Royce C. Lamberth on 12/11/07. (lcrcl1, ) (Entered: 12/11/2007) |
| 12/11/2007 | 25 | ORDER granting 22 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Royce C. Lamberth on 12/11/07. (lcrcl1, ) (Entered: 12/11/2007) |
| 12/31/2007 | 26 | MEET AND CONFER STATEMENT. (Stebbins, Joshua) (Entered: 12/31/2007) |
| 01/02/2008 | 27 | ADMINISTRATIVE RECORD by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Attachments: # 1 Exhibit Ex. 1−FWS certification and index# 2 Exhibit Ex. 2−Corps certification and index)(Brown, Mark) (Entered: 01/02/2008) |
| 01/04/2008 | 28 | SCHEDULING ORDER. Signed by Judge Royce C. Lamberth on 01/04/2008. (lcrcl1, ) (Entered: 01/04/2008) |
| 01/04/2008 | | Set/Reset Deadlines: Plaintiff's Summary Judgment motions due by 1/14/2008. Federal Defendants and Intervening Defendant Oppositions and cross−motion for summary judgment due by 2/15/2008. Plaintiff's Reply and Opposition due by 2/29/2008. Federal Defendants and Intervening Defendants Reply in support of cross−motions due by 3/14/2008. (rje) (Entered: 01/04/2008) |
| 01/14/2008 | 29 | NOTICE of Appearance by Jessica O'Donnell on behalf of ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (O'Donnell, Jessica) (Entered: 01/14/2008) |
| 01/14/2008 | 30 | First MOTION for Extension of Time to *File Motion for Summary Judgment and Amend the Briefing Schedule* by RICHARD SOMMERVILLE, SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY (Attachments: # 1 Text of Proposed Order Proposed Order)(Glitzenstein, Eric) (Entered: 01/14/2008) |
| 01/14/2008 | 31 | ORDER granting 30 Motion to Amend Briefing Schedule. Signed by Judge Royce C. Lamberth on 01/14/2008. (lcrcl1, ) (Entered: 01/14/2008) |
| 01/15/2008 | | Set/Reset Deadlines: Plaintiffs' Summary Judgment motions due by 1/16/2008. Federal Defendants and Intervening Defendant Opposition and cross motions due by 2/20/2008. Plaintiffs' Reply and Opposition due by 3/4/2008. Federal Defendants and Intervening Defendant Replies due 3/18/2008. (rje) (Entered: 01/15/2008) |
| 01/16/2008 | 32 | MOTION for Summary Judgment by SIERRA CLUB (Attachments: # 1 Exhibit, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Text of Proposed Order Proposed Order)(Stebbins, Joshua) (Entered: 01/16/2008) |

| 01/18/2008 | 33 | | ENTERED IN ERROR.....Emergency MOTION for Protective Order by SIERRA CLUB (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Text of Proposed Order)(Stebbins, Joshua) Modified on 1/22/2008 (tg, ). (Entered: 01/18/2008) |
| 01/18/2008 | 34 | | Emergency MOTION for Protective Order *CORRECTED* by SIERRA CLUB (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Text of Proposed Order)(Stebbins, Joshua) (Entered: 01/18/2008) |
| 01/22/2008 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 33 Emergency MOTION for Protective Order was entered in error at the request of counsel. Counsel refiled said pleading under docket entry number 34 . (tg, ) (Entered: 01/22/2008) |
| 01/22/2008 | 35 | | Memorandum in opposition to re 34 Emergency MOTION for Protective Order *CORRECTED* filed by SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Text of Proposed Order)(Daker, Angela) (Entered: 01/22/2008) |
| 01/24/2008 | 36 | | REPLY to opposition to motion re 34 Emergency MOTION for Protective Order *CORRECTED REGARDING DEPOSITIONS NOTICED TO BEGIN ON JANUARY 30, 2008* filed by SIERRA CLUB. (Stebbins, Joshua) (Entered: 01/24/2008) |
| 01/28/2008 | 37 | | ORDER granting 34 Motion for Protective Order. Signed by Judge Royce C. Lamberth on 01/28/2008. (lcrcl1, ) (Entered: 01/28/2008) |
| 01/31/2008 | 38 | | ENTERED IN ERROR.....AFFIDAVIT *of Service* by SIERRA CLUB. (Attachments: # 1 Exhibit)(Stebbins, Joshua) Modified on 2/1/2008 (tg, ). (Entered: 01/31/2008) |
| 02/01/2008 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 38 Affidavit was entered in error and counsel was instructed to refile said pleading using the proper ECF event to file a Summons Return Executed. (tg, ) (Entered: 02/01/2008) |
| 02/04/2008 | 39 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on Attorney General. Date of Service Upon Attorney General 10/05/2007., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the US Attorney served 10/1/2007, answer due 12/1/2007. ROBERT L. VAN ANTWERP served on 10/5/2007, answer due 12/4/2007; DIRK KEMPTHORNE served on 10/5/2007, answer due 12/4/2007; DALE HALL served on 10/10/2007, answer due 12/9/2007, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to ROBERT L. VAN ANTWERP served on 10/5/2007, answer due 12/4/2007; DIRK KEMPTHORNE served on 10/5/2007, answer due 12/4/2007; DALE HALL served on 10/10/2007, answer due 12/9/2007. (Attachments: # 1 Exhibit)(Stebbins, Joshua) Modified to edit Service on US Attorney on 2/5/2008 (tg, ). (Entered: 02/04/2008) |
| 02/05/2008 | 40 | | NOTICE of Permit Suspension by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Exhibit)(O'Donnell, Jessica) Modified to edit text on 2/6/2008 (tg, ). (Entered: 02/05/2008) |

| 02/13/2008 | 41 | MOTION to Remand *and Stay Litigation* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(O'Donnell, Jessica) (Entered: 02/13/2008) |
|---|---|---|
| 02/13/2008 | 42 | MOTION to Stay *or Extend Briefing Schedule* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Text of Proposed Order)(Swanson, Kristofor) (Entered: 02/13/2008) |
| 02/15/2008 | 43 | NOTICE *of Joinder in Motion for Extensionor Stay of Briefing Schedule and Request for Expedited Consideration* by SIERRA PROPERTIES I, LLC re 42 MOTION to Stay *or Extend Briefing Schedule* (Daker, Angela) (Entered: 02/15/2008) |
| 02/15/2008 | 44 | Memorandum in opposition to re 42 MOTION to Stay *or Extend Briefing Schedule* filed by SIERRA CLUB. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Stebbins, Joshua) (Entered: 02/15/2008) |
| 02/18/2008 | 45 | REPLY to opposition to motion re 42 MOTION to Stay *or Extend Briefing Schedule* filed by JG CYPRESS CREEK LLC. (Daker, Angela) (Entered: 02/18/2008) |
| 02/19/2008 | 46 | REPLY to opposition to motion re 42 MOTION to Stay *or Extend Briefing Schedule* filed by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Swanson, Kristofor) (Entered: 02/19/2008) |
| 02/25/2008 | 47 | Memorandum in opposition to re 41 MOTION to Remand *and Stay Litigation* filed by SIERRA CLUB. (Attachments: # 1 Exhibit, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Text of Proposed Order, # 10 Text of Proposed Order Alternative)(Stebbins, Joshua) (Entered: 02/25/2008) |
| 02/27/2008 | 48 | RESPONSE re 41 MOTION to Remand *and Stay Litigation* filed by SIERRA PROPERTIES I, LLC. (Daker, Angela) (Entered: 02/27/2008) |
| 03/06/2008 | 49 | REPLY to opposition to motion re 41 MOTION to Remand *and Stay Litigation* filed by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (O'Donnell, Jessica) (Entered: 03/06/2008) |
| 04/28/2008 | 50 | NOTICE *of Filing of Declaration* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Exhibit Hurst Declaration, # 2 Exhibit Kubler Letter Part 1, # 3 Exhibit Kubler Letter Part 2, # 4 Exhibit Statement of Findings)(Swanson, Kristofor) (Entered: 04/28/2008) |
| 05/13/2008 | 51 | REPLY re 50 Notice (Other), Notice (Other) filed by SIERRA CLUB. (Stebbins, Joshua) (Entered: 05/13/2008) |
| 05/16/2008 | 52 | NOTICE *of Additional Corrective Measures* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Exhibit)(O'Donnell, Jessica) (Entered: 05/16/2008) |
| 06/03/2008 | 53 | RESPONSE re 52 Notice (Other) filed by SIERRA CLUB. (Stebbins, Joshua) (Entered: 06/03/2008) |
| 06/11/2008 | 54 | MEMORANDUM OPINION. Signed by Chief Judge Royce C. Lamberth on 06/11/2008. (lcrcl1, ) (Entered: 06/11/2008) |

| 06/11/2008 | 55 | ORDER denying 32 Motion for Summary Judgment; granting 41 Motion to Remand and Stay Litigation; denying 42 Motion for Extension or Stay of Briefing Schedule. Signed by Chief Judge Royce C. Lamberth on 06/11/2008. (lcrcl1, ) (Entered: 06/11/2008) |
|---|---|---|
| 05/29/2009 | 56 | ORDER. Signed by Chief Judge Royce C. Lamberth on 5/29/2009. (lcrcl1, ) (Entered: 05/29/2009) |
| 06/12/2009 | 57 | STATUS REPORT by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Attachments: # 1 Declaration Ex. 1−Declaration of Tracy Hurst, # 2 Exhibit Ex. A, # 3 Exhibit Ex. B, # 4 Exhibit Ex. C, # 5 Exhibit Ex. D, # 6 Exhibit Ex. E, # 7 Exhibit Ex. F)(Brown, Mark) (Entered: 06/12/2009) |
| 06/26/2009 | 58 | RESPONSE *To Federal Defendants' June 12, 2009 Status Report* filed by SIERRA CLUB. (Attachments: # 1 Exhibit Ex 1. Notice of Suspension, # 2 Exhibit Ex. 2 Public Notice)(Stebbins, Joshua) (Entered: 06/26/2009) |
| 09/03/2009 | 59 | STATUS REPORT *(Federal Defendants' Status Report)* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Brown, Mark) (Entered: 09/03/2009) |
| 09/15/2009 | 60 | ADMINISTRATIVE RECORD *(Notice of Filing Supplemental Administrative Records)* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Attachments: # 1 Exhibit Ex. 1−Herrington Certification &FWS Index, # 2 Exhibit Ex. 2−Schnepel Certification &Corps Index)(Brown, Mark) (Entered: 09/15/2009) |
| 09/16/2009 | 61 | STATUS REPORT *and Proposed Briefing Schedule* by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL, SIERRA PROPERTIES I, LLC, PASCO 54, LTD., PASCO RANCH, INC., JG CYPRESS CREEK LLC. (Attachments: # 1 Text of Proposed Order)(Swanson, Kristofor) (Entered: 09/16/2009) |
| 09/17/2009 | 62 | STATUS REPORT *And Response To Defendants' Status Report* by RICHARD SOMMERVILLE, SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY. (Crystal, Howard) (Entered: 09/17/2009) |
| 09/22/2009 | 63 | RESPONSE to 62 Status Report filed by ROBERT L. VAN ANTWERP, DIRK KEMPTHORNE, DALE HALL. (Brown, Mark) Modified on 9/23/2009 to enhance docket text (rdj). (Entered: 09/22/2009) |
| 10/19/2009 | 64 | ORDER adopting Plaintiffs' proposed scheduling order. Signed by Chief Judge Royce C. Lamberth on 10/19/2009. (lcrcl4, ) (Entered: 10/19/2009) |
| 11/02/2009 | 65 | AMENDED COMPLAINT against KEN SALAZAR, SAM HILTON, ROBERT L. VAN ANTWERP filed by RICHARD SOMMERVILLE, SIERRA CLUB, CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY.(znmw, ) (Entered: 11/03/2009) |
| 11/23/2009 | 66 | ANSWER to 65 Amended Complaint by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP. Related document: 65 Amended Complaint filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY.(Swanson, Kristofor) (Entered: 11/23/2009) |

| 12/14/2009 | 67 | | REVISED SUPPLEMENTAL AMENDED COMPLAINT against SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP filed by GULF RESTORATION NETWORK, SIERRA CLUB, CHRIS LOY, CLEAN WATER ACTION, RICHARD SOMMERVILLE.(znmw, ) (Entered: 12/15/2009) |
|---|---|---|---|
| 01/04/2010 | 68 | | *Federal Defendants'* ANSWER to 67 Amended Complaint by DALE HALL, SAM HILTON, DIRK KEMPTHORNE, KEN SALAZAR, ROBERT L. VAN ANTWERP. Related document: 67 Amended Complaint filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY.(O'Donnell, Jessica) (Entered: 01/04/2010) |
| 01/04/2010 | 69 | | ADMINISTRATIVE RECORD *Third Supplement* by DALE HALL, SAM HILTON, DIRK KEMPTHORNE, KEN SALAZAR, ROBERT L. VAN ANTWERP. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(O'Donnell, Jessica) (Entered: 01/04/2010) |
| 01/04/2010 | 70 | | MOTION for Summary Judgment by SIERRA CLUB (Attachments: # 1 Text of Proposed Order)(Stebbins, Joshua) (Entered: 01/04/2010) |
| 01/05/2010 | 71 | | *Intervening Defendants Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and JG Cypress Creek LLC's* ANSWER to 67 Amended Complaint *Revised Supplemental* by SIERRA PROPERTIES I, LLC. Related document: 67 Amended Complaint filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY.(Daker, Angela) (Entered: 01/05/2010) |
| 01/19/2010 | 72 | | Memorandum in opposition to re 70 MOTION for Summary Judgment filed by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP. (Brown, Mark) (Entered: 01/19/2010) |
| 01/19/2010 | 73 | | MOTION for Summary Judgment by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP (Brown, Mark) (Entered: 01/19/2010) |
| 01/19/2010 | 74 | | Cross MOTION for Summary Judgment *and Supporting Memorandum of Law by Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and* by JG CYPRESS CREEK LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A to Memorandum of Law)(Daker, Angela) (Entered: 01/19/2010) |
| 01/20/2010 | 75 | | Memorandum in opposition to re 70 MOTION for Summary Judgment *filed by Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and* filed by JG CYPRESS CREEK LLC. (Attachments: # 1 Memorandum in Support of Intervening Defendants' Consolidated Cross−Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, # 2 Exhibit A to Memorandum)(Daker, Angela) (Entered: 01/20/2010) |
| 02/02/2010 | 76 | | Memorandum in opposition to re 70 MOTION for Summary Judgment, 73 MOTION for Summary Judgment, 74 Cross MOTION for Summary Judgment *and Supporting Memorandum of Law by Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and Reply In Support Of Plaintiffs' Motion For Summary Judgment* filed by SIERRA CLUB. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Stebbins, Joshua) (Entered: 02/02/2010) |

| 02/02/2010 | 79 | | REPLY to opposition to motion re 70 MOTION for Summary Judgment filed by SIERRA CLUB. (See Docket Entry 76 to view document). (znmw, ) (Entered: 02/10/2010) |
|---|---|---|---|
| 02/05/2010 | 77 | | MOTION for Extension of Time to File Response/Reply as to 73 MOTION for Summary Judgment by DALE HALL, SAM HILTON, DIRK KEMPTHORNE, KEN SALAZAR, ROBERT L. VAN ANTWERP (Attachments: # 1 Text of Proposed Order)(O'Donnell, Jessica) (Entered: 02/05/2010) |
| 02/09/2010 | 78 | | REPLY to opposition to motion re 74 Cross MOTION for Summary Judgment *and Supporting Memorandum of Law by Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and* filed by JG CYPRESS CREEK LLC. (Daker, Angela) (Entered: 02/09/2010) |
| 02/09/2010 | 80 | | Memorandum in opposition to re 70 MOTION for Summary Judgment filed by JG CYPRESS CREEK LLC. (See Docket Entry 78 to view document). (znmw, ) (Entered: 02/10/2010) |
| 02/12/2010 | 81 | | REPLY to opposition to motion re 73 MOTION for Summary Judgment filed by DALE HALL, SAM HILTON, DIRK KEMPTHORNE, KEN SALAZAR, ROBERT L. VAN ANTWERP. (Attachments: # 1 Exhibit)(O'Donnell, Jessica) (Entered: 02/12/2010) |
| 02/16/2010 | 82 | | ORDER granting nunc pro tunc 77 Motion for Extension of Time to File Response/Reply re 73 MOTION for Summary Judgment. Replies due by 2/12/2010. Signed by Chief Judge Royce C. Lamberth on 2/16/2010. (lcrcl4, ) (Entered: 02/16/2010) |
| 02/26/2010 | 83 | | NOTICE of Filing of Administrative Record Appendix by CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, SIERRA CLUB, RICHARD SOMMERVILLE (rdj) (Entered: 03/09/2010) |
| 03/09/2010 | 84 | | ADMINISTRATIVE RECORD by CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, SIERRA CLUB, RICHARD SOMMERVILLE. (View Docket Entry 83 to view document)(rdj) (Entered: 03/09/2010) |
| 04/05/2010 | 85 | | MOTION to Expedite *Hearing On Cross Motions For Summary Judgment And Notice Of Commencement Of Construction Activities*, MOTION for Hearing by SIERRA CLUB (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Stebbins, Joshua) (Entered: 04/05/2010) |
| 04/08/2010 | 86 | | Memorandum in opposition to re 85 MOTION to Expedite *Hearing On Cross Motions For Summary Judgment And Notice Of Commencement Of Construction Activities* MOTION for Hearing filed by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP. (Swanson, Kristofor) (Entered: 04/08/2010) |
| 04/09/2010 | 87 | | Memorandum in opposition to re 85 MOTION to Expedite *Hearing On Cross Motions For Summary Judgment And Notice Of Commencement Of Construction Activities* MOTION for Hearing *on Behalf of Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and J.G. Cypress Creek LLC* filed by JG CYPRESS CREEK LLC. (Daker, Angela) (Entered: 04/09/2010) |
| 04/13/2010 | 88 | | REPLY re 85 MOTION to Expedite *Hearing On Cross Motions For Summary* |

| | | | |
|---|---|---|---|
| | | | *Judgment And Notice Of Commencement Of Construction Activities* MOTION for Hearing filed by SIERRA CLUB. (Stebbins, Joshua) (Entered: 04/13/2010) |
| 06/22/2010 | 89 | | NOTICE OF SUPPLEMENTAL AUTHORITY by SIERRA PROPERTIES I, LLC (Attachments: # 1 Exhibit A)(Daker, Angela) (Entered: 06/22/2010) |
| 06/23/2010 | 90 | | NOTICE OF SUPPLEMENTAL AUTHORITY by SIERRA CLUB (Stebbins, Joshua) (Entered: 06/23/2010) |
| 06/30/2010 | 91 | 55 | ORDER granting in part and denying in part 70 Motion for Summary Judgment; granting in part and denying in part 73 Motion for Summary Judgment; granting in part and denying in part 74 Motion for Summary Judgment; finding as moot 85 Motion to Expedite; finding as moot 85 Motion for Hearing. Signed by Chief Judge Royce C. Lamberth on June 30, 2010. (lcrcl3) (Entered: 06/30/2010) |
| 06/30/2010 | 92 | 20 | MEMORANDUM OPINION. Signed by Chief Judge Royce C. Lamberth on June 30, 2010. (lcrcl3) (Entered: 06/30/2010) |
| 07/20/2010 | 93 | | RESPONSE TO ORDER OF THE COURT re 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, 92 Memorandum &Opinion , *Federal Defendants' Brief Regarding Remedy* filed by DALE HALL, SAM HILTON, DIRK KEMPTHORNE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(O'Donnell, Jessica) (Entered: 07/20/2010) |
| 07/20/2010 | 94 | | RESPONSE TO ORDER OF THE COURT re 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, 92 Memorandum &Opinion *Intervening Defendants Sierra Properties I, LLC, Pasco 54, Ltd., Pasco Ranch, Inc., and JG Cypress Creek LLC's Memorandum Regarding Remedies* filed by JG CYPRESS CREEK LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Daker, Angela) (Entered: 07/20/2010) |
| 08/06/2010 | 95 | | MEMORANDUM re 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, by SIERRA CLUB. (Attachments: # 1 Text of Proposed Order)(Stebbins, Joshua) (Entered: 08/06/2010) |
| 08/06/2010 | 96 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to SIERRA CLUB. Attorney Joshua R. Stebbins terminated. (Stebbins, Joshua) (Entered: 08/06/2010) |
| 08/09/2010 | 97 | | MOTION for Leave to File *Response to Plaintiffs' Remedy Brief* by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP (Attachments: # 1 Text of Proposed Order, # 2 Proposed Pleading)(Swanson, Kristofor) (Entered: 08/09/2010) |
| 08/11/2010 | 98 | | Memorandum in opposition to re 97 MOTION for Leave to File *Response to Plaintiffs' Remedy Brief* filed by CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, SIERRA CLUB, RICHARD SOMMERVILLE. (Crystal, Howard) (Entered: 08/11/2010) |
| 08/12/2010 | 99 | | MOTION for Leave to File *a Brief Reply to Plaintiffs' Remedies Brief and Proposed Order* by SIERRA PROPERTIES I, LLC (Attachments: # 1 Text of Proposed Order, # 2 Proposed Pleading)(Daker, Angela) (Entered: 08/12/2010) |

| 08/20/2010 | | | MINUTE ORDER granting 97 Motion for Leave to File. Signed by Chief Judge Royce C. Lamberth on August 20, 2010. (lcrcl3, ) (Entered: 08/20/2010) |
|---|---|---|---|
| 08/20/2010 | | | MINUTE ORDER granting 99 Motion for Leave to File. Signed by Chief Judge Royce C. Lamberth on August 20, 2010. (lcrcl3, ) (Entered: 08/20/2010) |
| 08/20/2010 | 100 | 50 | ORDER. Signed by Chief Judge Royce C. Lamberth on August 20, 2010. (lcrcl3, ) (Entered: 08/20/2010) |
| 08/20/2010 | 101 | | RESPONSE re 91 Order on Motion for Summary Judgment, Order on Motion to Expedite, Order on Motion for Hearing filed by SAM HILTON, KEN SALAZAR, ROBERT L. VAN ANTWERP. (rdj) (Entered: 08/20/2010) |
| 08/20/2010 | 102 | | RESPONSE re 91 Order on Motion for Summary Judgment, Order on Motion to Expedite, Order on Motion for Hearing filed by SIERRA PROPERTIES I, LLC. (rdj) (Entered: 08/20/2010) |
| 08/27/2010 | 103 | | NOTICE OF APPEAL as to 100 Order, 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, 92 Memorandum &Opinion by JG CYPRESS CREEK LLC, PASCO 54, LTD., PASCO RANCH, INC., SIERRA PROPERTIES I, LLC. Filing fee $ 455, receipt number 0090−2279068. Fee Status: Fee Paid. Parties have been notified. (Daker, Angela) (Entered: 08/27/2010) |
| 08/30/2010 | 104 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 103 Notice of Appeal. (rdj) (Entered: 08/30/2010) |
| 09/01/2010 | | | USCA Case Number 10−5284 for 103 Notice of Appeal, filed by PASCO 54, LTD., PASCO RANCH, INC., SIERRA PROPERTIES I, LLC, JG CYPRESS CREEK LLC. (rdj) (Entered: 09/01/2010) |
| 09/10/2010 | 105 | | NOTICE OF CROSS APPEAL as to 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, 92 Memorandum &Opinion by CLEAN WATER ACTION, GULF RESTORATION NETWORK, CHRIS LOY, SIERRA CLUB, RICHARD SOMMERVILLE. Filing fee $ 455, receipt number 0090−2290084. Fee Status: Fee Paid. Parties have been notified. (Crystal, Howard) (Entered: 09/10/2010) |
| 09/13/2010 | 106 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 105 Notice of Cross Appeal. (rdj) (Entered: 09/13/2010) |
| 09/27/2010 | | | USCA Case Number 10−5297 for 105 Notice of Cross Appeal, filed by GULF RESTORATION NETWORK, CLEAN WATER ACTION, SIERRA CLUB, RICHARD SOMMERVILLE, CHRIS LOY. (rdj) (Entered: 09/27/2010) |
| 10/15/2010 | 107 | 17 | NOTICE OF APPEAL as to 100 Order, 91 Order on Motion for Summary Judgment,,, Order on Motion to Expedite, Order on Motion for Hearing,,,,, 92 Memorandum &Opinion by KEN SALAZAR, ROBERT L. VAN ANTWERP, SAM HILTON. Fee Status: No Fee Paid. Parties have been notified. (Swanson, Kristofor) (Entered: 10/15/2010) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SIERRA CLUB, CLEAN WATER ACTION,
GULF RESTORATION NETWORK, CHRIS LOY,
and RICHARD SOMMERVILLE,

       Plaintiffs,

     v.                                      Civ. No. 1:07-cv-01756-RCL

LT. GEN. ROBERT L. VAN ANTWERP, in his
official capacity as Chief of Engineers, U.S. Army
Corps or Engineers; KENNETH SALAZAR, in his
official capacity as Secretary, U.S. Department of
the Interior; and ROWAN GOULD,[1/] in his official
capacity as Acting Director, U.S. Fish and Wildlife
Service,

       Defendants,

   and

SIERRA PROPERTIES I, LLC; PASCO 54, LTD.;
PASCO RANCH, INC., and JG CYPRESS
CREEK LLC,

       Intervening Defendants.

_____/

PLEASE TAKE NOTICE that Lt. Gen. Robert L. Van Antwerp, Kenneth Salazar, and

Rowan Gould, in their official capacities as Federal Defendants in the above-captioned action,

hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from

this Court's June 30, 2010, Order and Opinion on the parties' cross-motions for summary

judgment (D.E. 91, 92), and August 20, 2010, Opinion and Order partially vacating and

_____

[1/] Pursuant to Federal Rule of Civil Procedure 25(d), Kenneth Salazar and Rowan Gould are
substituted for Dirk Kempthorne and H. Dale Hall, respectively.

remanding U.S. Army Corps of Engineers modified permit SAJ-2003-2336 (D.E. 100).


Respectfully submitted this 15th day of October, 2010.

<div style="margin-left:40%">

IGNACIA S. MORENO
Assistant Attorney General


___ *s/ Kristofor R. Swanson* ___

MARK ARTHUR BROWN
D.C. Bar No. 470050
Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0204
Facsimile: (202) 305-0275
mark.brown@usdoj.gov

JESSICA O'DONNELL
D.C. Bar No. 473166
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone:  (202) 305-085
Facsimile:  (202) 514-8865
jessica.odonnell@usdoj.gov

KRISTOFOR R. SWANSON
Colo. Bar No. 39378
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0248
Facsimile: (202) 305-0274

</div>

- 2 -

kristofor.swanson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2010, I electronically filed the foregoing document with the clerk of the court using the CM/ECF system, which will send electronic notice of the filing to all counsel of record.

/s/ Kristofor R. Swanson
Kristofor R. Swanson

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| SIERRA CLUB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | Civil Action No. 07-1756 (RCL) |
| v. ) | |
| ) | |
| ROBERT L. VAN ANTWERP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

This case concerns a 500-acre multi-use development located in a Tampa, Florida suburb known as Cypress Creek Town Center (CCTC).  Plans for the project include retail stores, financial institutions, hotels, restaurants, theaters, offices, and multi-family housing.  The project site is located on wetlands, which will need to be "filled" in order for the project to be completed as planned.  Because the project site involves the filling of wetlands, the Clean Water Act (CWA) required the project's developers to obtain a special permit prior to construction. Further, the project's developers were required to comply with other federal, state, and local environmental regulations.

The Army Corps of Engineers (Corps) issued a permit for the development in May 2007 and construction started shortly thereafter. Six months later, plaintiffs, three environmental groups and individuals, filed suit alleging violations under the National Environmental Policy Act (NEPA), the CWA, and the Endangered Species Act (ESA). Meanwhile, during the initial stages of construction, turbid, silt-laden water was discharged from the development site in

1

violation of the Corps permit.  After the discharges, the Corps received this Court's approval to remand the case in order to re-evaluate the permit. After review, the Corps reissued virtually the same permit, concluding that the discharges resulted from human error, rather than a flaw with the permit.  Plaintiffs continued their legal challenge alleging: (1) that the Corps violated NEPA by failing to prepare an Environmental Impact Statement and by failing to otherwise take a "hard look" at the project's adverse impacts and potential alternatives; (2) that the Corps violated the CWA by failing to require practicable alternatives and by arbitrarily and capriciously concluding there would be no significant degradation of Cypress Creek and its wetlands, and no violations of state water quality standards; and (3) that the Corps and the Fish and Wildlife Service (FWS) violated the ESA by failing to engage in formal consultation on the development's impact on protected species.

Currently before the court are plaintiffs' motion for summary judgment, government defendants' motion for summary judgment, and intervening defendant's cross-motion for summary judgment. For the reasons set forth in this opinion, plaintiffs' motion for summary judgment will be granted in part and denied in part. Likewise, government defendants' motion for summary judgment and intervening defendants' cross-motion for will be granted in part and denied in part. Specifically, plaintiff's motion for summary judgment on their NEPA and CWA claims will be granted but their motion for summary judgment on the ESA claim will be denied. Consequently, government defendants' motion for summary judgment and intervening defendants' cross-motion for summary judgment regarding plaintiffs' ESA claim will be granted.

## II.    BACKGROUND

The CCTC project site consists of 502.412 acres in Pasco County, Florida, approximately nine miles outside of Tampa, Florida.  The project site includes 155.46 acres of wetlands.

Wetland systems are comprised of cypress swamp, mixed wetland forests, freshwater marshes, wet prairies and small ponds. Because the proposed project involves the filling of wetlands that are "waters of the United States," pursuant to the CWA, a Section 404 permit is required from the Corps before the project can proceed.  This is because wetlands provide storage areas for storm and flood waters as well as water purification functions.

CCTC's uplands include pastureland, wooded lands and scrubby areas, which provide a buffer zone that protects Cypress Creek.  The area also provides wildlife habitat for a number of species. The CCTC project was initially approved by local governments having jurisdiction over the project. In addition, the intervening defendants, the "applicants" in the instant case, were required to obtain an Environmental Resource Permit from the Southwest Florida Water Management District for the project. The Environmental Resource Permit also serves as the State Water Quality Certification under the CWA.

### A.  Issuance of the 2007 CWA Permit

In September 2005, Sierra Properties submitted a permit application to the Corps for the CCTC project.  The Corps issued a Public Notice on October 31, 2005 and initiated consultation with the FWS in December 2005 concerning the impact on certain protected animal species, specifically the Wood Stork and the Eastern Indigo Snake. The Corps received public comments from state and local agencies, elected officials, organizations, and individual citizens and reviewed the comments. The CWA permit process culminated in a May, 2007 Environmental Assessment (EA) and Statement of Findings. In the EA, the Corps outlined the process it had implemented to assess the environmental review. Specifically, the Corps engaged in an "informal consultation" with the FWS regarding the potential impact on threatened and endangered species. The FWS concurred with the Corps' determination that the project would likely not

3

adversely affect the Wood Stork and Indigo Snake.  FWS also concurred with the Corps' determination that the project would have no affect on the Scrub Jay.  Concluding that the CCTC project failed to impose any significant environmental impacts, the EA also constituted the Corps' Finding of No Significant Impact under NEPA.  Based on these findings, the Corps issued a permit on May 15, 2007.

The 2007 permit authorized the construction of a new town center, including a main street regional mall and power center, which included retail businesses, financial institutions, hotels, restaurants, theaters, gas stations, offices and residential housing.  CCTC will also provide parking for more than 14,000 cars. However, within two months of the issuance of the 2007 permit, the site began releasing turbid, silt-laden water into Cypress Creek.  While the Corps demanded that the discharges stop and the applicant assured the Corps that the issue was under control, the discharges continued through 2008. On February 1, 2008, the Corps suspended the 2007 CWA permit and concluded it would investigate the causes of the violations to determine whether the violations undermined the Corps' permit decision.

### B. Issuance of the 2009 CWA Permit

After suspending the 2007 CWA permit, the Corps conducted a review of the causes of the discharges coming from the CCTC site. The Corps issued a public notice advising of the reevaluation and considered additional information. During remand, the plaintiffs submitted additional information about CCTC's potential environmental impacts. After completing additional environmental reviews, the Corps issued a Supplemental Environmental Assessment (SEA), which concluded the prohibited discharges from the site were caused by "human error" rather than as a result of the 2007 permit. On September 3, 2009, the Corps issued a slightly modified permit allowing the CCTC project to continue.

4

### C.  Procedural Posture

Plaintiffs, three environmental groups, asserted this challenge to the CCTC permit in 2007, claiming that the CCTC permit would degrade Cypress Creek and its wetlands.  Plaintiffs asserted that the wetland destruction was unnecessary and unlawful; that the Corps and FWS were required to formally consult on impacts to federally listed species; and that an EIS should have been prepared pursuant to NEPA.  After the discharges from the site began and the Corps suspended the 2007 permit, the Court granted the Corps' request for a voluntary remand and stay of all litigation, noting that the Corps "may conduct additional environmental review" pursuant to the ESA, NEPA and the CWA.  On September 3, 2009, the Corps notified the Court and the parties that the Corps had issued another CWA permit. Plaintiff's Revised Supplemental Complaint challenges the 2009 CWA permit.  Currently before the Court is Plaintiffs' motion for summary judgment [Dkt. 70], Defendants' motion for summary judgment [Dkt. 73], and Intervening Defendants' cross motion for summary judgment [Dkt. 74]. Subsequent to the filings of the motions for summary judgment, plaintiffs' filed a motion for expedited argument due to construction activity at the CCTC project site.

### D.  DISCUSSION

### A.  Legal Standard

Generally, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-

5

moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

However, a federal agency's compliance with its statutory and regulatory obligations is subject to the Administrative Procedure Act (APA). The APA creates a cause of action for challenges to final agency decisions, findings or conclusions alleged to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). While the court's review must be "searching and careful, the ultimate standard of review is a narrow one" and the court "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). The standard is deferential in order to guard against "undue judicial interference" with the lawful exercise of agency discretion and prevents "judicial entanglement in abstract policy disagreements which courts lack both the expertise and information to resolve. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004). In applying this standard, action will be set aside if the agency identified no "rational connection between the facts found and the choice made," if the "explanation for its decision [is] counter to the evidence before the agency, or is so implausible that is could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co*., 463 U.S. 29, 43 (1983). Under the APA's standard of review, there is a presumption of validity of agency action. *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976) (en banc). Nevertheless, the "arbitrary and capricious" standard is not meant to reduce judicial review to a "rubber-stamp" of agency action. *Id.*

6

### B.  NEPA

Congress passed the National Environmental Policy Act (NEPA) in 1969 in order to insure that all agencies of the federal government consider the environmental effects of proposed actions.  *Sierra Club v. Watkins*, 808 F.Supp. 852, 858 (D.C.D. 1991).  NEPA's primary purpose is to make certain "that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." *Roberston v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).   In addition to providing information to the decisionmakers at the agency, NEPA also "guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Id.*  This audience includes the public because the documentation "gives the public the assurance that the agency has indeed considered environmental concerns in its decisionmaking process, and, perhaps more significantly, provides a springboard for public comment." *Sierra Club v. Watkins*, 808 F.Supp. at 858 (quoting *Baltimore Gas & Electric Co. v. Natural Resources Defense Council*, 462 U.S. 87, 97 (1983); *Robertson*, 490 U.S. at 349). Instead of "mandating particular environmental results, NEPA imposes procedural requirements on federal agencies to analyze the environmental impact of their proposals and actions." *O'Reilly v. United States Army Corp of Engineers*, 477 F.3d 225, 228 (5th Cir. 2007).

At the heart of NEPA is § 4332(a)(C), which requires that a government agency prepare an environmental impact statement (EIS) whenever a proposed government action qualifies as a "major Federal action significantly affecting the quality of the human environment."[1]  When it is

---

[1] Intervening defendants' Notice of Supplemental Authority [Dkt. 89] point the Court to a recent Supreme Court decision, *Monsanto Co. et al. v. Geerston Seed Farms*, 2010 WL 2471057 (U.S. S. Ct. June 21, 2010) for the principle that an agency need not prepare an EIS if it concludes, after the preparation of an EA, that the proposed action will not have a significant environmental impact. While this rule of law is correct, *see* 40 C.F.R. §§ 1508.9(a),

7

not readily discernible how significant the environmental effects of a proposed action will be, federal agencies may prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1501.4(b). In other words, an environmental assessment (EA) is made in order to determine whether an EIS is required. *See* 40 C.F.R. § 1508.9; *Grand Canyon Trust v. Federal Aviation Administration*, 290 F.3d 339, 340 (D.C. Cir. 2002). Specifically, an EA is a "concise public document . . . that serves to . . . [b]riefly provide sufficient evidence and analysis for determining whether to prepare an [EIS] or a finding of no significant impact." 40 C.F.R. § 1508.9(a)(1); *see also* 33 C.F.R. §§ 230.10-230.11 (explaining the Corps' requirements for an EA).

However, "[i]f *any* 'significant' environmental impacts might result from the proposed agency action then an EIS must be prepared *before* agency action is taken." *Grand Canyon Trust*, 290 F.3d at 339 (emphasis in original). Significance is determined by evaluating both the context of the action and the intensity of the impact. 40 C.F.R. § 1508.27. Intensity refers to the severity of the impact. The applicable regulation provides that the following factors should be considered in evaluating intensity:

> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.

> (2) The degree to which the proposed action affects public health or safety.

> (3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.

> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.

> (5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.

---

1508.13, it is not the "holding" of *Monsanto* as counsel claims, and the Court reminds counsel of its obligation of candor to the Court. *See also* Black's Law Dictionary (8th ed. 2004), which defines "holding" as "a court's determination of a matter of law pivotal to its decision."

8

   (6) The degree to which the action may establish a precedent for future
actions with significant effects or represents a decision in principle
about a future consideration.

   (7) Whether the action is related to other actions with individually
insignificant but cumulatively significant impacts. Significance exists if
it is reasonable to anticipate a cumulatively significant impact on the
environment. Significance cannot be avoided by terming an action
temporary or by breaking it down into small component parts.

   (8) The degree to which the action may adversely affect districts, sites,
highways, structures, or objects listed in or eligible for listing in the
National Register of Historic Places or may cause loss or destruction of
significant scientific, cultural, or historical resources.

   (9) The degree to which the action may adversely affect an endangered or
threatened species or its habitat that has been determined to be critical
under the Endangered Species Act of 1973.

   (10) Whether the action threatens a violation of Federal, State, or local law
or requirements imposed for the protection of the environment.

40 C.F.R. § 1508.27.

     Under the "long-established standard in this circuit," the court reviews an agency's

finding of no significant impact, or in other words, decision to not prepare an EIS, in order to

determine whether the agency has accurately identified the relevant environmental concerns and

has taken a "hard look" at the potential environmental consequences of their actions. *Grand*

*Canyon Trust*, 290 F.3d at 340. Specifically, the agency must (1) accurately identify the relevant

environmental concern; (2) take a "hard look" at the environmental consequences of the action;

(3) make a "convincing case" that the potential environmental impact is not significant enough to

require a EIS; and (4) show that "even if there is an impact of true significance, [an EIS] is

unnecessary because changes or safeguards in the project sufficiently reduce the impact to a

minimum."[2] *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 29 (D.C. Cir. 2008) (citing *TOMAC v. Norton*, 433 F.3d 852, 861 (D.C. Cir. 2006)); *see also Robertson*, 490 U.S. at 350.

However, because NEPA is a procedural and not a results-driven statute, even agency action with adverse environmental effects can be NEPA-compliant so long as the agency has considered those effects and determined that competing policy values outweigh those costs. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 191 (4th Cir. 2009) (citing *Robertson*, 490 U.S. at 350.)   Even if the court finds the contrary views more persuasive, the court will not second-guess the agency's decision so long as the agency followed NEPA's procedures. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).

In the instant case, it is clear from the record that the Corps failed to comply with NEPA's procedural requirements.  While the Corps seems to argue that it was only required to take a "hard look" at potential environmental concerns, the Corps is also required to make a convincing case that there would not be significant environmental impacts. Even though the Corps took the necessary hard look at some potential environmental impacts, its determination that there would not be significant environmental impacts is so contrary to the record that the Court can find it to be nothing short of arbitrary and capricious.

Under NEPA, if "*any* significant environmental impact *might* result" from an agency's actions, an EIS is required. *Grand Canyon Trust*, 290 F.3d at 339  (second emphasis added). Significance is determined by evaluating both the context of the action and the intensity of the

---

[2] The additional requirement to make a "convincing case" differs somewhat from the requirements of *Overton Park*. The Court of Appeals determined that this additional requirement is appropriate in the context of the NEPA: "This burden should rest on the Government, both because of the high value placed on the protection of the environment by the National Environmental Policy Act of 1969, and because of the risk of error which results from not writing an impact statement on a project requiring one." *Md.-Nat'l Capital Park & Planning Comm'n v. U.S. Postal Serv.*, 487 F.2d 1029, 1040 n.10 (D.C. Cir. 1973) (citing *Int'l Harvester Co. v. Ruckelshaus*, 478 F.2d 615 (D.C. Cir. 1973)).

impact and intensity refers to the severity of the impact.  The criteria in NEPA's regulations for evaluating significance of environmental impacts highlight the need for an EIS because the CCTC site satisfies at least several of the criteria.  *See Fund for Animals v. Norton*, 281 F. Supp. 2d 209, 235 (D.D.C. 2003) ("[O]ne or more significance factors can justify setting aside a [Finding of No Significant Impact].").

Primarily, an EIS should have been prepared because the project site has "unique characteristics . . . such as proximity to . . . wetlands . . . or ecologically critical areas." 40 C.F.R. § 1508.27(b)(3). In fact, the project site is directly *on top* of these unique wetlands.  The Corps itself has found that such wetlands provide "valuable storage areas for storm and flood waters" and "water purification" functions. A.R. 6670.   Specifically, the Cypress Creek "buffer" would be eliminated by the CCTC project in order to allow for the construction of storm ponds. This construction will "reduce the existing buffer by 300-500 feet resulting in a buffer width of only 50 feet in most areas." A.R. 3975, 4602.  The Corps itself determined that the buffer provides a protective function for the Creek through sediment removal, erosion control, and moderation of storm water runoff. A.R. 3975.  The results of the removal of these buffer areas will result in an increase in surges of runoff with high levels of eroded sediment. In other words, the removal of the buffer areas can result in the same kind of discharge of turbid water that occurred in 2008. Further, the Cypress Creek project location is ecologically critical because of the "critical wildlife linkage" that connects to other conservation lands in the area.   *See* A.R. 6672; 40 C.F.R. § 1507.28(b)(3).

Additionally, an EIS should have been prepared because the CCTC project "is related to other actions with individually insignificant but cumulatively significant impacts." The regulations instruct that "[s]ignificance exists if it is reasonable to anticipate a cumulatively

11

significant impact on the environment." This Circuit has held that NEPA requires "agencies to consider the cumulative impacts of proposed actions." *Natural Resources Defense Council v. Hodel*, 865 F.2d 288, 297 (D.C. Cir. 1988). A cumulative impact is defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency . . . undertakes such other actions." 40 C.F.R. § 1508.7. The Corps contends that no EIS was needed based on potential cumulative impacts because "[n]o cumulative impacts analysis is required where the agency action itself will not result in impacts and therefore not contribute to the accumulation of the impact in question." (Fed. Defs.' Mem. in Opp'n to Summ J. (citing 40 C.F.R. § 1508.7)). However, the agency action could, and in fact has, resulted in environmental impacts and for the Corps to contend that it is unreasonable to assert that the CCTC project may have a cumulative impact on the environment flies in the face of logic. It not only may have an impact, it already has. The Corps did not fully consider cumulative impacts because it erroneously concluded that the CCTC project site would have no environmental impact at all, which, as discussed above, is contrary to the record.

Further, an EIS should have been prepared because the project site *may* adversely affect an endangered or threatened species. 40 C.F.R. § 1508.27(b)(9). Destroying the habitats of the Indigo Snake and the Wood Stork clearly may adversely affect these protected species. While this fact is not fatal to the ultimate substantive determinations, under NEPA this fact requires an EIS. The Corps correctly states that "agencies may take project-related mitigation into account when determining whether an action will have significant impacts" and that "[a]n EIS is not required if the project is modified to add mitigating measures that compensate for any adverse environmental impacts." (Cross motion for S.J 32.) This analysis is applicable to the Wood

12

Stork. However, the 24-page Cumulative Impacts Analysis does not address the Indigo Snake, presumably because under its ESA analysis, the snake was not observed at site visits.  However, the fact that the Corps required protective measures for the Indigo Snake under the EPA in the chance it is found during construction demonstrates that the project site has the *potential* of adversely effecting the protected species.   This potential is all that is necessary to require preparation of an EIS under NEPA. *See Grand Canyon Trust*, 290 F.3d at 339. While these measures speak to the direct "taking," or killing, of the snake, they fail to mitigate against the potential loss of habitat. Nevertheless, a cumulative analysis was not performed regarding the Indigo Snake.

Finally, an EIS should have been prepared because the project site "threatens violation of Federal, State, [and] local law[s], imposed for the protection of the environment." 40 C.F.R. § 1508.27(b)(10). The Corps looked at the 2008 discharge and accepted the applicant's assessment that it was a result of "human error." However, NEPA regulations make no exception for human error.  NEPA's requirement that an EIS be prepared if an action may significantly affect the environment is highlighted when, after the issuance of a permit, significant environmental concerns actually occur. The potential for adverse environmental consequences from the CCTC project site escalates after the site has already had adverse environmental consequences.  The 2008 discharge did, in fact, violation Federal, State and local environmental law. While it is true that NEPA is a procedural statute and even agency action with adverse environmental effects can be NEPA-compliant, s*ee Robertson*, 490 U.S. at 350, the procedural requirements of the statute still must be followed. *See Rock Creek Pack Station v. Blackwell*, 344 F.Supp.2d 192, 200 (D.D.C. 2004) ("[I]t is well settled that NEPA does not require a particular agency to reach a particular result based on the information it collects and analyzes, but only prescribes the

13

necessary process."). Given the 2008 discharge violated environmental law, in addition to the other applicable § 1508.27(b) factors, the Corps acted arbitrarily when it refused to prepare the standard EIS.

Plaintiffs assert that an EIS should have been prepared because the "degree to which the effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508(b)(4). "The term 'controversial' refers to cases where a substantial dispute exists as to the size, nature, or *effect* of the major federal action rather than to the existence of opposition to a use." *Town of Cave Creek v. Federal Aviation Administration*, 325 F.3d 320, 331 (D.C. Cir. 2003). Here, the record fails to demonstrate that controversy surrounding the effect of the permit exists. While declarations were submitted to the Corps from numerous experts who claimed that CCTC will have significant adverse impacts on Cypress Creek and its wetlands,[3] these declarations alone fail to rise to the level of "controversy" under NEPA.

While the Corps took a hard look at *some* of the environmental consequences of the issuance of the permit, it failed to make a "convincing case" that the potential environmental impact is not significant enough to require preparation of an EIS. It is important to note that the preparation of an EIS does not foreclose the CCTC project; it simply mandates the Corps to follow NEPA's procedures. The Court of Appeals has made clear the importance of NEPA's procedural requirements. Specifically, "[t]he purpose is not merely to force the agency to reconsider its proposed action, but, more broadly, to inform Congress, other agencies, and the general public about the environmental consequences of a certain action in order to spur all interested parties to rethink the wisdom of the action." *Natural Resources Defense Council v.*

---

[3] Specifically, Dr. Bradley Stith, a Florida Scrub Jay expert, opined CCTC will adversely affect the Jay and sever the critical wildlife linkage onsite. A.R. 10555-62. Dr. Mark Rains, a hydrological expert, opined that CCTC will have significant adverse impacts on the Cypress Creek and its wetlands. Dr. C. Kenneth Dodd, a biologist who authored the rule listing the Indigo Snake while working at FWS, opined that CCTC will adversely impact the Indigo Snake by destroying its habitat and severing wildlife linkage.

14

*Hodel*, 865 F.2d 288, 296 (D.C. Cir. 1988). Although the Court is not persuaded as to the existence of the "controversy" factor, the Court does find that several factors exist, therefore requiring preparation of an EIS. The Corps presents the Court with no "rational connection" between the record and its decision to not prepare an EIS. *See Motor Vehicles Mfrs Ass'n*, 463 U.S. at 43. Therefore, Plaintiff's motion for summary judgment regarding its NEPA claim is granted.

### C.  CWA

The Clean Water Act was enacted "to restore and maintain chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a).  Section 404 of the CWA, 33 U.S.C. § 1344, prohibits the filling or dredging of wetlands without first receiving a permit from the Army Corps of Engineers. 33 U.S.C. § 1344.  Section 404 authorizes the Corps to issue individual or general permits for discharges of dredged and fill material into wetlands. 33 U.S.C. § 1344(a),(e). The Environmental Protection Agency, together with the Corps, developed guidelines to implement the policies of the CWA and the Corps is required to follow these guidelines in deciding whether to issue a Section 404 permit. *See* 33 U.S.C. § 1344(b); 40 C.F.R. § 230.2. These guidelines provide that a permit may not be issued if "(i) there is a practicable alternative which would have less adverse impact and does not have other significant adverse environmental consequences, (ii) the discharge will result in significant degradation, (iii) the discharge does not include all appropriate and practicable measures to minimize potential harm, or (iv) there does not exist sufficient information to make a reasonable judgment as to whether the proposed discharge will comply with the [Corps'] Guidelines for permit issuance." 40 C.F.R. § 230.12(a)(3)(i-iv); *see also* 33 C.F.R. § 320.4(a)(2)(ii) (public interest review to consider the "practicability of using reasonable alternative locations and methods to accomplish the objective

15

of the proposed structure or work"). Because the applicant failed to show that practicable alternatives did not exist, the Corps failed to act in accordance with the law when it approved the CWA permit.

I.     **The Corps' determination that practicable alternatives did not exist was arbitrary and capricious**

Pursuant to the CWA, the Corps may permit discharges that impact wetlands only if the applicant has shown that no practicable alternative exists that is less damaging to the aquatic ecosystem. 40 C.F.R. § 230.10(a). A practicable alternative is one that is "available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." *Id.*

In applying this standard, the Corps is required to follow a two step procedure. First, an accurate statement of the project's "basic purpose" is necessary, which the Corps defines. *See* 40 C.F.R. § 230.10(a)(3). Second, the Corps must determine whether the basic purpose is "water dependant." *Id.* If the purpose is not water dependant, the availability of practicable alternatives is presumed. 40 C.F.R. § 230.10(a)(3); *Berson v. EPA*, 850 F.2d 36, 39 (2nd Cir. 1988); *Resource Inv's v. United States Army Corps of Eng'rs*, 151 F.3d 1162, 1167 (9th Cir. 1998); *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 305 F.3d 1152, 1163 (10th Cir. 2002). The preamble to the 404 Guidelines state that in the case of such non-water dependant activities, "it is reasonable to assume there will generally be a practicable site available upland or in a less vulnerable part of the aquatic ecosystem." 45 Fed. Reg. 85339. When this presumption applies, the permit applicant must rebut the presumption by "clearly demonstrating that a practicable alternative is not available." *Sierra Club v. Van Antwerp*, 2010 WL 200838, *5 (11th Cir. Jan. 21, 2010) (quoting 40 C.F.R. § 230.10(a)(3). Unless the permit applicant clearly demonstrates otherwise, the Corps must presume that all practicable alternatives that do not involve the

16

discharge of pollutants into a wetland have a less adverse environmental impact. *Id.* Where the presumption applies, the permit applicant bears the burden by providing "detailed, clear and convincing information *proving* that an alternative with less adverse impact is impracticable." *Id.* (emphasis in original) (quoting *Greater Yellowstone Coalition v. Flowers*, 359 F.3d 1257, 1269 (10th Cir. 2004).  Moreover, the Corps may rely on information submitted by the applicant but must independently verify such information. 40 C.F.R. § 1506.5(a) ("The agency shall independently evaluate the information submitted and shall be responsible for its accuracy.") When considering alternatives, "practicable" is defined at 40 C.F.R. § 230.10(a)(2) as "available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes."

Here, the CCTC is not water dependant. Therefore, the applicant had the duty to rebut the presumption of practicable alternatives by clearly demonstrating that a practicable alternative was unavailable.  The Court finds that the Corps failed to require the applicant to provide detailed, clear and convincing information proving that an alternative with a less adverse impact was impracticable. Consequently, the Corps unlawfully granted the section 404 permit.

a.  **The applicant failed to show that a reduction in CCTC's size was impracticable**

The Corps accepted the applicant's determination that reducing the size of the CCTC project was infeasible because of cost.  The Corps calculated the costs of the CCTC project by data provided by the applicant that showed the total costs of CCTC as compared to the net rental income of the operation and the resulting "return on costs" of CCTC. According to the applicant, if the project achieved less than an 8.0% rate of return, it would no longer be attractive to investors and would be financially unworkable. However, the applicant (1) never proved that an

8% rate of return was necessary and (2) never proved that even if an 8% rate of return was necessary, that the costs provided by the applicant were accurate.

     i. **Applicant never proved an 8% rate of return was necessary**

  The applicant submitted to the Corps that an 8% rate of return was necessary in order to obtain financing for the project. The rate of return is "a calculation of potential income from a project" that "reflects required returns, or goals, of investors contemplating acquisitions." (Fed. Defs.' Mem. in Opp'n to Summ J.  at 17). The applicable test is "whether the alternative with less wetlands impact is "impracticable," and the burden is on the Applicant . . . with independent verification by the [Corps], to provide detailed, clear and convincing information *proving* impracticability." *Utahns for Better Transp.*, 305 F.3d at 1186 (emphasis in original).

  During the original analysis done by the Corps, the agency found the information submitted by the applicant to be "conflicting." A.R. 4467-68.  When the Corps pursued the issue, the applicant confirmed that financing could be secured with a lower than 8% rate of return. A.R. 5385; AR 4501. However, the Corps subsequently conducted further inquiry and concluded that the 8% rate of return was a "reasonable minimum." AR 12286. The Corps now submits that plaintiff's challenge to the 8% rate of return is moot because the Corps conducted the subsequent inquiry and found the rate to be "reasonable."

  The Corps points the Court to four pieces of evidence that supports the assertion than an 8.0% minimum rate of return was required to maintain the project's economic feasibility and obtain financing: (1) the 2006 Real Estate Research Corporation Real Estate Report (RERC report)  (AR 5417-75); (2) the August 21, 2008 Ernst & Young Report (AR 11236-47); (3) the Real Estate Capital Markets Scoreboard showing a Survey of Initial Capitalization Rates adjusted for New Project Development (AR 4600); and (4) a table compiling rates of return for

<div align="center">18</div>

Major New Retail Development Projects from SEC filings (AR 4619). Consequently, the Corps asserts that its "economists further found that 'the data and methods used to demonstrate the reasonableness of an 8.0% minimum [rate of return] are acceptable, reasonable and consistent with basic economic practice and theory.' Thus, the Corps independently verified the permittee's claim that 8.0% was the minimum rate of return to assure financial feasibility of the project." (Fed. Defs.' Mem. in Opp'n to Summ J. at 19 (citing AR 122856; 15347)).

In spite of the fact that the applicant proved that the 8% rate of return is "reasonable," the applicant never proved anything less than an 8% rate of return would be *impracticable*. Even within one of the pieces of evidence the Corps relies on as supporting a mandatory minimum of an 8.0% rate of return, a 7.7% and 7.6% rates of return were listed as "average" rates of return for regional malls and power centers in the Tampa area.  In another piece of evidence relied upon by the Corps, it would require a 9.1% minimum rate of return. In other words, the 8.0% rate of return is "impracticable" using the evidence the Corps directs the Court to deferentially rely on. The intervening defendants illustrate this point: "The 8% rate of return figure is based on a going-in capitalization rate for established regional malls of 7.6% plus an upward adjustment of 1.5% to 3.0% to account for risks associated with new projects like CCTC . . . The administrative record . . . makes clear that 8% is a conservative figure to use as a minimum rate of return because 1.5% to 3.0% adjustment would actually support a minimum rate of return of 9.10% to 10.6%."  (Interv. Defs.' Reply Mem. at 13).   Taking the Corps evidence at face value demonstrates the 8.0% rate of return itself would be unworkable.  The Corps' own unacceptable rate of return highlights the arbitrary and capricious nature of the 8.0% minimum.

The burden is on the applicant to prove impracticability with clear and convincing information. It is the Corps duty to hold the applicant to this standard as required by the CWA.

Here, the applicant proved a preference for an 8.0% rate of return but never proved it was impracticable to realize anything less than 8.0 percent. "[U]nder the CWA, there is a "very strong" presumption that practicable alternatives exist when a proposed project is not water-dependent, and that the agency carries the burden to rebut that presumption by showing the alternatives to be impracticable." *Nw. Bypass Group v. U.S. Army Corps of Engineers*, 490 F.Supp.2d 184 (D.N.H. 2007) (citing *Buttrey v. United States*, 690 F.2d 1170, 1180 (5th Cir. 1982); Nat'l *Wildlife Fed'n v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994)); see also 40 C.F.R. § 230.10(a)(3).

### ii.  **Applicant never proved its cost calculations were accurate**

Plaintiffs contend that even if an 8% rate of return was necessary for the financial feasibility of the project, the applicant never proved it was impracticable to reduce the CCTC project in size. According to the applicant's calculations, after building costs, or "hard costs," the largest cost is the "net land cost," which the applicant lists as $52,474,500. AR04345. However, instead of listing the actual "cost" of the land in its calculations, the applicant lists the land's "value." *Id.* Specifically, the applicant listed the "base value" of the land under the "TOTAL COSTS" as costing $72,837,500. After accounting for office, hotel, and residential sales, the cost of the "net land cost" amounted to $46,380,000. *Id.*

The Corps argues that after examining the appropriateness of the applicant's use of 2006 market value rather than the actual purchase price, or "cost," it determined that it correctly relied on the financial feasibility studies that used the market value. In support of this proposition, the Corps directs the Court to the fact that it may rely on information submitted by the applicant. (Fed. Defs.' Mem. in Opp'n to Summ J. at 14 (citing AR15348-9; *Friends of the Earth v. Hinz*, 800 F.2d 822, 834 (9th Cir. 1986)). The same case directs that the Corps' regulations provide

that "when information for an EA is prepared by the applicant, 'the district engineer is responsible for independent verification and use of the data, evaluation of the environmental issues, and for the scope and content of the EA.'" *Friends of the Earth*, 800 F.2d at 835 (citing 33 C.F.R. Part 230, App. B § 8(b); 40 C.F.R. § 1506.5(b)). Thus, "while the Corps could, and did, base its permit decision exclusively on the information provided by [the applicant], the Corps nonetheless has an obligation to independently verify the information supplied to it." *Id.*

Here, the Corps' independent verification consisted of inquiring into the appropriateness of the data set by its Socioeconomic Branch, which concluded that "the developer is forgoing the opportunity to sell the land and earn a profit. Therefore, the opportunity costs of developing the land is equivalent to the price the development could sell the land for on the open market." AR12288. However, the "TOTAL COSTS" do not provide for hypothetical opportunity costs within the rate of return analysis. By using "land value" instead of land "cost" in its cost calculations, the applicant was able to foreclose the consideration of practicable alternatives, which the regulations mandate. The Corps argues that the calculations are "within the agency's technical expertise" and that the "Corps' conclusion is entitled to deference." Fed. Defs.' Mem. in Opp'n to Summ J. at 15 (citing *City of Waukesha v. EPA*, 320 F.3d 228, 247 (D.C. Cir. 2003). However, the Court of Appeals in *City of Waukesha* was discussing deference to the agency "when it is evaluating scientific data within its technical expertise." *City of Waukesha*, 320 F.3d at 247 (quoting *Huls Am. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996)). Using the actual "cost" in a column marked "cost" is far from technical and even further from reasonable. *See* Black's Law Dictionary (8th ed. 2004) (defining "cost" as the "amount paid or charged for something; price or expenditure").

21

Further, the preamble to the 404 Guidelines confirms the plain meaning of the term "cost." The notice explains that the word "cost" was used instead of the word "economic." This is because "[t]he term economic might be construed to include consideration of the applicant's financial standing, or investment, or market share, a cumbersome inquiry which is not necessarily material to the objectives of the Guidelines." 45 Fed. Reg. 85339. As such, the applicant failed to show, and the Corps failed to verify, the use of accurate financial information. As a consequence, the applicant was permitted to control the numbers in order to prevent alternatives from being practicable. This slanting of financial information is not permitted under the CWA.

The 404(b)(1) Guidelines define practicable alternatives as those that are available and capable of being done taking into account "cost, existing technology, and logistics on light of overall project purpose." 40 C.F.R. §230.10(a)(2). The plain meaning of the regulations require the Corps to examine whether the "overall project purposes," of the CCTC project could be pursued with less wetlands destruction and taking into account the cost of the smaller project. *See id.*; § 230.3(q). While the overall project purpose would obviously include the rate of return and potential income from a project, that rate of return calculation cannot be misrepresented to increase *itself*. The cost of the land in the rate or return, or profit, calculation is independent from the market value of the land. The plain language of the regulation directing the Corps to take cost into consideration cannot be confused with potential, hypothetical future profit, as the Corps is allowing the applicant to do so here.[4] The justification that the applicant could have potentially sold the land in 2007 for $72 million is unrelated to whether CCTC can be reduced in size and

_____

[4] Plaintiffs also argue that even if the Corps accepted the applicant's opportunity "cost" figures in the cost calculations, it should have required market values from 2009 instead of 2007, when the original permit was processed. Given that the Court has decided the Corps' independent inquiry into the cost calculations was inadequate, there is no need to decide this issue.

still earn the 8.0% profit. Consequently, the Corps impermissibly allowed the applicant to employ mathematical manipulation in order to show that practicable alternatives were unavailable.

> **b. The applicant failed to show that a reduction in the number of parking spaces was impracticable**

Plaintiffs contend that another practicable alternative would be to require the applicant to reduce the number of parking spaces. According to the Corps, nearly half of the wetlands loss is for parking. The Corps scrutinized the type and quantity of parking and required the applicant to submit data verifying the applicant's claims that a reduction of parking would be impracticable. The applicant supplied information from industry sources showing that potential department store tenants would require a minimum of 5 spaces/ 1000 square feet to up to 20 spaces/ 1000 square feet for retail centers with restaurants. *See* AR 5412, 5530, 5532, 5553. The applicant also surveyed five other regional malls and the "results revealed that the project proposed more parking than any existing mall in the evaluation." AR 6647. The applicant contended that the additional parking spaces are required because of the higher number of restaurants at CCTC as compared to the other regional malls.

The Corps accepted the applicant's contention and concluded that it "can reject an alternative as impracticable if it would not fully meet the needs of the type of tenant sought by the applicant." Specifically, the Corps points to the fact that the 5 spaces / 1000 square feet "merely reflects the low end of the range of parking ratios required by potential tenants." (Fed. Defs.' Mem. in Opp'n to Summ J. 20). However, the Corps is required to presume that an alternative is practicable unless the project applicant clearly demonstrates otherwise. *See* 40 U.S.C. § 230.10(a)(3). While a "low end" of parking may be less desirable for the applicant, this does not make the alternative "impracticable," as required by the CWA. The record

demonstrates that CCTC would have more parking than any existing comparable mall.   The applicant failed to demonstrate, and the Corps failed to verify, why parking ratios that appear on the low end of a spectrum are impracticable.

> ## II.   The Corps lawfully concluded that the modified permit would not cause or contribute to significant degradation of Cypress Creek or it wetlands or violate water quality standards.

The § 404(b)(1) Guidelines also require the Corps to consider whether the issuance of a permit "will cause or contribute to significant degradation of the waters of the United States." 40 C.F.R. § 230.10(c).   A discharge contributes to significant degradation if it has significantly adverse effects on human health or welfare, on aquatic life and other wildlife dependent on aquatic ecosystems, on aquatic ecosystem diversity, productivity, and stability, or on recreational, aesthetic, and economic values. 40 C.F.R. § 230.10(c). In making this determination, the Corps is required to examine individual, cumulative, and secondary impacts to wildlife, fish, wetlands, nutrient and pollutant assimilation, drinking water supplies and aesthetics. 40 C.F.R. § 230.11. Significant means anything "more than trivial." 45 Fed. Reg. at 85,343.

The Corps' initial permitting decision was based on assurances that adequate measures were in place to insure compliance with CWA regulations and that the project would not significantly degrade Cypress Creek and surrounding wetlands or violate water quality standards. (Fed. Defs.' Mem. in Opp'n to Summ J. at 22). The Corps also relied on the stormwater treatment system and surface water quality monitoring plan incorporated into the permit.   The stormwater treatment system includes a series of ponds which function as water purifiers. During the initial discharge of turbid waters, the Corps suspended the applicant's 2007 permit and determined that CCTC has imposed "significant, unacceptable impacts to wetlands and water

quality." AR 10886-87. However, after the discharge the Corp examined the causes of the violations and determined that the discharges where temporary in nature and did not alter the Corps' original conclusions that the permit would not cause or contribute to degradation of the waters of Cypress Creek and surrounding wetlands. AR 15340-41; 15359-67. Further, through coordination with state and local agencies, the Corps determined that the stormwater management design remained sufficient. A.R. 15340. The record demonstrates that the Corps thoroughly and reasonably considered the relevant factors. As such, the Corps lawfully concluded that the modified permit would not cause or contribute to significant degradation of Cypress Creek or its surrounding wetlands.

Additionally, the Guidelines require the Corps to consider whether issuance of a permit will violate applicable state water quality standards. 40 C.F.R. § 230.10(b). CWA section 401 incorporates state water quality standards into section 404 permits and requires each applicant to obtain a certification from the state that the proposed discharge will be consistent with state water quality requirements. 33 U.S.C. § 1341(a)(1). Here, the Corps relied on the State's certification that the project complied with all applicable effluent limitations and water quality standards, which is reflected in the state water quality permit. Under Corps regulations, the State's water quality certification is conclusive as to water quality considerations unless EPA advises other water quality impacts be considered. 33 C.F.R. § 320.4(d). As such, The Corps properly concluded that the modified permit would not violate water quality standards.

### D. The Corps and FWA did not violate the ESA

The Endangered Species Act is designed to "ensure that endangered species are protected from government action." *Center for Biological Diversity v. Dept. of Interior*, 563 F.3d 466, 474 (D.C. Cir. 2009). Under the ESA, each federal agency is required to ensure that any action taken

by the agency is "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of critical animal habitats. 16 U.S.C. § 1536(a)(2). Regulations promulgated by the Endangered Species Committee (which is comprised of several federal agencies) define "action" to mean "all activities or programs of any kind," including "the granting of licenses." *American Bird Conservancy v. FCC*, 516 F.3d 1027, 1034 (D.C. Cir. 2008); 50 C.F.R. § 402.02. The purpose of the ESA is to provide "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

Specifically, the Corps must determine "at the earliest possible time" whether any action it takes "may affect" endangered species, and, if so, it must consult with FWS. 50 C.F.R. § 402.14(a); *see* 16 U.S.C. § 1536(a)(2).   If the Corps determines that an action may affect endangered or threatened species or critical habitats, it must initiate formal consultation with the [FWS], at least unless preparation of a biological assessment or participation in informal consultation indicates that a proposed action is "not likely" to have an adverse affect. 50 C.F.R. § 402.14(a)-(b).  Informal consultation includes "all discussions, correspondence, etc., between the Service and the Federal agency or the designated non-Federal representative prior to formal consultation, if required." 50 C.F.R. § 402.02.

Once the consultation process is complete, the Secretary of FWS is required to give the Corps a written biological opinion "setting forth the Secretary's opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects the species or its critical habitat." 16 U.S.C. § 1536(b)(3)(A); *see also* 50 CFR § 402.14(h). If the FWS concludes that the agency action would place the listed species in jeopardy or adversely modify

26

its critical habitat, the FWS is required to "suggest those reasonable and prudent alternatives which he believes would not violate [§ 7(a)(2) ] and can be taken by the Federal agency . . . in implementing the agency action." 16 U.S.C. § 1536(b)(3)(A); *see also* 50 CFR § 402.14(h)(3). In order to qualify as a "reasonable and prudent alternative," an alternative course of action must be able to be implemented in a way "consistent with the scope of the Federal agency's legal authority and jurisdiction." § 402.02. Following the issuance of a "jeopardy" opinion, the agency must either terminate the action, implement the proposed alternative, or seek an exemption from the Cabinet-level Endangered Species Committee pursuant to 16 U.S.C. § 1536(e).

Here, the Corps contends that the requisite informal consultation was completed pursuant to 50 C.F.R. § 402.13(a) prior to issuing the challenged permit.  After the informal consultation process, the Corps contends that it determined that the proposed action was not likely to adversely affect any listed species and the FWS concurred, therefore ending the inquiry and satisfying the ESA. Specifically, the Corps asserts that during "numerous wildlife surveys from 2002 to 2005," no Indigo Snakes were observed on the CCTC site and that even if there are Indigo Snakes on site, the permittee was recommended to "follow standardized Eastern Indigo Snake Protection Measures in the unlikely event that a snake would appear during project construction." (Fed. Defs.' Mem. in Opp'n to Summ J. at 37). Specifically, the protection measures required the permittee to educate construction workers about the snake and instructed them not to kill the snakes.  However, plaintiffs contend that "despite the fact that habitat loss is the greatest threat to the Indigo's survival, neither the Corps nor FWS have ever considered the effect of destroying the Indigo's habitat on the CCTC site." (Mot. for Summ. J. at 41 (emphasis omitted) (citing A.R. 6682)).     Considering the fact that there is nothing in the record to support a conclusion that the Eastern Indigo Snake actually occupies the CCTC site, the Court

finds the Corps' determinations were not arbitrary or capricious. Plaintiffs have failed to carry their burden of showing that FWS' "not likely to adversely effect" determination was arbitrary and capricious.

Additionally, the Corps contends that although the record includes conflicting information about whether Wood Storks have been observed on the project site, information submitted by the applicant indicted that the storks were observed on the CCTC site. Further, the FWS concluded that the project could serve as Wood Stork foraging habitat. However, FWS agreed with the Corps that mitigation measures which are in place will result in a net gain of approximately five acres of potential wood stork foraging habitat, which included "compensation for the temporal lag necessary for the sites to achieve foraging value equal to that provided by the existing wood stork habitat on site." (Fed. Defs' Mem. in Opp'n to Summ J. at 40). While it is true that controversy exists about the efficiency of wetland mitigation generally, the Court's role is "not to resolve scientific disputes." *Natural Res. Def. Council v. FAA*, 564 F.3d 549, 561 (2nd Cir. 2009). Plaintiffs have not submitted any information to cause the Court to second-guess the Corps' determination that wetland mitigation is sufficient. Therefore, Plaintiffs have failed to show that the Corps determinations were arbitrary and capricious.

Finally, the Corps contends that based on the fact that there was no suitable scrub jay habitat in the project area, the Corps has no obligation to consult with the FWS regarding the Scrub Jay. The FWS determined that there was no suitable scrub jay habitat in the project area, FWS1126, and the Corps is under no obligation to consult with the FWS with respect to that species. *See* 16 U.S.C. § 1536(a)(3).

28

### E. RELIEF

The Supreme Court has instructed that where "the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999). Similarly, the D.C. Circuit has stated the decision "whether to remand or vacate "depends on [1] the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed." *Milk Train v. Veneman*, 310 F.3d 747, 755-56 (D.C. Cir. 2002) (quoting *Allied-Signal v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see also WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002) (remand without vacatur where "non-trivial likelihood" that agency would be able to justify rule on remand). Here, the Court finds it appropriate to remand this case at this time and have the parties file supplemental submissions addressing the exact parameters of appropriate relief, including possible vacatur, consistent with this opinion.

### F. CONCLUSION

The Corps has failed to fulfill its statutory duties under NEPA and the CWA. Unfortunately, this is a familiar course of action for the Corps when processing permit applications. As another member of this Court has stated, the Corps "resorted to arbitrary and capricious meaning – manipulating models and changing definitions where necessary – to make this project seem compliant with [CWA] and [NEPA] when it is not." *Envtl Def. v. Army Corps of Eng's*, 515 F.Supp. 2d. 69, 74 (D.D.C. 2007). The record here shows a similarly disturbing pattern. The Corps failed to prepare a required EIS for the project site pursuant to NEPA and

failed to require the applicant to demonstrate that practicable alternatives were not available pursuant to CWA.

For the reasons set forth in this opinion, plaintiff's motion for summary judgment will be granted in part and denied in part. Likewise, government defendants' motion for summary judgment will be granted in part and denied in part and intervening defendants' cross-motion for summary judgment will be granted in part and denied in part. Specifically, plaintiffs' motion for summary judgment on their NEPA and CWA claims will be granted but their motion for summary judgment on the ESA claim will be denied. Consequently, government defendants' motion for summary judgment and intervening defendants' cross-motion for summary judgment on plaintiff's ESA claim will be granted.

A separate order shall issue this date.

June 30, 2010                                    /s/ Royce C. Lamberth_____
                                                 Chief Judge
                                                 United States District Court

30

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

|  |  |
|---|---|
| _____ ) | |
| SIERRA CLUB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | **Civil Action No. 07-1756 (RCL)** |
| v. ) | |
| ) | |
| ROBERT L. VAN ANTWERP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

<div align="center">

**MEMORANDUM OPINION & ORDER**

</div>

On June 30, 2010, the Court granted plaintiffs' motion for summary judgment on their National Environmental Policy Act (NEPA) and Clean Water Act (CWA) claims and remanded the Army Corps of Engineers' permit. The same day, the Court ordered government defendants and intervening defendants, either jointly or individually, to submit a proposed remediation plan and any comments on the injunctive relief sought by plaintiffs. Additionally, the Court provided that plaintiffs may file their response to the proposed plans and comments within twenty days thereafter.  The issue is now ripe and before Court.

The Administrative Procedures Act (APA) provides that the reviewing court shall set aside any agency action that is arbitrary and capricious. 5 U.S.C. § 706; *see* Black's Law Dictionary (8th ed. 2004) (set aside means "to annul or vacate). "The decision whether to vacate depends on the seriousness of the order's deficiency . . . and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see also, e.g., Advocates for Highway and Auto Safety*, 429 F.3d 1136, 1151 (D.C. Cir. 2005); *Ill. Pub. Telecomm. Ass'n v. FCC*, 123 F.3d 693,

<div align="center">

1

</div>

693 (D.C. Cir. 1997); *Association of Battery Recyclers, Inc. v. EPA*, 208 F.3d 1047, 1061 (D.C. Cir. 2000); *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001); *International Union UMW v. FMSHA,* 920 F.2d 960, 966-67 (D.C. Cir. 1990); *Sugar Cane Growers Cooperative of Florida v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002). *Cf. Canadian Pacific Railway Co. v. Surface Transp. Bd.,* 197 F.3d 1165 (D.C. Cir. 1999).

While the U.S. Supreme Court made clear in *Monsanto* that there is no presumption to other injunctive relief, *Mansanto*, 130 S. Ct. at 2757, both the Supreme Court and the D.C. Circuit Court have held that remand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA.  *Fed. Commc'ns Comm'n v. Nextwave Personal Commc'ns. Inc.*, 537 U.S. 293, 300 (2003) ("agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (other citations omitted); *see also, e.g., Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs.*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("We have made clear that '(w)hen a reviewing court determines that the agency regulations are unlawful, the ordinary result is that the rules are vacated . . .'") (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495, n.21 (D.C. Cir. 1989)); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (explaining that a plaintiff who "prevails on its APA claim . . . is entitled to relief under that statute, which normally will be a vacatur"). *But see Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (where "the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").   Indeed, the Court in *Monsanto* assumed that a remand and vacatur of the agency's decision was lawful.  *Monsanto*, 130 S. Ct. at 2756.

2

In order to obtain permanent injunctive relief, plaintiffs much demonstrate: (1) that they will suffer an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardship between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Monsanto*, 130 S. Ct. at 2756.  Plaintiffs have failed to demonstrate any of the four requirements. As such, the Court concludes injunctive relief is inappropriate.

However, federal defendants indicate that in the event that the developer intends to engage in "on-going activities within the jurisdictional wetlands, such work could impact the Corps' or the Court's ability to require future restoration efforts, to the extent such relief is appropriate." Fed. Def. Brief Regarding Remedy at 3; *see also id.* at 14 ("The Corps neither opposes nor supports Plaintiffs' request for an order that would preclude Intervening Defendants from undertaking additional activities on the project site pending a remand,' but "not[ing] that if the Court did not enjoin on-going activities within the jurisdictional wetlands, such work could impact the Corps' or the Court's ability to require wetlands restoration in the future, if, following remand, such relief is found to be appropriate").

Federal defendants argue that no further relief beyond the remand is necessary but request that, if the Court finds vacatur to be appropriate, to leave intact the portions of the permit requiring Intervenors to maintain the storm water management system because the system is "critical to preventing discharges of turbid water into Cypress Creek." *Id.* at 2.

Intervenors have made clear their intention to continue work on the CCTC site. Intervening Defs' Reply at 1 ("intervening Defendants intend to move ahead with the orderly development of the project in accordance with existing agreements and as soon as reasonably practicable, and at no time have advised Plaintiffs that they will discontinue development of the

3

project"); (". . . absent an injunction, Intervening Defendants intend to recommence work during remand, including in former Corps jurisdictional wetland areas, as appropriate, to complete development of CCTC in accordance with all applicable permits and approvals").  As such, it is necessary for the Court to resolve additional remedies beyond remand.

The Court finds that the appropriate remedy is remand along with a partial vacatur. Specifically, intervenors will be permitted to (1) complete the construction of County Road 54[1] and (2) continue to manage the storm water management system.  Because the wetland areas have been filled, the Court agrees that the "constructed storm water management system is necessary to adequately manage and treat storm water inputs from the project site." Fed. Br. at 5 (citing Hurst Decl. ¶6). Since several current permit conditions pertain to the continued operation and maintenance of the storm water management system and ongoing stabilization of the site, the vacatur will not affect those provisions. While it is true that when there is "serious possibility" that the agency can correct the defect on remand, *see Milk Train, Inc. v. Veneman*, 3310 F.3d 747, 756 (D.C. Cir. 2002), and no significant harm would result from keeping the agency's decision in place, courts can remand with vacatur. Because intervenors intend on continuing development pursuant to the permit, vacatur is appropriate in order to prevent significant harm resulting from keeping the agency's decision in place. *See A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995).

The Court declines to grant the issuance of the injunctive relief originally sought by plaintiffs.  Additionally, the Court agrees with federal defendants and intervening defendants' contention that any further Court supervision would be improper. *See Palisades General Hospital v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (after a "court reviewing agency action

---

[1] Plaintiffs do not oppose completion of County Road 54. *See* Pls.' Resp. to Fed. Defs.' and Intervenors' Remedies Br. at 12.

determines that an agency made an error of law, the court's inquiry is at an end"). Accordingly, it is hereby

ORDERED that the Army Corps of Engineers' permit at issue be remanded and partially vacated. Intervenors will be permitted to (1) complete the construction of County Road 54 and (2) continue to manage the storm water management system.

This constitutes the Court's final decision in this case, and is an appealable order.

SO ORDERED.

AUGUST 20, 2010                          _/s/ Royce C. Lamberth ___
                                         Chief Judge
                                         United States District Court

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

SIERRA CLUB, et al.,                    )
                                        )
    Plaintiffs,                         )
                                        )
                                        )    Civil Action No. 07-1756 (RCL)
    v.                                  )
                                        )
ROBERT L. VAN ANTWERP,                  )
et al.,                                 )
                                        )
    Defendants.                         )
_____)

### ORDER

Pending before the Court is plaintiffs' motion for summary judgment [Dkt. 70], government defendants' motion for summary judgment [Dkt. 73], and intervening defendants' cross-motion for summary judgment [Dkt. 74]. Upon consideration of the motions, the oppositions and replies thereto, and the entire record herein, it is for the reasons set forth in an accompanying memorandum opinion hereby

ORDERED that plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED as to plaintiffs' claims under the National Environmental Policy Act and the Clean Water Act; it is otherwise DENIED.

It is ORDERED that government defendants' motion for summary judgment and intervening defendants' cross-motion for summary judgment are GRANTED in part and DENIED in part. Government defendants' and intervening defendants' motions are GRANTED as to plaintiffs' claims under the Endangered Species Act. They are otherwise DENIED.

It is ORDERED that plaintiffs' motion [85] for expedited oral argument is DENIED as moot.

It is ORDERED that the Army Corps of Engineers' permit at issue be remanded.

It is further ORDERED that within twenty days of this Order, government defendants and intervening defendants, either jointly or individually, shall submit a proposed remediation plan and any comments on the injunctive relief sought by plaintiffs in their proposed order [70-1]. Plaintiffs may file a response to the proposed plans and comments within twenty days thereafter, and the Court shall issue an order specifying the remedial actions to be taken by government defendants and intervening defendants.

SO ORDERED.


June 30, 2010                                          _/s/ Royce C. Lamberth___
                                                       Chief Judge
                                                       United States District Court